Matthew Borden, Esq. (SBN: 214323)
borden@braunhagey.com
J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Kory J. DeClark, Esq. (SBN: 310571)
declark@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
gwashington@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Kevin Opoku-Gyamfi, Esq.
(*pro hac vice* forthcoming)
opokugyamfi@braunhagey.com
BRAUNHAGEY & BORDEN LLP
118 W. 22nd Street, 12th Floor
New York, NY 10011
Telephone: (646) 829-9403

[Additional counsel on next page]

*Attorneys for Plaintiffs*

Peter J. Eliasberg, Esq. (SBN: 189110)
peliasberg@aclusocal.org
Jonathan Markovitz, Esq. (SBN: 301767)
jmarkovitz@aclusocal.org
Adrienna Wong, Esq. (SBN: 282026)
awong@aclusocal.org
Meredith Gallen, Esq. (SBN: 291606)
mgallen@aclusocal.org
Summer Lacey, Esq. (SBN: 308614)
slacey@aclusocal.org
Jacob Reisberg, Esq. (SBN: 329310)
jreisberg@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W 8th Street, Ste 200
Los Angeles, CA 90017
Telephone: (213) 977-9500

Peter Bibring, Esq. (SBN: 223981)
peter@bibringlaw.com
Law Office of Peter Bibring
2140 W Sunset Blvd # 203
Los Angeles, CA 90026
Telephone: (213) 471-2022

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Los Angeles Press Club, NewsGuild - Communications Workers of America, Sean Beckner-Carmitchel, Ryanne Mena, Lexis-Olivier Ray, Charles Xu, Benjamin Adam Climer, and Abigail Olmeda,<br><br>Plaintiffs,<br><br>v.<br><br>Kristi Noem, in her official capacity as Secretary of Homeland Security; U.S. Department of Homeland Security,<br><br>Defendants. | Case No. 2:25-CV-05563-SVW-MAA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF NOTICE OF RELATED CASES** |

1  Additional Counsel of Record for Plaintiffs:

2  Carol A. Sobel, Esq. (SBN: 84483)
   carolsobellaw@gmail.com
3  Weston Rowland, Esq. (SBN: 327599)
   rowland.weston@gmail.com
4  Law Office of Carol A. Sobel
   2632 Wilshire Boulevard, #552
5  Santa Monica, CA 90403
   Telephone: (310) 393-3055
6
   Paul Hoffman, Esq. (SBN: 71244)
7  hoffpaul@aol.com
   Michael Seplow, Esq. (SBN: 150183)
8  mseplow@sshhzlaw.com
   John Washington, Esq. (SBN 315991)
9  jwashington@sshhzlaw.com
   Schonbrun, Seplow, Harris, Hoffman & Zeldes LLP
10 200 Pier Avenue #226
   Hermosa Beach, CA 90254
11 Telephone: (310) 717-7373

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 2:25-cv-05563-SVW-MAA

REPLY ISO TRO

Plaintiffs hereby submit this reply in support of the Notice of Related Cases they filed in the above-captioned matter. Under Local Rule 83-1.3.1, *Los Angeles Press Club, et al. v. City of Los Angeles*, Case No.: 2:25-CV- 05423-HDV-E ("City of LA Action") is related to this case, *Los Angeles Press Club, et. al., v. Noem*, Case No. 2:25-CV-05563 ("DHS Action"). The cases are related because they involve the same protests, the same First Amendment issues regarding whether it is appropriate to disperse reporters and people who are not posing any threat to law enforcement, the same excessive force issues, and similar issues of fact. While the cases involve different agencies, relating matters will reduce the possibility that the respective defendants will attempt to blame each other in a classic "empty chair" defense. This case easily meets the liberal standard of L.R. 83-1.3.1 and would serve its goals of creating judicial economy and preventing inconsistent rulings.

Defendants opposed relating the cases, but the arguments they make in opposition should be rejected because the cases fit all three criteria for related cases under the rule. The cases "arise from the same or a closely related transaction, happening, or event" (L.R. 83-1.3.1(a)), "call for determination of the same or substantially related or similar questions of law and fact" (L.R. 83-1.3.1(b)), and adjudication of the two cases would "for other reasons would entail substantial duplication of labor if heard by different judges" (L.R. 83-1.3.1(c)). Any one of these factors alone would suffice for the cases to be related under the Local Rule, which states in the disjunctive that cases are related if the first, second, "or" third factor is met. L.R. 83-1.3.1.

There can be no serious question as to whether the two cases, which share the lead Plaintiff, Los Angeles Press Club, "arise from the same or a closely related transaction, happening, or event." L.R. 83-1.3.1(a).

- The cases challenge the response of two different agencies' use of force against crowds and journalists during *the same* recent and ongoing immigration enforcement actions and related protests in Los Angeles and

surrounding communities. *Compare* Complaint, City of LA Action ¶ 22 (tracing use of force incidents addressed in the case to the fact that "federal agents raided several locations in the Garment District in Downtown Los Angeles" starting "on or about June 6, 2025") *with* Complaint, DHS Action ¶ 2 (tracing use of force incidents addressed in the case to that fact that on "June 6, 2025, the Trump administration began an ongoing series of indiscriminate and terrifying immigration raids across Southern California.").

- Many of the violations alleged in the two complaints occurred when the two agencies responded to the same protests around the civic center area of downtown Los Angeles, where the federal buildings sit within a block of Los Angeles City Hall. *See e.g.*, Complaint ¶ 126 (DHS policing by federal building while LAPD on the perimeter); Ray Declaration, Dkt. No. 6-17, ¶ 32 (LAPD officers replacing federal officers at skirmish line); Petrosian Declaration, Dkt. No. 6-24, ¶ 19 (DHS forced protesters to line where LAPD officers were assembled).
- Both cases seek to protect journalists who have been covering these protests. *See* Complaint, City of LA Action ¶ 3, Complaint, DHS Action ¶ 1.

It is true, as Defendants say, that the cases involve different agencies' use of force—the City of LA Action challenges the use of force by the Los Angeles Police Department, while the DHS Action challenges the use of force by DHS agents. But the Complaints in the two cases make clear that the LAPD officers and DHS agents were often using the same types of weapons against demonstrators and journalists on the same day, at the same location, in response to the same protests. For example, journalist plaintiffs in both actions were hit by purportedly less lethal weapons while covering protests in Downtown Los Angeles every day from June 8-11, 2025 (City of LA Action Complaint ¶¶ 25-33, DHS Action Complaint ¶¶ 82-103, 116-153, 171-

181). The LAPD and DHS even coordinated some of their responses, as LAPD Chief McDonnell has said that LAPD officers have responded to a call for help from ICE when ICE agents were confronted with protesters.[1] Every use of force that is documented in the two cases occurred in response to the recent immigration enforcement actions and related protests throughout the Central District, so at the very least, they arise from "closely related" events. L.R. 83-1.3.1(a).

The cases also "call for determination of the same or substantially related or similar questions of law and fact." L.R. 83-1.3.1(b). There are, to be sure, some differences, as Defendants point out. Defendants' Objection at 2:14-21. There are some legal restrictions and relevant histories that may apply to one set of defendants but not the other. But both cases claim that the respective sets of defendants used excessive force and violated journalists' First Amendment rights by retaliating against journalists for engaging in protected speech or speech-related activities. City of LA Action Complaint ¶¶ 45-53; DHS Action Complaint ¶¶ 239-251. Assessing these claims will necessarily entail assessing common questions of fact as well as common questions of law, because the constitutional analysis of excessive force will turn on balancing the severity of the force against the need to use it, so the court will need to assess the nature of the weapons that were employed and whether they were used improperly, facts about the evolving nature of the protests known to both agencies at the time (and possibly information shared between the agencies), and evaluation whether proposed injunctive limitations on force against journalists is workable. The precise causes of action might differ in the two cases, but the basic

---

[1] Chief McDonnell's statements are reported in Frank Stoltze, "Did LAPD Cooperate With Immigration Agents When Responding to ICE Protests?," LAist, June 11, 2025, https://laist.com/news/criminal-justice/did-lapd-cooperate-with-immigration-agents-when-responding-to-ice-protests. The same article also quotes Los Angeles Mayor Karen Bass approving of Chief McDonnell's comments, saying "When one branch of law enforcement says they need help, another branch of law enforcement is obligated to respond."

questions of whether officers or agents violated journalists' free speech rights or right not to be subjected to excessive violence will at the very least involve substantial overlap sufficient to constitute "substantially related or similar questions of law and fact." L.R. 83-1.3.1(b).

It is also clear that adjudication of the two cases would "for other reasons would entail substantial duplication of labor if heard by different judges." L.R. 83-1.3.1(c). Both of these cases will involve extremely fact-intensive inquiries and discovery regarding the same protests. This discovery is likely to involve some of the same witnesses, since the use of force by federal agents and local law enforcement agencies were often in response to the same protests, and because there are likely to be questions about the ways and extent to which those agencies were coordinating their actions. There is also a possibility that the two agencies would try to blame the unnecessary, excessive and indiscriminate violence on one another, which is much more difficult to do if those matters are consolidated before a single decision-maker. The court is therefore likely to need to review much of the same evidence in both cases, and the amount of overlapping evidence in the two cases is likely to be quite substantial. Assigning the cases to two different judges would entail a substantial duplication, and waste, of judicial resources, and the possibility for inconsistent rulings.

Finally, the fact that the Court denied Plaintiffs' TRO a day after the case was filed is not a basis to deny the related case motion. In other circumstances, the Supreme Court has held that a denial of a TRO by a federal judge does not constitute a "proceeding of substance on the merits" that would prevent *Younger* abstention from applying to require dismissal of federal case that was filed before state criminal proceeding. *See Hicks v. Miranda*, 422 U.S. 332, 349 (1975); *id.* at 338 (holding that *Younger* abstention applied even though plaintiffs had filed a federal lawsuit and the district court had denied their request for a temporary restraining order *before* state criminal proceedings were filed against the federal plaintiffs); *see also Hawaii Hous.*

4   Case No.: 2:25-cv-05563-SVW-MAA
REPLY ISO NOTICE OF RELATED CASES

*Authority v. Midkiff*, 467 U.S. 229, 238 (1984) (*Younger* does not apply, and federal case should not be dismissed in deference to state court proceedings when state proceedings were initiated after federal court has granted a preliminary injunction because federal case has "proceeded well beyond 'the embryonic stage'".). Thus, the denial of Plaintiffs' *ex parte* application for a TRO the day after the suit was filed should not prevent the court from granting the related case notice.

Dated: June 22, 2025

Respectfully submitted,
BRAUNHAGEY & BORDEN LLP

By: */s/ Matthew Borden*
Matthew Borden

*Attorneys for Plaintiffs*