| | |
|---|---|
| Matthew Borden, Esq. (SBN: 214323)<br>borden@braunhagey.com<br>J. Noah Hagey, Esq. (SBN: 262331)<br>hagey@braunhagey.com<br>Kory J. DeClark, Esq. (SBN: 310571)<br>declark@braunhagey.com<br>Greg Washington, Esq. (SBN: 318796)<br>gwashington@braunhagey.com<br>BRAUNHAGEY & BORDEN LLP<br>747 Front Street, 4th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 599-0210<br><br>Kevin Opoku-Gyamfi, Esq.<br>(*pro hac vice*)<br>opokugyamfi@braunhagey.com<br>BRAUNHAGEY & BORDEN LLP<br>118 W. 22nd Street, 12th Floor<br>New York, NY 10011<br>Telephone: (646) 829-9403<br><br>[Additional counsel on next page]<br><br>*Attorneys for Plaintiffs* | Peter J. Eliasberg, Esq. (SBN: 189110)<br>peliasberg@aclusocal.org<br>Jonathan Markovitz, Esq. (SBN: 301767)<br>jmarkovitz@aclusocal.org<br>Adrienna Wong, Esq. (SBN: 282026)<br>awong@aclusocal.org<br>Meredith Gallen, Esq. (SBN: 291606)<br>mgallen@aclusocal.org<br>Summer Lacey, Esq. (SBN: 308614)<br>slacey@aclusocal.org<br>Jacob Reisberg, Esq. (SBN: 329310)<br>jreisberg@aclusocal.org<br>ACLU FOUNDATION OF SOUTHERN CALIFORNIA<br>1313 W 8th Street, Ste 200<br>Los Angeles, CA 90017<br>Telephone: (213) 977-9500<br><br>Peter Bibring, Esq. (SBN: 223981)<br>peter@bibringlaw.com<br>Law Office of Peter Bibring<br>2140 W Sunset Blvd # 203<br>Los Angeles, CA 90026<br>Telephone: (213) 471-2022 |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Los Angeles Press Club, NewsGuild - Communications Workers of America, Sean Beckner-Carmitchel, Ryanne Mena, Lexis-Olivier Ray, Charles Xu, Benjamin Adam Climer, and Abigail Olmeda,<br><br>Plaintiffs,<br><br>v.<br><br>Kristi Noem, in her official capacity as Secretary of Homeland Security; U.S. Department of Homeland Security,<br><br>Defendants. | Case No. 2:25-cv-05563-SVW-MAA<br><br>**NOTICE OF MOTION AND MOTION FOR EXPEDITED DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: July 28, 2025<br>Time: 1:30 p.m.<br>Judge: Hon. Stephen V. Wilson<br>Location: Courtroom 10A, 10th Floor |

Additional Counsel of Record for Plaintiffs:

Carol A. Sobel, Esq. (SBN: 84483)
carolsobellaw@gmail.com
Weston Rowland, Esq. (SBN: 327599)
rowland.weston@gmail.com
Law Office of Carol A. Sobel
2632 Wilshire Boulevard, #552
Santa Monica, CA 90403
Telephone: (310) 393-3055

Paul Hoffman, Esq. (SBN: 71244)
hoffpaul@aol.com
Michael Seplow, Esq. (SBN: 150183)
mseplow@sshhzlaw.com
John Washington, Esq. (SBN 315991)
jwashington@sshhzlaw.com
Schonbrun, Seplow, Harris, Hoffman & Zeldes LLP
200 Pier Avenue #226
Hermosa Beach, CA 90254
Telephone: (310) 717-7373

# NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 28, 2025, at 1:30 p.m. in the U.S. District Court, Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, Courtroom 10A, 10th Floor, Plaintiffs Los Angeles Press Club, NewsGuild - Communications Workers of America, Sean Beckner-Carmitchel Ryanne Mena, et. al., through counsel, will and hereby do move for this Court to Order expedited discovery against Kristi Noem, in her official capacity as Secretary of Homeland Security, and the U.S. Department of Homeland Security.

The motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Matthew Borden, the [Proposed] Order, the files and records in this action and any further evidence and argument that the Court may consider.

Dated: June 25, 2025

Respectfully submitted,
BRAUNHAGEY & BORDEN LLP

By: */s/ Matthew Borden*
    Matthew Borden

*Attorneys for Plaintiffs*

Plaintiffs respectfully submit this memorandum in support of their motion for expedited discovery.

## INTRODUCTION

Plaintiffs seek limited expedited discovery related to their anticipated motion for a preliminary injunction. This case seeks to stop the pervasive excessive uses of force that Defendant the Department of Homeland Security ("DHS") has directed against reporters, legal observers and peaceful protesters to prevent them from exercising their First Amendment rights. The day after this case was filed, the Court denied Plaintiffs' motion for a temporary restraining order, without prejudice to Plaintiffs seeking a preliminary injunction, on the grounds that Plaintiffs had not presented proof of misconduct by DHS after June 9, 2025. (Dkt. 19.) In the interim, DHS has continued to use dangerous and unconstitutional violence at protests arising from immigration raids. *See, e.g.,* https://abc7.com/post/video-shows-protesters-federal-agents-face-off-maywood-possible-immigration-raid/16801895/?linkId=833103108. Plaintiffs, accordingly, intend to move for a preliminary injunction as contemplated by the Court's Order. To do so, however, they seek narrow expedited discovery to challenge the arguments that DHS raised when successfully opposing the TRO.

More specifically, Plaintiffs seek expedited discovery concerning DHS policies, procedures, and communications related to retaliatory intent and other specific contentions and defenses that they raised in their successful opposition to Plaintiffs' motion for a TRO. The Court has wide discretion to allow such discovery for "good cause." Such cause easily exists here because Plaintiffs need the requested discovery to assess and challenge Defendants' position in their motion for a preliminary injunction, and the information sought is in the exclusive possession, custody, and control of Defendants. Courts routinely grant such motions under similar circumstances. The Court should do so here.

# FACTUAL BACKGROUND

On June 6, 2025, protests began erupting in the Los Angeles area after agents from DHS, through its sub-agency Immigration and Customs Enforcement ("ICE"), conducted terrifying immigration raids in which DHS officers wearing masks and heavy paramilitary gear without visible identifying information, were brandishing rifles, and were abducting community members from churches, local business, and courthouses. Thousands of people gathered to voice their opposition to the raids, and journalists and legal observers came to report on and observe the events. (Declaration of Matthew Borden ("Borden Decl."), ¶¶ 2-3.)

As Plaintiffs have documented through numerous declarations, DHS is using indiscriminate, unnecessary, and excessive force at the protests, including attacking people who posed no threat to law enforcement, firing into crowds, wantonly deploying tear gas, improperly using rubber bullets, pepper spray, and flash-bang grenades. DHS is using these weapons against protestors, journalists, and legal observers—including Plaintiffs—who violated no laws nor interfered with law enforcement. (Borden Decl., ¶¶ 4-5.)

Plaintiffs filed a Complaint and moved for a Temporary Restraining Order seeking to enjoin DHS from using unnecessary. indiscriminate and excessive force against reporters, legal observers and protesters. The Court denied the motion because the declarations Plaintiffs submitted related to constitutional violations that occurred "at least one week before Plaintiffs filed their Complaint." (Dkt. 19 at 4.) DHS, however, has continued attacking individuals who pose no harm. Accordingly, Plaintiffs intend to move for a Preliminary Injunction. (Borden Decl., ¶ 6.)

# ARGUMENT

Courts allow expedited discovery before a Rule 26(f) conference upon a showing of "good cause." *Am. LegalNet, Inc. v Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009). Good cause exists if the need for expedited discovery, "in consideration of the administration of justice," outweighs any prejudice to the

responding party. *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1179 (C.D. Cal. 2008). In determining whether to grant a motion for expedited discovery, Courts consider: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.* at 1067. Here, each of the five factors favors Plaintiffs.

**First**, the Court has specifically contemplated, *see* Dkt. 9 at 5, and Plaintiffs intend to move for a preliminary injunction. Plaintiffs need additional discovery to support that motion. Courts generally allow expedited discovery under such circumstances. *See Am. LegalNet, Inc.*, 673 F. Supp. 2d at 1066 (explaining that expedited discovery "is appropriate in cases involving preliminary injunctions").

**Second**, Plaintiffs are asserting a retaliation claim, which requires them to show that DHS targeted them "as a result" of them engaging in First Amendment protected activities. *Boquist v. Courtney*, 32 F.4th 764, 775 (9th Cir. 2022). DHS's TRO Opposition and supporting declarations assert that they had no retaliatory intent. (Dkt. 11 at 12; *see* Bovino Decl. ¶ 12.)

Accordingly, Plaintiffs seek limited discovery targeted at testing DHS's statements, including depositions of no more than four hours each for three of the DHS agents who were shooting into the crowd on June 7, 2025, as shown in the video taken by Plaintiff Ray. (Dkt. 1 ¶ 137.) Plaintiffs should also be allowed to take discovery related to the use of force policies that DHS claims they adhered to (Santacruz, Jr. Decl. ¶ 10; Bovino Decl. ¶ 10; Canton Decl. ¶ 3), and any communications from commanders and line agents regarding use of force at the protests, to see whether the agents adhered to their own directives. (Borden Decl., Exs. A-B.) Plaintiffs also seek communications related to use of force by three agent deponents. Texts and emails referring to journalists, legal observers, protesters, and the protests may shed light on whether agents had retaliatory intent.

Plaintiffs also seek communications regarding journalists, legal observers protesters, and the protests by the individuals who are ultimately responsible for how DHS is policing the protests, including Acting Director of ICE, Tom Homan, Defendant Noem and President Trump, all of whom have expressed animus toward the protests, protesters and journalists. (Dkt. 1 ¶¶ 50, 53, 60.)

Finally, DHS claims that its training prohibits agents from retaliating against protesters for exercising their First Amendment rights and its agents undergo training concerning permissible uses of force. (Dkt. 11 at 12.) Plaintiffs seek discovery into DHS's training materials and practices and whether DHS adhered to its own training to help assess whether DHS was acting in retaliation.

**Third**, Plaintiffs' discovery requests are narrowly tailored to test some of the other representations in DHS's opposition papers. Plaintiffs seek depositions of no more than four hours each of the three individuals who submitted declarations in opposition to Plaintiffs' motion for a TRO. Further, in their opposition, Defendants contended that things on the ground have changed. (Dkt. at 8 at 1.) Accordingly, Plaintiffs seek discovery to assess how Defendants have changed, if it at all, their approach to the protests, journalists, legal observers and protesters and to understand the basis for their claim that "the facts on the grounds have changed."

DHS contends that it can enforce dispersal orders against journalists and legal observers. (Dkt. 11 at 9.) While Plaintiffs disagree with the contention, they should be allowed to take discovery related to the factual underpinnings of DHS's argument, including what the various reporters who DHS shot were doing that agents believed merited attacking them, who issued any such dispersal order that DHS says allows it to shoot reporters, when any such order was issued, where the reporters were being dispersed from, and why any such order was issued. Similarly, DHS claims that its agents only fire tear gas, pepper balls, and rubber bullets at protestors after agents' dispersal orders are ignored. (Canton Decl. ¶ 12.) Plaintiffs should be allowed to discover DHS's records related to any such dispersal orders, including who issued

them (which the declarants neglected to explain), the basis for issuing them, and how and when they were broadcast.

Plaintiffs also seek to serve seven (7) targeted interrogatories to understand the factual bases for DHS's Opposition. For example, Regional Director Canton avers that to the extent journalist, legal observers, and other peaceful protestors were attacked by agents, it is because they were "intermingled" with crowds that were ordered to disperse. (Canton Decl. ¶ 12.) Plaintiffs seek all facts and documents that support this contention, which contradicts substantial evidence in the record.

DHS further asserts that use-of-force incidents involving its agents "may be reviewed or investigated both criminally, to ensure compliance with applicable law, as well as administratively, to ensure compliance with DHS and CBP policy." (Bovino Decl. ¶ 14). Plaintiffs should be allowed to learn whether DHS has conducted any investigations related to its wanton use of force at protests, the conclusions reached in any such investigation, and why DHS reached those conclusions.

In sum, the limited discovery sought is all relevant to DHS's claim that its agents' use of force was reasonable when examined from the perspective of a reasonable officer. (Dkt. 11 at 14.)

**Fourth**, the discovery Plaintiffs seek is not unduly burdensome. Most of the materials are easily accessible—located in phones or computer databases that are just a few clicks away. They are also "relevant and will be produced in the normal course of discovery." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

**Finally**, Plaintiffs intend to move for a preliminary injunction quickly because DHS continues to injure people unnecessarily and prevent and chill the exercise of Plaintiffs' First Amendment rights.

Moreover, protests are actively continuing across Los Angeles. DHS has vowed to continue conducting immigration raids. (Dkt. 1 ¶¶ 30, 60-61.) Protesters

have vowed to continue to protest against such raids. (Dkt. 1 ¶ 193.) And reporters and legal observers have stated their intent to continue reporting on and observing the protests. (*See, e.g.*, Beckner-Carmitchel Decl. ¶ 19, Mena Decl. ¶ 38, Bell Decl. ¶ 40.) Defendants have not stated that they intend to stop using unnecessary, excessive and indiscriminate force at protests, and opposed Plaintiffs' motion for a TRO on the grounds that policing the protests in a manner consistent with the Constitution would interfere with their plans. (Dkt. 11 at 19-20.) Moreover, obtaining discovery on a non-expedited timeline would only create more ability for Defendants to argue that Plaintiffs are not presenting "fresh" or new information in their anticipated motion. Expedited discovery is therefore necessary to ensure that preliminary relief is not rendered meaningless by delay. The discovery is necessary, moreover, for the Court to fully evaluate the scope of relief Plaintiffs propose.

For the foregoing reasons, Plaintiffs request that the Court grant Plaintiffs' motion and order Defendants to respond to their written discovery requests within seven days of the Court's ruling on this motion.

## CONCLUSION

Plaintiffs respectfully request that the Court enter the attached [Proposed] Order, which will enable Plaintiffs to conduct the expedited discovery attached to the Borden Declaration as Exhibits A-B, and require Defendants to respond to such requests within seven (7) days.

Dated: June 25, 2025

Respectfully submitted,
BRAUNHAGEY & BORDEN LLP

By: */s/ Matthew Borden*
Matthew Borden

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH THE WORD COUNT

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 1,940 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 25, 2025                    */s/ Matthew Borden*

                                         Matthew Borden