| | |
|---|---|
| Matthew Borden, Esq. (SBN: 214323)<br>borden@braunhagey.com<br>J. Noah Hagey, Esq. (SBN: 262331)<br>hagey@braunhagey.com<br>Kory J. DeClark, Esq. (SBN: 310571)<br>declark@braunhagey.com<br>Greg Washington, Esq. (SBN: 318796)<br>gwashington@braunhagey.com<br>BRAUNHAGEY & BORDEN LLP<br>747 Front Street, 4th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 599-0210<br><br>Kevin Opoku-Gyamfi, Esq.<br>(*pro hac vice*)<br>opokugyamfi@braunhagey.com<br>BRAUNHAGEY & BORDEN LLP<br>118 W. 22nd Street, 12th Floor<br>New York, NY 10011<br>Telephone: (646) 829-9403<br><br>[Additional counsel on next page]<br><br>*Attorneys for Plaintiffs* | Peter J. Eliasberg, Esq. (SBN: 189110)<br>peliasberg@aclusocal.org<br>Jonathan Markovitz, Esq. (SBN: 301767)<br>jmarkovitz@aclusocal.org<br>Adrienna Wong, Esq. (SBN: 282026)<br>awong@aclusocal.org<br>Meredith Gallen, Esq. (SBN: 291606)<br>mgallen@aclusocal.org<br>Summer Lacey, Esq. (SBN: 308614)<br>slacey@aclusocal.org<br>Jacob Reisberg, Esq. (SBN: 329310)<br>jreisberg@aclusocal.org<br>Mohammad Tajsar, Esq. (SBN: 280152)<br>mtajsar@aclusocal.org<br>ACLU FOUNDATION OF SOUTHERN CALIFORNIA<br>1313 W 8th Street, Ste 200<br>Los Angeles, CA 90017<br>Telephone: (213) 977-9500<br><br>Peter Bibring, Esq. (SBN: 223981)<br>peter@bibringlaw.com<br>Law Office of Peter Bibring<br>2140 W Sunset Blvd # 203<br>Los Angeles, CA 90026<br>Telephone: (213) 471-2022 |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Los Angeles Press Club, NewsGuild - Communications Workers of America, Sean Beckner-Carmitchel, Ryanne Mena, Lexis-Olivier Ray, Charles Xu, Benjamin Adam Climer, and Abigail Olmeda,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>Kristi Noem, in her official capacity as Secretary of Homeland Security; U.S. Department of Homeland Security,<br><br>　　　　Defendants. | Case No. 2:25-CV-05563-HDV-E<br><br>**DECLARATION OF SARAH WILCZEWSKI IN SUPPORT OF PLAINTIFFS' PRELIMINARY INJUNCTION** |

Additional Counsel of Record for Plaintiffs:

Carol A. Sobel, Esq. (SBN: 84483)
carolsobellaw@gmail.com
Weston Rowland, Esq. (SBN: 327599)
rowland.weston@gmail.com
Law Office of Carol A. Sobel
2632 Wilshire Boulevard, #552
Santa Monica, CA 90403
Telephone: (310) 393-3055

Paul Hoffman, Esq. (SBN: 71244)
hoffpaul@aol.com
Michael Seplow, Esq. (SBN: 150183)
mseplow@sshhzlaw.com
John Washington, Esq. (SBN 315991)
jwashington@sshhzlaw.com
Schonbrun, Seplow, Harris, Hoffman & Zeldes LLP
200 Pier Avenue #226
Hermosa Beach, CA 90254
Telephone: (310) 717-7373

Case No. 2:25-cv-05563-HDV-E
DECLARATION OF WILCZEWSKI ISO PLAINTIFFS' PRELIMINARY INJUNCTION

## Declaration of Sarah Wilczewski

I, Sarah Wilczewski, hereby declare:

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

2. I am submitting this declaration to describe how I was subject to force in the form of tear gas and projectiles directed at protesters by federal agents when I was unarmed and peacefully protesting in Camarillo.

3. I am a 30-year-old resident of Oxnard, California, and a member of a rapid response team that communicates about, and shows up to observe, protests in the Ventura County area.

4. I attended a protest on July 10, 2025, after I was notified through the rapid response team that there was an Immigration and Customs Enforcement (ICE) raid being conducted at Glass House Farms in Camarillo, California. I arrived at Glass House Farms around 10:30 a.m. and noticed several other protesters in the area. Some of the people there appeared to be friends and family members of Glass House Farms employees, based on their age and position among the crowd.

5. When I arrived at Glass House Farms, I was near the intersection of Wood Road and Laguna Road. The intersection was blocked off with cones and caution tape and around ten federal agents in military fatigues were visible on the other side of the tape. The blockade was around one to two hundred feet west of the intersection, on Laguna. I believe that these were Customs and Border Patrol (CBP) agents, based on labels on their uniforms.

6. There were around ten to twenty people who were present around the time I arrived. As more protestors arrived around 11:00 a.m., protesters started chanting. There were a variety of chants, like "We don't want you." The chants grew louder and protesters began getting closer to the line of caution tape that was

blocking the intersection. The agents did not verbally respond or engage with protesters.

7. It was not until around 12:00 p.m. that agents responded in any way to the protests; that was when they began to throw tear gas canisters into the crowd. The tear gas was accompanied by loud popping noises. Initially, agents were throwing them close to the front of the line. Then agents started moving toward the crowd and throwing the canisters further into the middle of the crowd. I was standing back from the line, and at least one canister landed within a few feet of where I was standing.

8. There was no change in the way protesters were interacting with agents that prompted them to throw tear gas. The protesters were defenseless, most in casual clothes without protective equipment, in contrast with the agents, who were in full tactical gear and armed with a variety of lethal and less lethal weapons.

9. The tear gas made my eyes hurt, caused me to cough, and made me vomit. Other people nearby, including parents and children, were also coughing because of the tear gas. I distributed water and tried to assist people with minor injuries using the small first aid kit I brought along.

10. About an hour later, protesters had gathered again, and agents threw tear gas into the crowd a second time. At the same time as they began throwing tear gas, agents yelled that they needed protesters to clear the way for an ambulance that was arriving at Glass House Farms, as though they were trying to suggest that was the reason for throwing the tear gas.

11. The explanation that agents provided, that protesters needed to move for the ambulance to get through, did not make sense to me for several reasons. First, agents did not ask protesters to move or give any warning prior to throwing tear gas. Second, we had organized and cleared the way for ambulances that arrived earlier at the facility, so agents observed that we did not intend to block emergency vehicles.

12. When agents started deploying tear gas the second time, the area became very chaotic with people trying to run away from the tear gas. There were also unknown projectiles being launched at protesters, including me. I noticed once I was further from the intersection that I had been hit in the leg by a projectile. In the chaos, I did not see the shots and I was unable to see any of the projectiles. Luckily, I was not seriously injured. Another protester showed me an injury he sustained from a projectile; an open wound which led him to go to the hospital.

13. This is an image of agents chasing protesters through tear gas that they just deployed. It is a still from a video I took during the second tear gassing:

14. After the tear gas dissipated, some of the protesters gathered again in the area of the intersection, while others left to get away from the tear gas. I left the intersection of Wood and Laguna around 1:40 p.m.

15. I witnessed federal agents use unnecessary force against people who were protesting peacefully, and they did so with no warning and seemingly no reason. None of the protesters provoked the agents in any way. Like me, many of the people present were affected by the tear gas and projectiles that were deployed. The tear gas I inhaled led to me coughing, having difficulty breathing, and vomiting. The projectile that hit my leg did not seriously injure me, but that was

not the case for other protesters who were hit by projectiles that day.

16. This experience will not prevent me from continuing to show up to protests to participate, observe, and provide aid. However, it will make me more cautious and prepared in the future.

I declare under penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct. Executed on July 17, 2025 in Anaheim, California.

_____
Sarah Wilczewski