Matthew Borden, Esq. (SBN: 214323)
borden@braunhagey.com
J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Kory J. DeClark, Esq. (SBN: 310571)
declark@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
gwashington@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Kevin Opoku-Gyamfi, Esq.
(*pro hac vice*)
opokugyamfi@braunhagey.com
BRAUNHAGEY & BORDEN LLP
118 W. 22nd Street, 12th Floor
New York, NY 10011
Telephone: (646) 829-9403

[Additional counsel on next page]

*Attorneys for Plaintiffs*

Peter J. Eliasberg, Esq. (SBN: 189110)
peliasberg@aclusocal.org
Jonathan Markovitz, Esq. (SBN: 301767)
jmarkovitz@aclusocal.org
Adrienna Wong, Esq. (SBN: 282026)
awong@aclusocal.org
Meredith Gallen, Esq. (SBN: 291606)
mgallen@aclusocal.org
Summer Lacey, Esq. (SBN: 308614)
slacey@aclusocal.org
Jacob Reisberg, Esq. (SBN: 329310)
jreisberg@aclusocal.org
Mohammad Tajsar, Esq. (SBN: 280152)
mtajsar@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W 8th Street, Ste 200
Los Angeles, CA 90017
Telephone: (213) 977-9500

Peter Bibring, Esq. (SBN: 223981)
peter@bibringlaw.com
Law Office of Peter Bibring
2140 W Sunset Blvd # 203
Los Angeles, CA 90026
Telephone: (213) 471-2022

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Los Angeles Press Club, NewsGuild - Communications Workers of America, Sean Beckner-Carmitchel, Ryanne Mena, Lexis-Olivier Ray, Charles Xu, Benjamin Adam Climer, and Abigail Olmeda,<br><br>Plaintiffs,<br><br>v.<br><br>Kristi Noem, in her official capacity as Secretary of Homeland Security; U.S. Department of Homeland Security,<br><br>Defendants. | Case No. 2:25-CV-05563-HDV-E<br><br>**SUPPLEMENTAL DECLARATION OF ADAM ROSE IN SUPPORT OF PLAINTIFFS' PRELIMINARY INJUNCTION** |

Additional Counsel of Record for Plaintiffs:

Carol A. Sobel, Esq. (SBN: 84483)
carolsobellaw@gmail.com
Weston Rowland, Esq. (SBN: 327599)
rowland.weston@gmail.com
Law Office of Carol A. Sobel
2632 Wilshire Boulevard, #552
Santa Monica, CA 90403
Telephone: (310) 393-3055

Paul Hoffman, Esq. (SBN: 71244)
hoffpaul@aol.com
Michael Seplow, Esq. (SBN: 150183)
mseplow@sshhzlaw.com
John Washington, Esq. (SBN 315991)
jwashington@sshhzlaw.com
Schonbrun, Seplow, Harris, Hoffman & Zeldes LLP
200 Pier Avenue #226
Hermosa Beach, CA 90254
Telephone: (310) 717-7373

**Supplemental Declaration of Adam Rose**

I, Adam Rose, hereby declare:

1. I am the secretary and press rights chair of the Los Angeles Press Club, which is a plaintiff in the above-captioned action. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows.

2. Los Angeles Press Club is a 501(c)(3) nonprofit organization with no parent corporation and no stock, registered in the State of California. The organization has about 1,000 member journalists across Southern California, including but not limited to the Counties of Los Angeles, Orange, Riverside, San Bernardino, San Diego, San Luis Obispo, Santa Barbara, Imperial, Kern and Ventura. Some members are in more disparate counties, including Sacramento, and occasionally out of state if they write about Southern California or work for Southern California outlets. We have members who live in all these Counties, who report on news in all of these Counties, and who serve audiences in all of these Counties.

3. Our 67th annual Southern California Journalism Awards defines our contest requirements as, "All entries must have been published, broadcast or transmitted in Southern California, or be about Southern California, during the 2024 calendar year – OR produced in Southern California during 2024 by a journalist (including national and international correspondents) based in the Southland, working for outlets not based in Southern California. If not based in Southern California, the entry must be about Southern California. Southern California is defined as including the counties of Los Angeles, Orange, Riverside, San Bernardino, San Diego, San Luis Obispo, Santa Barbara, Imperial, Kern and Ventura."

4. Other programming expands our reach further. For example, our A-Mark Prize requires a "California connection" defined as "The winning reporter is

1

based in California; The newspaper or media outlet that published the winning work is based in California; or The work covers California." We also host the annual National Arts & Entertainment Journalism Awards open to the entire United States.

5. In the past year, I have personally engaged with civic officials about press rights issues in Los Angeles, Riverside, and San Luis Obispo Counties. I also communicated about press rights issues with journalists in these counties as well as Orange, Ventura, Santa Barbara, and San Diego Counties.

**Los Angeles Press Club Response to DHS Press Rights Violations**

6. Since June 17, 2025, I have had to divert time and resources from other Club activities to address press rights violations by DHS agents. Other volunteers and staff from our organization have also supported these efforts. Both volunteer and staff time have continued to be diverted from our other activities through the busiest period of the year for our staff in annual fundraising and awards programs.

7. Our response efforts include but are not limited to checking on the wellbeing of journalists brutalized by DHS agents, ensuring they have access to emergency grants or mental health services, providing information on available legal support hotlines, and tips on safety and access on protests. I have made an effort to contact most if not all of the journalists named in this declaration, plus many others.

8. Since the beginning of DHS actions in June, Los Angeles Press Club has had to divert time and resources to expedite processing of press identification cards for journalists working in the field who require indicia of their role as press. These are physical plastic cards which we print in our office. Instead of mailing, some members have had to come in person to pick them up due to urgency created by recent DHS activities. While this program has existed for over 20 years, in June,

we had the first known incident where a member's press ID was destroyed after being struck twice by DHS munitions – first by a tear gas canister on June 7, then by a pepper ball on June 8. The member struck was Sean Beckner-Carmitchel, who we reprinted a card for and facilitated his in-person pickup at our office.

9. Our volunteers and staff have begun diverting time and resources into a new program to provide personal protective equipment (PPE) to journalists exposed to hazardous environments created by DHS in the field. This includes extensive research and testing. We must ensure gear has appropriate safety ratings such as ANSI Z87+ safety goggles, P100 and/or CBRN filters for respirators, and level IIIa body armor and ballistic helmets. It also includes first aid materials, field communication devices, and livestreaming cameras to help colleagues monitor what might happen to journalists who are unlawfully arrested or hospitalized. We have contacted at least twelve organizations or companies to provide in-kind or cash donations for this program. Four have already contributed in some form and two are likely to in the next month. It is taking additional time to set up distribution, as well as maintenance for equipment which will be provided on a "loaner" basis. Most of this will be stored and take up space in our office, and we have already had to make special arrangements to drop off equipment at our offices when staff would not normally have been available to physically be there. Some PPE will also be stored in geographically distributed "caches" that our board members are providing space for in their own homes.

10. We have had to divert focus from some of our other fundraising efforts to promote an emergency fund intended to support journalists who are injured or whose equipment is damaged while reporting. This emergency fund already existed, but we have had to divert time and resources towards ensuring that journalists injured by DHS use of force at protests, or whose equipment has been damaged by DHS force, know about and have access to the fund.

**Documenting DHS Violations in July 2025 Protests**

11. One of my most intensive response efforts since the protests began in June has been collecting evidence of incidents of press rights violations. To collect and document these incidents, I review social media, send emails out to press club members, and ask journalists and members to report incidents to me. I also try to confirm incidents by obtaining photographic or video evidence, confirmation through other reporting sources, and often by contacting the reporter who experienced the violation. In other words, I approach the task of documenting violations as I approach reporting, with the need to confirm the accuracy of reports and fact-check sources. Since June 17, 2025, I have documented multiple additional instances of press rights violations by DHS.

12. On July 10 in Camarillo, KABC reporter Leo Stallworth and a photographer from his station were covering a DHS raid on a farm. Stallworth said on his live news report, "My photographer got hit twice by less than lethal rounds, and he's got blood on one of his arms. And we just took off running with the entire crowd. It was absolutely chaotic."[1] Stallworth himself was also hit in the boot with a tear gas canister, which he kicked off as it deployed. He still breathed in a significant amount of gas, causing burning sensations in his throat and a headache. Stallworth has three decades of broadcast experience across five different states, primarily for ABC in Los Angeles.

13. On July 10 in Camarillo, Kimberly Rivers was reporting for the Ojai Valley News and Ventura County Sun when she was tear gassed by DHS officers. She had just interviewed a school board member, and was standing about 10 feet from line of agents but off to side/shoulder of road (and not near the line where there was a larger incident). She had a large Nikon camera with zoom lens, and because she'd been interviewing an official for a few minutes should have been apparent as a journalist. She heard no dispersal orders and did not witness any

---

[1] https://abc7.com/post/federal-agents-conduct-immigration-raid-camarillo-farm/17056098/

4

protesters throwing anything. She later posted a video report about her incident.[2] Rivers is an experienced journalist who has worked for multiple outlets in the Ventura area.

14. On July 7 in MacArthur Park in Los Angeles, a documentary filmmaker was recording DHS officers in public during some sort of exercise or maneuver. Officers obstructed his access to public areas and pointed what appeared to be weapons designed for live ammunition (not LLM launchers) directly at him. The filmmaker is a member of the Los Angeles Press Club who has produced a number of documentary film projects that have been honored at film festivals.

15. On July 4 in Downtown Los Angeles, the same documentary filmmaker and a small number of other journalists were filming in public outside of the Metropolitan Detention Center. On a recording of the incident, someone identified themselves as "press" to a line of advancing DHS officers, who repeatedly said, "it doesn't matter." Officers then physically shoved the members of the press.

16. On June 7 in Paramount, Jeremy Lindenfeld was reporting for Capital & Main. He was tear gassed, pepper balled, and hit in the foot with some kind of canister while documenting an immigration enforcement operation and community protest. Lindenfeld is a member of the Los Angeles Press Club and has won several awards in our annual journalism contests, and I have followed his reporting and photojournalism for many years.

17. On June 6 in Downtown Los Angeles, Lindenfeld was reporting when he was among members of the press who were pepper balled and tear gassed by federal officers in front of the Metropolitan Detention Center.

18. After more than 20 years in media, I have learned that most press are reluctant to be part of the story. Further, I have witnessed a pattern from

---

[2] https://www.youtube.com/watch?v=sEp8JxStDnE

5

communications with general counsels and PR representatives for large newsrooms that many corporate outlets are reluctant to share details about their employees whose rights have been impacted in the field. As a result, I am confident that my documentation of DHS press rights violations is a significant undercount of the incidents.

**Continuing Press Coverage of ICE Raids**

19. The raids by ICE and other DHS agencies, along with related protests, are extraordinarily important to the public and therefore important for the press to cover. addition, the protests themselves — and the response of law enforcement, including DHS — have become a major national and international news story, as protesters are met with greater force than any protests in recent memory, at least since 2020. Whatever one's position on these policy matters, they are newsworthy. There could not be a more important story to guarantee access to the press.

20. On July 17, I personally went to observe and document protests outside the Metropolitan Detention Center in Downtown Los Angeles. Protesters I spoke with indicated a commitment to continue protests for the foreseeable future. I also saw minor skirmishes between protesters and DHS personnel, during which the DHS personnel shoved press. It seems clear to me that no end is in sight for the protests, and it is vital that the press continue their coverage.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed July 18, 2025 in Los Angeles, California.

Adam Rose