| | |
|---|---|
| Matthew Borden, Esq. (SBN: 214323)<br>borden@braunhagey.com<br>J. Noah Hagey, Esq. (SBN: 262331)<br>hagey@braunhagey.com<br>Kory J. DeClark, Esq. (SBN: 310571)<br>declark@braunhagey.com<br>Greg Washington, Esq. (SBN: 318796)<br>gwashington@braunhagey.com<br>BRAUNHAGEY & BORDEN LLP<br>747 Front Street, 4th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 599-0210<br><br>Kevin Opoku-Gyamfi, Esq.<br>(*pro hac vice*)<br>opokugyamfi@braunhagey.com<br>BRAUNHAGEY & BORDEN LLP<br>118 W. 22nd Street, 12th Floor<br>New York, NY 10011<br>Telephone: (646) 829-9403<br><br>[Additional counsel on next page]<br><br>*Attorneys for Plaintiffs* | Peter J. Eliasberg, Esq. (SBN: 189110)<br>peliasberg@aclusocal.org<br>Jonathan Markovitz, Esq. (SBN: 301767)<br>jmarkovitz@aclusocal.org<br>Adrienna Wong, Esq. (SBN: 282026)<br>awong@aclusocal.org<br>Meredith Gallen, Esq. (SBN: 291606)<br>mgallen@aclusocal.org<br>Summer Lacey, Esq. (SBN: 308614)<br>slacey@aclusocal.org<br>Jacob Reisberg, Esq. (SBN: 329310)<br>jreisberg@aclusocal.org<br>Mohammad Tajsar, Esq. (SBN: 280152)<br>mtajsar@aclusocal.org<br>ACLU FOUNDATION OF SOUTHERN CALIFORNIA<br>1313 W 8th Street, Ste 200<br>Los Angeles, CA 90017<br>Telephone: (213) 977-9500<br><br>Peter Bibring, Esq. (SBN: 223981)<br>peter@bibringlaw.com<br>Law Office of Peter Bibring<br>2140 W Sunset Blvd # 203<br>Los Angeles, CA 90026<br>Telephone: (213) 471-2022 |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Los Angeles Press Club, NewsGuild - Communications Workers of America, Sean Beckner-Carmitchel, Ryanne Mena, Lexis-Olivier Ray, Charles Xu, Benjamin Adam Climer, and Abigail Olmeda,<br><br>    Plaintiffs,<br><br>    v.<br><br>Kristi Noem, in her official capacity as Secretary of Homeland Security; U.S. Department of Homeland Security,<br><br>    Defendants. | Case No. 2:25-CV-05563-HDV-E<br><br>**SUPPLEMENTAL DECLARATION OF RYANNE MENA IN SUPPORT OF PLAINTIFFS' PRELIMINARY INJUNCTION** |

Additional Counsel of Record for Plaintiffs:

Carol A. Sobel, Esq. (SBN: 84483)
 carolsobellaw@gmail.com
Weston Rowland, Esq. (SBN: 327599)
 rowland.weston@gmail.com
Law Office of Carol A. Sobel
2632 Wilshire Boulevard, #552
Santa Monica, CA 90403
Telephone: (310) 393-3055

Paul Hoffman, Esq. (SBN: 71244)
 hoffpaul@aol.com
Michael Seplow, Esq. (SBN: 150183)
 mseplow@sshhzlaw.com
John Washington, Esq. (SBN 315991)
 jwashington@sshhzlaw.com
Schonbrun, Seplow, Harris, Hoffman & Zeldes LLP
200 Pier Avenue #226
Hermosa Beach, CA 90254
Telephone: (310) 717-7373

Case No. 2:25-cv-05563-HDV-E
SUPP. DECLARATION OF MENA ISO PLAINTIFFS' PRELIMINARY INJUNCTION

**Supplemental Declaration of Ryanne Mena**

I, Ryanne Mena, hereby declare:

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

2. I am a plaintiff in the above-captioned action. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

3. I am submitting this declaration to describe the ongoing effects I have experienced as a result of having been shot by federal agents by a pepper ball in the leg and by a rubber bullet in the head, as described in my declaration dated July 13, 2025.

4. I have been a crime and public safety reporter for the Southern California News Group, which includes a number of newspapers including the Orange County Register, The Riverside Press-Enterprise, and the Los Angeles Daily News for ten months. Before being hired by Newsgroup, I was an intern at ProPublica and also interned at LAist, an NPR affiliate in Southern California. I graduated with a degree in journalism from Cal State University Northridge in 2022. Before going to CSUN, I attended Santa Monica Community College, where I was on the college paper, The Corsair. Over the course of my time working as a journalist, I have covered 2-3 dozen protests.

5. On June 9, 2025, two days after DHS officers shot me in the head with a rubber bullet while I was clearly trying to do my job as a reporter covering protest activity in Paramount, California, I was diagnosed with a concussion at Kaiser urgent care. Three to four weeks later, I returned to urgent care for a follow-up appointment to discuss my continued symptoms.

6. Since June 9, I have experienced lingering brain fog and anxiety. This has made my day-to-day job more difficult. This is because it takes more time than normal for me to focus or do a task.

7. I also still have a remnant of a bruise on my left leg from when I was struck on June 6 with a pepper ball shot by DHS.

8. My supervisors did not permit me to go into the field to do any work for the week following my concussion diagnosis. I believe this is because they did not want my concussion to be compounded by any other additional injuries. I understand and support this reasoning, but it feels unfair that the injuries – and what these federal agents did to me – stopped me from covering an important story. More than that, however, being able to report on the immigration raids and related protests is personally significant to me because I'm from Los Angeles and grew up in a community of immigrants.

9. Since I was injured on June 6 and 7, I have attended two different trainings for journalists covering moments of civil unrest. The first was offered by my employer. The second was a full-day in-person training sponsored by the International Women's Media Foundation (IWMF) and Los Angeles Public Press on online and in-person safety when covering civil unrest. I advocated for permission to attend the IWMF/Los Angeles Public Press training because it felt especially important after what I experienced on June 6 and 7.

10. Knowing what I know now about how DHS agents use force, and in light of my experience getting shot by DHS agents twice, I will definitely wear personal protective equipment when covering protest events in the future, including a tactical protective vest that my employer has now made available specifically to cover protest events. My employer has also provided respirators and goggles to cover protests. Additionally, I am going to ask for Kevlar leggings to try to protect my legs from projectile weapons. I do anticipate that wearing all this gear, while clearly necessary, may pose a barrier to effective reporting. For example, when wearing the googles it is hard to get a sense of my surroundings and it's difficult to communicate with people, including witnesses, when wearing a respirator.

2

11. I know that my injuries will not keep me from covering these important stories in the future, however, the trauma I experienced on June 6 and 7 make me concerned about how I will respond when I'm in another similar situation – whether it will put me in heightened fight or flight mode or increase my anxiety as I am trying to report. I have already experienced heightened anxiety since being injured on June 6 and 7 and so I am concerned that it is likely that reporting from similar environments in the future will be triggering.

I declare under penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct. Executed on July 17, 2025 in Los Angeles, California.

*Ryanne Mena*

Ryanne Mena