BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
ANDREW I. WARDEN
KATHLEEN C. JACOBS
Civil Division, Federal Programs Branch

BILAL A. ESSAYLI
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PAUL (BART) GREEN (Cal. Bar No. 300847)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-0805
    Email: Paul.Green@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOS ANGELES PRESS CLUB; *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security; *et al.*, <br><br> Defendants. | No. 2:25-cv-05563-HDV-E <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS'** ***EX PARTE*** **APPLICATION TO SHORTEN THE TIME TO BRIEF AND HEAR PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> [Supporting declaration filed concurrently] <br><br> Honorable Hernán D. Vera |

## I. INTRODUCTION

Plaintiffs had four weeks—since June 20 when the Court denied their *Ex Parte* Application for a TRO—to prepare their Motion for Preliminary Injunction ("PI Motion") (Dkt. 34). Through the present *Ex Parte* Application ("Application") (Dkt. 35), Plaintiffs seek to force Defendants to respond to the PI Motion in one week, in contrast to the four weeks that Plaintiffs had to prepare their own Motion. This tactic is consistent with Plaintiffs' voluminous *Ex Parte* Application for a TRO, which Plaintiffs filed after midnight on June 19, 2025, and refused to give Defendants more than just one day—a federal holiday no less—to file their opposition against.

The Application should be denied as a matter of fundamental fairness. The PI Motion encloses 26 declarations and seeks extraordinary class relief restricting immigration enforcement operations throughout the entire District. Dkt. 34. Plaintiffs' counsel maintains that the government should not have any more time to defend the Plaintiffs' voluminous PI Motion because their claims are important. But genuinely important claims do not normally require *less procedural fairness and less civil justice*. They normally require *more procedural fairness and more civil justice*. It is all the more important to get important decisions on important subjects right, at all levels of adjudication, rather than allowing litigants to railroad the Defendants and the Court into a predetermined result via voluminous filings that Plaintiffs' counsel prepared in rigorous secrecy for weeks and then suddenly filed with the least possible advance notice. *See Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 489 (C.D. Cal. 1995) (noting that the "abusive use of ex parte motions . . . is detrimental to the administration of justice and, unless moderated, will increasingly erode the quality of litigation and present ever-increasing problems for the parties, their lawyers, and for the court").

Plaintiffs have likewise failed to establish that extreme exigency warrants *ex parte* relief. Plaintiffs initially moved for a TRO application with a surprise *ex parte* filing arguing that largescale conflicts were imminent, and the press would likely be injured by

1

ICE. The Court denied that TRO application, and Plaintiffs' predictions then proved groundless, consistent with the Court's order. Now, Plaintiffs yet again insist that alleged extreme urgency requires divesting Defendants of basic procedural rights, after having taken weeks to prepare their own filings. Plaintiffs have not established how they will be irreparably prejudiced, thereby justifying them cutting "to the head of the line in front of all other litigants and receive special treatment." *Smith v. Compton*, 2023 WL 6369774, at *1 (C.D. Cal. Aug. 24, 2023).[1]

Moreover, Plaintiffs have failed to show that they are not at fault for their present asserted crisis. In denying Plaintiffs' TRO application on June 20, the Court expressly did so without prejudice to Plaintiffs filing a *regularly noticed motion* for a preliminary injunction. If Plaintiffs' counsel had acted with the urgency that they insist Plaintiffs' claims warrant, then Plaintiffs' counsel could have promptly met and conferred and seven days later filed a regularly noticed motion, to be heard as early as the last week of July. But Plaintiffs' counsel did not do that. Instead, they did not file their PI Motion for four weeks. Plaintiffs' counsel did not even bother to notify the government until the day the Motion was filed, as he was going through security at the airport. This Court has repeatedly denied *ex parte* applications for such delay.

Finally, the Application should be denied because Plaintiffs failed to meet and confer on the PI Motion seven days in advance, as required by Local Rule 7-3. Plaintiffs failed to narrow the issues for this Court to review and curtailed Defendants' opportunity to investigate and respond to the claims in the mountain of paper filed with Plaintiffs' PI Motion. This ambush approach to litigation has been Plaintiffs' primary tactic from the outset of this case—maximizing secrecy and filing volume, so as to impose maximal prejudice. By disregarding the Local Rules in an attempt to unfairly prejudice the Defendants and impair the record, Plaintiffs hope to force a snap decision based on a cursory review of hundreds of pages of evidence, with the aim of hindering the federal

---

[1] The Court has already closed its civil calendar for August 7 and 14. 2025. The next available date is August 21, which is the date the Motion is noticed for.

government's abilities to carry out its mission in a difficult and complex area.

For these reasons, Plaintiffs' *Ex Parte* Application should be denied.

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs File A Voluminous Improper *Ex Parte* Application For A TRO On Juneteenth Based On A Non-Emergency, And Insist that the Defendants Could Only Have One Day to Oppose

In the early morning of June 19, 2025, a federal holiday, Plaintiffs served Defendants with their first "emergency" motion in this case: an *ex parte* application for temporary restraining order ("TRO") for alleged injuries arising from June 6-9, 2025. Dkt. 6. By filing the application on a federal holiday before a judicial assignment had been made, Defendants were left with 24 hours on Juneteenth to respond to Plaintiffs' voluminous filings. *See* Dkt. 8. Plaintiffs' *ex parte* application maintained that imposing this extraordinary prejudice on the Defendants was warranted because new conflicts between DHS law enforcement and press were very likely on the upcoming weekend, mandating the Court's immediate issuance of a TRO regardless of whether the Defendants had a fair chance to oppose. The promised conflicts did not materialize the weekend of June 21-22, 2025 despite the Court's June 20th denial of Plaintiffs' TRO application. The Court held that Plaintiffs failed to show substantial risk of future harm and that their requested relief was too broad. Dkt. 19. The Court's denial was without prejudice to Plaintiffs filing a *regularly noticed* motion for a preliminary injunction. Dkt. 19 at 5.

Notably, Plaintiffs' counsel, the ACLU, repeated that ambush tactic in *Perdomo, et al. v. Noem, et al.*, 2:25-cv-05605-MEMF-SP (C.D. Cal.), where they again insisted that the government could have just one day to oppose an immense TRO application that Plaintiffs' counsel had been preparing in secrecy for weeks. Fortunately, the District Court rejected their demand [Dkt. 42] by granting the government's *ex parte* application for more time to oppose [Dkt. 40], although the government was still forced to prepare its opposition over the Fourth of July. Although courts have consistently condemned

their improper tactic, Plaintiffs' counsel continues to place it at the center of their strategy for attempting to obtain preliminary injunctive relief in this District.

### B. Plaintiffs File A Motion For Expedited Discovery Based On A Non-Emergency, Without Conferring In Advance, And Then Withdraw It Without Explanation

On June 25, 2025, Plaintiffs filed a Motion for Expedited Discovery. Dkt. 26. Despite being represented by at least eighteen attorneys, Plaintiffs made no attempt to meet and confer before filing the Motion. Yet again, Plaintiffs filed their Motion on the eve of a federal holiday, thereby requiring the government to prepare its response over Independence Day.

After Defendants filed their opposition, Plaintiffs proposed doing an after-the-fact meet and confer, which defense counsel declined as contrary to the Local Rules on multiple levels. *See* Dkt. 35-2 (email correspondence).

On July 9, 2025, this case was reassigned to this Court (Dkt. 29), which then continued the hearing on the discovery motion from July 28 to August 14 (Dkt. 31).

Plaintiffs then withdrew the Motion for Expedited Discovery without any explanation. Dkt. 32. In other words, after asserting that "expedited discovery" was "necessary to ensure that preliminary relief is not rendered meaningless by delay" and the Court scheduling the discovery motion for, presumably, the next available hearing date (Dkt. 26 at 7), Plaintiffs promptly dropped their allegedly crucial motion and provided no explanation for their delay to the Court or to the government.

### C. Plaintiffs Fail To Properly Meet And Confer On The Instant PI Motion

On July 18, 2025, Plaintiffs' counsel called defense counsel to meet and confer on the present *Ex Parte* Application. Specifically, Plaintiffs' counsel, Matthew Borden, called while he was going through security at an airport. Green Decl., ¶ 3. Although this Court's standing order states that the "parties must discuss in real-time all issues to be raised in the motion, as well as the law and evidence relevant to those issues, so that the parties' briefing reflects that they are fully cognizant of the other side's position(s)," Mr.

4

1 Borden identified no case law in support of the PI Motion that he was filing that day.
2 Green Decl., ¶ 4. Moreover, Mr. Borden was not willing or able to identify the name of a
3 single witness that would support the PI Motion. *Id*. Mr. Borden could not state what
4 specific relief that Plaintiffs would seek, other than indicating that the proposed order
5 would be similar to the relief sought in the *ex parte* application for a TRO (that was
6 denied). *Id*.

**III.    THERE IS NO CRISIS WARRANTING *EX PARTE* RELIEF**

The well-recognized standard for reviewing *ex parte* applications in this District is *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488 (C.D. Cal. 1995), which this Court summarized as follows:

> *Ex parte* applications are "rarely justified." The abbreviated procedures allowed by the granting of an *ex parte* application circumvent the "safeguards that have evolved over many decades [ ] built into the Federal Rules of Civil Procedure and the Local Rules." These safeguards include the timelines for "submission of responding papers and for the setting of hearings [ ] intended to provide a framework for the fair, orderly, and efficient resolution of disputes."

*Paige, LLC v. Shop Paige LLC*, No. 2:22-CV-07800-HDV, 2024 WL 4436899, at *1 (C.D. Cal. Aug. 1, 2024) (denying *ex parte* application to shorten time) (citations omitted).[2]

---

[2] *See also Arredondo v. Univ. of La Verne*, 618 F. Supp. 3d 937, 943 (C.D. Cal. Aug. 2, 2022) ("Ex parte applications are solely for extraordinary relief and are rarely justified."); *Est. of Wuxi Chenhwat Almatech Co. v. Prestige Autotech Corp.*, 2022 WL 17363058, at *2 (C.D. Cal. Nov. 3, 2022) ("Ex parte applications are nearly always improper, and the opportunities for legitimate ones are extremely limited"); *MAG Aerospace Indus., LLC v. Precise Aerospace Mfg., Inc.*, 2019 WL 1427272, at *1 (C.D. Cal. Jan. 25, 2019) ("[a]n ex parte application … is appropriate in only rare circumstances").

### A. Plaintiffs Have Not Shown They Will Be Irreparably Prejudiced

Plaintiffs cannot show—as they must—that they "will be irreparably prejudiced" if the PI Motion is "heard according to regular noticed motion procedures." *Mission Power*, 883 F. Supp. at 492.

Plaintiffs claim that they "face a realistic, imminent threat of being injured" because Defendants are "engaged in an ongoing pattern and practice of violently retaliating against people." App. at 2. But this is precisely the type of conclusory speculation which led the Court to deny the TRO Application. Dkt. 19 (determining that "while Plaintiffs certainly allege '[p]ast exposure to illegal conduct,' they fail to bring any evidence that there is 'a substantial risk the harm will occur' in the future.").[3]

Plaintiffs argue the Application should be granted because it is a "routine procedural order." App. at 4. Despite Plaintiffs' characterization, the Application is Plaintiffs' latest attempt to unfairly prejudice Defendants by shortcutting, or just intentionally ignoring, the procedural requirements meant to ensure a fair judicial process for all parties. As discussed above, Plaintiffs' tactic is particularly egregious because it comes on the heels of the Plaintiffs filing an enormous *ex parte* TRO application on Juneteenth and refusing to grant any extension for the government to respond, forcing it to draft and file papers on the federal holiday. This unacceptable *ex parte* tactic prevents the government from having a fair chance to respond, and it forces the government to draft its opposition papers over the holiday when many witnesses are unavailable. This tactic seeks to render a case *fait accompli* and prevent civil justice by forcing a threshold decision that deprives the opposing party and the Court of the normal opportunity to substantively address the *merits* of the case, or otherwise address the issues complained of (for example, by seeing whether there is a possible compromise resolution). District Courts have thus consistently condemned this abuse of *ex parte*

---

[3] Notably, Plaintiffs sought a TRO based on what they feared would happen the weekend of June 20-21. But not one of the present declarations addresses those dates, demonstrating that Plaintiffs' speculation was just that—rank speculation submitted to the force the Court to make a hasty decision on politically charged current events.

applications to try to prevent the opposing party from having a fair defense. *See Mission Power*, 883 F. Supp. at 491 (The Federal and Local Rules "contemplate that regular noticed motions are most likely to produce a just result.").

Plaintiffs argue that six court days is sufficient for the government to respond because the government previously opposed the TRO application, and the PI Motion raises "discrete issues." App. at 4. First, Plaintiffs simply ignore that the government had one-day, a federal holiday, to respond to the TRO application. Plaintiffs took extensive time to draft and assemble their unusually voluminous papers, as if their own delays were entirely inconsequential while the defendants' time to respond to those filings was by contrast irrelevant. Second, Plaintiffs make no attempt to say what evidence is new and what evidence is not in their PI Motion. In the July 18 phone call, Plaintiffs' counsel was not able to identify even *one* of the 26 witnesses who have filed declarations by name. Indeed, "Local Rule 7-3 is not a 'tick the box' administrative burden; instead, it is a valuable tool allowing for the informal resolution of issues and allows the parties and the Court to focus on the issues that are truly disputed between the parties." *F19 Franchising, LLC v. Endo Fitness LL, LLC*, 2023 WL 9319023, at *2 (C.D. Cal. Dec. 8, 2023).

**B.    Plaintiffs' Counsel Is At Fault In Creating The Alleged "Crisis"**

Any prejudice to Plaintiffs (if any exists) is self-inflicted and results from Plaintiffs' counsels' lack of due diligence. *Goldenwest Logistics, LLC v. Elevation Trucking Servs., Inc.*, 2023 WL 5667861, at *1 (C.D. Cal. July 13, 2023) ("First of all, Plaintiff has failed to establish that it would be 'irreparably prejudiced' absent *ex parte* relief.") (quoting *Mission Power*, 883 F. Supp. at 492). Courts in this District routinely deny *ex parte* applications where, as here, it could have been heard as a regularly noticed motion. *See, e.g.*, *A.J.P. v. Cty. of San Bernardino*, 2024 U.S. Dist. LEXIS 125405, at *4 (C.D. Cal. July 16, 2024) ("*ex parte* relief is still not justified because this matter could have been filed as a regularly noticed motion"); *Santillan v. Am. Honda Motor Co.*, 2023 WL 6369782, at *1 (C.D. Cal. Aug. 17, 2023) ("it is not evident to the Court that

7

Plaintiffs would be irreparably prejudiced by noticing a motion for a date at least a month from now"); *Stewart v. United States*, 2023 WL 3553155, at *3 (C.D. Cal. Mar. 1, 2023) ("Plaintiff has not adequately demonstrated that his cause of action would be irreparably prejudiced if the underlying motion was heard according to regular noticed procedures"); *Lavco Sols., Inc.*, 2022 U.S. Dist. LEXIS 91712, at *3 ("Plaintiff would not be entitled to *ex parte* relief because it has failed to demonstrate irreparable prejudice if it adheres to regularly noticed motion procedures.").

      Here, if the issues in the PI Motion were genuinely so urgent, then Plaintiffs' counsel should have their Motion much earlier. While in some specific instances it is not possible to give advance notice of a TRO application, that is certainly not the case for the Plaintiffs' PI Motion, where both the record and the volume of Plaintiffs' filings demonstrate that Plaintiffs' counsel have been secretly working on and preparing their filings for weeks.

      There is no justification for the Plaintiffs' effort to deprive the Defendants of basic civil justice and fairness because of Plaintiffs' lawyers lack of due diligence, strategic decision to file and then withdraw a motion for discovery, and unwillingness to engage in the required meet and confer process—instead privileging maximizing the ambush effect of their filings. Plaintiffs' counsel has long known of Plaintiffs' claims and known since at least June 20 that the Court had welcomed them to file a regularly noticed motion.

      Under these circumstances, expedited briefing is not necessary or warranted. Just results are more important. *See Mission Power*, 883 F. Supp. at 491 (The Federal and Local Rules "contemplate that regular noticed motions are most likely to produce a just result."). At bottom, Plaintiffs could have and should have filed a regularly noticed motion, and their failure to do so warrants denial of their *Ex Parte* Application.

**C.   Plaintiffs Have Already Prejudiced The Government And Violated The Local Rules By Not Meeting And Conferring In Advance On Their PI Motion; Granting The *Ex Parte* Application Would Further Prejudice The Government**

Plaintiffs did not notify Defendants of the PI Motion until July 18, the day it was filed. Even at that time, they still did not adequately explain the substance of their intended motion. In doing so, Plaintiffs unilaterally cut short Defendants' time to investigate, respond, and potentially narrow the issues in the PI Motion through the meet and confer process.

Local Rule 7-3 requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution," and that "[t]he conference shall take place at least seven (7) days prior to the filing of the motion." Plaintiffs' counsel appears to mistakenly believe that there is no meet and confer requirement for motions for preliminary injunctions. To the contrary, while there is no meet and confer requirement for *ex parte* applications for TROs or PIs (*see* L.R. 7-3), movant's counsel must meet and confer at least seven days in advance for a motion for preliminary injunction. As the Honorable Judge Frimpong explained, "the meet and confer requirement does apply to motions for contempt for violation of a TRO or a preliminary injunction, as such motions are not exempted from Local Rule 7-3, which covers all motions other than discovery motions and **applications for** TROs or preliminary injunctions." *F19 Franchising, LLC*, 2023 WL 9319023, at *3 (emphasis in original); *see also Masjedi v. Fed. Commc'ns Comm'n*, No. 24-cv-7605-JFW, 2024 WL 4834285, at *2 (C.D. Cal. Sept. 25, 2024) (admonishing plaintiff for failing to properly meet and confer on a motion for preliminary injunction).

Despite Plaintiffs being represented by at least *eighteen* attorneys of record, the great majority based in Los Angeles, not one of them contacted defense counsel before the day the PI Motion was filed. Green Decl., ¶ 2. Plaintiffs' counsel failed to contact

9

defense counsel even though the week before defense counsel reminded Plaintiffs' counsel of their meet-and-confer obligations. Previously, Plaintiffs improperly attempted to meet and confer *after* they filed a motion, rather than seven days before. Dkt. 35-2, Ex. 1, July 10, 2025 email from AUSA Green to M. Borden.

It would be entirely appropriate for the Court to outright deny the PI Motion for failure to meet and confer.[4] At the very least, Plaintiffs' consistent disregard for the Local Rules—whenever they may impede the Plaintiffs' attempts to improperly prejudice the Defendants— should not be rewarded. Defendants have already been prejudiced by Plaintiffs' failure to provide seven days' notice on their PI Motion. Defendants' time to respond to the PI Motion should not be curtailed further by granting the Application.

## IV.    CONCLUSION

For these reasons, Defendants respectfully request that the Court deny Plaintiffs' *Ex Parte* Application.

---

[4] *See Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012) ("Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion."); *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1087 (C.D. Cal. 2015) ("When a party fails to comply with Local Rule 7-3, the court can, in its discretion, refuse to consider the motion."); *Cucci v. Edwards*, 510 F. Supp. 2d 479, 486 (C.D. Cal. 2007) (court may deny a motion where Local Rule 7-3 meet and confer requirement not satisfied); *Alcatel-Lucent USA, Inc. v. Dugdale Commc'ns, Inc.*, 2009 WL 3346784, at *4 (C.D. Cal. Oct. 13, 2009) (denying motion for failure to comply with Local Rules and warning "that nothing short of strict compliance with the local rules will be expected in this Court.").

| | |
|---|---|
| Dated: July 22, 2025 | Respectfully submitted, |
| | BRETT A. SHUMATE<br>Assistant Attorney General<br>Civil Division |
| | ERIC J. HAMILTON<br>Deputy Assistant Attorney General |
| | SEAN SKEDZIELEWSKI<br>Counsel to the Assistant Attorney General<br>Civil Division |
| | ALEXANDER K. HAAS<br>ANDREW I. WARDEN<br>KATHLEEN C. JACOBS<br>Civil Division, Federal Programs Branch |
| | BILAL A. ESSAYLI<br>United States Attorney<br>DAVID M. HARRIS<br>Assistant United States Attorney<br>Chief, Civil Division<br>DANIEL A. BECK<br>Assistant United States Attorney<br>Chief, Complex and Defensive Litigation Section |
| | /s/ Paul (Bart) Green<br>PAUL (BART) GREEN<br>Assistant United States Attorney |
| | Attorneys for Defendants |

L.R. 11-6.2 Certificate of Compliance

The undersigned counsel of record certifies that this memorandum contains 3,431 words, which complies with the word limit set by L.R. 11-6.1.

Dated: July 22, 2025                    /s/ Paul (Bart) Green
                                         PAUL (BART) GREEN