Matthew Borden, Esq. (SBN: 214323)
  borden@braunhagey.com
J. Noah Hagey, Esq. (SBN: 262331)
  hagey@braunhagey.com
Kory J. DeClark, Esq. (SBN: 310571)
  declark@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
  gwashington@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Kevin Opoku-Gyamfi, Esq.
(*pro hac vice*)
  opokugyamfi@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403

[Additional counsel on next page]

*Attorneys for Plaintiffs*

Peter J. Eliasberg, Esq. (SBN: 189110)
  peliasberg@aclusocal.org
Jonathan Markovitz, Esq. (SBN: 301767)
  jmarkovitz@aclusocal.org
Adrienna Wong, Esq. (SBN: 282026)
  awong@aclusocal.org
Meredith Gallen, Esq. (SBN: 291606)
  mgallen@aclusocal.org
Summer Lacey, Esq. (SBN: 308614)
  slacey@aclusocal.org
Jacob Reisberg, Esq. (SBN: 329310)
  jreisberg@aclusocal.org
Mohammad Tajsar, Esq. (SBN: 280152)
  mtajsar@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W 8th Street, Ste 200
Los Angeles, CA 90017
Telephone: (213) 977-9500

Peter Bibring, Esq. (SBN: 223981)
  peter@bibringlaw.com
Law Office of Peter Bibring
2210 W Sunset Blvd # 203
Los Angeles, CA 90026
Telephone: (213) 471-2022

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Los Angeles Press Club, NewsGuild - Communications Workers of America, Sean Beckner-Carmitchel, Ryanne Mena, Lexis-Olivier Ray, Charles Xu, Benjamin Adam Climer, and Abigail Olmeda,<br><br>    Plaintiffs,<br><br>    v.<br><br>Kristi Noem, in her official capacity as Secretary of Homeland Security; U.S. Department of Homeland Security,<br><br>    Defendants. | Case No. 2:25-CV-05563-HDV-E<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' APPLICATION TO HAVE THEIR STAY MOTION HEARD ON AN *EX PARTE* BASIS**<br><br>Judge:    Hon. Hernán D. Vera<br>Location:  Courtroom 5B, 5th Floor |

1  Additional Counsel of Record for Plaintiffs:

2  Carol A. Sobel, Esq. (SBN: 84483)
   carolsobellaw@gmail.com
3  Weston Rowland, Esq. (SBN: 327599)
   rowland.weston@gmail.com
4  Law Office of Carol A. Sobel
   2632 Wilshire Boulevard, #552
5  Santa Monica, CA 90403
   Telephone: (310) 393-3055
6
   Paul Hoffman, Esq. (SBN: 71244)
7  hoffpaul@aol.com
   Michael Seplow, Esq. (SBN: 150183)
8  mseplow@sshhzlaw.com
   John Washington, Esq. (SBN 315991)
9  jwashington@sshhzlaw.com
   Schonbrun, Seplow, Harris, Hoffman & Zeldes LLP
10 200 Pier Avenue #226
   Hermosa Beach, CA 90254
11 Telephone: (310) 717-7373

# INTRODUCTION

After doing nothing for nine days, Defendants suddenly claim that this Court's preliminary injunction is causing them such irreparable harm that they need an emergency *ex parte* application to stay the injunction on same-day notice. The application comprises scores of pages of declarations that Defendants could have submitted with their opposition to Plaintiffs' motion for a preliminary injunction, which they had many weeks to prepare. They now demand that Plaintiffs respond to all these materials within 24 hours and that the Court drop everything else it is doing and immediately adjudicate whether Defendants are entitled to the extraordinary remedy of a stay, all so that they can seek an appellate stay of the injunction using the new evidence they are trying to put into the record—much of which relates to events that took place two months ago—without giving Plaintiffs a fair chance to respond.

Defendants' attempt to sidestep the Federal Rules of Civil Procedure "detracts from a fundamental purpose of the adversary system, namely, to give the court the best possible presentation of the merits and demerits of the case on each side." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 491 (C.D. Cal. 1995). Because Defendants' application is not a proper use of the *ex parte* procedure, the Court should reject Defendants' request to proceed on an *ex parte* basis and set Defendants' stay motion to be heard on a normal schedule.

Parties may only use *ex parte* applications to address true emergencies that are not of a party's own making. Defendants do not come close to making it past that high bar, which can be seen from their inaction alone. Nor have they proven that any emergency has occurred within the last nine days, much less any emergency at all. Moreover, an *ex parte* application should comprise two briefs: one addressing the need for *ex parte* relief, and the other arguing the issue the party seeks to have heard. *Mission Power*, 883 F. Supp. at 492. Defendants' application combines both issues and attempts to bypass the gating question of whether *ex parte* relief is warranted. For the reasons below, it is not. The Court should therefore bifurcate the issues Defendants impermissibly combined, reject their demand for *ex parte* relief, and set a fair briefing schedule on their extraordinary demand for a stay that allows Plaintiffs to address Defendants' new and hefty papers.

# LEGAL STANDARD

"Ex parte applications are solely for extraordinary relief and are rarely granted." Standing Order of Honorable Hernán D. Vera (citing *Mission Power*, 883 F. Supp. 488 (C.D. Cal. 1995)). An *ex parte* application must "establish why the accompanying proposed motion for the ultimate relief requested cannot be calendared in the usual manner. In other words, it must show why the moving party should be allowed to go to the head of the line in front of all other litigants and receive special treatment." *Mission Power*, 883 F. Supp. at 492.

# ARGUMENT

## I. DEFENDANTS FAIL TO PROVE THAT THEY ARE ENTITLED TO THE EXTRAORDINARY REMEDY OF *EX PARTE* RELIEF

Parties seeking *ex parte* relief must show both that they "will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures" and that they are "without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Mission Power*, 883 F. Supp. at 492. Defendants' *ex parte* application fails to meet both requirements.

First, Defendants make no attempt to argue that they will suffer prejudice if their motion for a stay is heard according to regular procedures, though they previously acknowledged the law requires this showing. (*See, e.g.,* Defs.' Opp. to *Ex Parte* to Shorten Time at 7-8, Dkt. 35 (collecting cases from this District where courts denied *ex parte* applications because they "could have been filed as a regularly noticed motion" or movant had "not adequately demonstrated that [their] cause of action would be irreparably prejudiced if the underlying motion was heard according to regular noticed procedures").) None of the declarations submitted with Defendants' application points to any emergency that warrants *ex parte* relief, and the memorandum in support of the application does not identify one either.

The Court granted Plaintiffs' motion for a preliminary injunction on September 10, 2025. Within seventy-two hours, Defendants were "ORDERED to summarize this Order and disseminate its contents to all DHS officers responding to a protest in the Counties referred to above." (Dkt. 55 at 45.) Thus, Defendants have been operating under the preliminary injunction for nine days and have explained to officers responding to protests how to follow the injunction. Yet Defendants did

not seek *ex parte* relief until September 19, 2025. Defendants offer no reason why—if the injunction harmed them so much that it created a dire emergency—they trained their personnel on how to comply with the injunction and abided by its terms for nine days without raising this issue with the Court.

Further, in their moving papers, Defendants are unable to cite any instance of the injunction creating any emergency. They cite no instance of any officer being injured or somehow unable to do their job in the last nine days, much less any event allegedly attributable to the injunction. They cite no case of the similar injunction in *Index Newspapers* causing any harm to DHS (which followed it for at least a month) or the City of Portland (which followed it for years and eventually embedded it into the city's police procedures). The closest Defendants come to identifying any supposed harm is a hearsay report by an unknown agent describing a situation from June 7—three months before the injunction went into effect—who asserts that someone claiming to be a reporter "dispers[ed] a small object, which contacted me on my upper right arm." (Scharmen Supp. Decl., Dkt. 58-3, Ex. 1.) This is not an immediate, irreparable injury. Indeed, the agent "was not injured" at all. (Scharmen Supp. Decl., Dkt. 58-3, ¶ 4.) The incident precedes and is unrelated to the injunction. And the injunction would not somehow immunize the person described in the hearsay report or prevent Defendants from arresting her if they had probable cause. This "evidence" falls dramatically short of the evidentiary showing required to seek *ex parte* relief. *See Mission Power,* 883 F. Supp. at 492 ("[F]iling an ex parte motion . . . is the forensic equivalent of standing in a crowded theater and shouting, "Fire!" There had better be a fire.").[1]

Defendants also cannot show that they acted with due diligence and could not have presented their request earlier, as required to meet the "without fault" threshold in creating the purported need for e*x parte* relief. *Id.* at 493. Defendants never filed a noticed motion to stay the preliminary injunction. Nor did Defendants attempt to start the process for nine days. *See In re*

---

[1] Thus, Defendants also fail to meet their "burden of showing that irreparable injury is likely to occur during the period before the appeal is decided" if a stay is not granted. *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020) ("The government cannot meet this burden by submitting conclusory factual assertions and speculative arguments[.]") (discussing *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)).

*Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989) (noting that *ex parte* applications "should not be used as a way to 'cut in line' ahead of . . . properly noticed and timely filed motions").

As stated in the stipulation filed September 18, 2025 (Dkt. 56), the parties recently met and conferred on Defendants' contemplated motion to dismiss. At no point during that meet and confer did Defendants mention their intention to move for a stay, nor did Defendants raise any claim that the preliminary injunction was presently threatening DHS with harm (much less the "irreparable harm" required under *Nken*, 556 U.S. at 433-34), or explain that they were putting together more than fifty pages of materials that they intended to file with the Court. Rather, Defendants stated the opposite, telling Plaintiffs that "protests in Los Angeles and federal response to the same have dwindled," so they intend to move to dismiss the action under Rule 12(b)(1) on the ground that there is no active controversy. (Decl. of Matthew Borden, Ex. 1.) These two positions cannot be reconciled. If Defendants claim that there is no active controversy, they cannot also argue that they are facing an emergency that might support seeking *ex parte* relief. The Court should not permit such "gamesmanship." *Mission Power,* 883 F. Supp. at 490.

Defendants also note they intend to file a motion for a stay pending appeal in the Ninth Circuit. (Dkt. 58 at 5.) This does not somehow justify *ex parte* relief because under the Federal Rules of Appellate Procedure, "[a] party must ordinarily move first in the district court for" a stay. Fed. R. App. Proc. 8(a). Defendants cannot claim that adhering to the ordinary district court motion procedure expressly contemplated by the Federal Rules will "irreparably prejudice" their ability to move the Ninth Circuit for a stay.[2] By proceeding directly with an *ex parte* application, rather than following Local Rule 7-3 and this Court's standing order requirement for filing a motion (Dkt. 30

---

[2] Defendants' arbitrary September 26 filing date for their Ninth Circuit motion to stay, presented to this Court as a deadline without explanation, does not constitute an emergency justifying *ex parte* relief. *See, e.g., Elkay Plastics, Inc. v. Sam's W., Inc.,* No. 221CV08562ODSWKX, 2023 WL 4205804, at *1 (C.D. Cal. May 2, 2023) (*ex parte* relief is not warranted "when the crisis from which the party suffers is of their own making"). Defendants evidently chose their filing date without regard for this Court's motion-filing rules and Federal Rule of Appellate Procedure 8, and they fail to show that they will be "irreparably prejudiced" if they do not file their motion on that date and have to follow the rules instead.

at 6), Defendants denied Plaintiffs fair notice of the content of their application and the opportunity to meet and confer. Defendants make no attempt to demonstrate they need the type of "extraordinary relief" that could justify bypassing these procedures. *Id*. at 18. *See Mission Power*, 883 F. Supp. at 490 (noting that *ex parte* applications are "unfair" and "pose a threat to the administration of justice" when they "surprise opposing counsel or at least to force him or her to drop all other work to respond on short notice").

Moreover, Defendants submitted three new declarations with their *ex parte* application, presenting testimony they should have, but chose not to, include with their Opposition to the preliminary injunction. (*See* Supp. Szemes Decl., Dkt. 58-2 (discussing only events taking place in July, before Defendants' opposition to the preliminary injunction was due); Supp. Scharmen Decl., Dkt. 58-3 (describing and attaching report of incident from June 7); Molina Decl., Dkt. 58-4 (presenting only general opinions of another CBP officer who has participated in Operation At Large since June).)[3] Allowing Defendants to add this late evidence, well after briefing and argument on the preliminary injunction have concluded, and without affording Plaintiffs a full opportunity to rebut that evidence now, would unfairly prejudice Plaintiffs. *See Mission Power*, 883 F. Supp. at 491 ("When unsupportable allegations are made in regular noticed motion [papers], they can to a great extent be neutralized by a well-prepared rebuttal," but such "careful rebuttal" is not equally "possible in hasty hearings on ex parte motions.").

As this Court ruled, the preliminary injunction secures important First Amendment rights and the "vital public interest" in a free press and the right to dissent, in addition to protecting Plaintiffs from lasting and potentially fatal injuries. (Dkt. 55 at 36-37.) Given these weighty stakes, Plaintiffs should not be "required to make a hurried response under pressure" to Defendants' request to stay the injunction, but should instead be allowed to prepare opposition according to regular "[t]imetables for the submission of responding papers and for the setting of hearings" that "are intended to provide a framework for the fair, orderly, and efficient resolution of disputes." *In*

---

[3] If Defendants mean to argue their new declarations present new material facts that would cause the Court to reassess its rulings, the proper vehicle for presenting such evidence to the Court is a regularly noticed motion for reconsideration—not an *ex parte* application for a stay. *See* L.R. 7-18.

*re Intermagnetics*, 101 B.R. at 193. Defendants should not be allowed to short-circuit the normal timetables for an emergency of their own making and one with no evidentiary support. Thus, the Court should deny Defendants' request to proceed *ex parte* and set Defendants' motion to be heard on a normal track.

## II. DEFENDANTS' *EX PARTE* APPLICATION IS PROCEDURALLY DEFECTIVE

As the Court stated in *Mission Power*:

> An ex parte motion should never be submitted by itself. It must always be accompanied by a separate proposed motion for the ultimate relief the party is seeking. Properly designed ex parte motion papers thus contain two distinct motions or parts. The first part should address only why the regular noticed motion procedures must be bypassed. The second part consists of papers identical to those that would be filed to initiate a regular noticed motion (except that they are denominated as a "proposed" motion and they show no hearing date.) These are separate, distinct elements for presenting an ex parte motion and should never be combined. The parts should be separated physically and submitted as separate documents.

*Mission Power,* 883 F. Supp. at 492. Defendants' application does not follow this procedure.

Nevertheless, the Court can and should in the interests of justice and economy bifurcate Defendants' improperly combined application; deny the "first part" seeking to bypass regular noticed motion procedures for the reasons set forth above, *supra* Section I.; and set a briefing schedule and hearing consistent with Local Rules 7-9 and 7-10 for the "second part" of the application seeking a stay pending appeal. This will give Plaintiffs time to address Defendants' materials in the normal course of litigation, not by some emergency means that Defendants have failed to justify. The whole reason that the Federal Rules require a party to seek a stay in district court in the first instance is that this Court is the appropriate venue for Defendants to raise whatever proof they believe justifies a stay, and for Plaintiffs to rebut it. Applying the normal procedures to hear a stay pending appeal here is essential to a fair process that will afford Plaintiffs "an opportunity to prepare a thorough opposition," rebut Defendants' newly-introduced evidence, and "give the court the best possible presentation" to inform a reasoned decision on Defendants' motion for a stay. *Mission Power*, 883 F. Supp. at 491 ("The rules contemplate that regular noticed

motions are most likely to produce a just result. This is because they give the adversary an opportunity to prepare a thorough opposition (and, if needed, an opportunity for oral argument").

## CONCLUSION

For the reasons stated, Defendants' *ex parte* application is procedurally improper and prejudicial to Plaintiffs. Accordingly, the Court should deny Defendants' application to bypass regular motion procedures and set a schedule for briefing and hearing on the motion for a stay that allows Plaintiffs an opportunity to oppose following the timelines and procedures for regular noticed motions.

Dated: September 22, 2025

Respectfully submitted,
BRAUNHAGEY & BORDEN LLP

By: */s/ Matthew Borden*
     Matthew Borden

*Attorneys for Plaintiffs*