BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
ANDREW I. WARDEN
KATHLEEN C. JACOBS (TX Bar No. 24091154)
Civil Division, Federal Programs Branch
    Trial Attorney
    1100 L. St. NW
    Washington, DC 20005
    Telephone: (202) 598-7615
    Email: kathleen.c.jacobs@usdoj.gov.

BILAL A. ESSAYLI
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PAUL (BART) GREEN
Assistant United States Attorney

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOS ANGELES PRESS CLUB, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security, *et al.*, <br><br> Defendants. | No. 2:25-cv-05563-HDV-E <br><br> **REPLY IN SUPPORT OF DEFENDANTS' APPLICATION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL** <br><br> [Supporting declaration filed concurrently] <br><br> Hon. Hernán D. Vera |

**INTRODUCTION**

Defendants hereby submit this reply memorandum in support of their motion to stay the Court's preliminary injunction pending appeal. As set forth in Defendants' motion, the preliminary injunction is based on erroneous legal conclusions and irreparably harms Defendants by imposing an unworkable set of constraints on law enforcement officers ("LEO") who must make split-second decisions when responding to violent and dynamic situations. Plaintiffs' opposition fails to remedy the defects that Defendants identified in their stay motion. Given the need for prompt action, Defendants expect to file a motion for a stay pending appeal in the Ninth Circuit no later than October 9, if the motion is denied or if no action is taken on the motion. Accordingly, Defendants respectfully request that the Court rule expeditiously on Defendants' motion and stay the preliminary injunction pending appeal.

**ARGUMENT**

**I.   DEFENDANTS ARE LIKELY TO SUCCEED ON THE MERITS**

**A.   The evidence submitted in support of Defendants' motion to stay the Court's preliminary injunction order is proper.**

Defendants submitted three declarations explaining why the specific terms of the injunction irreparably injure the government and the public by imposing extraordinary and unworkable restrictions on federal officers' ability to respond to violent protests. Courts routinely consider such declarations when resolving stay motions. *E.g.*, Order, *Kuang v. U.S. Dep't of Def.*, No. 18-17381 Dkt. 21, at 1 (9th Cir. Feb. 1, 2019) (denying motion to strike declaration filed in support of district court motion to stay "for the purposes of resolving the pending motion to stay" in court of appeals); *see* Fed. R. App. P. 8(a)(2)(B)(ii) (requiring a stay motion to include "affidavits or other sworn statements supporting facts subject to dispute"). The Ninth Circuit has denied a stay motion for want of supporting evidence on at least one occasion. *Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017).

Plaintiffs do not seem to dispute that Defendants may support their stay applications with evidence explaining why the stay factors are satisfied. Nevertheless, Plaintiffs urge the Court to disregard most of Defendants' declarations on the theory that Defendants are prohibited from supporting their stay application with evidence relating to events that occurred before Defendants' opposition to the motion for preliminary injunction. Plaintiffs have failed to cite any precedential

1

authority supporting that novel theory; they rely only on out-of-district cases that seem to extend inapposite standards of motions for reconsideration to motions to stay. And this Court should decline to endorse that theory because it erroneously conflates the standard for opposing the entry of a preliminary injunction with the standard for obtaining a stay of such an injunction once entered. *See East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 660-61 (9th Cir. 2021). It is entirely proper for parties to submit new declarations addressing the latter standard when seeking such relief.

Moreover, embracing plaintiffs' theory would lead to inequitable results where, as here, the injunction entered by the Court is different from the one Plaintiffs proposed. For example, Defendants could not have foreseen that the Court's order would include a broad definition of the term "Legal Observer" that does not appear in Plaintiffs' proposed orders. *Compare* ECF No. 34-28, at 4-5, *and* ECF No. 49-11, at 5-6, *with* ECF No. 55, at 43-44. Defendants also could not have foreseen that the Court would expand Plaintiffs' proposed injunction to restrict Defendants' ability to lawfully disperse members of the press and legal observers even further to *any* person officers know or reasonably should know is a journalist or legal observer under the injunction's expansive definitions. ECF No. 55 at 43.

Because the preliminary injunction modified and expanded Plaintiffs' proposed injunction and because the standard for evaluating Plaintiffs' entitlement to injunctive relief differs from the standard for obtaining a stay of that injunction, Defendants supported their stay motion with new evidence relevant to the stay standard. Those declarations were presented not to relitigate the merits of plaintiffs' preliminary-injunction motion but to explain how the Court's actual injunction irreparably harms the government and, by extension, the public. The declarations are therefore properly before the Court.

### B. Plaintiffs lack standing to pursue injunctive relief.

Plaintiffs still cannot show that they face a "'real and immediate threat of repeated injury'" for the purpose of establishing standing. *Updike v. Multnomah Cty.*, 870 F.3d 939, 947 (9th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). The sixty one (61) declarations submitted by Plaintiffs to date were completed by fifty-three (53) different declarants. **Forty-two (42) of the declarants are nonparties**. Of the remaining eleven (11) declarants, ***only one of them complains of repeated injury***—Mr. Beckner-Carmitchel. The sheer lack of evidence of repeated injury over a period of four months is sufficient to show that

2

Plaintiffs have failed to establish that they face a real and immediate threat of repeated injury. As "'[s]tanding is not dispensed in gross,'" Plaintiffs fail to demonstrate "standing for each claim [they] seek[] to press'" or "'for each form of relief' that is sought." *See Davis v. Federal Election Com'n*, 554 U.S. 724, 734 (2008) (internal citations omitted). For these reasons, and in line with Judge Wilson's denial of the original temporary restraining order, Plaintiffs have not and cannot establish that they have standing for the sweeping prospective injunctive relief issued by this Court. *Updike*, 870 F.3d at 947.

Even considering the declarations submitted with their stay opposition, ECF No. 64, Plaintiffs *still* cannot show that they face a "'real and immediate threat of repeated injury.'" *Updike*, 870 F.3d at 947. Although Mr. Beckner-Carmitchel is the only Plaintiff alleging repeated injury, it is evident from his declaration that he was incidentally exposed to crowd control devices at a violent riot, not intentionally targeted because he is a journalist. *See* Second Supplemental Decl. of Beckner-Carmitchel[1], ECF No. 64-1 ¶¶11-15, 17. Mr. Beckner-Carmitchel acknowledges that the fence, established to protect federal personnel and property, was shaken so violently by rioters that it opened. *Id.* ¶20. Even Mr. Beckner-Carmitchel acknowledges that fireworks were deployed (*Id.* at ¶13), "people were kicking the fence and shaking it" (*Id.* at ¶14), the protestors shook the gate so hard it "came ajar" (*Id.* at ¶17), and items were being thrown at officers when the fence had fallen (*Id.* at ¶30). All the while, Mr. Beckner-Carmitchel was not standing off to the side observing; it appears that he was instead standing 5-10 feet away from violent protestors when his alleged injury occurred (*Id.* at ¶24). Any incidental injuries he sustained as a result of his voluntary decision to stand near violent crowds damaging federal property do not establish that officers retaliated against him for exercising his First Amendment rights, much less that he faces a real and immediate threat of any retaliation in the future.

Plaintiff-member Connelly similarly acknowledges that the security fence was shaken so violently that it popped open. *See* Decl. of Connelly, ECF No. 64-2 ¶11-12. She also asserts that she was hit by a pepper ball in the back. Her picture, however, depicts her directly behind a protestor who is within inches of the fence. Since the Pepperball Launching System was used to saturate the ground, Second Supplemental Decl. of Scharmen ¶ 6, it appears Connelly was incidentally exposed.

---

[1] Notably, Mr. Beckner-Carmitchel is no stranger to crossing the line from protest to disorder. Over the past several years, he has been arrested at least twice at or around protests. *See* 2020 arrest, BLM protest: *https://perma.cc/WLC3-S6CB* (November 5, 2020);  2024 arrest, UCLA protest: https://perma.cc/4XQX-UVWK (May 6, 2024).

3

### C. Plaintiffs' right-of-access claim is contrary to law.

Plaintiffs' response (ECF No. 64 at 8) to the government's right-of-access arguments reveals Plaintiffs' misunderstanding of the doctrine. The *Press-Enterprise* test requires Plaintiffs to establish that the "place *and* process" for which they claim First Amendment access "have historically been open to the press and general public." 478 U.S. 1, 8 (1986) (emphasis added). Plaintiffs have not and cannot make that showing. Defendants' argument is not that "by unilaterally declaring an event to be a riot, [Defendants'] can transform a public forum or process into something else and thereby eliminate Plaintiffs' right of access." ECF No. 64 at 8. Rather, the relevant proceeding is the violent protest itself—the particular event Plaintiffs claim a right of access to observe. But violent protests that involve attacking federal property and federal officers are not processes that have been historically open to the press and general public. *Menotti v. Seattle*, 409 F.3d 1113, 1155-56 (9th Cir. 2005).

By focusing exclusively on the place where the proceeding is occurring (public streets and sidewalks) instead of the nature of the relevant proceeding, Plaintiffs ignore one half of the legal test. ECF No. 64 at 8. If Plaintiffs' erroneous version of the right-of-access test were correct, then the Supreme Court would have focused on whether the public had a right to access the courthouse or courtroom rather than whether the public had a right to access a specific type of proceeding: preliminary hearings themselves. *Press-Enter.*, 478 U.S. at 10.[2] Plaintiffs' geography-only version of the test is not the law. It makes a difference: protests on public streets and sidewalks can be protected activity but, no matter where they occur, violent attacks on federal officers and property are not protected. *See* CA Penal Code § 405 (2024); 18 U.S.C. § 2101. To the extent Plaintiffs argue in the alternative that the relevant proceeding is a peaceful protest, *see* ECF No. 64 at 5, 9, that argument is belied by the record.[3] This case isn't about access to peaceful protests. It's about access to violent riots that target federal LEOs and federal property. *See* ECF No. 47 § II.D. Indeed, Plaintiffs' latest allegations stem from incidents that feature—by Plaintiffs' own evidence—protests that turned violent

---

[2] Similarly, if Plaintiffs' invented version of the standard were correct, the Ninth Circuit would have focused on the federal lands where horse gathers occurred and not on whether "horse gathers" themselves "have traditionally been open to the public." *Leigh v. Salazar*, 677 F.3d 892, 900 (9th Cir. 2012).

[3] Plaintiffs' attempts to minimize the violence perpetrated by rioters by vaguely gesturing to its cherry-picked "video evidence," ECF No. 64 at 8 n. 7, that often picks up well after the violence against LEOs occurs, *see, e.g.*, Decl. of Saillant, ECF No. 49-3 ¶ 14, is not probative of day-long riots sprawling over large areas, and involving sustained attacks against LEOs. *See* ECF No. 47 § II.D.6.

before any use of crowd control devices by federal LEOs. According to Plaintiffs, on September 1, 2025, in a protest at Metropolitan Detention Center ("MDC") in downtown Los Angeles, a protestor set off fireworks in the middle of the street while other protestors attacked the fencing outside of MDC by kicking and shaking it so much that it eventually broke loose creating an opening in the fencing. ECF No. 64-1 ¶¶ 13-14, 17; ECF No. 64-2 ¶ 14. Later, protestors began throwing oranges and water bottles at officers. ECF No. 64-1 ¶ 30. By Plaintiffs' own evidence, officers did not use crowd control devices until *after* protestors had broken open the fencing surrounding MDC breaching the secure perimeter.

But the situation was even more violent than Plaintiffs' declarations let on. In the seven days leading up to the protest on September 1, LEOs had been assaulted at least five times. Second Supp. Scharmen Decl. ¶ 4. The protest group on September 1 was known to LEOs at the time of the protest to have a recent history of setting fires. *Id.* Once the protestors arrived, they used high powered flashlights to disorientate officers, threw water bottles, rocks, hard objects, and trash over the fence at officers, and threw lit fireworks. *Id.* ¶ 5. Officers used FN-303 less-lethal launchers loaded with yellow marking rounds to mark specific violent offenders and deter further damage. *Id.* ¶ 7-8, 10. Multiple dispersal orders and repeated verbal commands were issued to the protestors to desist from damaging and attacking the fence outside of MDC, which is located on federal property. *Id.* ¶ 7. The protestors' actions constituted violations of at least four federal regulations. *See* 41 CFR § 102-74.380 (Preservation of Property); *id.* § 102-74.385 (Conformity with Signs and Directions); *id.* § 102-74.390 (Disturbances); *id.* § 102-74.430 (Vehicular and Pedestrian Traffic). To the extent that Mr. Beckner-Carmitchel or Ms. Connelly were exposed to the effects of crowd control devices, it was incidental exposure due to their close proximity to violent offenders. *See* Second Supp. Scharmen Decl. ¶¶ 14-15.

Plaintiffs also argue (ECF No. 64 at 9) that, under the Ninth Circuit's amended *East Bay Sanctuary Covenant* decision, the court of appeals' *Index Newspapers* decision denying the government's motion to stay a different injunction entered in different circumstances and on a different evidentiary record constitutes binding precedent. Defendants regret the stay motion's inadvertent reliance on the original version of that decision. But the amended decision likewise recognizes that an order denying a stay pending appeal rests on "predictive analysis" that can be "probabilistic and discretionary" and that occurs "'at a very preliminary stage of [appellate] proceedings.'" *East Bay*

5

*Sanctuary Covenant*, 993 F.3d at 661-62 & n.3. "Such a predictive analysis should not, and does not, forever decide the merits of the parties' claims." *Id.* at 661. Plaintiffs emphasize the amended opinion's suggestion that a stay denial "*may* be binding as precedent for other panels deciding the same issue" in certain circumstances. *East Bay Sanctuary Covenant*, 993 F.3d at 660 (emphasis added). But that suggestion is confined to "pure questions of law for which preexisting binding authority necessarily compelled the answer." *Id.* at 705 n.3. The merits holdings in the *Index Newspapers* decision fall well outside those narrow bounds.

### D. Plaintiffs' retaliation claims are legally and factually baseless.

Plaintiffs seem to think that Defendants must make "new arguments" in order for this Court to grant a stay pending appeal. ECF No. 64 at 10. Plaintiffs are wrong. New arguments form no part of the applicable legal standard. *Nken*, 556 U.S. at 434. In any event, Defendants' *Ex Parte Application* addressed errors in this Court's opinion that show that Plaintiffs' retaliation claims are baseless. ECF No. 58 § I.C. For example, the Court's finding that its use of force was "indiscriminate" cannot support a finding of retaliation. ECF No. 55 at 29-30. On the contrary, a retaliation claim requires a showing that the defendant targeted a journalist with force specifically because of the journalist's First Amendment activity, *i.e.*, a *discriminate* use of force, not indiscriminate force applied without regard to the journalist's press related activity. *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (stating that showing a First Amendment violation requires plaintiffs to demonstrate intent to interfere with First Amendment rights).

Plaintiffs' assert that "retaliatory animus" is evident in the record because of statements by Secretary Noem defending the conduct of LEOs in the face of violent attacks against them. ECF No. 64 at 10-11. The Court countenanced Plaintiffs' mistaken interpretation of those statements in its Order in yet another instance of clear error. *See* ECF No. 55 at 34 n.28. The Secretary's statement that violence against LEOs would only cause them to "come after" violent offenders is not what the Court says it is: a ratification of the "practice of meeting First Amendment protected activities with force." *Id.* The Secretary spoke about "acts of violence against law enforcement officers." *Id.* Those acts are simply not First Amendment activities. Moreover, this finding rests on the unsupported and inflammatory assertion that, when the Secretary said "come after" she meant doing so *illegally*.

6

Plaintiffs' reliance on *Index Newspapers* is misplaced. ECF No. 64 at 10. The court there merely said that, on the basis of that unique factual record, the government was unlikely to prevail on the merits. *Index Newspapers v. United States Marshals Serv.*, 977 F.3d 817, 834 (9th Cir. 2020). The holding in *Index Newspapers*, does not control this case where the evidentiary record demonstrates that dispersal orders were repeatedly issued before crowd control devices or force were used by LEOs, there is no evidence that batons were used on protestors or journalists, and there is no evidence that Defendants have tried to block photographers from taking pictures. *See, e.g.*, ECF No. 47 § II.D.4.

### E. The Court's credibility finding is erroneous.

Plaintiffs now assert that "Ms. Marantos never *says* she blocked the truck." ECF No. 64 at 134 (emphasis added). Although the declaration does not use those words, it does confirm that "a black pick-up truck was stopped in the middle of the road … and was surrounded by protesters …. It looked like a law enforcement vehicle of some kind …. I had the impression that the truck was attempting to drive forward …. **I was close to the truck, in the center of the road**." ECF No. 34-11 ¶ 15 (emphasis added). Accordingly, the declaration makes clear that Ms. Marantos joined a crowd that impeded federal LEOs during the Carpinteria operation where law enforcement was under violent attacks and gunfire. *See* ECF No. 47 § II.D.6. The Court's holding that "Plaintiffs themselves" never "participated in violent riots" is clear error. ECF 55 at 28. Plaintiffs' similar attempt to re-write declarant R.R.'s testimony by referencing video clips that pick up *in medias res* do nothing to rebut Defendants' evidence that R.R. failed to comply with numerous requests to members of the press to relocate before the area outside of MDC was cleared. ECF No. 47 at 18.

Plaintiffs minimize the gravity of Defendants' arguments, which establish that the Court erred in its central findings, by dismissing them as "quibbling." ECF No. 64 at 11. But the fact that audible warnings were issued before crowd control devices were used and that a named plaintiff willingly participated in the disruption of a federal law enforcement operation are central to the legal analysis and should change its outcome. *See* ECF No. 58 at 10-11. A plaintiff that joins a crowd, blocking the egress of a law enforcement vehicle during a criminal warrant operation, is not engaged in First Amendment activity. *See Grayned v. City of Rockville*, 408 U.S. 114, 116 (1972); *see also* ECF No. 47 § IV.B.1. Plaintiffs that refuse to heed repeated and *audible* lawful dispersal orders willingly subject themselves

7

to law enforcement action to secure federal property. *See id.* § IV.B.2.c. at 18.

Plaintiffs' also claim that the Court "had ample basis to draw a credibility inference against Defendants' declarants" but ignores that the Court *did not* rely on the evidence Plaintiffs' cite. ECF No. 64 at 11. Rather, the Court, without explanation, credited Plaintiffs' declarants on the issue of which DHS component agency officers belong to while discounting the officers' sworn testimony. ECF No. 55 at 9 n. 7. The supposed inconsistency Plaintiffs' point to in Defendants' declarations is concocted by Plaintiffs—declarants Santacruz and Wang are consistent with one another and they both clarify an incident report, drafted the same day as the incident itself, *see* Scharmen Decl., ECF No. 47-3 at 110-111, Ex. 5, when they each state that no HSI officer deployed less-lethal munitions on June 9, 2025 at Civic Center Plaza in Santa Ana. Wang Decl. ECF No. 47-1 ¶15, Santacruz Decl. ECF No. 11-3 ¶ 7.

Plaintiffs attempt to conjure another contradiction by pointing to declarant Santacruz's statement that the deployment of the California National Guard and U.S. Marines to Los Angeles was able to "diminish[]" the violence at federal property, ECF No. 11 ¶ 5, but simultaneously acknowledging that violent protests continued, *id.* Ex. 2 ¶ 6. ECF No. 64 at 11-12. Violent riots can diminish in frequency and yet continue to occur. Plaintiffs misrepresent these consistent assertions to the Court as "opposites." *Id.* They are not. Nothing in the record justifies rejecting a single assertion in any of Defendants' declarations. *See id.*

Plaintiffs fail to engage with Defendants' arguments as to why the court should have considered other explanations, besides retaliation for First Amendment activity, for Mr. Beckner-Carmitchel's alleged injury. Instead, Plaintiffs cite testimony from declarants that were not on the scene that day and video evidence of other crowd control activities not directed at Mr. Beckner-Carmitchel. ECF No. 64 at 13-14. Other, far more likely explanations are available. *See* ECF No. 58 at 11-12.

### F. The injunction is unworkable.

Defendants submitted substantial evidence from high-level career LEOs discussing the unworkability of the preliminary injunction and the harms to Defendant's interests. *See* ECF Nos. 58-2, 58-3, 58-4. Simply because the first paragraph of the injunction "mirrors" that of *Index Newspapers*[4]

---

[4] To be clear, the injunction imposed upon Defendants is significantly broader in several respects than that issued in *Index Newspapers*, including its overly broad multi-county application without regard to any specific Plaintiff. *See generally*, *Trump v. CASA, Inc.*, 145 S. ct. 2540 (2025).

8

does not mean it cannot be subsequently challenged or a different result sought by Defendants based on a different record. As previously briefed at length, restricting Defendants' ability to disperse journalists or legal observers confers upon them a special right to disobey lawful dispersal orders. *See* ECF Nos. 58 at 8, 16, 58-4 ¶¶14-15. This argument is foreclosed by both Supreme Court and Ninth Circuit precedent recognizing that members of the press lack a "constitutional right of special access to information not available to the public generally." *California First Amendment Coal. v. Calderon*, 150 F.3d 976, 981 (9th Cir. 1998) (quoting *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972)).

    Next, Plaintiffs misconstrue Defendants objections to the second and third paragraphs of the Court's preliminary injunction order as claiming injury from complying with their use of force policies. This is not the case. At all times, Defendants have stated that they would follow their use of force policy. ECF Nos. 58-2 ¶¶6-7,9; 58-3 ¶7; 58-4 ¶¶13-14.  In their motion for stay and throughout briefing in this case, Defendants repeatedly provide evidence of the barrage of violence they have endured and show how crowd control devices are necessary to disburse violent riots and prevent further injury. *See generally* ECF Nos. 11, 47, 58. Yet again, Plaintiffs ignore the fireworks, Molotov cocktails, rocks, concrete blocks and more that have been thrown at LEOs during these violent protests. *See* ECF No. 58 at 14-16; 58-2 ¶¶4, 8; 58-3 ¶2. In response to Defendants' legitimate concerns over the two-warning requirement, Plaintiffs suggest overcoming these concerns by simply "documenting such warnings." ECF No. 64 at 20. But that impractical suggestion does nothing to alleviate the concerns expressed by Defendants and the likelihood of he-said-she-said disputes expected in light of this restriction.  As it relates to paragraph five, Defendants do not agree that there is a "mountain of evidence" that people have been shot in the head and other sensitive areas. All of Plaintiffs' sensitive area injuries, in fact, have not been specifically tied to Defendants. The events remain disputed, especially where these types of munitions may have been thrown or kicked by violent rioters—not Defendants. ECF No. 58 at 11, 16; 58-2 ¶¶4, 9. Finally, Plaintiffs latest declarations prove that this injunction is unworkable and will require perpetual judicial intervention: declarant Connelly interprets her position as "a little bit away from the main group of protestors" when the photographic evidence she submits clearly shows her at the very front of the hostile crowd no more than a few feet away from the fence the rioters were attacking. ECF 64-2 ¶¶ 12-13. This Court's directive that standing "off to the side" is an indicium of

being a journalist or legal observer is unworkable due to its vagueness and the fact that violent offenders can use this provision to muddy the waters. ECF 55 at 44.

### G. Equities tip in Defendants' favor.

As detailed in Section I.B. above, Plaintiffs cannot show that they face a real and immediate threat of repeated injury and thus will not be substantially injured by a stay. While Plaintiffs tout their 61 declarations, including 42 nonparty declarants, just one Plaintiff has alleged repeated injury over the last four months—which appears to have occurred because of his reckless willingness to place himself amid dangerous rioters. Just as Plaintiffs cannot show risk of repeated injury, there is also no basis to conclude that they will be substantially injured by a stay of the injunction.

A stay of the injunction furthers the public interest. Defendants do not dispute the importance of protests and the press in our constitutional system. Defendants—and the law—do, however, draw a line at violent riots intended to injure LEOs and interfere with their lawful enforcement operations. The stay of this injunction will not interfere with peaceful expression or protests but will instead protect life and property. The injunction issued in this case is dangerously restrictive, and if not stayed, will constrain law enforcement's ability to respond to violence and further puts officers at risk.

It is no secret that law enforcement—particularly law enforcement officers and agents involved in immigration enforcement—have been under attack since early this summer.

- An "Anti ICE" shooter fires upon ICE officers in Texas. https://perma.cc/F99X-ZU36
- Listing many incidents of violence and attempted violence against ICE officers. https://perma.cc/JZG2-6JMK
- Listing extreme rhetoric against ICE that may be encouraging violence against officers. https://perma.cc/N5QB-7KMS
- Federal charges against three women for doxing an ICE agent at his home. https://perma.cc/V3MG-LPGP

The lives of LEOs are at risk simply for enforcing immigration law. Accordingly, the equities tip in Defendants' favor and the preliminary injunction must be stayed.

### CONCLUSION

This Court should stay its preliminary injunction pending appeal.

Dated: October 2, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General

ALEXANDER K. HAAS
ANDREW I. WARDEN
KATHLEEN C. JACOBS
Civil Division, Federal Programs Branch

BILAL A. ESSAYLI
Acting United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PAUL (BART) GREEN
Assistant United States Attorney

   /s/ Kathleen C. Jacobs
KATHLEEN C. JACOBS
Trial Attorney

Attorneys for Defendants