BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
ANDREW I. WARDEN
KATHLEEN C. JACOBS
Civil Division, Federal Programs Branch

BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PAUL (BART) GREEN (Cal. Bar No. 300847)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-0805
    Email: Paul.Green@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES PRESS CLUB; *et al.*,<br><br>       Plaintiffs,<br><br>       v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; *et al.*,<br><br>       Defendants. | No. 2:25-cv-05563-HDV-E<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>[Memorandum of points and authorities and proposed order filed concurrently]<br><br>Hearing Date:   December 4, 2025<br>Hearing Time:  10:00 a.m.<br>Ctrm:        5B<br>Hon.         Hernán D. Vera |

1

**TABLE OF CONTENTS**

2    DESCRIPTION                                                                    PAGE

3

4    TABLE OF AUTHORITIES ....................................................................................ii

5    NOTICE OF MOTION AND MOTION TO DISMISS .....................................vi

6    MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

7    I.      INTRODUCTION ........................................................................................ 1

8    II.     BACKGROUND .......................................................................................... 2

9            A.    Plaintiffs' Allegations ...................................................................... 2

10           B.    Procedural History ............................................................................ 2

11   III.    LEGAL STANDARD................................................................................... 3

12   IV.     ARGUMENT ............................................................................................... 5

13           A.    Plaintiffs Lack Standing To Obtain Equitable Relief Against Defendants....................... 5

14           B.    Plaintiffs' First Amendment Claims Are Inadequate (Count 1). ................................... 9

15           C.    Plaintiffs' Claim For Fourth And Fifth Amendment Violations Fails (Count 2). .......... 10

16                 1.    Plaintiffs' Fourth Amendment Claim Is Inadequate............................................. 10

17                 2.    Plaintiffs' Fifth Amendment Claim Is Also Inadequate. ...................................... 13

18           D.    Plaintiffs Fail To State A Claim Under The APA (Count 3)........................................... 14

19           E.    The Declaratory Relief Claim Is Subject To Dismissal (Count 4). ................................ 15

20   V.      CONCLUSION........................................................................................... 16

21

22

23

24

25

26

27

28

i

## <u>TABLE OF AUTHORITIES</u>

<u>DESCRIPTION</u>                                                                                                          <u>PAGE</u>

**Cases**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................... 4, 8

*Austin v. Univ. of Or.,*
   925 F.3d 1133 (9th Cir. 2019) ................................................................................ 4

*Bayer v. City of Simi Valley,*
   43 F. App'x 36 (9th Cir. 2002) .............................................................................. 13

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................................. 8

*Bennett v Spear,*
   520 U.S. 154 (1997) ................................................................................................ 14

*Black Lives Matter D.C. v. Trump,*
   544 F. Supp. 3d 15 (D.D.C. 2021) ........................................................................ 13

*Blair v. Shanahan,*
   38 F.3d 1514 (9th Cir. 1994) .................................................................................. 6

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ........................................................................................... *passim*

*City of Rialto v. W. Coast Loading Corp.,*
   581 F.3d 865 (9th Cir. 2009) ................................................................................ 15

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) ........................................................................................... 5, 10

*Cnty. of Sacramento v. Lewis,*
   523 U.S. 833 (1998) ................................................................................................ 14

*Cobell v. Norton,*
   392 F.3d 461 (D.C. Cir. 2004) .............................................................................. 15

*Curtis v. City of New Haven,*
   726 F.2d 65 (2d Cir. 1984) ...................................................................................... 7

*DeBrew v. Atwood,*
   792 F.3d 118 (D.C. Cir. 2015) ................................................................................ 5

*Eggar v. City of Livingston,*
   40 F.3d 312 (9th Cir. 1994) .................................................................................... 7

*F.T.C. v. H.N. Singer, Inc.,*
   668 F.2d 1107 (9th Cir. 1982) .............................................................................. 16

*Felarca v. Birgeneau,*
   891 F.3d 809 (9th Cir. 2018) ................................................................................ 12

*Fiedler v. Clark,*
  714 F.2d 77 (9th Cir. 1983) ............................................................................. 16

*Forrester v. City of San Diego,*
  25 F.3d 804 (9th Cir. 1994) ............................................................................. 13

*FTC v. Standard Oil Co.,*
  449 U.S. 232 (1980) ......................................................................................... 14

*Gallo Cattle Co. v. U.S. Dep't of Agric.,*
  159 F.3d 1194 (9th Cir. 1998) ................................................................... 14, 15

*Gilbert v. DaGrossa,*
  756 F.2d 1455 (9th Cir. 1985) ........................................................................... 5

*Gilligan v. Morgan,*
  413 U.S. 1 (1973) .............................................................................................. 7

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972) ........................................................................................... 9

*Index Newspapers LLC v. U.S. Marshals Service,*
  977 F.3d 817 (9th Cir. 2020) ............................................................................. 9

*Jablon v. Dean Witter & Co.,*
  614 F.2d 677 (9th Cir. 1980) ............................................................................. 4

*Jackson v. City of Bremerton,*
  268 F.3d 646 (9th Cir. 2001) ........................................................................... 13

*Judulang v. Holder,*
  565 U.S. 42 (2011) ........................................................................................... 14

*Kentucky v. Graham,*
  473 U.S. 159 (1985) ........................................................................................... 5

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001) ............................................................................. 4

*Leigh v. Salazar,*
  677 F.3d 892 (9th Cir. 2012) ........................................................................... 10

*Loumiet v. United States,*
  828 F.3d 935 (D.C. Cir. 2016) ........................................................................... 5

*Marder v. Lopez,*
  450 F.3d 445 (9th Cir. 2006) ............................................................................. 4

*Mary Ferrell Found., Inc. v. Biden,*
  2023 WL 4551066 (N.D. Cal. July 14, 2023) ................................................. 15

*Mendocino Envtl. Ctr. v. Mendocino Cnty.,*
  192 F.3d 1283 (9th Cir. 1999) ........................................................................... 9

*Murphy v. Kenops,*
  99 F. Supp. 2d 1255 (D. Or. 1999) .................................................................... 7

*Natural Res. Def. Council v. U.S. Dep't of the Interior,*
  113 F.3d 1121 (9th Cir. 1997) ......................................................................... 14

iii

*Nelsen v. King County*,
    895 F.2d 1248 (9th Cir. 1990) ................................................................ 6

*Noem v. Vasquez Perdomo*,
    2025 WL 2585637 (U.S. Sept. 8, 2025) ............................................ 6, 8

*Nordstrom v. Ryan*,
    762 F.3d 903 (9th Cir. 2014) .................................................................. 9

*Norton v. S. Utah Wilderness Alliance*,
    542 U.S. 55 (2004) ................................................................................ 15

*Ochoa v. City of Mesa*,
    26 F.4th 1050 (9th Cir. 2022) ........................................................ 11, 12

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
    303 F. App'x 517 (9th Cir. 2008) ........................................................ 15

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ................................................................................ 7

*Porteous Capital One Servs. II, LLC*,
    809 F. App'x 354 (9th Cir. 2020) .......................................................... 4

*Porter v. Osborn*,
    546 F.3d 1131 (9th Cir. 2008) .............................................................. 12

*Puente v. City of Phoenix*,
    123 F.4th 1035 (9th Cir. 2024) ...................................................... *passim*

*Rivera v. United States*,
    924 F.2d 948 (9th Cir. 1991) .................................................................. 8

*Rizzo v. Goode*,
    423 U.S. 362 (1976) ................................................................................ 7

*Rosenblum v. Does 1-10*,
    474 F. Supp. 3d 1128 (D. Or. 2020) ...................................................... 7

*Snyder & Assocs. Acquisitions LLC v. United States*,
    859 F.3d 1152 (9th Cir. 2017) ................................................................ 4

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .............................................................................. 4, 5

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation*,
    873 F.2d 1221 (9th Cir. 1989) .............................................................. 15

*Under Press-Enterprise Co. v. Superior Court of California*,
    478 U.S. 1 (1986) .................................................................................. 10

*United Steelworkers of Am. v. Milstead*,
    705 F. Supp. 1426 (D. Ariz. 1988) ...................................................... 13

*Updike v. Multnomah Cty.*,
    870 F.3d 939 (9th Cir. 2017) .................................................................. 6

*Vasserman v. Henry Mayo Newhall Mem'l Hosp.*,
    65 F. Supp. 3d 932 (C.D. Cal. 2014) ...................................................... 4

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ........................................................................................ 5

*Wilkinson v. Torres*,
    610 F.3d 546 (9th Cir. 2010) ..................................................................... 12

*Williams v. Birmingham Bd. of Educ.*,
    904 F.3d 1248 (11th Cir. 2018) .................................................................. 7

**Other**

5 U.S.C. § 706 .................................................................................................. 14

8 C.F.R. § 287.8 .............................................................................................. 15

Federal Rule of Civil Procedure 65 ............................................................. 16

Local Rule 83-1.3.2 ......................................................................................... 3

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on December 4, 2025 at 10:00 a.m., or as soon thereafter as they may be heard, Defendants will, and hereby do, move this Court for an order dismissing the action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This motion will be made in the First Street Federal Courthouse before the Honorable Hernán D. Vera, United States District Judge, located at 350 W. 1st Street, Los Angeles, CA 90012.

Defendants bring the motion on the grounds that Plaintiffs lack standing to obtain equitable relief under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). Even if Plaintiffs could establish standing, Plaintiffs' individual claims – for violations of the First, Fourth, and Fifth Amendments and the Administrative Procedure Act (APA) – fail as a matter of law.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which was held on September 15 and October 9, 2025.

vi

1    Dated: October 30, 2025              Respectfully submitted,

2                                          BRETT A. SHUMATE
                                           Assistant Attorney General
3                                          Civil Division

4                                          ERIC J. HAMILTON
                                           Deputy Assistant Attorney General
5
                                           SEAN SKEDZIELEWSKI
6                                          Counsel to the Assistant Attorney General
                                           Civil Division
7
                                           ALEXANDER K. HAAS
8                                          ANDREW I. WARDEN
                                           KATHLEEN C. JACOBS
9                                          Civil Division, Federal Programs Branch

10                                         BILAL A. ESSAYLI
                                           First Assistant United States Attorney
11                                         DAVID M. HARRIS
                                           Assistant United States Attorney
12                                         Chief, Civil Division
                                           DANIEL A. BECK
13                                         Assistant United States Attorney
                                           Chief, Complex and Defensive Litigation Section
14                                         PAUL (BART) GREEN
                                           Assistant United States Attorney
15
16                                         ___/s/ Paul (Bart) Green_____
                                           PAUL (BART) GREEN
17                                         Assistant United States Attorney

18                                         Attorneys for Defendants

19

20

21

22

23

24

25

26

27

28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.    INTRODUCTION**

This lawsuit arises from violent protests that erupted in response to the U.S. Department of Homeland Security ("DHS") lawful immigration enforcement operations during the summer of 2025 in Los Angeles, California and the region. Some protests turned into violent riots with protestors throwing concrete chunks, bottles of liquid, and other objects at federal officers who were deployed to defend federal property and personnel. These federal officers were subject to violent assaults and threats including rocks, Molotov cocktails, and fireworks thrown and shot at them. Federal buildings experienced significant damage.[1]

On October 16, 2025, Plaintiffs filed a First Amended Complaint (ECF 67, "FAC") on behalf of journalists and protestors present at the riots, alleging that their Constitutional rights were violated by DHS's effort to protect federal employees, federal property, and the public from the violent protests that occurred from June 6 to September 1, 2025. The FAC, however, does not plausibly allege a violation of any of Plaintiffs' constitutional rights. Nor does the FAC plausibly allege an imminently certain risk of future harm, which is necessary to pursue prospective relief—the only type of relief they could hope to pursue. That Plaintiffs may have been subject to force in the past is not sufficient to establish that the same Plaintiffs will be subject to force again in the future. This Court should dismiss the FAC for lack of standing and for failure to state a claim.

Even if Plaintiffs could establish standing, Plaintiffs' individual claims fail as well. Plaintiffs' First, Fourth, and Fifth Amendment claims are factually and legally deficient. Although this Court found that the post-Complaint preliminary injunction record supported a preliminary injunction—which Defendants have appealed—the allegations in the FAC are factually and legally insufficient to state a claim. Plaintiffs have also failed to state a claim for violation of the Administrative Procedure Act ("APA) and a standalone claim for declaratory relief.

For these reasons, the Court should dismiss all of Plaintiffs' claims.

---

[1] *See, e.g.*, *DHS Sets the Record Straight on LA Riots, Condemns Violence Against Law Enforcement, Destruction of Property and Threats to ICE Agents* (June 10, 2025 DHS press release with pictures of damage to federal property), available at https://www.dhs.gov/news/2025/06/10/dhs-sets-record-straight-la-riots-condemns-violence-against-law-enforcement.

## II.    BACKGROUND

### A.    Plaintiffs' Allegations

Plaintiffs are two organizations and six individuals who are part of organizations with members present at the protests, members monitoring the protests on behalf of the organizations, journalists, legal observers, and protestors. They advance various claims against Defendants based on the effort to protect federal employees, federal property, and the public from a handful of violent protests that occurred between June 6 to September 1, 2025. First, Plaintiffs allege a Right of Access claim by Journalists and Legal Observers in violation of the First Amendment. FAC, ¶¶ 275-283 (Count 1). Second, Plaintiffs allege that Defendants violated Plaintiffs' "Fourth and Fifth Amendment rights to bodily integrity and to be free from unreasonable force." *Id.* ¶¶ 284-291 (Count 2). Third, Plaintiffs bring a new claim for violation of the APA, asserting that Defendants have a "policy, pattern, and practice" of using force against protestors and journalists. *Id.* ¶¶ 292-303. Finally, Plaintiffs assert a new claim for declaratory relief. *Id.* ¶¶ 304-306.

### B.    Procedural History

On June 18, 2025, Plaintiffs initiated this action by filing a complaint (ECF 1) and immediately filed an *ex parte* application for a temporary restraining order attaching hundreds of pages of declarations (ECF 6), which required a response under the Local Rules by June 19, a federal holiday. After Plaintiffs refused Defendants' request for a few additional days to respond (ECF 10), Defendants filed their opposition on June 19 (ECF 11).

On June 20, 2025, Judge Stephen V. Wilson denied Plaintiffs' application for TRO, despite the dozens of declarations alleging injuries sustained between June 6-9, 2025. *See* ECF 19. The Court explained that because Plaintiffs' claims were only based on past conduct, Plaintiffs could not demonstrate an "ongoing, sustained pattern of [mis]conduct … between the date the complaint was filed and the date the district court entered a preliminary injunction." ECF 19 at 4. Ultimately, the Court denied Plaintiffs' application for failure to establish the "substantial risk of future harm required for standing." *Id.* Further, the Court concluded that "Plaintiffs' requested relief is too broad." *Id.* at 5. Even if there were a constitutional violation (an issue the Court did not reach), the Court held the "appropriate remedy would be a narrowly crafted injunction prohibiting Defendants from using

2

excessive force to disperse crowds without warning," rather than a broad injunction that "would restrict lawful crowd control measures and potentially impede Defendants' legitimate law enforcement responsibilities." *Id.*

On June 29, 2025, this case was transferred to this Court (ECF 29), over Defendants' objection that this case was not related to Plaintiffs' case against the Los Angeles Police Department, *Los Angeles Press Club v. City of Los Angeles*, No. 2:25-CV-05423-HDV-E. ECF 9 (Defendants' objection stating that, among other things, Plaintiffs' Notice of Related Case entirely failed to comply with Local Rule 83-1.3.2, which provides that the notice "must include a brief factual statement" explaining how the cases are related.).

On July 18, 2025, Plaintiffs filed a motion for preliminary injunction ("PI") (ECF 34), which Defendants opposed (ECF 47). On August 25, 2025, the Court held a single hearing in which it heard argument on the Plaintiffs' PI motion in this case and the plaintiffs' PI motion against the City of Los Angeles. The Court stated that "I'm calling both [cases] together, because the issues overlap so much that I don't want to have two separate discussions." Aug. 25, 2025 Hr'g Tr. at 8:24-9:1. On September 10, 2025, the Court granted Plaintiffs' PI motion in this case. ECF 55.

On September 19, 2025, Defendants filed a notice of appeal of the PI (ECF 57) along with an *ex parte* application to stay the PI (ECF 59). On September 22, 2025, the Court denied Defendants' *ex parte* application, but ordered additional briefing on the request to stay the PI. ECF 60.

On September 24, 2025, the Court entered an order setting a schedule on Plaintiffs' FAC and this motion to dismiss. ECF 61. On October 16, 2025, Plaintiffs filed the FAC. ECF 67.

On October 21, 2025, after further briefing, the Court denied Defendants' request to stay the PI. ECF 74. The Ninth Circuit Court of Appeals has set oral argument on the appeal of the PI for January 5, 2026. *Los Angeles Press Club v. Noem*, Appeal No. 25-5975.

## III.    LEGAL STANDARD

Defendants bring this motion under Rule 12(b)(1), arguing that Plaintiffs lack standing, and under 12(b)(6), arguing that Plaintiffs have failed to state a claim.

Under Rule 12(b)(1), for a facial challenge to subject-matter jurisdiction, this Court must "accept as true all facts alleged in the complaint and construe them in the light most favorable to

3

plaintiffs," and determine "whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir. 2017). Where a party seeks prospective equitable relief, they must make allegations of future injury [that are] particular and concrete." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998). While allegations of past injury might support a remedy at law, prospective equitable relief requires a claim of imminent future harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

Under Rule 12(b)(6), courts must dismiss complaints that do not allege sufficient facts to demonstrate a plausible entitlement to relief. "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility showing "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and it "asks for more than a sheer possibility that the defendant has acted unlawfully." *Id.*; *see Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019).

In ruling on a Rule 12(b)(6) motion, the Court may consider the allegations in the complaint as well as documents attached to the complaint, documents incorporated by reference in the complaint, matters of public record, or facts otherwise subject to judicial notice. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *Vasserman v. Henry Mayo Newhall Mem'l Hosp.*, 65 F. Supp. 3d 932, 942 (C.D. Cal. 2014). However, the declarations that Plaintiffs have produced throughout the TRO and PI proceedings are not appropriate for consideration as part of this motion because the FAC does not "necessarily rel[y]" on those declarations—the FAC does not refer to any of the declarations, and the declarations are not "central to the [Plaintiffs'] claim." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *see also Porteous Capital One Servs. II, LLC*, 809 F. App'x 354, 356 (9th Cir. 2020) (holding that a Complaint necessarily cannot reference or rely on declarations that "postdate the complaint"). Nor would those declarations be appropriate for judicial notice. A court can take judicial notice of the *existence* of publicly filed documents, but a court cannot take "judicial notice of *disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). So, although this Court must accept as true "all factual allegations set forth in the complaint," *id.* at 679, this Court cannot accept as true—or otherwise rely on—factual allegations made in other public filings.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV. ARGUMENT

Plaintiffs' claims for prospective relief are predicated on alleged past events over the summer of 2025 that do not establish any continuing risk of future injury to Plaintiffs. This Court should find that dismissal is warranted because Plaintiffs lack standing to assert the type of prospective relief claimed. Even if Plaintiffs could establish standing, Plaintiffs' individual claims for violations of the First, Fourth, and Fifth Amendments and the Administrative Procedure Act (APA) fail as a matter of law.

### A. Plaintiffs Lack Standing To Obtain Equitable Relief Against Defendants.

The FAC does not plausibly allege that the "threatened injury" of future First, Fourth, or Fifth Amendment violations are "*certainly impending*" and not merely "*possible.*" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Plaintiffs seek only prospective equitable relief, rather than damages, from Defendants.[2] Where, as here, a party seeks prospective equitable relief, they must make "allegations of future injury [that are] particular and concrete." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998). While allegations of past injury might support a remedy at law, prospective equitable relief requires a claim of imminent future harm. *Lyons*, 461 U.S. at 105. As the Supreme Court held in *Whitmore*, "[a]llegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore*, 495 U.S. at 158. A threatened injury must be "certainly impending" to constitute injury in fact. *Id.* (quoting *Babbitt v. United Farm Workers*, 442 U.S. 289, 298 (1979)). For a plaintiff to have standing, an alleged injury must be "concrete" and "actual or imminent, not 'conjectural' or hypothetical.'" *Lyons*, 461 U.S. at 101-02. Even if a plaintiff establishes that his rights were violated in past incidents, he nonetheless lacks standing to obtain prospective injunctive relief absent a "real and immediate threat" that he will suffer the same injury in the future. *Id.* at 105.

That a plaintiff lacks standing to obtain prospective injunctive relief for alleged future injuries

---

[2] Like federal agencies, federal officers may not be sued in their official capacity for damages absent a waiver of sovereign immunity. *See, e.g., Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). "Federal constitutional claims for damages are cognizable only under *Bivens*, which runs against individual government officials personally." *Loumiet v. United States*, 828 F.3d 935, 945 (D.C. Cir. 2016) (citing *FDIC v. Meyer*, 510 U.S. 471, 482 (1994)). Otherwise, "sovereign immunity shields the Federal Government and its agencies from suit." *DeBrew v. Atwood*, 792 F.3d 118, 124 (D.C. Cir. 2015) (quoting *Meyer*, 510 U.S. at 475).

5

based on the allegations of prior harm, particularly in the law enforcement context, is black letter Supreme Court and Ninth Circuit law. *Lyons*, 461 U.S. at 101-02; *Nelsen v. King County*, 895 F.2d 1248, 1251 (9th Cir. 1990). As a result, to invoke Article III jurisdiction, a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury. *Updike v. Multnomah Cty.*, 870 F.3d 939, 947 (9th Cir. 2017) (denying injunctive relief to a plaintiff challenging the lack of American Sign Language interpreters in pretrial detainment and at arraignment, even though he had previously been booked at county correctional facilities five times and had previously been denied access to his desired interpretive standing because "standing for injunctive relief requires that a plaintiff show a 'real and immediate threat of repeated injury'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

Moreover, the plaintiff seeking injunctive relief must show not just that the predicated *injury* will reoccur, but also that the plaintiff himself will suffer it. *See, e.g., Updike*, 870 F.3d at 948 (holding that the plaintiff lacked standing for injunctive relief because his evidence was "insufficient to establish that any such wrongful behavior is likely to recur against him"); *Blair v. Shanahan*, 38 F.3d 1514, 1519 (9th Cir. 1994) (holding that a plaintiff seeking declaratory or injunctive relief must "establish a personal stake" in the relief sought); *Noem v. Vasquez Perdomo*, No. 25A169, 2025 WL 2585637, at *2 (U.S. Sept. 8, 2025) (Kavanaugh, J. concurrence) ("plaintiffs have no good basis to believe that law enforcement will unlawfully stop *them* in the future based on the prohibited factors—and certainly no good basis for believing that any stop of the plaintiffs is imminent. Therefore, they lack Article III standing[.]") (emphasis in original). That other individuals might suffer harm does nothing for a plaintiff's own standing.

The facts and reasoning of *Lyons* are instructive. *Lyons* was a civil rights action against the City of Los Angeles and police officers who allegedly stopped the plaintiff for a routine traffic violation and applied a chokehold without provocation. *Lyons*, 461 U.S. at 95. In addition to seeking damages, the plaintiff sought an injunction against future use of the chokehold unless deadly force was threatened. *Id.* The Supreme Court held that plaintiff lacked standing to seek prospective relief because he could not show a real or immediate threat of future harm. *Id.* at 104.

That Lyons may have been illegally choked by the police . . . , While presumably affording

Lyons standing to claim damages does nothing to establish a real and immediate threat that
he would again be stopped for a traffic violation, or for any other offense, by an officer or
officers who would illegally choke him into unconsciousness without any provocation or
resistance on his part.

*Lyons*, 461 U.S. at 105; *see also O'Shea*, 414 U.S. at 495-96; *Gilligan v. Morgan*, 413 U.S. 1 (1973)
(dismissing complaint that sought to restrain future action of the National Guard because it not "an
action seeking a restraining order against some specified and imminently threatened unlawful action,"
but was, rather, "a broad call on the judicial power to assume continuing regulatory jurisdiction over the
activities of the National Guard" that was "inappropriate for a district judge to undertake"); *Rizzo v.
Goode*, 423 U.S. 362, 372 (1976) (holding that allegations that police had engaged in widespread
unconstitutional conduct aimed at the minority citizens was based on speculative fears as to what an
unknown minority of individual police officers might do in the future).

Courts in this Circuit have applied *Lyons* and *O'Shea* in similar contexts to hold that plaintiffs
lack standing to pursue prospective injunctive relief where they were subject to past law enforcement
practices but could only speculate as to whether those—and sometimes oft-repeated—practices would
recur. *See, e.g.*, *Eggar v. City of Livingston*, 40 F.3d 312, 317 (9th Cir. 1994); *Rosenblum v. Does 1-10*,
474 F. Supp. 3d 1128, 1136-37 (D. Or. 2020); *Murphy v. Kenops*, 99 F. Supp. 2d 1255, 1259-60 (D. Or.
1999). *See also Curtis v. City of New Haven*, 726 F.2d 65, 68 (2d Cir. 1984) (vacating an injunction that
had been entered against police use of mace because plaintiffs had not shown a "likelihood that these
plaintiffs will again be illegally assaulted with mace"); *Williams v. Birmingham Bd. of Educ.*, 904 F.3d
1248, 1267 (11th Cir. 2018) (plaintiff alleging that a school resource officer unconstitutionally used an
incapacitating chemical spray on her lacked standing to pursue injunctive relief because she did not
show a likelihood that the resource officer would again unconstitutionally spray her).

Here, Plaintiffs have failed to adequately allege risk of future harm. The allegations in the FAC
concern incidents that occurred in violent riots that occurred during the summer of 2025. As with the
original complaint, the majority of Plaintiffs' claims in the FAC rely on events from June 2025. These
allegations of past harm provide no plausible basis to infer that any named Plaintiff is at imminent risk
of being subjected to violations of their First, Fourth, or Fifth Amendment rights again. Such standing

7

"does not exist merely because plaintiffs experienced past harm and fear its recurrence." *Vasquez Perdomo*, 2025 WL 2585637, at *2 (Kavanaugh, J., concurring in grant of application for stay). Even though Plaintiff's complaint is now 70 pages, there is virtually no discussion of how they will be the subject of future harm. Nor does the FAC allege that future protest activity will occur. Simply alleging in conclusory fashion that Plaintiffs Beckner-Carmitchel, Ray, and Xu are "at risk of futured harm from continuation of Defendants' acts and omissions" is wholly deficient. FAC ¶ 274; *see Iqbal*, 556 U.S. at 678. In fact, only one of the seven individual Plaintiffs specifically alleges that she will even attend protests in the future (FAC ¶¶ 10-16), and Plaintiff Paz alleges that she will *not* attend future protests (FAC ¶¶ 16). To deem the allegations in the FAC sufficient would require setting aside *Lyons*. And even if Plaintiffs had adequately alleged that federal law enforcement officers retaliated against them at a handful of violent protests in the summer of 2025, that would be inadequate to show a likelihood of future retaliation.

Plaintiffs have attempted to resurrect their defective allegations by asserting that Defendants have a "pattern, policy, and practice" of retaliating and using unlawful force. *See*, *e.g.*, FAC ¶ 5. But surviving a motion to dismiss "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Repeatedly alleging an official secret policy of retaliation—without more—fails the requirements of *Twombly*. Plaintiffs' allegations also refer to "peaceful" protests that occurred, but offer almost no specifics about crowd-control interactions that did not result in violence. In other words, the FAC relies on a handful of cherry-picked instances, which alone, are insufficient to establish a widespread "pattern, policy, and practice" of retaliatory force.

Plaintiffs' lack of standing to pursue injunctive relief disposes of their claims, because Plaintiffs cannot pursue damages claims against federal agencies for alleged constitutional torts. The federal government has sovereign immunity from damages claims for constitutional torts. *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991) ("The courts lack subject matter jurisdiction to hear constitutional damage claims against the United States, because the United States has not waived sovereign immunity with respect to such claims."). Because Plaintiffs cannot show an entitlement to non-damages relief, their claims under the First, Fourth and Fifth Amendments must therefore be

dismissed.

**B.    Plaintiffs' First Amendment Claims Are Inadequate (Count 1).**

Even if Plaintiffs could establish standing to pursue injunctive relief against the Defendants for First Amendment violations, which they have not, Plaintiffs have not adequately alleged that they were the target of force because of their speech. To make out a claim of First Amendment retaliation, Plaintiffs must show that their First Amendment activity was a "substantial or motivating factor" in Defendants' conduct. *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300-01 (9th Cir. 1999). Moreover, "where demonstrations turn violent, they lose their protected quality as expression under the First Amendment." *Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972) (opinion by J. Marshall). As alleged in the FAC, the protests occurred around law enforcement operations or for the purpose of interfering with detention inside the federal buildings in downtown Los Angeles. *See* FAC ¶¶ 40-41, 79-81. As such, because the protests had turned violent, they were not engaged in a protected activity under the First Amendment. *See Grayned*, 408 U.S. at 116.

Moreover, Plaintiffs have failed to allege that any individual officer who used force at the protests acted with retaliatory intent. *See Puente v. City of Phoenix*, 123 F.4th 1035, 1063 (9th Cir. 2024) (concluding that there was "no triable issue that the dispersal of the crowd was undertaken with retaliatory intent"). And even if the FAC sufficiently made that allegation, which it does not, Plaintiffs have failed to allege any invidious intent can be attributed to DHS. Plaintiffs' conclusory assertion that DHS is engaged in a "policy, pattern, and practice of retaliating" does not raise a plausible inference that DHS sought to punish Plaintiffs for the First Amendment protected activity of newsgathering or protesting. Nor have Plaintiffs plausibly alleged an unwritten policy of "officially sanctioned" retaliation. *See Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014) (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1324 (9th Cir. 1985)); *see also Puente v. City of Phoenix*, 123 F.4th 1035, 1063 (9th Cir. 2024) (concluding that there was "no triable issue that the dispersal of the crowd was undertaken with retaliatory intent").[3]

_____

[3] In previous briefs, Plaintiffs have repeatedly relied on *Index Newspapers LLC v. U.S. Marshals Service*, 977 F.3d 817 (9th Cir. 2020). But in comparison, as alleged in the FAC, there is not a sustained "pattern of conduct that had persisted for weeks and was ongoing." *See id.* at 827-29 (noting at least 45 instances of targeted force against journalists over a 15-day period).

On their right-of-access claim, the FAC does not allege that Defendants denied any named Plaintiff access to any space, let alone access to a government proceeding, which is the focus of the right-of-access inquiry. Under *Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1 (1986) and *Leigh v. Salazar*, 677 F.3d 892 (9th Cir. 2012), Plaintiffs must show they have been denied access to a government process to which they have a right of access, which they can show only by establishing that "the place and process have historically been open to the press and general public," and that "public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 898. Plaintiffs' bare assertions do not satisfy any of those requirements.

As such, the First Amendment claim should be dismissed.

**C.      Plaintiffs' Claim For Fourth And Fifth Amendment Violations Fails (Count 2).**

The FAC asserts a single claim for violation of Plaintiffs' Fourth and Fifth Amendment "rights to bodily integrity and to be free from unreasonable force." FAC ¶ 285; *see also* ¶¶ 284-291. This claim is inadequate as to both the Fourth Amendment and Fifth Amendment.

1.      Plaintiffs' Fourth Amendment Claim Is Inadequate.

As noted above, Plaintiffs have sought only injunctive relief, including through their Fourth and Fifth Amendment claims. But as explained above, Plaintiffs lack standing to obtain such relief. It is well established that the "threatened injury" of future Fourth Amendment violations must be "*certainly impending*" and not merely "*possible.*" *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). But past incidents during the summer of 2025 do not confer standing to seek prospective injunctive relief. Nor does Plaintiffs' mere conjecture that they are "at risk of future harm," *see* FAC ¶¶ 264, 272, 274; *Lyons*, 461 U.S. at 102; *see id.* at 104 n.8 ("It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."). Plaintiffs have not asserted that there is a certainly impending threat that federal officers will continue this conduct in the future—even assuming that it was unconstitutional. As such, Plaintiffs lack standing to pursue injunctive relief.

Even assuming *arguendo* that Plaintiffs have standing to pursue a Fourth Amendment claim, their claim is not plausible on its face. Plaintiffs have not plausibly alleged a "seizure" within the meaning of the Fourth Amendment. *See Putente v. City of Phoenix*, 123 F.4th 1035, 1051-55 (9th Cir.

10

2024) (affirming denial of Fourth Amendment claim in the context of crowd control measures employed during protest of the President). Here, the allegations show that DHS sought to disperse, rather than restrain, Plaintiffs. The FAC does not contain any plausible allegation that Defendants restrained or confined Plaintiffs under the Fourth Amendment. *See Putente*, 123 F.4th at 1053 (finding that city's use of crowd dispersal measures was not a Fourth Amendment seizure).

Because Plaintiffs' use of force claim arose "outside the context of a seizure," the Ninth Circuit evaluates such claims under a "shocks-the-conscience test." *See id.* at 1055. A plaintiff can satisfy the shock-the-conscience requirement under one of two tests: deliberate-indifference or the purpose-to-harm. *See Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022). In situations such as the ones at issue in this case where the confrontations "escalated so quickly that the officer had to make a snap judgment," then the officer's use of force shocks the conscience only if the officer acted with a "purpose to harm the plaintiffs for reasons unrelated to legitimate law enforcement objections." *Putente*, 123 F.4th at 1055.

Plaintiffs' allegations are insufficient to plausibly allege excessive force under this standard. Plaintiffs' tale of events repeatedly glosses over the unique nature of the "protests" at issue in this case. Rather than a traditional organized protest, each of the events at issue here erupted in response to, or for the purpose of interfering with, lawful law enforcement actions. FAC ¶¶ 105-237. Plaintiffs' own allegations acknowledge the unique nature of the protests that formed in response and for the purpose of deterrence of lawful immigration enforcement activities by Defendants. *Id.* ¶¶ 40-41. While the FAC asserts that certain protestors were peaceful, they do not assert that all of the protesting crowds were peaceful and devoid of violence, vandalism, or other unlawful behavior. In fact, the FAC implicitly acknowledges the unique nature of the protests in response to and interfering with lawful law enforcement functions and various violent responses to the same. *See* FAC ¶¶ 40-41, 79-81. Moreover, the FAC also acknowledges that not all protesters remained peaceful. *See id.* ¶ 245. ("The use of chemical weapons is often not proportional to the needs of crowd control during civilian protests because the effects of using these devices indiscriminately impacts peaceful participants and bystanders even when carefully targeted at others"—"others" presumably being violent rioters.); *see also* June 10, 2025 DHS press release (with pictures, including rioters attacking a Border Patrol vehicle and graffiti

on U.S. Courts property stating "DEAD COPS" and "KILL ICE"), *supra* at footnote 1. The only meaningful inference one *can* make is that officers, facing riotous crowds, were "forced to make split-second judgments—in circumstances that [were] tense, uncertain, and rapidly evolving." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010). Federal officers made urgent decisions in a short time while facing large and agitated crowds in rapidly changing circumstances.

The purpose-to-harm test is satisfied in only "rare situations where the nature of an officer's deliberate physical contact such that a reasonable factfinder would conclude the officer intended to harm, terrorize, or kill." *See Porter v. Osborn,* 546 F.3d 1131, 1137-39 (9th Cir. 2008). Where an officer pursues other objectives such as an "arrest, self-protection, [or] protection of the public," there is no purpose to harm. *Ochoa*, 26 F.4th at 1056. The FAC contains no plausible allegations that this demanding test is satisfied. The foundation of the Fourth Amendment's protection is that it protects only against excessive force, not against all force. It cannot be disputed, for example, that officers may use force in response to protests that turn violent or where protestors refuse to obey lawful commands. For example, when police were dismantling an illegal tent city set up by protesters on the University of California at Berkeley campus, the Ninth Circuit rejected an excessive-force claim (there, for damages under Section 1983) brought by protesters who had been struck with batons and knocked over by hand while trying to block officers from dismantling the tents. *Felarca v. Birgeneau*, 891 F.3d 809, 818 (9th Cir. 2018). The officers were reasonable in using force because the government was not required to permit "organized lawlessness," and the protesters "substantially outnumbered" officers, "refused to obey the officers' commands to disperse," "shouted at the officers," and "engaged the officers in verbal and physical altercations." *Id.* (quoting *Jackson v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir. 2001)). And the Ninth Circuit's more recent decision in *Putente* establishes that officers do not violate the Fourth Amendment when using crowd control devices and less-lethal-munitions against violent crowds. 123 F.4th at 1053-55.

There is no merit to the suggestion that the use of crowd control methods alleged in the FAC inherently violate the Fourth Amendment. As discussed, the linchpin of Fourth Amendment excessive force claims in this context is whether officers had a "purpose to harm." *Putente*, 123 F.4th at 1055. Particularly when facing violent and potentially armed individuals, crowd control devices like those

used here are reasonable. *See id.* at 1053-55; *Bayer v. City of Simi Valley*, 43 F. App'x 36, 38 (9th Cir. 2002) (holding use of tear gas was reasonable against armed unstable individual who refused to surrender); *Forrester v. City of San Diego*, 25 F.3d 804, 805-07 (9th Cir. 1994) (holding pain compliance techniques on passive protesters not unreasonable to remove them); *Jackson*, 268 F.3d at 652 (holding threat and use of chemical irritant to disperse unruly crowd, where they were interfering with arrest, was not unreasonable); *United Steelworkers of Am. v. Milstead*, 705 F. Supp. 1426, 1430, 1437 (D. Ariz. 1988) (holding use of strong tear gas "for outdoor use only" on crowd gathered inside that had been throwing objects was not excessive force, even though innocent people were also inside). The FAC alleges injury resulting from force used during protests that have been well-established to have turned violent against federal personnel and property. Plaintiffs only decry their injuries yet fail to sufficiently provide context of the violent protestors attempting to interfere with lawful operations. Plaintiffs' allegations are insufficient to raise a plausible inference that the force used was undertaken with a "purpose to harm."

Therefore, Plaintiffs' Fourth Amendment claim should be dismissed.

### 2.    Plaintiffs' Fifth Amendment Claim Is Also Inadequate.

Plaintiffs allege that Defendants engaged in excessive force violating their right to substantive due process under the Fifth Amendment. FAC ¶¶ 284-291. "To violate the dictates of due process, the alleged conduct must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 49 (D.D.C. 2021), aff'd sub nom. *Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). However, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Id* at 50. Further, "a claim need not be certain to succeed under the more specific amendment to foreclose substantive due process analysis." *Id.* "'Substantive due process analysis is . . . inappropriate,' when a plaintiffs' claims are 'covered by' a more specific amendment." *Id.* "Thus, 'the more generalized notion of substantive due process' cannot provide a basis for relief in this case." *Id.*

13

1    Here, Plaintiffs' requested injunctive relief for claims arising under the Fourth and Fifth

2    Amendments. Their request for substantive due process analysis is inappropriate in that their claims are

3    specifically and adequately covered by the Fourth Amendment. *See Cnty. of Sacramento*, 523 U.S. at

4    833 (holding that the "'more-specific-provision' rule … simply requires that if a constitutional claim is

5    covered by a specific constitutional provision, the claim must be analyzed under the standard

6    appropriate to that specific provision, not under substantive due process."). For the reasons stated

7    previously, the Fifth Amendment claim should be dismissed because Plaintiffs are pursuing a Fourth

8    Amendment claim, which as the "explicit textual source of constitutional protection" forecloses relief

9    for a "more generalized notion of substantive due process." *Id.* (quoting *Graham v. Connor*, 490 U.S.

10    386 (1989). Therefore, Plaintiffs' Fifth Amendment claim must be dismissed.

11    **D.    Plaintiffs Fail To State A Claim Under The APA (Count 3).**

12    The FAC fails to identify final agency action that could be reviewed and vacated under the

13    APA. Only final agency action is reviewable under the APA. *See Bennett v Spear*, 520 U.S. 154, 177-

14    78 (1997). A court may set aside such final agency action that is "arbitrary, capricious, an abuse of

15    discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. In assessing whether an agency's

16    decision satisfies this standard, "[courts] ask whether the agency 'considered the relevant factors and

17    articulated a rational connection between the facts found and the choice made.'" *Natural Res. Def.*

18    *Council v. U.S. Dep't of the Interior*, 113 F.3d 1121, 1124 (9th Cir. 1997) (citation omitted). Under this

19    standard, "[t]he scope of [the Court's] review is narrow; … 'a court is not to substitute its judgment for

20    that of the agency.'" *Judulang v. Holder*, 565 U.S. 42, 52-53 (2011) (citation omitted).

21    For a district court to review an agency's action pursuant to 5 U.S.C. § 706(2), there must be a

22    "final agency action" that can be reviewed. Two conditions must be met for there to be a "final agency

23    action" sufficient for APA review: "First, the action must mark the consummation of the agency's

24    decision making process . . . it must not be of a merely tentative or interlocutory nature. And second,

25    the action must be one by which rights or obligations have been determined, or from which legal

26    consequences will flow." *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198-99 (9th Cir.

27    1998) (internal quotation and citations omitted); *see also FTC v. Standard Oil Co.*, 449 U.S. 232, 241

28    (1980) (action must be a definitive statement of the agency's position).

14

"[A]gency actions" reviewable under the APA must be "discrete" in nature. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) ("*SUWA*"). This requirement exists "to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve." *Cobell v. Norton*, 392 F.3d 461, 472 (D.C. Cir. 2004) (quoting *SUWA*, 542 U.S. at 66).

Here, there is no discrete, final agency action for the Court to review. In an attempt to survive a motion to dismiss, Plaintiffs have repackaged their constitutional claims as APA violations by asserting in conclusory fashion that Defendants have a "policy, pattern, and practice" in violation of the First and Fourth Amendments and 8 C.F.R. § 287.8. *See* FAC ¶¶ 292-303. But Plaintiffs have failed to identify an actual, discrete decision by the agency, let alone a final agency decision, that may be challenged under the APA. Simply characterizing the events of June-September 2025 as a "policy, pattern, and practice" does not show how they are not tentative or interlocutory in nature. *See City of Rialto v. W. Coast Loading Corp.*, 581 F.3d 865, 872 (9th Cir. 2009) ("the phrase 'pattern and practice' is not an automatic shortcut to federal court jurisdiction"). Because pattern-and-practice claims are—almost by definition—not discrete, courts have routinely dismissed such claims brought under the APA. *See Mary Ferrell Found., Inc. v. Biden*, 2023 WL 4551066, at *6 (N.D. Cal. July 14, 2023) ("averring a pattern and practice is generally insufficient to state a claim under the APA"); *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 303 F. App'x 517, 519 (9th Cir. 2008) ("These claims are not reviewable because, even if [plaintiff]'s allegations are true, any pattern, practice, or policy of the Forest Service that is inconsistent with the NFMA is not itself a final agency action within the meaning of the APA."). Fleeting uses of force are the definition of "tentative and interlocutory [in] nature." *Gallo Cattle Co.*, 159 F.3d at 1198-99. Nor does such a conclusory characterization identify a specific decision from "which rights or obligations have been determined." *See id.* As such, the APA claim should be dismissed.

### E.    The Declaratory Relief Claim Is Subject To Dismissal (Count 4).

Plaintiffs' claim for "declaratory relief" fails. *See* FAC at ¶¶ 304-306. Declaratory relief is not a cause of action in and of itself, but instead a type of relief. *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). The Declaratory Judgment Act does not provide an independent jurisdictional basis for suits in federal court; it only permits the district court to

15

adopt a specific remedy when jurisdiction exists. *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-74 (1950)). As the Supreme Court has held, "[t]he operation of the Declaratory Judgment Act is procedural only"; specifically, it "enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Id.* (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). Similarly, Federal Rule of Civil Procedure 65 provides the procedure for obtaining injunctive relief, and is not an independent basis for federal jurisdiction. *F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107, 1109 (9th Cir. 1982).

Because Plaintiffs have failed to satisfy the standing requirement for federal jurisdiction, their claim for declaratory relief fails for lack of jurisdiction. Furthermore, Plaintiffs assert that a "declaration by this Court would be useful[.]" FAC ¶ 306. But "being useful" is not a legal basis to sustain a cause of action against the United States. Regardless of whether Plaintiffs' other claims survive, the standalone claim for declaratory relief should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion and dismiss Plaintiffs' action.

Dated: October 30, 2025            Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
ANDREW I. WARDEN
KATHLEEN C. JACOBS
Civil Division, Federal Programs Branch

BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PAUL (BART) GREEN
Assistant United States Attorney

_____ /s/ Paul (Bart) Green _____
PAUL (BART) GREEN
Assistant United States Attorney

Attorneys for Defendants

L.R. 11-6.2 Certificate of Compliance

The undersigned counsel of record certifies that this brief contains 6,466 words, which complies with the word limit of L.R. 11-6.1, and fewer than 25 pages, which complies with the Court's Standing Order.

Dated: October 30, 2025                _____ /s/ Paul (Bart) Green _____
                                        Paul (Bart) Green

17

**L.R. 7-3 COMPLIANCE STATEMENT**

I, Paul (Bart) Green, declare and state as follows:

1.      I am an Assistant United States Attorney and am counsel for the defendants in this action. I submit this declaration in compliance with Local Rule 7-3. I make the following statements based on my personal knowledge. If called as a witness, I could and would competently testify thereto.

2.      On September 15, 2025, Kathleen C. Jacobs and I met and conferred telephonically with Plaintiffs' counsel, Matthew Borden, regarding Defendants' planned motion to dismiss the complaint in this action. In light of the meet and confer, on September 18, 2025, the parties filed a Stipulation for Scheduling Order for Plaintiffs' First Amended Complaint and Defendants' Response. ECF 56.

3.      On September 24, 2025, the Court entered an order granting the parties' stipulation for a scheduling order regarding Plaintiff's first amended complaint and Defendants' response. ECF 61.

4.       On October 3, 2025, Plaintiffs' counsel sent defense counsel a copy of Plaintiffs' draft first amended complaint.

5.      On October 9, 2025, Ms. Jacobs and I met and conferred telephonically with Plaintiff's counsel, Mr. Borden and Peter Bibring, regarding Defendants' planned motion to dismiss the first amended complaint and any potential resolution of the need for motion practice.

6.      During the telephone conference, Ms. Jacobs and I discussed the arguments in Defendants' planned motion to dismiss. On the phone call, Plaintiffs' counsel did not agree with Defendants' arguments or agree to dismiss the action.

7.      The parties were unable to reach a resolution that eliminates the necessity of Defendants' motion.

8.      On October 16, 2025, Plaintiffs filed the First Amended Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 30, 2025, at Santa Ana, California.

      */s/ Paul (Bart) Green*
      PAUL (BART) GREEN
      Assistant United States Attorney

18