1   Matthew Borden, Esq. (SBN: 214323)
        borden@braunhagey.com
2   J. Noah Hagey, Esq. (SBN: 262331)
        hagey@braunhagey.com
3   Kory J. DeClark, Esq. (SBN: 310571)
        declark@braunhagey.com
4   Greg Washington, Esq. (SBN: 318796)
        gwashington@braunhagey.com
5   BRAUNHAGEY & BORDEN LLP
    747 Front Street, 4th Floor
6   San Francisco, CA 94111
    Telephone: (415) 599-0210
7
    Kevin Opoku-Gyamfi, Esq.
8   (admitted *pro hac vice*)
        opokugyamfi@braunhagey.com
9   BRAUNHAGEY & BORDEN LLP
    200 Madison Avenue, 23rd Floor
10  New York, NY 10016
    Telephone: (646) 829-9403
11
    [Additional counsel on next page]
12
    *Attorneys for Plaintiffs*
13

    Peter J. Eliasberg, Esq. (SBN: 189110)
        peliasberg@aclusocal.org
    Jonathan Markovitz, Esq. (SBN: 301767)
        jmarkovitz@aclusocal.org
    Adrienna Wong, Esq. (SBN: 282026)
        awong@aclusocal.org
    Meredith Gallen, Esq. (SBN: 291606)
        mgallen@aclusocal.org
    Summer Lacey, Esq. (SBN: 308614)
        slacey@aclusocal.org
    Jacob Reisberg, Esq. (SBN: 329310)
        jreisberg@aclusocal.org
    Mohammad Tajsar, Esq. (SBN: 280152)
        mtajsar@aclusocal.org
    ACLU FOUNDATION OF SOUTHERN
    CALIFORNIA
    1313 W 8th Street, Ste 200
    Los Angeles, CA 90017
    Telephone: (213) 977-9500

    Peter Bibring, Esq. (SBN: 223981)
        peter@bibringlaw.com
    Law Office of Peter Bibring
    2210 W Sunset Blvd # 203
    Los Angeles, CA 90026
    Telephone: (213) 471-2022

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES PRESS CLUB, NEWSGUILD - COMMUNICATIONS WORKERS OF AMERICA, SEAN BECKNER-CARMITCHEL, RYANNE MENA, LEXIS-OLIVIER RAY, CHARLES XU, BENJAMIN ADAM CLIMER, ABIGAIL OLMEDA, and MARIA ALEJANDRA-PAZ, <br><br> Plaintiffs, <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary, Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; GREGORY BOVINO, in his official capacity as Chief Patrol Agent for the El Centro Sector of the U.S. Border Patrol; ERNESTO SANTACRUZ JR., in his official capacity as Acting Field Office Director for the Los Angeles Field Office, U.S. Immigration and Customs Enforcement; EDDY WANG, in his official capacity as | Case No. 2:25-CV-05563-HDV-E <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> **CLASS ACTION** <br><br> Date:       December 4, 2025 <br> Time:       10:00 a.m. <br> Judge:      Hon. Hernán D. Vera <br> Location:   Courtroom 5B, 5th Floor |

1  Special Agent in Charge for the Los Angeles
   Field Office of Homeland Security
2  Investigations; MARIO CANTON, in his
   official capacity as Regional Director for
3  Region 9 of the Federal Protective Service;
   KEVIN GREEN, in his official capacity as
4  Commander of the U.S. Customs and Border
   Protection, Office of Field Operations, Special
5  Response Team; and U.S. DEPARTMENT OF
   HOMELAND SECURITY,

6          Defendants.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  Additional Counsel of Record for Plaintiffs:

2  Carol A. Sobel, Esq. (SBN: 84483)
3      carolsobellaw@gmail.com
   Weston Rowland, Esq. (SBN: 327599)
4      rowlandweston@gmail.com
   Law Office of Carol A. Sobel
5  2632 Wilshire Boulevard, #552
   Santa Monica, CA 90403
6  Telephone: (310) 393-3055

7  Paul Hoffman, Esq. (SBN: 71244)
8      hoffpaul@aol.com
   Michael Seplow, Esq. (SBN: 150183)
9      mseplow@sshhzlaw.com
   John Washington, Esq. (SBN 315991)
10     jwashington@sshhzlaw.com
   Schonbrun, Seplow, Harris, Hoffman & Zeldes LLP
11 200 Pier Avenue, Suite 226
   Hermosa Beach, CA 90254
12 Telephone: (310) 396-0731

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 2

III.  LEGAL STANDARD .............................................................................................. 2

IV.   ARGUMENT.............................................................................................................. 3

    A.    Plaintiffs Have Standing ................................................................................. 3

        1.    Defendants' Ongoing Pattern and Policy of Misconduct Gives Rise to a
             Likelihood of Future Injury ....................................................................... 4

        2.    Plaintiffs Separately and Independently Have Standing Due to the Chilling
             Effects of Defendants' Pattern of Violence ................................................. 9

    B.    Plaintiffs Have Stated a First Amendment Claim................................................ 11

    C.    Plaintiffs Have stated a Fourth Amendment Claim.............................................. 12

    D.    Plaintiffs Have stated a Fifth Amendment Claim................................................. 16

    E.    Plaintiffs Have Stated a Claim under the APA..................................................... 20

    F.    Plaintiffs Have Stated a Claim for Declaratory Relief .......................................... 23

V.    CONCLUSION........................................................................................................... 24

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al Otro Lado, Inc. v. McAleenan*,
    394 F.Supp. 3d 1168 (S.D. Cal. 2019)..............................................................21, 23

*Alcaraz v. I.N.S.*,
    348 F.3d 1150 (9th Cir. 2004) .........................................................................21, 23

*Askins v. U.S. Dep't of Homeland Sec.*,
    899 F.3d 1035 (9th Cir. 2018) ................................................................................6

*Bayer v. City of Simi Valley*,
    43 F.App'x 36 (9th Cir. 2002) ..............................................................................18

*Berg v. Cnty. of Los Angeles*,
    No. CV 20-7870 DMG (PDX), 2021 WL 4691154 (C.D. Cal. May 28, 2021) ..........13

*Church of Scientology of California v. United States*,
    920 F.2d 1481 (9th Cir. 1990) ..............................................................................21

*City of Rialto v. W. Coast Loading Corp.*,
    581 F.3d 865 (9th Cir. 2009) ................................................................................21

*Clark v. City of Lakewood*,
    259 F.3d 996 (9th Cir. 2001) ................................................................................24

*Cnty. of Sacramento v. Lewis*,
    523 U.S. 833 (1998).............................................................................16, 17, 20

*Cobell v. Norton*,
    392 F.3d 461 (D.C. Cir. 2004) ..............................................................................21

*Deorle v. Rutherford*,
    272 F.3d 1272 (9th Cir. 2001) ..............................................................................13

*Dietary Supplemental Coal., Inc. v. Sullivan*,
    978 F.2d 560 (9th Cir. 1992) ................................................................................20

*Edrei v. Maguire*,
    892 F.3d 525 (2d Cir. 2018) .................................................................................19

*Eggar v. City of Livingston*,
    40 F.3d 312 (9th Cir. 1994) ...................................................................................7

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Est. of Soakai v. Abdelaziz,*
  137 F.4th 969 (9th Cir. 2025) ................................................................... 20

*F.C.C. v. Fox Television Stations, Inc.,*
  556 U.S. 502 (2009).................................................................................. 21

*Felarca v. Birgeneau,*
  891 F.3d 809 (9th Cir. 2018) ................................................................... 18

*Forrester v. City of San Diego,*
  25 F.3d 804 (9th Cir. 1994) ..................................................................... 18

*Gallo Cattle Co. v. U.S. Dep't of Agric.,*
  159 F.3d 1194 (9th Cir. 1998) ................................................................. 22

*Gov't Emps. Ins. Co. v. Dizol,*
  133 F.3d 1220 (9th Cir. 1998) ................................................................. 24

*Graham v. Connor,*
  490 U.S. 386 (1989).................................................................................. 16

*Graves v. Arpaio,*
  623 F.3d 1043 (9th Cir. 2010) ................................................................. 11

*Hal Roach Studios, Inc. v. Richard Feiner & Co.,*
  896 F.2d 1542 (9th Cir. 1989) ................................................................... 3

*Headwaters Forest Def. v. Cnty. of Humboldt,*
  276 F.3d 1125 (9th Cir. 2002) ................................................................. 14

*Hodgers-Durgin v. de la Vina,*
  199 F.3d 1037 (9th Cir. 1999) .............................................................. 3, 7

*Index Newspapers LLC v. United States Marshals Serv.*
  977 F.3d 817 (9th Cir. 2020) ............................................................ passim

*Jones v. City of Los Angeles,*
  No. 2:20-CV-11147-SVW-SK, 2022 WL 2062920 (C.D. Cal. Feb. 16, 2022) .................... 16, 17

*LaDuke v. Nelson,*
  762 F.2d 1318 (9th Cir. 1985) .............................................................. 5, 13

*Lee v. City of Los Angeles,*
  250 F.3d 668 (9th Cir. 2001) ................................................................... 17

*Leigh v. Salazar,*
  677 F.3d 892 (9th Cir. 2012) ..................................................................... 6

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Libertarian Party of Los Angeles Cnty v. Bowen,*
  709 F.3d 867 (9th Cir. 2013) ................................................................................................ 9

*Los Angeles Cnty. Bar Ass'n v. Eu,*
  979 F.2d 697 (9th Cir. 1992) ............................................................................................. 24

*LSO, Ltd. v. Stroh,*
  205 F.3d 1146 (9th Cir. 2000) ............................................................................................. 2

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992)......................................................................................................... 2, 4

*Mary Ferrell Found., Inc. v. Biden*
  No. 22-CV-06176-RS, 2023 WL 4551066 (N.D. Cal. July 14, 2023) ........................ 21

*Mendocino Env't Ctr. v. Mendocino Cnty.,*
  192 F.3d 1283 (9th Cir. 1999) ........................................................................................... 11

*Morton v. Ruiz,*
  415 U.S. 199 (1974)........................................................................................................... 21

*Murphy v. Kenops*,
  99 F. Supp. 2d 1255 (D. Or. 1999) ...................................................................................... 7

*Navajo Nation v. Dep't of the Interior*,
  876 F.3d 1144 (9th Cir. 2017) .......................................................................................... 20

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) .............................................................................................. 3

*Nelson v. City of Davis,*
  685 F.3d 867 (9th Cir. 2012) ...................................................................................... 13, 14

*Noem v. Perdomo,*
  2025 WL 2323447 (U.S. 2025) ........................................................................................... 7

*Nordstrom v. Ryan*,
  762 F.3d 903 (9th Cir. 2014) ......................................................................................... 6, 13

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004)............................................................................................................ 21

*Oregon Nat. Desert Ass'n v. U.S. Forest Serv.,*
  303 F.App'x 517 (9th Cir. 2008) ...................................................................................... 21

*Oregon Nat. Desert Ass'n v. U.S. Forest Serv.,*
  465 F.3d 977 (9th Cir. 2006) ........................................................................................... 20

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*O'Shea v. Littleton,*
   414 U.S. 488 (1974)..................................................................................................... 7

*PAE Gov't Servs., Inc. v. MPRI, Inc.,*
   514 F.3d 856 (9th Cir. 2007) .................................................................................... 16

*Porter v. Martinez,*
   68 F.4th 429 (9th Cir. 2023) ..................................................................................... 11

*Principal Life Ins. Co. v. Robinson,*
   394 F.3d 665 (9th Cir. 2005) .............................................................................. 23, 24

*Puente v. City of Phoenix,*
   123 F.4th 1035 (9th Cir. 2024) ........................................................................ passim

*Robinson v. Solano Cnty.,*
   278 F.3d 1007 (9th Cir. 2002) .................................................................................. 15

*Sanderlin v. Dwyer,*
   116 F.4th 905 (9th Cir. 2024) ................................................................................... 14

*Sexton v. Faris,*
   No. 22-CV-1927-WJM-MEH, 2024 WL 4201603 (D. Colo. Sept. 16, 2024) ............................ 19

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016).................................................................................................... 4

*Steffel v. Thompson,*
   415 U.S. 452 (1974).................................................................................................... 3

*Tekle v. United States,*
   511 F.3d 839 (9th Cir. 2007) .................................................................................... 15

*Thomas v. Cnty. of Humboldt, Cal.,*
   124 F.4th 1179 (9th Cir. 2024) ................................................................................... 2

*Tohono O'odham Nation v. United States Dep't of the Interior,*
   138 F.4th 1189 (9th Cir. 2025) ................................................................................... 3

*Torres v. Madrid,*
   592 U.S. 306 (2021).................................................................................................. 16

*Torres v. United States Dep't of Homeland Sec.,*
   411 F.Supp.3d 1036 (C.D. Cal. 2019) ...................................................................... 23

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
   578 U.S. 590 (2016)............................................................................................ 20, 23

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*United States ex. rel. Accardi v. Shaughnessy*
  347 U.S. 260 (1954)...................................................................................... 20, 21, 23

*United States v. Jacobsen,*
  466 U.S. 109 (1984) ............................................................................................. 14

*United Steelworkers of Am. v. Milstead,*
  705 F. Supp. 1426 (D. Ariz. 1988) ..................................................................... 18

*Villa v. Maricopa Cnty.,*
  865 F.3d 1224 (9th Cir. 2017) .............................................................................. 6

*Wooley v. Maynard,*
  430 U.S. 705 (1977)............................................................................................... 3

*Young v. Cnty. of Los Angeles,*
  655 F.3d 1156 (9th Cir. 2011) ............................................................................ 14

**Statutes**

5 U.S.C. § 704........................................................................................................ 20
8 U.S.C. § 1357(a) ................................................................................................ 22
28 U.S.C. § 2201(a) .............................................................................................. 23

**Rules**

Fed. R. Civ. P. 8(d)(2), (3)................................................................................... 16
Fed R. Civ. P. 12(b)(1) ........................................................................................... 3
Ninth Cir. Rule 36-3 ............................................................................................. 18

**Regulations**

C.F.R. § 287.8(a) ........................................................................................... 22, 23

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

## I.    INTRODUCTION

Vedic teachings, Friedrich Nietzsche, and Lucy, Charlie Brown and the football all hold that events are destined to eternally recur.[1] Litigation, however, should progress linearly toward a denouement—precedent builds on itself, cases move forward, and courts do not have to repeatedly decide the same questions in the same case.

Defendants' Motion to Dismiss mainly repeats the same arguments the Court rejected in holding that Plaintiffs were likely to succeed on the merits in their motion for a preliminary injunction. Under the Rule 12(b)(6) standard, the Court takes everything alleged in the complaint as true and must only find the allegations plausible enough such that a trier of fact could find in Plaintiffs' favor. The First Amended Complaint ("FAC") incorporates as factual allegations the "avalanche of evidence" before the Court on the preliminary injunction motion. So under the more liberal Rule 12 standard, Plaintiffs should *a fortiori* win as to Defendants' arguments as to standing, retaliation, and right-of-access for the same reasons this Court has already given.

The only new arguments in Defendants' motion relate to Plaintiffs' Fourth and Fifth Amendment, Administrative Procedure Act ("APA"), and declaratory relief claims. Those arguments lack merit. The repeated acts of gratuitous violence alleged in the FAC constitute unreasonable seizures under established Ninth Circuit law. The Fifth Amendment claim alternatively pleads a substantive due process claim based on specific allegations of conduct that "shocks the conscience" and should not be dismissed. The APA claim identifies final agency actions that violate many of the agency's own regulations, and the declaratory relief claim easily establishes an ongoing controversy between the parties that the Court should resolve.

Throughout their motion, Defendants ignore and misstate the FAC allegations and draw on "facts" from their own press releases. Even if this material were appropriate to consider on a Rule 12(b)(6) motion, which it is not, the Court should only consider doing so after taking judicial notice that Defendants have published misleading and doctored videos about the national protests over ICE raids that includes using footage from Chicago to make false claims about protesters in

---

[1] THUS SPAKE ZARATHUSTRA, Pt. 3; Charles Schultz, *Peanuts* (United Features Syndicate, 1950).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Portland and claiming that footage from more than a year ago captures current events.[2] At the same time, Defendants maintain that they have no animus against protesters and should be allowed to exclude the free press from covering these events, which would ensure that their videos are the only portrayal of these important events. Those arguments are misguided for all the reasons the Court has already detailed. For all those reasons, Defendants' motion should be denied.

## II.    BACKGROUND

The facts and allegations in this case are well known to the Court because it issued a 45-page Opinion and Order granting Plaintiffs' motion for a preliminary injunction based on "the avalanche of evidence before the Court." (Dkt. 55 at 33.) After the Court issued the preliminary injunction, Plaintiffs filed the FAC, which adds factual allegations based on all the declarations that the Court considered in granting the preliminary injunction and additional allegations about violence meted out by DHS against journalists and protesters after the Court heard argument on the preliminary injunction. It further adds class allegations, which Defendants do not challenge on this motion; allegations that Defendants engage in unconstitutional viewpoint discrimination and maintain policies, patterns, and practices of violating the First Amendment rights to protest and record federal agents' official conduct (FAC ¶¶ 91-104, 276-282), which Defendants also do not challenge; and claims for violation of the APA (FAC ¶¶ 292-303).

## III.    LEGAL STANDARD

"At the motion to dismiss stage," both for facial challenges to standing under Rule 12(b)(1) and challenges to the legal sufficiency of claims under Rule 12(b)(6), "allegations of material fact in the complaint are taken as true and construed in the light most favorable to Plaintiffs." *Thomas v. Cnty. of Humboldt, Cal*., 124 F.4th 1179, 1186 (9th Cir. 2024) (cleaned up). "A plaintiff needs only to plead general factual allegations of injury in order to survive a motion to dismiss, for '[courts] presume that general allegations embrace those specific facts that are necessary to support the claim.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1156 (9th Cir. 2000) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "Dismissal is proper only where there is no cognizable legal theory or

---

[2] Drew Harwell & Joyce Sohyun Lee, *We Checked DHS's Videos of Chaos and Protests. Here's What They Leave Out*, WASH POST, Oct. 29, 2025.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  an absence of sufficient facts alleged to support one." *Navarro v. Block*, 250 F.3d 729, 732 (9th

2  Cir. 2001). Except in limited circumstances not present here, a "district court may not consider any

3  material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v.*

4  *Richard Feiner & Co.*, 896 F.2d 1542, 1555 (9th Cir. 1989).

5  **IV.    ARGUMENT**

6      Plaintiffs have already met the heavier burden of demonstrating standing and a reasonable

7  likelihood of success on their First Amendment claims for the purposes of a preliminary injunction.

8  Because the FAC incorporates the key information the Court relied on in reaching its findings to

9  support the preliminary injunction as allegations, it necessarily follows that Plaintiffs have met

10 their burden to plead a plausible claim necessary to avoid dismissal. *See Tohono O'odham Nation v.*

11 *United States Dep't of the Interior*, 138 F.4th 1189, 1202 (9th Cir. 2025).

12      **A.    Plaintiffs Have Standing[3]**

13      To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that

14 is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

15 by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A plaintiff

16 establishes an injury in fact when they show that they suffered "an invasion of a legally protected

17 interest" that is "concrete and particularized." Id. at 339 (quoting *Lujan*, 504 U.S. at 560). Plaintiffs

18 have Article III standing because, as the FAC alleges, each Plaintiff and several members of the

19 Plaintiffs organizations have suffered a concrete physical injury caused by DHS's challenged

20

21 [3] Defendants conflate the jurisdictional question of whether Plaintiffs have Article III standing with
   the equitable question of whether plaintiffs have standing to seek prospective injunctive relief. *See*

22 *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1041-42 (9th Cir. 1999) (distinguishing). A Rule
   12(b)(1) motion to dismiss is properly directed at questions of subject matter jurisdiction only. In

23 any event, the facts pleaded in the FAC establish that Plaintiffs both have standing and satisfy the
   considerations for injunctive relief. *See Hodgers-Durgin,* 199 F.3d. at 1045 (discussing *Wooley v.*

24 *Maynard*, 430 U.S. 705 (1977)). Moreover, the operative Complaint seeks not only injunctive
   relief, but also declaratory relief and relief under the Administrative Procedure Act – remedies not

25 addressed by Defendants' specific arguments about standing to seek an injunction.  By not
   addressing whether Plaintiffs have standing to seek declaratory relief, Defendants have waived the

26 argument that Plaintiffs' claim for declaratory relief should be dismissed under FRCP 12(b)(1)
   because the legal standards governing declaratory relief are not the same as those governing

27 injunctive relief.  *See Steffel v. Thompson*, 415 U.S. 452, 466-67 (1974).

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    conduct, see FAC ¶¶ 111-115, 140-143, 150-154, 167-168, 182, 192-196, 209-213, 221, 226-237,

2    and each has also suffered a related "invasion of" their First Amendment rights that is likely to be

3    redressed by a favorable decision in this case. *See infra*, Section IV.B at 11-12.

4         Defendants repeat the same standing arguments the Court rejected at the preliminary

5    injunction stage (Dkt. 55 at 22-27) and in their motion to stay (Dkt. 74 at 5-9; Mot. at 5-8.)

6    Defendants argue that Plaintiffs lack standing to assert claims for injunctive relief because they fail

7    to show that they face a realistic threat of future injury. *Id*. But as this Court already found,

8    Plaintiffs proved a realistic likelihood of recurrent injury and ongoing, adverse effects of their past

9    injuries, including chilling effects on their First Amendment exercise—distinguishing this case

10   from *Lyons* on both grounds. (Dkt. 55 at 22-26; Dkt. 74 at 5.) The FAC's allegations are based on

11   the evidence Plaintiffs proffered to reach those findings. (*See, e.g.*, FAC ¶¶ 93-104 (alleging an

12   unconstitutional policy, pattern, and practice of retaliating against First Amendment protected

13   recording and reporting activity; ¶¶ 105-229 (alleging sustained pattern of DHS attacks on named

14   plaintiffs, class representatives, and members of the Plaintiff press organizations).)

### 1.   Defendants' Ongoing Pattern and Policy of Misconduct Gives Rise to a Likelihood of Future Injury

16        Defendants are incorrect that Plaintiffs' past injuries do not show a likelihood of future

17   injury. As this Court correctly reasoned, the Ninth Circuit "unequivocally and forcefully rejected"

18   Defendants' contention that Plaintiffs "have not established that their injuries are likely to recur" in

19   *Index*, which found that the "'risk of future injury [was] not speculative,' where an 'ongoing,

20   sustained pattern of conduct . . . resulted in numerous injuries to members of the press' since the

21   action was filed." (Dkt. 55 at 23 (quoting *Index Newspapers LLC v. United States Marshals Serv.*,

22   977 F.3d 817, 826 (9th Cir. 2020)).) The Court noted that, "as in *Index Newspapers*, some Plaintiffs

23   were indeed injured more than once." *Id*. (citing allegations from the Mena, Beckner-Carmitchel,

24   and Ray Declarations-- incorporated into the FAC at ¶¶ 105-172.)

25        Contrary to Defendants' claims, Plaintiffs have not merely "asserted" that Defendants have

26   a "pattern, policy, and practice" of retaliating and using unlawful force. (Mot. at 8 (citing FAC ¶

27   5).) Instead, they compiled an overwhelming record that provided the basis for the Court's findings

28

in granting a preliminary injunction and for the allegations in the Complaint, including "detailed
and credible declarations from nearly 50 journalists, legal observers, and protestors" and two
unrebutted expert declarations that established the existence of, and that certainly allow them to
plausibly allege, such a pattern, policy, and practice. (Dkt. 74 at 2.)

As the Court correctly held, the Ninth Circuit explained in *Index* that Defendants' sustained
pattern of misconduct makes this a fundamentally different case than *Lyons* because "'the
possibility of recurring injury ceases to be speculative when actual repeated incidents are
documented.'" *Id*. (quoting *Index*, 977 F.3d at 826); *see also LaDuke v. Nelson*, 762 F.2d 1318,
1324 (9th Cir. 1985), amended, 796 F.2d 309 (9th Cir. 1986) ("The Supreme Court has repeatedly
upheld the appropriateness of federal injunctive relief to combat a 'pattern' of illicit law
enforcement behavior.") (citing cases).

And Plaintiffs have, in fact, alleged more than a "pattern" of illicit law enforcement
behavior. They have also plausibly alleged that this pattern has been officially sanctioned at the
highest levels of DHS, including by Defendants Noem, Lyons, and Bovino, such that it must be
understood as official policy. (FAC ¶¶ 17-24, 42-44, 46; *see also id.* ¶¶ 51, 61-67, 74-77, 82
(specifically alleging ratification)). These Defendants see the operation that they launched against
protesters and journalists in Chicago as an extension of their Los Angeles operations. (*Id.*
¶ 88.) As part of their Chicago operations, Defendants Noem and Bovino have egged on ICE and
CBP agents, encouraging them to continue "going hard" at protesters for their protected speech.
(*Id.* ¶ 90.) DHS has also consistently treated protected First Amendment activity as acts of violence
warranting a violent response. (*Id.* ¶ 93.) For example, DHS issued an internal bulletin on June 14,
2025, that identified "livestreaming . . . interactions [with officers]" and videorecording at protests
as "unlawful civil unrest" tactics and "threats." (*Id.* ¶¶ 94, 97 (DHS Assistant Secretary for Public
Affairs stating that "videotaping ICE law enforcement and posting photos and videos of them inline
is doxing our agents" and will result in prosecution).) Defendant Noem has referred to "videotaping
[ICE] agents" . . . when they're out on operations" as acts of "violence." (*Id.* ¶ 95.) DHS has even
taken the position in court that recording and livestreaming law enforcement activity, which is
protected under the First Amendment, is dangerous activity sufficient to prevent a journalist from

being released under an immigration judge's bond order. (*Id.* ¶ 96.) This policy constitutes a legal injury to establish standing because it violates the First Amendment. *See Leigh v. Salazar*, 677 F.3d 892, 898 (9th Cir. 2012) ("[T]he Supreme Court has long recognized a qualified right of access for the press and public to observe government activities."); *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018) ("The First Amendment protects the right to photograph and record matters of public interest."). Together, these allegations make clear that the Court was correct to determine that the record (or the FAC) shows that "Defendants' practice of meeting First Amendment protected activities with force" has been ratified by Defendant Noem (and others). (Dkt. 55 at 34.)

Because Plaintiffs have plausibly alleged that their injuries are "part of a pattern of officially sanctioned behavior, violative of the plaintiffs' federal rights," they have established the likelihood of future injury necessary to confer standing. *Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014) (citation modified). The Court has repeatedly and correctly rejected Defendants' contention that Plaintiffs do not have standing because they have not demonstrated that they themselves will suffer further injury. (Mot. at 8.) As the Court has explained, Plaintiffs documented their own, often repeated injuries, and proffered evidence that Defendants had injured others "engaged in similar protected activity." (Dkt. 55 at 24.) And the declaration information the Court relied upon when referring to these injuries has been incorporated as allegations in the FAC. At the preliminary injunction stage, Defendants objected to Plaintiffs' reliance on injuries suffered by people who are not parties to this case, but the Court correctly determined that "[a]t any rate, the experience of other journalists, legal observers, and protesters bears directly on the operative question of whether Plaintiffs 'will again be wronged in a similar way.'" (*Id.* (quoting *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1229 (9th Cir. 2017)). Now, the FAC asserts unchallenged class allegations on behalf of those individuals. (FAC ¶¶ 256-74.) It also incorporates new allegations that Defendants again attacked journalist members of Plaintiff Los Angeles Press Club (LAPC) recently. (FAC ¶¶ 10, 123-130, 227-237.)

The FAC makes clear that DHS has declared open season on protesters, journalists, and legal observers, and as the Court has rightly determined, "[i]mmigration raids in Southern

California will undoubtedly continue" and "Plaintiffs attest that they intend to continue their activities as reporters, legal observers, and protestors." (*Id*. at 33, 24 (citing information from declarations of Beckner-Carmitchel, Mena, Ray, Climer, and Olmeda that has been incorporated as allegations in FAC ¶¶ 106-131, 132-156, 157-172, 185-199, and 200-205)).[4] As the Court determined, one crucial way that this case is different from *Lyons* is that Plaintiffs cannot avoid further injury by "avoid[ing]. . . illegal conduct" as they "were injured engaging in innocent activities" and have established that they will likely be injured again as they continue to engage in those activities, so "'no string of contingencies [is] necessary to produce an injury.'" (*Id*. at 24-25 (quoting *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1041 (9th Cir. 1999)).[5]

The Court correctly determined that Plaintiffs' plans to continue engaging in these innocent activities by "attending and covering the very protests where Defendants target or fire indiscriminately upon peaceful protestors, legal observers" also distinguishes this case from *Noem v. Vasquez Perdomo*, where Justice Kavanaugh wrote in a concurring opinion that the plaintiffs "'ha[d] no good basis to believe that law enforcement will unlawfully'—or imminently—'stop *them* in the future,' as opposed to 'any other citizen of Los Angeles.'" (Dkt. 74 at 7 (quoting *Vasquez Perdomo*, 2025 WL 2585637 at *2 (U.S. 2025) (Kavanaugh, J., concurring)); FAC ¶ 105 ("Plaintiffs/Class Representatives intend to continue attending protests and exercising their rights to videorecord, observe, speak, and assemble")). As the Court determined, Plaintiffs here have every reason to believe that they will be subjected to further DHS violence in the future, absent an injunction, because they intend to keep attending or covering protests, and DHS has a pattern of

---

[4] The Court also cited the Government's Appl. To Stay, *Noem v. Vazquez Perdomo*, 2025 WL 2323447, at *iii-2 ("Given the Administration's commitment to enforcing the Nation's immigration laws – under which illegal aliens are subject to investigative stops and detention to facilitate removal – it should be no surprise that the Los Angeles area is a top enforcement priority.") to establish that immigration raids will continue in the area. Dkt. 55 at 24 n.12.

[5] Because Plaintiffs' claims arise from injuries they suffered while engaging in activity protected by the First Amendment without ever being subject to arrest or entangled in the criminal legal system, this case is also distinguishable from *O'Shea v. Littleton*, 414 U.S. 488, 495(1974), and *Eggar v. City of Livingston,* 40 F.3d 312, 317 (9th Cir. 1994), and *Murphy v. Kenops*, 99 F. Supp. 2d 1255, 1257 (D. Or. 1999). In none of these cases did plaintiffs allege that they planned to protest at sites where there was a pattern or practice of officers' assaulting protesters, and where it would be impossible to avoid injury by simply avoiding engaging in illegal activity.

targeting or firing indiscriminately upon peaceful protests, legal observers, and journalists, at those protests. *Id.* Plaintiffs are different from random Los Angeles residents because they "have made clear that they will be at the events where" DHS illegal use of force "is alleged to occur." (*Id.*) Once there, they have no way to avoid injury at DHS hands as "Defendants have fired on Plaintiffs even when they were far from the center of protest activity." (*Id.*)

Defendants attempt to relitigate their argument that the injuries to Plaintiffs happened too long ago to establish the likelihood of future harm, even though the Court has squarely rejected it, and even though Plaintiffs have provided new evidence or allegations of DHS brutality and retaliation with virtually every new substantive filing or round of briefing. When the Court denied the stay that Defendants requested, it noted that "Defendants cavil that the alleged injuries 'occurred over two months ago.'" (Dkt. 74 at 8.) "As the Court explained, however, Plaintiffs introduced evidence of additional injuries to themselves and other similarly-situated journalists, legal observers, and protestors 'between the date the complaint was filed' and the TRO denied 'and the date the district court entered its preliminary injunction.'" (*Id.* (quoting *Index Newspapers*, 977 F.3d at 826, and citing PI Order, Dkt. 55 at 24 n.3)).

When the Court issued the preliminary injunction in September 2025, it determined that Plaintiffs had established a likelihood of future injury based on the fact that immigration raids would continue in the region and that Plaintiffs would continue to show up to protest sites where DHS officers had a pattern or practice of brutalizing protestors, journalists and legal observers. (Dkt. 55 at 24.) The Court rightly declined to require additional evidence that future injury was likely six weeks later when Defendants sought to stay the preliminary injunction, noting that the Ninth Circuit had not required "fresher evidence of plaintiffs' standing when considering whether to stay the preliminary injunction in *Index Newspapers*, 977 F.3d at 826 and Defendants have not cited (and this Court has not found) any case requiring plaintiffs to produce evidence of injury post-dating the preliminary injunction in order to oppose its stay." (Dkt. 74 at 8.) The Court explained that requiring Plaintiffs to prove that DHS had harmed them once the injunction was in place seemed "absurd" given that "such fresh injuries are precisely what this Court's PI Order [was] designed to *prevent*." (*Id.* (original italics).) That reasoning remains persuasive. If Plaintiffs had no

evidence of more recent injuries and unlawful DHS violence, that would only suggest that the

injunction was effective, not that Plaintiffs would be safe without it.

Even so, Plaintiffs *have* alleged "fresh" DHS violence in their amended Complaint. For

example, the FAC incorporates allegations that Defendants hit journalists who are Plaintiffs or

members of Plaintiff LAPC on August 30 and September 1 with pepper balls and OC spray—after

the Court heard argument on the motion for Preliminary Injunction—when they were peacefully

attempting to cover protests against ICE in downtown Los Angeles. (FAC ¶¶ 10, 123-30, 227-237.)

And one of those journalists was hit by chemical weapons fired by DHS on two different days

when she was exercising her First Amendment rights as a journalist. (*Id.* ¶¶ 227-35.) If Defendants

could act so brazenly even as the Court was contemplating issuing its injunction, Plaintiffs surely

have ample reason to fear what would happen in its absence.

### 2. Plaintiffs Separately and Independently Have Standing Due to the Chilling Effects of Defendants' Pattern of Violence

In their Motion, Defendants do not address that the Court correctly distinguished this case

from *Lyons* by noting that "'First Amendment injuries "sharply differ[] from the substantive due

process injury asserted in *Lyons*.'" (*Id.* at 25 (quoting *Index Newspapers*, 977 F.3d at 826).) The

Court recognized that, under *Index* and related cases, a "chilling of First Amendment rights can

constitute a cognizable injury, so long as the chilling effect is not 'based on a fear of future injury

that itself [is] too speculative to confer standing.'" (*Id.* at 25.) *See also Libertarian Party of Los

Angeles Cnty v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (First Amendment cases "present unique

standing considerations" such that "the inquiry tilts dramatically toward a finding of standing.").

And the Court correctly determined that Plaintiffs have established that their First Amendment

rights have, in fact, been chilled, as they have limited their First Amendment activities both

because of the likelihood of future harm and because of their past injuries. (*Id.* at 25-26, 26 n.15

(citing Mena and Ray declarations addressing their limited ability to continue their reporting

because of DHS violence).) The FAC alleges the same information relied upon by the Court in

making that determination. (FAC ¶¶ 155-156, 170-171.)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Moreover, Defendants' assertion that Plaintiffs have not alleged that they will be harmed at protests going forward, Mot. at 8, mischaracterizes the FAC and fails to acknowledge that First Amendment chill is a cognizable injury. *Index*, 977 F.3d at 837-38 (holding that the chill on plaintiffs' First Amendment rights because of wounds they sustained as bystanders at protests "unquestionably constitute[d] irreparable injury"). Defendants are also simply wrong when they claim that "only one of the seven individual Plaintiffs specifically alleges that she will even attend protests in the future." (Mot. at 8.) Instead, the individual Plaintiffs here have alleged that their First Amendment activities have been chilled, and they *all* either plan to attend future protests or have decided not to only because they do not want to risk being subjected to further DHS violence. (*See. e.g.*, FAC ¶131 (Plaintiff Beckner-Carmitchel is "continuing to cover the protests of immigration raids, including by photographing and videorecording agents with his camera and phone, in Southern California because he believes what is going on is an important story" but because he was "injured by DHS repeatedly at protests" he is "concerned for his safety."); ¶ 184 (Plaintiff Paz "has decided to express herself through digital advocacy rather than by engaging in protests on the streets because" the DHS violence she was subjected to, including being exposed to tear gas, pepper balls, and flash-bang grenades and being hit by a series of projectile weapons, "made her afraid to engage in traditional forms of protest." She would, however, "physically protest in the streets more often" if she thought she could do so safely without risking the same kinds of injury she suffered while protesting near Roybal/MDC); ¶ 156 (Plaintiff Mena); ¶¶170-171 (Plaintiff Ray); ¶ 214 (Plaintiff Olmeda); ¶ 13 (Plaintiff Xu); ¶ 14 (Plaintiff Climer)).

Defendants' assertion that Plaintiff Paz cannot establish future injury sufficient to overcome *Lyons* because "she alleges that she will *not* attend future protests" is especially jarring because the only reason this is true is that Defendants' brutality has traumatized her and given her good cause to fear for her safety wherever their agents are present. The Court has rightly recognized that this type of First Amendment chill can constitute a cognizable injury sufficient to confer standing. Dkt. 55 at 25 (citing *Index*, 977 F.3d at 826; *Porter v. Martinez*, 68 F.4th 429, 437 (9th Cir. 2023), cert. denied, 144 S. Ct. 1007 (2024)). If this were not the case, Defendants could ensure that no one had standing by ratcheting up their brutality to the point where it would be irrational for anyone to

consider attending future protests. Fortunately, case law does not require people who have been

victimized by ongoing patterns or practices of wanton violence to once again place themselves in

harm's way before seeking equitable relief to stop that violence. The Court also rightly determined

that First Amendment chill can exist even for Plaintiffs like Beckner-Carmitchel, Mena, and Ray,

who continue to engage in protected activities, noting that "Plaintiffs need not show that their

speech was "actually inhibited or suppressed," as "'it would be unjust to allow a defendant to

escape liability for a First Amendment violation merely because an unusually determined plaintiff

persists in his protected activity[.]'" *Id*. at 28-29 (quoting *Mendocino Env't Ctr. v. Mendocino

Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

### B.    Plaintiffs Have Stated a First Amendment Claim

The FAC contains First Amendment claims against Defendants for engaging in viewpoint

discrimination, retaliation, infringing on the First Amendment rights to record federal agents'

official conduct and to protest, and violating reporters' and legal observers' right of access.

Defendants only move to dismiss Plaintiffs' First Amendment claims to the extent they allege

retaliation and denial of journalists' and legal observers' right of access to protests. Because

Defendants fail to address Plaintiffs' other alleged First Amendment theories, the Court can deny

the motion to dismiss the First Cause of Action on that basis alone.[6] Defendants' bid to dismiss

Plaintiffs' First Amendment claims does not raise any argument that the Court has not already

rejected. (Mot. at 9-10.) Defendants argue that the right of access should not attach to a protest

when they unilaterally declare that it has "turned violent" and that "the FAC does not allege that

Defendants denied any named Plaintiff access to any space, let alone access to a government

proceeding, which is the focus of the right-of-access inquiry." (Mot. at 10.) These are the same

arguments that the Ninth Circuit rejected in *Index*, in upholding an injunction that prohibited DHS

from dispersing journalists and legal observers after the Portland police had declared an unlawful

assembly. 977 F.3d at 830 ("Portland's streets and sidewalks—and the process—public protests

and law enforcement's response to them—have historically been open to the public."). This Court

---

[6] Defendants cannot raise new arguments against these claims for the first time in reply. *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (per curiam).

likewise already expressly rejected both these arguments in its Order denying Defendants' stay

motion, where it explained:

> The process in question is properly understood as "public protests
> and law enforcement's response to them." Index Newspapers, 977
> F.3d at 830. Defendants attempt to avoid this conclusion by
> "refram[ing] all of the protests as" "violent riots," id. at 834; Reply at
> 4, but this characterization is belied by the record and approaches the
> Press-Enterprise II question at too narrow a level of generality.

(Dkt. 74 at 10.) Plaintiffs' briefing on that motion is incorporated by reference and as a tribute to

the shortness of life is not cut and pasted into this pleading.

As to retaliation, Defendants repeat their argument that Plaintiffs' allegations of retaliatory

intent are insufficient. (Mot. at 9.) The Court already rejected this argument, too, based on the

declarations and direct evidence of retaliatory motive Plaintiffs have incorporated into the FAC.

Contrary to the low bar on a Rule 12(b)(6) motion of showing that if true the allegations are

sufficient for a reasonable factfinder to find retaliatory intent, the Court found that Plaintiffs were,

in fact, likely to prevail on this claim. (*See*, *e.g*., Dkt. 55 at 29 ("Having carefully reviewed each

incident and Defendants' response, the Court finds that Defendants' excessive and indiscriminate

response evinces strong and persuasive evidence of retaliatory intent."); *id.* at 33 (describing direct

evidence of "policy or custom" of retaliation); FAC ¶¶ 75-77, 93-99 (incorporating direct evidence

of retaliation cited by Court and adding more).)[7] The Court's conclusions were entirely consistent

with well-established Ninth Circuit law on First Amendment retaliation. *See, e.g., Index*, 977 F.3d

at 828 (holding retaliation can be established by direct or circumstantial evidence and holding that

extensive evidence of defendants shooting at people clearly exercising First Amendment rights

demonstrated a likelihood of success on retaliation claim).

## C.    Plaintiffs Have stated a Fourth Amendment Claim

The FAC alleges in detail how Defendants maintain official policies, patterns, and practices

for use of projectile and chemical weapons and grenades that violate the Fourth Amendment. (*See,*

---

[7] Defendants also cite to *Puente v. City of Phoenix*, 123 F.4th 1035, 1063 (9th Cir. 2024), which upheld summary judgment where the plaintiffs failed to meet their evidentiary burden of showing intent. Here, in contrast, Plaintiffs have already submitted an "avalanche of evidence" of retaliation such that they could survive summary judgment, even though discovery has not yet commenced.

*e.g.*, FAC ¶¶ 45-47, 49, 286-287.) And it describes how Defendants unconstitutionally seized Plaintiffs, members of the Plaintiff organizations and Class members pursuant to these same policies, patterns, and practices. *See, e.g., id.* ¶¶ 111-112, 116, 121-122, 127, 138, 145, 150, 154, 167-68, 182, 192-193, 209, 221, 228-237.[8]

Defendants argue that the FAC alleges that they were using unnecessary and excessive force to "disperse" Plaintiffs, rather than "restrain" them. (Mot. at 11.) Plaintiffs, however, also allege that "Defendants maintain a policy, pattern, and practice of using significant force" by shooting "tear gas canisters, pepper balls, pepper spray, exploding grenades, kinetic impact projectiles, 40mm projectiles, and other impact munitions— against people who are not committing a serious crime, are not posing a threat to officers, and are not actively resisting or evading arrest." (FAC ¶ 287.) Under clearly established Ninth Circuit law, this alleged conduct is an unreasonable seizure that violates the Fourth Amendment. *See Nelson v. City of Davis*, 685 F.3d 867, 884-886 (9th Cir. 2012) (clearly established that firing pepper balls at "individuals suspected of, at most, minor crimes, who posed no threat to the officers or others" was an unreasonable seizure); *Deorle v. Rutherford,* 272 F.3d 1272, 1285 (9th Cir. 2001) (clearly established that shooting less-lethal round without warning at a person who posed no threat was unreasonable seizure); *see also Berg v. Cnty. of Los Angeles*, No. CV 20-7870 DMG (PDX), 2021 WL 4691154, at *11-12 (C.D. Cal. May 28, 2021) (launching less lethal projectiles and flash-bang grenades against peaceful protesters, legal observers, and journalists, without warning and against individuals posing no immediate threat to the officers or others, violates Fourth Amendment).

In 2024, the Ninth Circuit denied qualified immunity to an officer who shot a protester in the groin with a 40mm weapon in San Jose in a 2020 protest, holding that the "act of firing a projectile at [the protester] constituted a seizure under the Fourth Amendment." *Sanderlin v. Dwyer*, 116 F.4th 905, 913 (9th Cir. 2024). It reasoned that "the 40mm launcher . . . is chiefly

---

[8] As Defendants apparently acknowledge, the FAC establishes Plaintiffs' standing to challenge such "officially sanctioned" conduct if it plausibly alleges that even an unwritten policy exists. (Mot. at 9 (citing *Nordstrom*, 762 F.3d at 911 (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1324 (9th Cir. 1985) (holding plaintiffs had standing to challenge officially sanctioned pattern or policy of violating Fourth Amendment); *see also* FAC ¶ 46 (alleging that Defendants' Director of Less Lethal Training swore their policy authorizes the alleged force practices).)

designed, intended, and used for the purpose of incapacitating its target"; that police training

materials provide "Less Lethal Impact munitions" like the foam baton round the officer fired "are

used to: Disorient [and] *Incapacitate*"; and that "'incapacitating' an individual by firing a projectile

at them is an act that 'meaningful[ly] interfere[es]' with their freedom of movement" *Id*. (citing

*United States v. Jacobsen*, 466 U.S. 109, 113 n.5 (1984) ("meaningful interference, however brief,

with an individual's freedom of movement" constitutes a seizure); *see also Nelson*, 685 F.3d at 877

(when "officers took aim and fired their weapons," shooting pepper balls at plaintiff, that "was a

knowing and willful act that terminated [plaintiff's] freedom of movement"). *Sanderlin* applied

traditional Fourth Amendment analysis to hold *Nelson* and *Deorle* "clearly established" that using a

40mm launcher to shoot a projectile at a protester who was not personally threatening officer safety

or evading arrest was an unreasonable seizure. *Sanderlin*, 116 F.4th at 917.

The FAC also alleges with specificity Defendants' pattern and practice of spraying pepper

spray out of cannons directly at and onto protesters, legal observers, and press who pose no threat

and are not resisting or evading arrest. (*See* FAC ¶¶ 127-128 (describing how DHS sprayed

Plaintiff Beckner-Carmitchel straight on in the face); *see also id.* ¶ 68 (still of video of DHS

spraying press); ¶¶ 119-120 (video of DHS spraying press); ¶¶ 227-228, 231 (alleging pattern of

DHS agents spraying multiple LAPC members across multiple days).) This, too, is conduct the

Ninth Circuit has recognized constitutes an unreasonable seizure. *See Nelson*, 685 F.3d at 885

(clearly established that "the application of pepper spray to individuals . . . whose only

transgression was the failure to disperse as quickly as the officers desired, would violate the Fourth

Amendment") (citing *Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125, 1130 (9th Cir.

2002), *as amended* (Jan. 30, 2002)); *see also Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1166-

67 (9th Cir. 2011) (employing pepper spray without warning "against an individual who is

suspected only of minor offenses, is not resisting arrest, and, most important, does not pose any

apparent threat to officer or public safety" violates Fourth Amendment).

Contrary to Defendants' misrepresentation that Plaintiffs did not allege DHS restrained

them (Mot. at 11), the FAC specifically alleges that Defendants incapacitated Plaintiffs. (*See, e.g.,*

FAC ¶ 247 ("Kinetic impact projectile weapons, like rubber bullets, sponge and foam rounds, and

pepper balls (when used as projectile weapons) are specifically designed to cause trauma and

incapacitate individuals."); ¶ 211 (describing how Plaintiff Olmeda was incapacitated by DHS

shooting her in the head); ¶¶ 151-153 (same for Plaintiff Mena); ¶¶ 87, 237 (alleging that when

DHS shot photographer for LAPC member publication in the temple with a pepper ball, it caused

him to buckle at the knees and almost fall to the ground); *see also id.* ¶¶ 56, 80 (describing how

protesters were "incapacitated" by DHS use of force); FAC at 57 ("Use of Chemical Weapons Can

Limit Basic Human Functions").) It also alleges that DHS subjected Plaintiffs to types of force the

Ninth Circuit has held are unconstitutional seizures, as discussed above.[9] (*See id.* ¶¶ 111-112, 116

(Plaintiff Beckner-Carmitchel shot in head with projectile); ¶¶ 121-122 (Plaintiff Beckner-

Carmitchel shot in torso with pepper ball), ¶ 127 (Plaintiff Beckner-Carmitchel sprayed straight on

with pepper spray), ¶¶ 138-145 (Plaintiff Mena shot with pepper ball); ¶¶ 150-154 (Plaintiff Mena

shot with less lethal round); ¶¶ 167-68 (Plaintiff Ray shot with multiple pepper balls); ¶ 182

(Plaintiff Paz shot with multiple projectiles); ¶¶ 192-193 (Plaintiff Climer shot with projectile); ¶

209 (Plaintiff Olmeda shot with pepper balls and less lethal rounds); ¶ 221 (Plaintiff Xu shot with

pepper ball), ¶¶ 228-237 (LAPC members shot with pepper balls and pepper spray).)

Defendants' reliance on *Puente v. City of Phoenix,* 123 F.4th 1035 (9th Cir. 2024) to argue

Plaintiffs fail to state a Fourth Amendment claim is unavailing. There, the Ninth Circuit panel was

careful to emphasize that its holding was limited to "*airborne* transmission of chemical irritants"

and the auditory and visual effects of flash-bang grenades; it did not (and could not) abrogate the

Court of Appeals precedent holding that the incapacitating physical impacts caused by shooting a

---

[9] Plaintiffs also allege that Defendants' agents have seized members of Plaintiff LA Press Club—
restraining them by threat of force from moving to film DHS agents—by brandishing their
weapons at them (FAC ¶ 225), and that Defendants did so pursuant to an official policy and
practice of conducting such unlawful seizures. (*Id.* ¶¶ 100-101.) These allegations also state a
Fourth Amendment claim. *See Robinson v. Solano Cnty.*, 278 F.3d 1007, 1013-15 (9th Cir. 2002)
(holding seizure where officers pointed gun at person who posed no threat, during investigation of
minor crime, violated Fourth Amendment, and agreeing with the Fifth Circuit that "[a] police
officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face" has
laid the foundation for a civil rights claim); *Tekle v. United States*, 511 F.3d 839, 847-48 (9th Cir.
2007) (en banc) (clearly established that officer pointing gun at someone who posed no threat, was
not actively resisting arrest, and was not engaged in assaultive behavior toward officers violated
Fourth Amendment); *see also Puente*, 123 F.4th at 1051 ("The 'seizure' of a 'person' can take the
form of . . . a show of authority that in some way restrains the liberty of the person.").

1    person with a projectile, hitting them with an exploding grenade, or directly spraying them in the

2    face with chemicals effect a seizure subject to the limitations of the Fourth Amendment. *Id.* at 1051

3    (emphasis in original); *see also id.* at 1053 (expressly "set[ting] aside" consideration of claims

4    related to "physical impacts [caused] by projectiles" and "focus[ing] only upon" claims related to

5    "generalized exposure to chemical irritants" in the form of airborne gas).[10]

6          **D.    Plaintiffs Have stated a Fifth Amendment Claim**

7          Defendants ask the Court to dismiss Plaintiffs' Fifth Amendment claims because Plaintiffs

8    have separately pleaded Fourth Amendment claims. (Mot. at 13-14.) However, "a party is

9    permitted to plead in the alternative—even where the alternatives are mutually exclusive." *Jones v.*

10   *City of Los Angeles*, No. 2:20-CV-11147-SVW-SK, 2022 WL 2062920, at *5 (C.D. Cal. Feb. 16,

11   2022) (citing *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-59 (9th Cir. 2007); Fed. R.

12   Civ. P. 8(d)(2), (3)). Thus, although Plaintiffs allege that Defendants' policies, patterns, and

13   practices effect unreasonable seizures giving rise to a Fourth Amendment claim and unlawfully

14   infringe on and retaliate against First Amendment exercise—"at the pleading stage, Plaintiff[s] may

15   also pursue an alternative [Fifth] Amendment claim[.]" *Id.* (citing *Graham v. Connor*, 490 U.S.

16   386, 395 (1989)); *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842-43 (1998) (holding plaintiff

17   "permitted to alternatively plead [a] substantive due process claim" in addition to First and Fourth

18   Amendment claims). "As the Supreme Court … made clear in [*Lewis*] … an excessive force claim

19   made" as a "substantive due process" claim "is viable when the use of force occurred outside the

20   context of a search or a seizure." *Jones*, 2022 WL 2062920, at *5 (quoting *Lewis,* 523 U.S. at 842-

21   43). Such claims are evaluated under the "shocks the conscience test." *Puente*, 123 F.4th at 1055.

22         As an alternative to the First and Fourth Amendment claims, the FAC states a Fifth

23   Amendment substantive due process claim. The FAC alleges that Defendants have implemented

24

25   [10] Defendants' remaining arguments rely on cases that predate *Puente* to address the allegations
     that their official conduct "shocks the conscience." (Mot. at 11-13.) In *Puente,* the Ninth Circuit
26   opined that in light of the Supreme Court's decision in *Torres v. Madrid*, 592 U.S. 306 (2021), non-
     seizure excessive force claims are properly assessed under the "shocks the conscience" standard as
27   substantive due process claims. 123 F.4th at 1051-1055. Accordingly, Plaintiffs address *Puente* and
     the factually distinct pre-*Puente* cases Defendants cite to discuss the "shocks the conscience"
28   standard in Section D below.

policies, patterns, and practices of using chemical weapons and flash-bang grenades alongside sweeping, indiscriminate volleys of projectiles in ways that that "shock[ ] the conscience" (FAC ¶ 289; *see also id.* ¶¶ 44-50), both because they are "deliberate[ly] indifferen[t]" to the resulting harm to non-violent protesters, legal observers, and journalists (*id.* ¶ 290), and because they are carried out with a purpose to harm that is unrelated to legitimate law enforcement objectives. (*Id.* ¶¶ 288-289 (alleging that "Defendants' sweeping, indiscriminate violence—including … their use of chemical weapons . . . is so gratuitous as to give rise to a reasonable inference that it was applied to cause harm rather than for a legitimate purpose"); *see also Puente*, 123 F.4th at 1055-56 (discussing "deliberate indifference" and "purpose to harm" variations of "shocks the conscience" test).

Defendants have no tenable argument that Plaintiffs failed to allege the elements of a substantive due process claim. Instead, they argue the FAC "glosses over" extrinsic facts (Mot. at 11), even as they argue that the Court cannot consider the factual record in this case. (*Id.* at 4 ("[A]lthough this Court must accept as true 'all factual allegations set forth in the complaint,' … this Court cannot accept as true—or otherwise rely on—factual allegations made in other public filings") (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001)).) And they improperly seek to construe the allegations in the FAC to draw inferences against Plaintiffs, misrepresenting Plaintiffs' allegations to inappropriately inject allegations of their own about "violent riots" that can nowhere be found in the FAC. (Mot. at 11-12.)

Indeed, the summary judgment rulings in *Puente* and all the pre-*Puente* cases about chemical weapons that Defendants cite are inapplicable to the facts alleged because they address use of such weapons against people engaged in "physical altercations" with law enforcement and resisting arrest (*id.* at 12), when the FAC specifically alleges that Defendants have a policy, pattern, and practice of attacking people engaged in no such conduct. (*Compare* FAC ¶ 45 (alleging Defendants maintain policy, pattern, and practice of "deploying sweeping force . . . without regard for whether [people harmed] pose any threat or are attempting to disperse"); *id.* ¶ 50 (same); *id.* ¶ 54 ("DHS faced no threat from the people gathered when it deployed this [chemical] weapon, nor did DHS agents give any audible warning or instruction to disperse in advance."); *id.* ¶¶ 149, 185,

217 (describing peaceful protests where DHS attacked Plaintiffs), *with Puente*, 123 F.4th at 1056 (weapons deployed without purpose to harm after protesters already engaged in escalating violence); *Felarca v. Birgeneau*, 891 F.3d 809, 818 (9th Cir. 2018) (plaintiffs ignored multiple warnings, "purposefully restricted officers' movements" with their bodies and physically attacked them); *United Steelworkers of Am. v. Milstead*, 705 F. Supp. 1426, 1437 (D. Ariz. 1988) ("motivation for the use of the tear gas was not to punish anyone but to force persons suspected of having attacked [officers] to leave the building").)[11]

When all allegations are taken as true and all inferences drawn in favor of Plaintiffs, as they must be for the purposes of this Rule 12(b)(6) motion, the FAC more than plausibly alleges that Defendants have implemented an officially sanctioned policy, pattern, or practice of dumping hazardous chemical weapons into communities that protest their actions and indiscriminately launching sweeping volleys of shock grenades and projectiles against peaceful protests (*see, e.g.,* FAC ¶¶ 54-55, 59-60, 68, 78-81), not for legitimate reasons but *for the purpose of causing harm*: to punish and terrorize Plaintiffs and Class members for daring to disagree with and report the truth about DHS's immigration operations; to create a pretext for deploying a militarized show of force; and to send a message to the nation watching. (FAC ¶¶ 1, 6, 7, 288; *see also supra*, Section IV.B at 11-12; *cf. Sexton v. Faris*, No. 22-CV-1927-WJM-MEH, 2024 WL 4201603, at *6 (D. Colo. Sept. 16, 2024) (allegations that officer deployed chemical agent against plaintiff "in absence of any intent to restore order or arrest" and "with an intent to cause injury . . . out of malice" sufficient to support substantive due process claim at motion to dismiss stage).)[12]

---

[11] *Felarca* and *Forrester v. City of San Diego*, 25 F.3d 804, 805-07 (9th Cir. 1994) also do not support Defendants' arguments because they are pre-*Puente* cases that applied the *Graham* standard and did not opine on whether the challenged conduct was deliberately indifferent or carried out with a purpose to harm under the "shocks the conscience" standard. *See supra* n.10. The same is true of *Bayer v. City of Simi Valley*, 43 F.App'x 36 (9th Cir. 2002) (addressing use of gas against individual resisting arrest who shot at officers and threatened to do so again), an unpublished pre-2007 disposition Defendants improperly cite in violation of Ninth Cir. Rule 36-3.

[12] Because Plaintiffs allege Defendants deliberately implemented and maintain officially sanctioned policies, patterns, and practices of excessive force, such that the harms caused to Plaintiffs are not merely the result of "snap judgments" by individual DHS agents, the case law about "split second judgments" referenced by Defendants (Mot. at 12) does not apply, and the "deliberate indifference"

The FAC also specifically alleges how Defendants' gratuitous use of crowd control weapons is "deliberately indifferent" to the resulting harm caused to everyone present—including children, elderly people, and others peacefully exercising their First Amendment rights. (*Id.* at ¶ 59 ("DHS agents launched so much tear gas that they created a thick and inescapable fog of harmful chemicals covering a broad swath of the area. People were struggling to breathe, coughing, weeping in pain, and pouring water into their eyes. Some people vomited."); ¶ 68 ("Members of the press and a ten-year-old boy holding a protest sign were among those that DHS agents teargassed."); ¶ 80 (people at protest attacked by DHS "described feeling like their limbs were on fire from the pepper balls, and were so incapacitated by chemical weapons other protesters had to render medical aid to help them see and breathe"); ¶ 81 ("DHS agents detonated a flash-bang grenade, a smoke bomb, and a tear gas canister at the gathering of protesters" which "included a mother and her daughter, elderly people, and families with three- and four-year-old toddlers," making them "cough violently, struggle to breathe, and dry heave"); ¶¶ 241-246 (describing how the chemical weapons Defendants deploy against protests in this District "indiscriminately" cause serious harm to "peaceful participants and bystanders"); *see also* ¶ 151 ("DHS teargassed Ms. Mena, which aggravated her asthma and caused her severe difficulty breathing"); *id.* ¶¶ 113-114, 181, 183-184, 226-228 (other harms caused to Plaintiffs and members).)

In all these ways, the FAC alleges excessive force that "shocks the conscience" and thus states a substantive due process claim. *See Edrei v. Maguire*, 892 F.3d 525, 538, 540-44 (2d Cir. 2018) (allegations that defendants subjected non-violent protesters to pain and serious injury simply to move them onto sidewalks stated substantive due process claim by describing "exercise of power without any reasonable justification in the service of a legitimate government objective") (quoting *Lewis*, 523 U.S. at 846); *Est. of Soakai v. Abdelaziz*, 137 F.4th 969, 980 n.5 (9th Cir. 2025) ("Suppose that an officer walks into a crowd and shoots at an unarmed civilian purely for the

standard does. *See Puente,* 123 F.4th at 1055. Regardless, the Complaint plausibly alleges both deliberate indifference and purpose to cause harm.

1   purpose of causing pain. Surely, such conduct would shock the conscience whether the officer hits

2   the intended target or instead strikes a bystander standing a few feet away.").[13]

3       **E.    Plaintiffs Have Stated a Claim under the APA**

4       The FAC alleges that Defendants follow multiple policies that are unlawful, in violation of

5   the APA. (FAC ¶¶ 292-303.) Plaintiffs can challenge an agency action under the APA if the

6   underlying conduct is "reviewable by statute" or a "final agency action for which there is no other

7   adequate remedy." 5 U.S.C. § 704; *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1171

8   (9th Cir. 2017). The finality requirement has two elements: "First, the action must mark the

9   consummation of the agency's decisionmaking process. And second, the action must be one by

10  which rights or obligations have been determined, or from which legal consequences will flow."

11  *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (internal quotations marks

12  omitted). The Ninth Circuit has long recognized that "[t]he finality element must be interpreted in a

13  pragmatic and flexible manner." *Dietary Supplemental Coal., Inc. v. Sullivan*, 978 F.2d 560, 562

14  (9th Cir. 1992) (internal quotation marks omitted). When determining whether an agency's action

15  is final, courts "look to whether [a] the action amounts to a definitive statement of the agency's

16  position or [b] has a direct and immediate effect on the day-to-day operations of the subject party,

17  or [c] if immediate compliance with the terms is expected." *Oregon Nat. Desert Ass'n v. U.S.*

18  *Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (internal quotations and citations omitted). The

19  focus is "on the practical and legal effects of the agency action." *Id*. Indeed, "[a]n unwritten policy

20  can still satisfy the APA's pragmatic final agency action requirement." *Al Otro Lado, Inc. v.*

21  *McAleenan*, 394 F.Supp. 3d 1168, 1206-07 (S.D. Cal. 2019) (collecting cases).

22      Defendants argue that "Plaintiffs have failed to identify an actual, discrete decision by the

23  agency, let alone a final agency decision, that may be challenged under the APA." (Mot. at 15.)

24  This argument disregards the FAC's allegations identifying unlawful policies that constitute "final

---

25  [13] *See also Chicago Headline Club v. Noem*, No. 25-CV-12173 (N.D. Ill., preliminary injunction

26  order entered Nov. 6, 2025) (finding in oral ruling from the bench that similar use of force by DHS
    against protesters, press, and bystanders in Chicago "shocks the conscience," as widely reported by

27  reliable sources. *See e.g.,* Megan Crepeau, "Federal Violence in Chicago Shocks Conscience, Judge
    Says," Bloomberg Law News (Nov. 6, 2025), https://news.bloomberglaw.com/litigation/ice-use-of-

28  force-against-chicago-protesters-restrained-by-judge).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    agency action," such as the discrete policy of "treating photography and videorecording that

2    documents the conduct of DHS officers in public as threats or 'doxxing' that DHS officers may

3    respond to with force and address as crimes." (FAC ¶ 300.) Moreover, under *United States ex. rel.*

4    *Accardi v. Shaughnessy*, a plaintiff can bring an APA claim to set aside an agency action when they

5    allege that an agency has flouted federal law to do "precisely what [its] regulations forbid [it] to

6    do." 347 U.S. 260, 267 (1954); *accord Church of Scientology of California v. United States*, 920

7    F.2d 1481, 1487 (9th Cir. 1990) ("Pursuant to the *Accardi* doctrine, an administrative agency is

8    required to adhere to its own internal operating procedures."); *Morton v. Ruiz*, 415 U.S. 199, 235

9    (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their

10   own procedures."). An agency's failure to follow its own procedures is actionable under the APA,

11   even if the policy was never formally established. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S.

12   502, 515 (2009) (an agency may not "simply disregard rules that are still on the books"); *Alcaraz v.*

13   *I.N.S.*, 348 F.3d 1150, 1162 (9th Cir. 2004) (*Accardi* extends beyond formal regulations).

14          The cases cited by Defendants are inapposite because they address interim guidance and

15   policy recommendations, rather than final agency policies. *See Mary Ferrell Found., Inc. v. Biden*,

16   No. 22-CV-06176-RS, 2023 WL 4551066, at *6 (N.D. Cal. July 14, 2023) (addressing a "guidance

17   document, presidential recommendations, concurrence with continued postponement requests, and

18   Transparency Plan review" that were offered as "tentative recommendation[s]" to the agency);

19   *Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 303 F.App'x 517, 519 (9th Cir. 2008) (challenging

20   the enactment of land use advisory "grazing documents" that plaintiff admitted were not "specific

21   agency actions."); *Cobell v. Norton*, 392 F.3d 461, 478 (D.C. Cir. 2004) (addressing an interim

22   "To–Be Plan"); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (seeking improvements

23   to general program deficiencies); *City of Rialto v. W. Coast Loading Corp.*, 581 F.3d 865, 878-79

24   (9th Cir. 2009) (holding that an APA claim not ripe "because the feared harm has not yet been

25   realized"); *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998) (denying

26   an APA claim because the "judicial officer's denial of interim relief" was not final). In contrast,

27   Plaintiffs' APA claim does not challenge interim agency policies or advisory recommendations.

28   Instead, the FAC alleges agency actions that were finalized by agency leadership, articulated to

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    subordinate officers, and implemented in violation of existing federal regulations. Thus, Plaintiffs'

2    resulting constitutional harms are entirely distinct from the cases cited in Defendants' motion.

3          Plaintiffs allege that in violation of their written policies, Defendants adopted policies,

4    patterns, and practices of using force or weaponry against the press, legal observers, and peaceful

5    protesters that violate federal law. As outlined in the FAC, federal statute provides for regulations

6    that "prescribe the categories of officers and employees . . . who may use force (including deadly

7    force) and the circumstances under which such force may be used." (FAC ¶ 293 (citing 8 U.S.C. §

8    1357(a)).) The corresponding federal regulations establish that "[n]on-deadly force may be used

9    only when a designated immigration officer . . . has reasonable grounds to believe that such force is

10   necessary"; "[a] designated immigration officer shall always use the minimum non-deadly force

11   necessary to accomplish the officer's mission" while escalating to increased uses of force "only

12   when such higher level of force is warranted by the actions, apparent intentions, and apparent

13   capabilities of the suspect, prisoner, or assailant"; and "[d]eadly force may be used only when a

14   designated immigration officer . . . has reasonable grounds to believe that such force is necessary to

15   protect the designated immigration officer or other persons from the imminent danger of death or

16   serious physical injury." (FAC ¶¶ 294-298 (citing C.F.R. § 287.8(a)(1)(ii), (iii)).)

17          Plaintiffs then allege that Defendants' policy, pattern, and practice for use of force at

18   protests of immigration operations violate 8 C.F.R. § 287.8(a) because they involve uses of force

19   that exceed the authority granted under the regulation. (*Id*. ¶¶ 296, 298.) The FAC outlines several

20   policies and practices that violate DHS's own regulations. (*Id*. ¶ 47.) And the FAC alleges that

21   "this sustained pattern of misconduct is officially sanctioned and ratified," as "DHS officials'

22   statements make clear[.]" (*Id*. ¶ 51; *see also id*. ¶ 46 (Director of the Less-Lethal Training Branch

23   of the Law Enforcement Safety and Compliance Directorate of CBP said in a sworn statement that

24   current CBP policy authorizes the alleged practices that violate 8 C.F.R. § 287.8(a)); ¶¶ 18-24, 301

25   (approval of alleged policies, patterns, and practices by DHS officials with policymaking

26   authority); ¶¶ 61-62, 64-66, 74-77, 82, 89 (statements made by several of those officials about

27   sustaining DHS's violent conduct against protesters exercising their First Amendment rights); ¶¶

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

263, 271, 274 (class allegations outlining Defendants' policy and practice of violating First

Amendment rights of reporters, legal observers, and protesters).)

Taking Plaintiffs' allegations as true, the FAC states a claim that as of June 2025,

Defendants decided DHS will not follow its own rules at protests of its immigration operations; this

is sufficient to allege a final agency action that implicates *Accardi*. *Torres v. United States Dep't of*

*Homeland Sec.*, 411 F.Supp.3d 1036, 1069 (C.D. Cal. 2019). Plaintiffs' APA claim does not seek

judicial review of general programmatic deficiencies. Nor do Plaintiffs seek improvement of

generally deficient policies. Plaintiffs specifically challenge discrete final agency action that has

promoted the use of excessive force against Plaintiffs. It is clear from the FAC allegations that

Defendants' conduct is not merely a "constellation of disparate but equally suspect practices

distilled from the varying experiences of the class," *McAleenan*, 394 F.Supp. 3d at 1207, but

instead reflects official agency decisions "from which legal consequences will flow," *Hawkes*, 578

U.S. at 597. (*See* FAC ¶¶ 42-44 (describing practical implementation of the alleged agency policies

through DHS's command and operation structure).) Moreover, Defendants' policies have already

imposed tangible legal consequences by violating the constitutional rights of Plaintiffs and Class

members. (*See, e.g.*, FAC ¶¶ 105-237, 256-274.) This is sufficient to state an APA claim,

regardless of whether the violated procedure was a formal agency rule, or an informal internal

agency policy. *See Alcaraz*, 384 F.3d at 1162 (observing that "courts have recognized that the so-

called *Accardi* doctrine extends beyond formal regulations" and collecting cases).

## F.    Plaintiffs Have Stated a Claim for Declaratory Relief

The Declaratory Judgment Act permits "any court of the United States" to "declare the

rights and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought." 28 U.S.C. § 2201(a). For declaratory relief, "an actual case or

controversy" as to the legal rights and duties of the parties must exist. *Principal Life Ins. Co. v.*

*Robinson*, 394 F.3d 665, 669 (9th Cir. 2005) (citation omitted). When "an actual case or

controversy exists," the next step is for "the court [to] decide whether to exercise its jurisdiction."

*Id.*; *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1224 (9th Cir. 1998) (when constitutional and

statutory jurisdictional prerequisites are met, the district court may entertain a declaratory action).

Defendants argue that Plaintiffs' claim should be dismissed because Plaintiffs lack standing. (Mot. at 16.) This argument should be rejected for all the reasons already stated. "If a plaintiff has standing to seek injunctive relief, the plaintiff also has standing to seek a declaratory judgment." *Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001).

Defendants also appear to argue that even if it had jurisdiction, the Court should not exercise its discretion to issue declaratory relief. (Mot. at 16.) However, they articulate no basis for this argument. There are many live controversies between the parties that this Court can and should resolve and certainly should not dismiss out of hand at the pleading stage. For example, Plaintiffs allege that since June 2025, DHS has declared as a matter of policy that videorecording DHS officers in public is threatening conduct or "doxxing" that agents may appropriately respond to with force and address as crimes, FAC ¶ 93, while Plaintiffs contend this statement of policy contradicts the First Amendment. And as outlined in the FAC, Plaintiffs seek a declaration of their constitutional rights to be free from certain indiscriminate and unwarranted uses of crowd control weapons that Defendants continue to claim are legally permissible. (FAC ¶¶ 44-49, 287-290, 305.) Because Defendants continue to undertake actions pursuant to these unconstitutional policies, despite the resulting violations of Plaintiffs' and Class members' rights, there is an actual and ongoing controversy that exists. (*Id*. ¶ 306.) In sum, declaratory judgment is appropriate in this case because it will "serve a useful purpose in clarifying and settling the legal relations between the parties." *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 703 (9th Cir. 1992).

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

Dated: November 13, 2025                Respectfully submitted,

BRAUNHAGEY & BORDEN LLP

By:    */s/ Matthew Borden*
               Matthew Borden

*Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT