UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES PRESS CLUB et al., | Case No. 2:25-cv-05563-HDV-E |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS [81]** |
| v. | |
| KRISTI NOEM et al., | |
| Defendants. | |

## I. INTRODUCTION

This summer, officers from the Federal Protective Services ("FPS"), Immigration and Customs Enforcement ("ICE"), and U.S. Customs and Border Protection ("CBP") unleashed crowd control weapons on journalists, legal observers, and protesters at immigration-related demonstrations across Southern California. Plaintiffs—the Los Angeles Press Club ("LA Press Club"), NewsGuild-Communications Workers of America ("NewsGuild"), and several journalists, legal observers, and protesters—filed the present action seeking to enjoin this excessive use of force.

After carefully reviewing all of the evidence presented, including declarations from nearly fifty journalists, legal observers, and protesters, three experts, and top law enforcement officials, this Court issued a preliminary injunction. Order Granting Plaintiffs' Motion for Preliminary Injunction ("PI Order") [Dkt. 55]. Defendants appealed that injunction, and sought stays pending appeal from both this Court (which was denied) and the Ninth Circuit (which was granted in part and denied in part). Notice of Appeal [Dkt. 57]; Order Denying Defendants' Ex Parte Application to Stay Preliminary Injunction Pending Appeal ("Stay Order") [Dkt. 74]; *Los Angeles Press Club v. Noem*, No. 25-5975 (9th Cir. Dec. 18, 2025) [Dkt. 66.1] ("9th Cir. Stay Order").

Plaintiffs have since amended their complaint. First Amended Complaint ("FAC") [Dkt. 67]. Defendants now move to dismiss all claims in the FAC. Motion to Dismiss ("Motion") [Dkt. 81].

For the reasons discussed below, Defendants' Motion is denied. The Court rejects Defendants' standing and First Amendment arguments for reasons similar to those already articulated in its PI and Stay Orders. The Court likewise rejects Defendants' arguments regarding Plaintiffs' excessive force claims. The Court finds that Plaintiffs have plausibly alleged at least some physically-incapacitating uses of force that may constitute unreasonable seizures under applicable Fourth Amendment jurisprudence, and others that "shock the conscience" under the substantive due process test.

As to Plaintiffs' third cause of action under the Administrative Procedures Act, the claim survives, but only on one of Plaintiffs' proffered theories. The Court concludes that Plaintiffs have not plausibly alleged final agency policies regarding uses of force, but *have* plausibly alleged such a policy with respect to how Defendants treat the recording of their agents. Finally, having

2

determined that Plaintiffs' other claims survive, the Court declines to dismiss Plaintiffs' claim for declaratory relief.

## II.  BACKGROUND

Plaintiffs initiated this action in June 2025.  Complaint [Dkt. 1].  After a temporary restraining order was denied, they moved for a preliminary injunction in July, contending that they were likely to succeed on the merits of their First Amendment right of access and retaliation claims.  Motion for Preliminary Injunction [Dkt. 34].  The Court agreed, and issued a preliminary injunction in September.  PI Order [Dkt. 55].

Defendants promptly appealed that order and sought a stay pending appeal.  Notice of Appeal; *Ex Parte* Application to Stay Pending Appeal [Dkt. 58].  This Court denied Defendants' stay request.  Stay Order [Dkt. 74].  The Ninth Circuit, after oral argument, granted it in part as to certain "injunctive provisions that by their terms apply to protesters who are not parties to this litigation" and "only to the extent that they apply to" such non-party protesters.  9th Cir. Stay Order at 1.

While the appeal was pending, and pursuant to a stipulation between the parties, Plaintiffs amended their complaint.  *See* [Dkt. 56]; FAC.  The FAC adds additional parties (one additional plaintiff and several defendants),[1] additional factual allegations that mirror many of the declarations

---

[1] The named Plaintiffs are LA Press Club and NewsGuild; journalists Sean Beckner-Carmitchel, Ryanne Mena, and Lexis-Olivier Ray; legal observer Charles Xu; and protesters Benjamin Adam Climer, Abigail Olmeda, and Maria-Alejandra Paz.  FAC ¶¶ 8–16.  Defendants are the Department of Homeland Security ("DHS"); Kristi Noem, Secretary of Homeland Security; Gregory Bovino, Border Patrol's "Commander-at-Large," Commander of DHS's Operation at Large in California and Los Angeles, and Chief Patrol Agent for the El Centro Sector of CBP; Todd Lyons, Acting Director of ICE; Ernesto Santacruz Jr., Acting Field Office Director for the Los Angeles ICE ERO Field Office; Eddy Wang, HSI Special Agent in Charge for Los Angeles; Mario Canton, Regional Director for Region 9 of the FPS; and Kevin Green, Office of Field Operations Special Response Team Commander.  *Id.* ¶¶ 17–24.

submitted with Plaintiffs' preliminary injunction and stay papers,[2] as well as new class action allegations and causes of action. It asserts claims for First Amendment right of access and retaliation, Fourth and Fifth Amendment excessive force, and violation of the Administrative Procedure Act ("APA"). *Id.* ¶¶ 275–306.

Defendants moved to dismiss all claims. Motion. Plaintiffs filed an Opposition, [Dkt. 82], and Defendants a Reply, [Dkt. 83]. The Court heard oral argument on the Motion and took it under submission. [Dkt. 84]; *see also* Hearing Transcript [Dkt. 86].

### III. LEGAL STANDARD

Defendants move to dismiss under both Rule 12(b)(1) and 12(b)(6). Motion at vi. Dismissal under the former is proper when a plaintiff fails to properly plead subject matter jurisdiction, including standing to sue. Fed. R. Civ. P. 12(b)(1); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003); *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1209 (9th Cir. 2022). A "jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). If the challenge is based solely upon the allegations in the complaint (a "facial attack"), the court generally presumes the allegations in the complaint are true. *Id.*; *Warren*, 328 F.3d at 1139. If instead the challenge disputes the truth of allegations that would otherwise invoke federal jurisdiction (a "factual attack"), the court may review evidence beyond the confines of the complaint and need not assume the truth of the plaintiff's allegations. *Safe Air*, 373 F.3d at 1039. When a plaintiff sues in federal court, they bear the burden of establishing subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

---

[2] Because the FAC contains as allegations much of the same content submitted with Plaintiffs' earlier papers, the parties and the Court are already familiar with them, and the Court does not repeat them here. Particular allegations are discussed as relevant *infra* Part IV.

4

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a complaint satisfies this standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In making this determination, allegations of material fact should be construed in the light most favorable to the plaintiff. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (citation omitted).

## IV. DISCUSSION

### A. Standing

To establish standing, a plaintiff must have suffered an "actual or imminent" injury in fact, such that the injury is "fairly trace[able]" to the defendant's challenged conduct and likely to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). Plaintiffs may establish standing for *prospective* equitable relief by alleging "either 'continuing, present adverse effects'" of a defendant's past illegal conduct, "or 'a sufficient likelihood that [they] will again be wronged in a similar way.'" *Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1229 (9th Cir. 2017) (first quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); and then quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Defendants argue, relying heavily on *Lyons*, that Plaintiffs do not have standing to seek equitable relief because they face no imminent future harm. Motion at 5–9.

Defendants already made—and this Court already rejected—similar arguments at both the preliminary injunction and stay stages. PI Order at 22–26; Stay Order at 5–9.[3] To the extent Defendants raise a factual jurisdictional attack, disputing the truth of allegations in the FAC that would otherwise be sufficient for standing, the Court is permitted to review evidence outside the

---

[3] In doing so, the Court relied on the Ninth Circuit's very factually similar decision in *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 826 (9th Cir. 2020), distinguished both *Lyons* and *Noem v. Vasquez Perdomo*, 606 U.S. __, 2025 WL 2585637 (2025), and relied on the special nature of First Amendment injuries.

complaint. *Safe Air*, 373 F.3d at 1039. Looking at the evidence submitted by both sides in the earlier briefing, the Court again reaches the same conclusion that Plaintiffs have standing to pursue equitable relief. PI Order at 22–26; Stay Order at 5–9.

To the extent Defendants instead bring a facial challenge to the sufficiency of Plaintiffs' allegations in the FAC, *see* Motion at 3, the Court is satisfied that they are sufficient. Protests against the Department of Homeland Security ("DHS") continue. FAC ¶¶ 1, 3, 34, 37 (immigration raids continue); 18–24 (DHS has ongoing operations in Los Angeles); 40 (protests organically grow at sites of immigration arrests); 41 (protesters regularly assemble in downtown Los Angeles); 92 ("ongoing protests"). Plaintiffs allege that they intend to continue attending and covering those protests. *Id.* ¶¶ 13 (legal observer Charles Xu); 14 (protester Benjamin Adam Climer); 15, 214 (protester Abigail Olmeda); 131 (journalist Sean Beckner-Carmitchel); 156 (journalist Ryanne Mena); 170 (journalist Lexis-Olivier Ray); *see also id.* ¶ 105. Plaintiffs allege that, at those protests, Defendants target or fire indiscriminately upon peaceful protesters, legal observers, and journalists. *See, e.g., id.* ¶¶ 5, 45, 47, 53, 57, 69, 73, 84, 86, 91, 110–12, 120, 127, 144, 150–51, 166–69, 198, 219, 227. And they allege that this is unlawful. *Id.* ¶¶ 275–306. Thus, unlike in *Lyons* or *Vasquez Perdomo*, Plaintiffs have alleged more than enough to establish a "sufficient likelihood" that they will be subject to the alleged unlawful activity in the future. *Villa*, 865 F.3d at 1229.

Plaintiffs also allege that, absent continuing injunctive relief, they will limit their First Amendment activities for fear of suffering further injuries. FAC ¶¶ 15 ("DHS's actions against Ms. Olmeda have made her more hesitant to speak out . . . ."); 16, 184 ("Ms. Paz has decided to express herself through digital advocacy rather than by engaging in protests on the streets because the harm she experienced on June 7, 2025, made her afraid to engage in traditional forms of protest. If Ms. Paz felt it was safer to protest without risking the kind of injury she suffered while protesting outside Roybal/MDC, she would physically participate in protests on the streets more often."); 156 ("[I]n light of her experience getting shot by DHS agents twice, Ms. Mena plans to wear personal protective equipment when covering protest events in the future" even if "wearing all this equipment . . . may pose a barrier to effective reporting . . . ."); 171 ("The incident has caused Mr. Ray to reconsider his proximity to protests policed by DHS agents, and he will likely stay further back

when covering future events, which he worries will impact the quality and immediacy of his reporting."). Contrary to Defendants' assertion that these allegations concede the point because they show Plaintiffs will not be harmed in the future, the "chill" alleged here is sufficient to confer standing. These allegations are not "boilerplate"; nor are they based on "implausible" or "speculative" harm and thus "self-inflicted." *See* Reply at 3 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417–18 (2013)). Plaintiffs specifically allege the ways in which they are limiting their protesting and reporting activities. FAC ¶¶ 15–16, 156, 171, 184. And they allege that they are doing this in response to the concrete, physical injuries they have *already suffered* at the hands of Defendants. *Id.* The analysis in *Clapper*, where plaintiffs had no evidence that the challenged government policy had yet been applied to them, is thus inapposite. 568 U.S. at 411 (plaintiffs "fail[ed] to offer any evidence that their communications have been monitored under § 1881a, a failure that substantially undermine[d] their standing theory"); *id.* at 407, 410 (instead, plaintiffs claimed only "an objectively reasonable likelihood that their communications" would be intercepted under the challenged statute "*at some point in the future*" (emphasis added)); *id.* at 419–20 (distinguishing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000), *Meese v. Keene*, 481 U.S. 465 (1987), and *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010), in which plaintiffs *were* found to have standing, on the basis that in those cases the challenged action had actually happened).

Finally, Defendants cavil that the alleged injuries occurred this summer—long ago, in the government's view. *See* Motion at 7 (arguing the "majority" of claims arise from June events); Reply at 2 (arguing "the overwhelming majority" of Plaintiffs haven't suffered injury since July 10); Hearing Tr. at 15:18–20 (arguing "the last allegation of wrongful use of force" is in early September). But this ignores the key fact that this Court enjoined much of Defendants' challenged conduct in September. As this Court has already noted, it would be absurd to require evidence of fresher injuries to establish Plaintiffs' standing when such fresh injuries are precisely what this

Court's PI Order was designed to prevent. Stay Order at 8–9 (quoting *Shelby Cnty. v. Holder*, 570 U.S. 529, 590 (2013) (Ginsburg, J., dissenting)).[4]

### B. First Amendment Claims

On the merits, Defendants assert that Plaintiffs have not adequately alleged their First Amendment claims. They essentially make three arguments in support: (1) violent protests are not protected activity, (2) Plaintiffs have failed to allege retaliatory intent on the part of any individual officer or DHS, and (3) Plaintiffs have not alleged that they were denied access to a government process to which they have a right of access. Motion at 9–10.

Again, Defendants already made—and this Court already rejected—similar arguments at both the preliminary injunction and stay stages. PI Order at 27–37; Stay Order at 9–13. Admittedly, a Rule 12(b)(6) motion is a different posture than a preliminary injunction. The Court is generally limited to considering the complaint, whose well-pleaded allegations must be taken as true. *See United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Iqbal*, 556 U.S. at 678. And under federal notice pleading, a complaint need not plead every element of a claim in so many words, but only facts that are sufficient to establish an entitlement to relief. *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("Notice pleading requires the plaintiff to set forth in his complaint *claims for relief*, not causes of action, statutes or legal theories."); *OSU Student All. v. Ray*, 699 F.3d 1053, 1078 (9th Cir.

---

[4] Further, this Court takes notice of the fact, as Defendants invited it to do, *see* Hearing Tr. at 14–16, that DHS has used similar force as that alleged here against journalists and protesters in cities like Chicago. *See Chicago Headline Club v. Noem*, No. 1:25-cv-12173 (N.D. Ill. Nov. 20, 2025) [Dkt. 281] at 32–164, 176–80 (issuing preliminary injunction after several days of hearings because the court found an "officially sanctioned," "ongoing, sustained pattern" of "violating the First and Fourth Amendment rights of protesters, journalists, and religious practitioners" "over the previous two months," in September and October 2025). The Court here does not rely on the Chicago court's legal analysis in its preliminary injunction—which is not binding on it, has been stayed by the Seventh Circuit, *see Chicago Headline Club v. Noem*, No. 25-3023 (7th Cir. Nov. 19, 2025), and is subject to plaintiffs' pending motion to dismiss, *Chicago Headline Club v. Noem*, No. 1:25-cv-12173 (N.D. Ill. Dec. 2, 2025) [Dkt. 295]. But the court's thorough *factual* findings in that case, made after long hearings at which reams of evidence were presented, undercut Defendants' argument here that all of their alleged unlawful conduct is far in the past and unlikely to be repeated.

2012) ("[W]here the claim is plausible . . . the plaintiff's failure to prove the case on the pleadings does not warrant dismissal."). But these differences in procedural posture do not mandate a different result, as explained below.

Defendants argue that "the protests had turned violent" and so were not protected activity. Motion at 9; *see also id.* at 11–12. But the FAC does not allege this. To the contrary, Plaintiffs allege that the protests were peaceful and non-violent. *See* FAC ¶¶ 4, 45, 55, 57, 61, 72, 133–36, 158, 185, 279. On this posture, the Court must accept those allegations as true.[5]

Defendants also argue the FAC does not allege retaliatory intent. It is largely true that the FAC does not say so in so many words. *But see* FAC ¶ 272 ("DHS . . . intentionally uses munitions to disperse people who are trying to report on and monitor law enforcement activities . . . ."). But this Court found circumstantial evidence of retaliatory intent in Defendants' excessive and indiscriminate response to a few violent individuals among thousands of peaceful ones; their targeting of journalists and peaceful legal observers far from any protesters or bad actors;[6] their deployment of crowd control weapons on crowds already attempting to disperse;[7] and their firing directly *at* people instead of at the ground.[8] Indeed, similar facts *are* alleged in the FAC. PI Order at 29–32; *see also* Stay Order at 11–12. So, too, is the government's "expressed opposition" to Plaintiffs' speech, *see* FAC ¶¶ 51, 62, 64–66, 74–77, 82, 92, 95, 97, 102, 104, which this Court also found supported an inference of retaliatory intent. PI Order at 34 n.2; Stay Order at 13.

---

[5] The Court notes that, even if it were to look outside the FAC and to weigh both parties' evidence instead of simply accepting Plaintiffs' allegations as true, it would disagree with Defendants' characterization of the protests as violent. Indeed, this Court has already found that most of the protests were peaceful, and that even if there were some acts of violence by some protesters at some points, Defendants' forceful response was frequently not precipitated by those acts or limited to those individuals. *See* PI Order at 4–17, 28–29, 32–33 & n.26, 39.

[6] *See, e.g.*, FAC ¶¶ 57, 63, 69, 73, 86–87, 110–12, 150, 165–68, 221, 235–37.

[7] *See, e.g.*, FAC ¶¶ 16, 45, 47, 63, 73, 162, 168–69, 231–32.

[8] *See, e.g.*, FAC ¶¶ 69, 73, 111–12, 116, 121–22, 138, 144–45, 149–50, 154, 162, 166–68, 172, 192, 198–99, 202, 206, 209, 215, 218, 221–22, 237.

Finally, Plaintiffs sufficiently plead that they were denied access to DHS immigration operations, public protests, and law enforcement's response to them. *See* FAC ¶¶ 48, 271, 278. This Court has already held that they have a qualified right of access to such processes. PI Order at 34–35; Stay Order at 9–11; *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 830 (9th Cir. 2020).

### C. Excessive Force Claims

Plaintiffs' second cause of action is for "excessive force." FAC ¶¶ 284–91. There are several different tests for excessive force with sources in different constitutional amendments that apply in different contexts. The parties dispute which one applies, and whether Plaintiffs have pled their claims in the alternative or not. *See* Motion at 10–13; Opposition at 12–20; Reply at 5–6 & nn.3–4; Hearing Tr. at 18, 23, 30–32.

Where there is a "seizure" under the Fourth Amendment, excessive force claims are evaluated under that amendment's objective reasonableness standard. *Puente v. City of Phoenix*, 123 F.4th 1035, 1050 (9th Cir. 2024) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). Where instead, the alleged excessive force is applied "outside the context of a seizure," courts apply a "substantive due process standard that asks whether the police behavior 'shocks the conscience.'" *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)).

Plaintiffs plead a variety of uses of force—some of these are seizures, some are not, and some will require more factual development to determine whether they are seizures. *See* Hearing Tr. at 30; FAC; *see also infra* Sections IV.C.1–2. Plaintiffs assert Fourth Amendment excessive force claims for the first category, substantive due process excessive force claims for the second category, and plead these two claims in the alternative for the third category. Hearing Tr. at 30–31. The Court thus considers both excessive force tests.

#### 1. "Objective Reasonableness" Under the Fourth Amendment

The Fourth Amendment's objective reasonableness standard applies to excessive force claims arising out of Fourth Amendment "seizures." *Puente*, 123 F.4th at 1050 (citing *Graham*, 490 U.S. at 388). A person is "seized" when she submits to a show of authority by the police, *California v. Hodari D.*, 499 U.S. 621, 626 (1991), or when force is applied with the intent to restrain, *Torres v.*

1  *Madrid*, 592 U.S. 306, 311–12, 317, 325 (2021).  See also *Puente,* 123 F.4th at 1051.  Under the
2  latter test, there is a seizure even if the force is brief or momentary, *Torres*, 592 U.S. at 318 ("[B]rief
3  seizures are seizures all the same."), and even if it does not succeed in restraining the person, *id.* at
4  309, 311–12.  Intent to restrain is measured objectively, by looking at the conduct.  *Id.* at 317–18.

        Defendants argue there is no seizure because the force as described in the FAC was purportedly applied with the intent to disperse and not with the intent to restrain.  Motion at 10–11.  Defendants are correct that some uses of crowd control devices to disperse a crowd are not seizures.  *See Puente*, 123 F.4th at 1051–55 (dispersal by *airborne* transmission of chemical irritants like tear gas and pepper spray and auditory or visual irritants like flash-bang grenades was not a seizure).  But Defendants overread *Puente* when they seek to apply it to all of the uses of force alleged in the FAC.  Indeed, the *Puente* court "hasten[ed] to add that the analysis would be different if, in the course of accomplishing such an intended dispersal or exclusion, a person uses measures that objectively aim to detain or confine another person."  *Id.* at 1053.  The court factually distinguished, rather than overruled or abrogated, earlier cases that had found other uses of crowd-control devices ultimately aiming at dispersal to nonetheless be seizures.  *See id.* at 1053–55 (discussing *Nelson v. City of Davis*, 685 F.3d 867, 872, 874, 877–78 (9th Cir. 2012) (police officers attempting to clear partygoers out of an apartment complex seized Nelson when they launched pepperballs directly at a particular group of students, and one of them struck him in the eye, causing him to collapse on the ground; rejecting officers' argument that there was no seizure because their intent was to disperse the crowd); *Felarca v. Birgeneau*, 891 F.3d 809, 816, 818 (9th Cir. 2018) (applying Fourth Amendment reasonableness analysis to excessive force claims arising out of officers seeking to disperse protest encampment by physically striking or jabbing the plaintiffs with batons, knocking one of them to the ground); *Sanderlin v. Dwyer*, 116 F.4th 905, 908, 912–13 (9th Cir. 2024) (finding a seizure when plaintiff was struck by a 40mm foam baton round because the type of force applied was "chiefly designed, intended, and used for the purpose of incapacitat[ion]," and the force meaningfully interfered with the targets' "freedom of movement"; rejecting officers' argument that there was no seizure because their intent was to force Sanderlin to leave, not to restrain or apprehend him)).  The

11

1    court in *Puente* also stated that its analysis did not control claims by plaintiffs who experienced
2    physical impacts. *Id.* at 1057.

3        The Court therefore construes this line of cases—*Puente*, *Nelson*, *Felarca*, and *Sanderlin*—as
4    demarcating a Fourth Amendment boundary between airborne exposure to crowd control measures
5    and less-lethal munitions that make *incapacitating physical contact*. *See Puente*, 123 F.4th at 1054;
6    *Sanderlin*, 116 F.4th at 913, 916–17 & n.2. And Plaintiffs have unquestionably alleged multiple
7    uses of force that fall in that latter category. *See* FAC ¶¶ 209–11 (Olmeda incapacitated by DHS
8    shooting her in the head); 150–53 (Mena shot in head with less-lethal round); 111–12 (Beckner-
9    Carmitchel shot in head with projectile); 121–22 (Beckner-Carmitchel shot in torso with pepper
10   ball), 138–43 (Mena shot in leg with pepper ball); 167–68 (Ray shot with multiple pepper balls); 182
11   (Paz shot with multiple projectiles); 192–93 (Climer shot with tear gas canister); 221 (Xu shot with
12   pepper ball); 87, 237 (photographer for LA Press Club member publication shot in the temple with a
13   pepper ball, causing him to buckle at the knees and almost fall to the ground); *see also id.* ¶¶ 56, 80
14   (describing how protesters were "incapacitated" by DHS use of force); 247 ("Kinetic impact
15   projectile weapons, like rubber bullets, sponge and foam rounds, and pepper balls (when used as
16   projectile weapons) are specifically designed to cause trauma and *incapacitate* individuals."
17   (emphasis added)). Plaintiffs have therefore alleged enough to claim that they were seized under the
18   Fourth Amendment.

19       For those seizures, excessive force claims are evaluated under the Fourth Amendment's
20   objective reasonableness standard, which balances "the nature and quality of the intrusion on the
21   individual's Fourth Amendment interests against the countervailing governmental interests at stake."
22   *Nelson*, 685 F.3d at 878 (quoting *Graham*, 490 U.S. at 396). Defendants do not argue that Plaintiffs
23   have not plausibly alleged that the force was unreasonable. *See generally* Motion; Reply. And it
24   appears to this Court that Plaintiffs have done so. In *Nelson*, for example, the Ninth Circuit found
25   "the firing of pepperball projectiles with the potential kinetic impact of the projectile and the actual
26   impact of the pepper spray," without audible warnings, at Nelson—who was not committing any
27   crime, was not engaged in any violent conduct, did not throw anything, and did not fail to comply
28   with police orders—unreasonable, even though other individuals were "hurling both bottles and

expletives at officers" and officers had an interest in stopping disorderly behavior and clearing the area. 685 F.3d at 878–83; *see also Sanderlin*, 116 F.4th at 914 (use of a 40mm launcher against person who was "not committing any crime," "peacefully holding a sign with his hands up," "not personally threatening officer safety, and "not evading arrest" potentially unreasonable even though officers have a legitimate safety interest in controlling and dispersing a mass of people to "maintain order and prevent organized lawlessness"). Plaintiffs have alleged similar uses of force. *See* FAC ¶¶ 87, 111–12, 121–22, 138–43, 150–53, 167–68, 182, 192–93, 209–11, 221, 237. Their Fourth Amendment excessive force claim survives.

### 2. "Shocks the Conscience" Under Substantive Due Process

For the uses of force that are not seizures, Defendants argue that Plaintiffs have not plausibly satisfied the shocks-the-conscience test. Motion at 10–13. There are two different such tests— (1) deliberate indifference and (2) purpose to harm—and "[w]hich test applies turns on whether the officers had time to deliberate their conduct." *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022). When there is time to deliberate—"time to make unhurried judgments, [with] the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations"—the "deliberate indifference" test applies. *Lewis*, 523 U.S. at 849–53 (1998); *Ochoa*, 26 F.4th at 1056. If, on the other hand, the situation is one where officers have to make "snap judgments," the test is whether officers acted with a "purpose to harm . . . for reasons unrelated to legitimate law enforcement objectives." *Ochoa*, 26 F.4th at 1056; *Lewis*, 523 U.S. at 852–54.

The "deliberate indifference" test has been applied to prison conditions, *see Lewis*, 523 U.S. at 849–50, while the "purpose to harm" test has been applied to prison riots, *id.* at 852–53, sudden or high-speed police chases, *id.* at 853; *Est. of Soakai v. Abdelaziz*, 137 F.4th 969, 976–77 (9th Cir. 2025), and decisions to disperse protests, *Puente*, 123 F.4th at 1055–56. Defendants thus argue that the purpose-to-harm test applies here. *See* Motion at 11. Plaintiffs maintain instead that the alleged policy, pattern, and practice of this conduct means this case is not about "snap judgments" and so the deliberate-indifference test should apply. Opposition at 18 n.12; *see also* FAC ¶¶ 5, 44–45, 47, 49, 286–87. Because the Court finds that Plaintiffs' claims survive even under the "more demanding"

purpose to harm test, *Ochoa*, 26 F.4th at 1056, the Court need not decide at this stage which one applies here.

Defendants' argument that Plaintiffs have not plausibly alleged excessive force under the purpose-to-harm standard is based on the FAC "gloss[ing] over" the "unique nature of" and violence at the protests. Motion at 11–13. But on a Rule 12(b)(6) motion, this Court must take the complaint's well-pleaded allegations as true, *Iqbal*, 556 U.S. at 678, and generally cannot go outside it, *see Corinthian Colleges*, 655 F.3d at 998–99; *Tellabs*, 551 U.S. at 322. The FAC does not allege that the protests were violent;[9] it alleges that they were peaceful. *See* FAC ¶¶ 4, 45, 55, 57, 61, 72, 133–36, 158, 185, 279. Defendants' attempt to establish the contrary by relying on evidence not incorporated into the complaint and not an appropriate subject of judicial notice, *see* Motion at 11–12 (citing a June 10, 2025 DHS press release), fails.[10] And, in any case, the same circumstantial evidence discussed in Section IV.B *supra* as supporting an inference of retaliatory intent also supports a purpose to harm.

### D. APA Claim

Plaintiffs' FAC alleges that Defendants have a number of unlawful "polic[ies], pattern[s], and practice[s]": to use significant and deadly force at protests in ways that violate federal regulations regarding the use of force by immigration officers, FAC ¶¶ 293–98 (citing 8 C.F.R. § 287.8(a)); to use force to suppress Plaintiffs' protected First Amendment reporting, observation, and speech activities, *id.* ¶ 299; and to treat photography and videorecording of DHS officers in public as "threats or 'doxxing' that DHS officers may respond to with force and address as crimes," *id.* ¶ 300. *See also id.* ¶¶ 5, 18–24, 44–104; Hearing Tr. at 5:13–17 ("alleging that there was a

---

[9] Defendants cite FAC ¶¶ 40–41, 79–81 as "implicitly acknowledg[ing] the unique nature of the protests in response to and interfering with lawful law enforcement functions and various violent responses to the same," and FAC ¶ 245 as "acknowledg[ing] that not all protesters remained peaceful." Motion at 11. These paragraphs do not support Defendants' proffered claims.

[10] Again, were the Court to look outside the FAC and weigh both parties' evidence, it would still disagree with Defendants' wholesale characterization of the protests as violent. *See supra* note 5.

14

1  deliberate decision made that—and to put it colloquially—[Defendants] would do this immigration
2  operation by all means necessary without regard for their use of force regulations and their written
3  policies"). Plaintiffs challenge these policies under the APA as final agency actions that exceed
4  Defendants' statutory authority, are arbitrary and capricious or otherwise unlawful, and violate
5  Plaintiffs' constitutional rights. FAC ¶¶ 292–303 (citing 5 U.S.C. § 706(2)(A)–(C)).

6  Defendants argue that Plaintiffs' challenged policies, patterns, and practices are not
7  reviewable, discrete, final agency actions that can be challenged under the APA. Motion at 14–15.

8  The APA permits federal courts to review "final agency action[s]." 5 U.S.C. § 704. Agency
9  actions include "rule[s], order[s], license[s], sanction[s], relief, or the equivalent or denial thereof, or
10 failure[s] to act." 5 U.S.C. § 551(13). Final agency actions are those (1) which "mark the
11 consummation of the agency's decisionmaking process"—not "of a merely tentative or interlocutory
12 nature" and (2) "by which rights or obligations have been determined, or from which legal
13 consequences will flow." *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 597 (2016)
14 (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

15 A "pattern and practice" is generally insufficiently discrete to constitute reviewable final
16 agency action. *See Mary Ferrell Found., Inc. v. Biden*, No. 22-CV-06176-RS, 2023 WL 4551066, at
17 *5–6 (N.D. Cal. July 14, 2023) ("pattern and practice of refusing to look for documents under the
18 JFK Act[] is not a discrete agency action"); *see also Al Otro Lado, Inc. v. McAleenan*, 394 F. Supp.
19 3d 1168, 1207 (S.D. Cal. 2019) ("A plaintiff may not simply attach a policy label to disparate
20 agency practices or conduct.") (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 (1990));
21 *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 ("agency actions" under the APA are
22 "discrete"); *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 303 F. App'x 517, 519 (9th Cir. 2008) ("any
23 pattern, practice, or policy of the Forest Service that is inconsistent with the [National Forest
24 Administration Act] is not itself a final agency action within the meaning of the APA"). But a
25 *decision* or a *policy* can be a final agency action, even if it is unwritten. *See McAleenan*, 394 F.
26 Supp. 3d at 1206–09 (an unwritten policy can be final agency action, but it has to be a *policy*; high-
27 level government officials acknowledging a policy and/or *sanctioning* a pattern and practice can
28 constitute final agency action); *Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1068–

15

69 (C.D. Cal. 2019) (enough allegations to suggest that noncompliance with Performance-Based National Detention Standards results from an agency *decision* not to enforce the terms of its contract, which is final agency action); *see also Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 931 (D.C. Cir. 2008) (the decision to adopt a policy is final agency action).

The Court concludes that Plaintiffs have not plausibly alleged a reviewable, final decision or policy with respect to their challenged use of force policies. While the section of their FAC stating the APA cause of action alleges that Defendants have such policies, *see* FAC ¶¶ 296, 298–99, these allegations are conclusory and therefore not entitled to be taken as true. *Iqbal*, 556 U.S. at 678–79. And Plaintiffs' factual allegations do not plausibly establish the existence of such a policy. For example, Plaintiffs allege only that individual Defendants "sanctioned," "ratified" and/or "encouraged" various uses of force, as opposed to establishing an agency policy. *Compare* FAC ¶¶ 18–24 *with id.* ¶ 18 (alleging that Defendant Noem "established, sanctioned, and ratified an agency policy" regarding how to treat recording of DHS agents). Their allegations regarding the "sustained pattern" of "officially sanctioned" "unconstitutional force" also do not suffice. *Id.* ¶¶ 50–92. Again, the allegations are of a "pattern," not a "policy." *Id.* And the statements Plaintiffs point to by President Donald Trump, Defendant Kristi Noem, Defendant Gregory Bovino, and Defendant Todd Lyons do not support the existence of a policy to use force in violation of agency regulations or the Constitution.[11] *See id.* ¶¶ 61–62, 64–67, 74–77, 82, 88–90, 92. At best, these statements support the inference that DHS would take all steps necessary to accomplish its mission despite protests. *See id.* ¶¶ 64 (Trump posting that he is "directing" Noem and others "to take all such action necessary to liberate Los Angeles from the Migrant Invasion, and put an end to these Migrant riots"); 76 (Bovino stating that "demonstrators . . . will not deter us, the CBP mission here in Los Angeles"); 77 (Lyons stating that "[n]o protesters are gonna block our way"). That is a far cry from

---

[11] Defendants' objection that these "quotes" are "incomplete," "highly edited," and "out of context," *see* Reply at 6–7, is "a merits challenge" that is "inappropriate at this stage." *McAleenan*, 394 F. Supp. 3d at 1208. But even taking the statements as Plaintiffs quote them, the Court finds that they do not plausibly establish the existence of the use-of-force policies Plaintiffs allege.

an official agency policy to violate its regulations and use force that is excessive under the Fourth Amendment and retaliatory under the First Amendment. *Cf. McAleenan*, 394 F. Supp. 3d at 1207–09 (concluding a final agency action was sufficiently alleged in light of, *inter alia*, factual allegations of U.S. government officials acknowledging a policy, an Office of Inspector General ("OIG") report indicating that the agency had embraced a policy, and briefing that "leaves the distinct impression that Defendants concede the existence of a policy"); *Torres*, 411 F. Supp. 3d at 1069 (concluding a final agency decision was sufficiently alleged in light of factual allegations about an OIG report and evidence of the agency's own inspections and reviews).[12]

In contrast, Plaintiffs *have* plausibly and sufficiently alleged a decision to adopt a policy with regards to how DHS treats the recording of its agents. On this point, the allegation is that Defendant Noem "*established*, sanctioned, and ratified an agency *policy* of treating videorecording of DHS agents in public as a threat that may be responded to with force and addressed as a crime." FAC ¶ 18 (emphasis added). Plaintiffs also cite a June 14, 2025 internal bulletin that identifie[s] the "use of cameras," "livestreaming . . . interactions [with officers]," and video recording at protests as "unlawful civil unrest" tactics and "threats." *Id.* ¶¶ 94. The statements by government officials in support of this alleged policy are also notably more official and more concrete. *See id.* ¶¶ 95 (Noem at a July 12 DHS press conference: "videotaping [ICE agents] . . . when they're out on operations" is "violence."); 97 (DHS Assistant Secretary for Public Affairs in a September 9 official statement: "videotaping ICE law enforcement and posting photos and videos of them online is doxing our agents . . . [W]e will prosecute those who illegally harass ICE agents to the fullest extent of the law."). And these allegations are supported by extensive allegations of DHS agents "us[ing] force

---

[12] Plaintiffs' argument that they have alleged a violation of the *Accardi* doctrine because DHS is not following its own rules does not suffice to save their APA cause of action with respect to these use of force policies. *See* Opposition at 21–23 (discussing *U.S. ex rel. Accardi v. Shaugnessy*, 347 U.S. 260 (1954)). *Accardi* requires agencies to adhere to their own *procedures*, not necessarily their substantive regulations. *See Alcaraz v. I.N.S.*, 384 F.3d 1150, 1162 (9th Cir. 2004); *see also C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 226–27 & n.42 (D.D.C. 2020).

against multiple Plaintiffs" and others "at the precise moment that [they] began videorecording the agents arresting a protester." *Id.* ¶¶ 100–01.

In summary, as to the alleged DHS policy regarding the treatment of video recordings, Plaintiffs have plausibly alleged "the consummation of the agency's decisionmaking process," "by which rights or obligations have been determined, or from which legal consequences will flow." *Hawkes*, 578 U.S. at 597 (quoting *Bennett*, 520 U.S. at 177–78). Plaintiffs' APA cause of action thus survives vis-à-vis this alleged policy.

### E. Declaratory Relief

Finally, Defendants note that "declaratory relief" is not a cause of action in and of itself, but a type of relief, and is not an independent basis for jurisdiction. Motion at 15–16; Reply at 9. They thus argue that "if this Court agrees . . . that the other claims should be dismissed, then the declaratory relief claim has to go as well." Hearing Tr. at 23:21–24:1.

As already discussed, this Court disagrees with Defendants that Plaintiffs' other claims should be dismissed. It thus also declines to dismiss their request for declaratory relief.

## V. CONCLUSION

Defendants' Motion to dismiss the FAC is therefore denied.

Dated: January 8, 2026

Hernán D. Vera
United States District Judge