BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
ANDREW I. WARDEN
KATHLEEN C. JACOBS
Civil Division, Federal Programs Branch

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PAUL (BART) GREEN (Cal. Bar No. 300847)
Assistant United States Attorney
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-0805
        E-mail: Paul.Green@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES PRESS CLUB; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; *et al.*,<br><br>Defendants. | No. 2:25-cv-05563-HDV-E<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Hearing Date:     April 30, 2026<br>Hearing Time:    10:00 a.m.<br>Location:            Ctrm. 5B, 5th Fl.<br><br>Honorable Hernán D. Vera<br>United States District Judge |

# **TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                                                                         <u>PAGE</u>

TABLE OF AUTHORITIES ...................................................................................................i

I.      INTRODUCTION ......................................................................................................1

II.     BACKGROUND .........................................................................................................2

III.    LEGAL STANDARD .................................................................................................3

IV.    ARGUMENT................................................................................................................4

        A.      Plaintiffs Cannot Use Class Certification as a Gambit to Avoid *CASA* and the Ninth Circuit's Order Staying the Preliminary Injunction with Respect to Non-parties ...................................................................................5

        B.      Plaintiffs Fail to Satisfy Rule 23(a)'s Requirements ...................................6

                1.      Plaintiff Cannot Establish Numerosity .............................................6

                2.      Plaintiffs Cannot Satisfy Rule 23(a)'s Commonality Requirement .......................................................................................8

                3.      Plaintiffs Cannot Satisfy Rule 23(a)'s Typicality Requirement.......15

                4.      Plaintiffs Cannot Establish Adequacy .............................................19

        C.      Plaintiffs' Proposed Classes Are Not Maintainable Under Rule 23(b)(2)..........................................................................................................19

        D.      The Court Should Deny Plaintiffs' Motion to Certify a Class Because the Proposed Class Representatives Neither Have Standing Nor Have They Demonstrated that Each Class Member Has Article III Standing.....22

        E.      Certification Should Be Denied Pending Resolution of the Appeal...........25

V.      CONCLUSION..........................................................................................................25

## TABLE OF AUTHORITIES

<u>DESCRIPTION</u>                                                                                    <u>PAGE</u>

**Cases**

*Adderley v. State of Fla.*,
   385 U.S. 39 (1966) ................................................................................................ 17

*Ahmad v. City of St. Louis*,
   995 F.3d 635 (8th Cir. 2021) ........................................................................... 20, 21

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................ 4, 19

*Barney v. City of Eugene*,
   20 F. App'x 683 (9th Cir. 2001) ..................................................................... 14-15

*Berni v. Barilla S.p.A.*,
   964 F.3d 141 (2d Cir. 2020) ................................................................................. 20

*Black Lives Matter D.C. v. United States*,
   775 F. Supp. 3d 241 (D.D.C. 2025) .................................................................... 15

*Black Lives Matter Los Angeles v. City of Los Angeles*,
   113 F.4th 1249 (9th Cir. 2024) ..................................................................... *passim*

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ............................................................................... 7

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010) ................................................................................. 20

*C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
   867 F.3d 1093 (9th Cir. 2017) ............................................................................. 10

*CASA. Los Angeles Press Club v. Noem*,
   799 F. Supp. 3d 1036 (C.D. Cal. 2025) ................................................................ 5

*Castaneda v. Burger King Corp.*,
   264 F.R.D. 557 (N.D. Cal. 2009) .................................................................. 10, 11

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ............................................................................................ 23, 24

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) .......................................................................................... 23, 24

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) .............................................................................................. 24

*Dickinson v. Trump*,
   2026 WL 279917 (D. Or. Feb. 3, 2026) ................................................................ 5

*Elite Logistics Corp. v. MOL Am., Inc.*,
   2016 WL 409650 (C.D. Cal. Feb. 2, 2016) ......................................................... 18

*Gen. Tel. Co. of the Sw. v. Falcon*,
  457 U.S. 147 (1982) ............................................................................................. 3

*Gonzalez v. ICE*,
  975 F.3d 788 (9th Cir. 2020) ............................................................................ 20

*Greater Chautauqua Fed. Credit Union v. Quattrone*,
  2025 WL 869729 (S.D.N.Y. Mar. 20, 2025) ................................................... 20

*Healy v. Milliman, Inc.*,
  164 F.4th 701 (9th Cir. 2026) .......................................................................... 24

*Hussen v. Noem*,
  --- F.Supp.3d ----, 2026 WL 657936 (D. Minn. Mar. 9, 2026)................. 22, 23, 24

*Jones v. Rossides*,
  256 F.R.D. 274 (D.D.C. 2009) ........................................................................... 4

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) .................................................................... 15, 16

*Kamar v. RadioShack Corp.*,
  375 F. App'x. 734 (9th Cir. 2010)............................................................... 13, 14

*Lacy v. Cook County*,
  897 F.3d 847 (7th Cir. 2018) ........................................................................... 19

*Leifer v. Safeco Ins. Co. of Illinois*,
  2010 WL 11579014 (E.D. Wash. Aug. 10, 2010)............................................ 18

*Lith v. Iheartmedia + Ent., Inc.*,
  2016 WL 4000356 (E.D. Cal. July 25, 2016) ................................................. 14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555, (1992) ........................................................................................ 22

*Lyons. Chicago Headline Club v. Noem*,
  2026 WL 622677 (7th Cir. Mar. 5, 2026) ....................................................... 23

*Mattson v. Rocket Mortg., LLC, ,*
  2024 WL 4794710 (D. Or. Sept. 16, 2024) ..................................................... 18

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
  246 F.R.D. 621, 632 (C.D. Cal. 2007) .................................................. 16, 17, 18

*Nguyen v. Kissinger*,
  70 F.R.D. 656 (N.D. Cal. 1976) ......................................................................... 7

*Noem v. Vasquez Perdomo*,
  146 S. Ct. 1 (2025) ........................................................................................... 22

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ......................................................................................... 24

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ........................................................................... 11

*Puente v. City of Phoenix*,
  123 F.4th 1035 (9th Cir. 2024) ........................................................................ 15

ii

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ............................................................................ 22

*Schwartz v. Upper Deck Co.*,
   183 F.R.D. 672 (S.D. Cal. 1999) ........................................................................... 7

*Tarabochia v. Adkins*,
   766 F.3d 1115 (9th Cir. 2014) ............................................................................ 15

*Tincher v. Noem*,
   164 F.4th 1097 (8th Cir. 2026)..................................................................... 1, 6, 9

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................................. 24

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ...................................................................................... 2, 5, 6

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................................... *passim*

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................................. 22

**Other**

Fed. R. Civ. P. 1, 16 ............................................................................................. 25

Fed. R. Civ. P. 23 ......................................................................................... *passim*

Fed. R. Civ. P. 25 ............................................................................................. 2, 3

## I.    INTRODUCTION

Plaintiffs have filed a Motion for Class Certification (ECF 100) ("Motion") seeking to represent all people in this District—which includes more than 19.3 million people, nearly half the population of California—who take video or photos of federal agents enforcing immigration laws or of protests related to the same. The proposed class is fundamentally unworkable, at odds with class certification standards, and should be rejected.

The Eighth Circuit recently stayed a preliminary injunction that provided relief to an almost identical putative class—composed of "all persons who do or will in the future record, observe, and/or protest against" Operation Metro Surge, an immigration-enforcement effort in the Twin Cities—because it "ha[d] no chance of getting certified." *Tincher v. Noem*, 164 F.4th 1097, 1098-99 (8th Cir. 2026) (per curiam) (citation modified). The evidence showed "observers and protestors engaging in a wide range of conduct, some of it peaceful but much of it not" and "federal agents responding in various ways." *Id*. at 1099. "Even the named plaintiffs' claims involve different conduct, by different officers, at different times, in different places, in response to different behavior." *Id*. Such differences would preclude certification under Rule 23, because there were no "'questions of law or fact common to the class that would allow the court to decide all their claims in 'one stroke,'" *Id*. (quoting Fed. R. Civ. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

This Court should reach the same conclusion here and deny Plaintiffs' Motion. Plaintiffs' class cannot satisfy the stringent requirements necessary to certify such a class under Federal Rule of Civil Procedure 23 and the standards set out in *Wal-Mart Stores, Inc. v. Dukes*. Plaintiffs' claims relate to specific incidents on specific days when federal officers assessed the specific circumstances to determine the appropriate response—each incident in this case is fact-intensive and incident- and plaintiff-specific and turns on several inquiries, including: Was a given dispersal order justified by security concerns? Was the use of certain crowd-control measures at a certain time and place warranted by

imminent threats to the safety of federal agents? All these inquiries are relevant to Plaintiffs' claims, and the pertinent facts involve not only the named Plaintiffs' individual conduct, but the actions of other people present at the time of any incidents. Given the individualized evidence necessary to prove Plaintiffs' retaliation and excessive force claims, Plaintiffs cannot overcome the "uphill challenge" necessary for class certification. *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1260 (9th Cir. 2024).

The class definition Plaintiffs propose is so sweeping and vague that it would be near-impossible to ascertain class membership at any given time. The disparate claims Plaintiffs assert—which implicate a medley of allegedly unlawful conduct by different federal agents from different federal agencies on different occasions on different dates against different people—lack any semblance of commonality and are thus unsuitable for class-wide resolution. The relief Plaintiffs seek is likewise incompatible with both class certification requirements and statute.

More fundamentally, the Court should not allow Plaintiffs to evade the limits on equitable relief that the Supreme Court set forth in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). The Court of Appeals has stayed this Court's preliminary injunction to the extent it applies beyond the named Plaintiffs. To get around that limitation on the Court's equitable authority, Plaintiffs now seek to certify an overbroad class that is the equivalent of the universal district-wide relief the Ninth Circuit concluded is not appropriate. Plaintiffs should not be permitted to obtain that same universal relief in contravention of *CASA* by re-packaging their claim as an overbroad and unworkable class under Rule 23.

Defendants[1] respectfully request that Plaintiffs' Motion be denied.

## II.    BACKGROUND

The factual and procedural background for this case is provided in Defendants'

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Secretary Markwayne Mullin is automatically substituted for Kristi Noem, and Andre Quinones for Jaime Rios, as defendants.

2

Opposition to Plaintiffs' Motion for Preliminary Injunction. *See generally* ECF 47 § II. Further factual and procedural background for this case is provided in Defendants' Notice of Motion and Motion to Dismiss. *See generally* ECF 81 § II.

Subsequent to those filings, this Court denied Defendants' Motion to Dismiss. ECF 89. Defendants then filed their Amended Answer and Defenses to Plaintiffs First Amended Complaint. ECF 92. On March 5, 2026, Plaintiffs filed the instant Motion.

The Motion seeks to certify a class of "[a]ll people who do or will, without using force or threat of force, record DHS [U.S. Department of Homeland Security] immigration enforcement and removal operations or protests of those operations in this District since June 6, 2025." ECF 100-25 (proposed order).[2] Plaintiffs define "record" to mean videorecording and still photography. *Id.*

## III.    LEGAL STANDARD

The class action "'is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart*, 564 U.S. at 348 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). "Class certification is thus not to be granted lightly." *Black Lives Matter*, 113 F.4th at 1258.

To fall within this narrow exception, Plaintiffs must "affirmatively demonstrate" their compliance with each element of Rule 23—"that is, [they] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350; *see also Black Lives Matter*, 113 F.4th at 1258 ("[P]laintiffs must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23." (citation omitted)). This is not just a "mere pleading standard." *Id*. "[A]ctual, not presumed, conformance" with Rule 23 is "indispensable," *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982), and certification is proper

---

[2] This proposed class differs from those proposed in the First Amended Complaint, which proposed two classes. The first proposed class includes "[a]ll persons who do or will in the future report on, record, observe or protest against the DHS immigration operations that have been ongoing in this District since June 6, 2025." ECF 67 ¶ 258. The second proposed class includes "[a]ll people who do or will in the future report on, legally observe or record the DHS immigration operations that have been ongoing in this district since June 6, 2025." *Id.* ¶ 266.

3

only when the Court is satisfied "after a rigorous analysis" that the plaintiffs have demonstrated that each requirement has been met. *Wal-Mart*, 564 U.S. at 350-51; *see Black Lives Matter*, 113 F.4th at 1258. In determining whether class certification is appropriate, courts may consider evidence outside of the pleadings to determine whether claims or defenses are prone to resolution on a class-wide basis. *See Jones v. Rossides*, 256 F.R.D. 274, 276 (D.D.C. 2009).

To demonstrate that the Court should certify a class, a plaintiff must both satisfy the requirements set out in Rule 23(a) and demonstrate that the class fits within one of the types set out in Rule 23(b). First, Plaintiffs must demonstrate that each element of Rule 23(a) is met: (1) the class is so numerous that joinder is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the named Plaintiffs are typical of claims or defenses of the class ("typicality"); and (4) the named Plaintiffs and counsel will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R. Civ. P. 23(a). Second, in addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under one of the subsections of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

## IV.    ARGUMENT

Plaintiffs' Motion should be denied. Plaintiffs cannot demonstrate that they meet any of the four required criteria to certify a class under Rule 23(a), nor have they demonstrated that the class is certifiable under Rule 23(b)(2) even if all other requirements were met. Plaintiffs do not have Article III standing themselves to pursue injunctive relief, much less have they demonstrated that every class member has standing. Finally, denial or deferral of the Motion is warranted at least until the Ninth Circuit resolves Defendants' pending appeal.

4

**A.** **Plaintiffs Cannot Use Class Certification as a Gambit to Avoid *CASA* and the Ninth Circuit's Order Staying the Preliminary Injunction with Respect to Non-parties**

Plaintiffs argue that "[c]ourts have routinely certified classes in similar cases where class members sought injunctive or declaratory relief challenging an agency's policies and practices violating the First Amendment." ECF 100-1 at 33. Plaintiffs are mistaken and the vast majority of the authority they rely on predates *CASA*, and the specific proposed class definition in this case implicates the authority set out there. *Trump v. CASA, Inc.*, 606 U.S. 831 (2025).

The Ninth Circuit already stayed this Court's Order granting a preliminary injunction, ECF 55, to "protestors who are not parties to this litigation," citing *CASA*. *Los Angeles Press Club v. Noem*, 799 F. Supp. 3d 1036, 1067 (C.D. Cal. 2025), granting partial stay pending appeal, No. 25-5975 (9th Cir. Dec. 18, 2025).[3] Class-wide preliminary remedies without a judicial finding that the "rigorous" requirements of Rule 23 are satisfied is just another form of impermissible non-party injunctive relief under *CASA*. 606 U.S. at 849-50. *CASA* precludes universal relief without rigorous adherence to the Rule's requirements, *id.* at 849-50 (emphasizing that district courts should not grant relief to a putative class that has not "satisfied Rule 23's requirements" because such relief is "a class-action workaround"). *See Wal-Mart*, 564 U.S. at 350-51; *see also CASA*, 606 U.S. at 868 (Alito, J. concurring) ("[D]istrict courts should not view [CASA] as an invitation to certify nationwide classes without scrupulous adherence to the rigors of Rule 23. Otherwise, the universal injunction will return from the grave under the guise of 'nationwide class relief.'").

As currently defined, Plaintiffs' putative class casts too wide a net. While not blatantly seeking a nation-wide injunction, the proposed class is still "universal" since

---

[3] Just yesterday, the Ninth Circuit administratively stayed another similar preliminary injunction order stemming from First Amendment retaliation claims, *Dickinson v. Trump*, No. 3:25-CV-2170-SI, 2026 WL 279917, at *11 (D. Or. Feb. 3, 2026), granting administrative stay pending appeal No. 26-1609 (9th Cir. March 25, 2026).

the injunction Plaintiffs have sought restrains defendants as to *everyone* in the Central District of California who uses their phone to take pictures or video near immigration enforcement operations or protests against the same, rather than Plaintiffs themselves or their identified organizational members who can establish standing. The equitable principles laid out in *CASA*, which held that district courts lack authority to issue universal injunctions, support denying class certification here, where the relief sought would cover seven distinct and vast counties and a combined population that is even larger than that of other states and even some countries. *See CASA*, 606 U.S. at 852 ("the question is not whether an injunction offers complete relief to everyone potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief to the plaintiffs before the court.").

Plaintiffs have failed to demonstrate that their proposed class is entitled to the sort of single, indivisible remedy that is necessary for maintaining a class under Rule 23(b)(2). Rule 23 imposes a burden on Plaintiffs to "'affirmatively demonstrate' by a preponderance of actual evidence that they satisfy all the Rule 23 prerequisites." *Black Lives Matter*, 113 F.4th at 1258 (quoting *Wal-Mart*, 564 U.S. at 350). If that means preliminary relief may only be party specific until Plaintiffs can meet Rule 23's requirements, so be it; that is the result demanded by *CASA's* emphasis that complete relief is a ceiling not a floor. *CASA*, 606 U.S. at 853-54.

And in any event, this proposed class—whoever it includes—could never be certified because "the named plaintiffs' claims involve different conduct, by different officers, at different times, in different places, in response to different behavior." *Tincher*, 164 F.4th at 1099.

### B.    Plaintiffs Fail to Satisfy Rule 23(a)'s Requirements

Plaintiffs' Motion does not satisfy the requirements of Rule 23(a) because the proposed class lacks numerosity, commonality, typicality, and adequacy.

### 1.    Plaintiff Cannot Establish Numerosity

Plaintiffs concede that the precise class size is unknown. ECF 100-1 at 21.

6

Plaintiffs further speculate about Plaintiff Los Angeles Press Club members that "*may* be in a position where they would be recording" and the number of members who have *previously* recorded DHS immigration enforcement. DHS, ECF 100-22 ¶ 19. But this doesn't go beyond mere speculation as to numerosity. Further, showing that any proposed class members merit relief, beyond those who have already submitted declarations or are named plaintiffs, would require fact-intensive inquiries into whether the instances in which Defendants used crowd control devices, that are allegedly unsupported, were in fact supported. Plaintiffs state that the class size will consist of the roughly 1,500 members of the organizational Plaintiffs as well as "numerous other individuals in the Central District who do and will record DHS operations…" ECF 100-1 at 13. Such speculation cannot satisfy Rule 23(a)(1). *Nguyen v. Kissinger*, 70 F.R.D. 656, 661 (N.D. Cal. 1976). Courts require Plaintiffs to establish "some evidence of or reasonably estimate the number of class members" with specificity. *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 680-81 (S.D. Cal. 1999). That indeterminacy underscores Plaintiffs' failure to satisfy their burden of proof.

Defendants are not seeking to impose an administrative feasibility requirement on Plaintiffs here. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123, 1126-27 (9th Cir. 2017) (holding that Rule 23 does not include a separate requirement that a plaintiff demonstrate an administratively feasible means to identify absent class members). Rather, Plaintiffs must carry the burden of demonstrating that the proposed class not only exists, but is "in fact" so numerous that joinder of the actual class members would be impracticable. *Dukes*, 564 U.S. at 350; *see also In re Paxil Litig.*, 212 F.R.D. 539, 549 (C.D. Cal. 2003) ("While there is no threshold number necessary to meet the numerosity requirement, the requirement cannot be met where the Court is unable to even estimate the number of class members."). Here, Plaintiffs offer only speculation and have not presented an evidentiary basis for Court to glean the number of class members actually injured as opposed to an indeterminate number of millions of potential class members.

2.    Plaintiffs Cannot Satisfy Rule 23(a)'s Commonality Requirement

Plaintiffs' proposed class also fails to satisfy Rule 23(a)'s commonality requirement. Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) requires that the putative class's claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. It is not enough to show that a complaint "raises common 'questions,'" or that putative class members "have all suffered a violation of the same provision of law." *Id*. at 349-50 (citation omitted). Instead, a party seeking class certification must "affirmatively demonstrate" that every class member "suffered the same injury." *Id*. at 350. "What matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. (cleaned up) (citation omitted). And "[d]issimilarities within the proposed class" can "impede the generation of common answers." *Id*. (citation omitted). Plaintiffs must provide "significant proof" that a defendant "operated under a general policy of [retaliation]." *Id*. at 353. The facts of *Wal-Mart* demonstrate that proving commonality is a significant burden, as the plaintiffs there "filed some 120 affidavits reporting experiences of discrimination—about 1 for every 12,500 class members," and the Court said that "[e]ven if every single one of these accounts is true, that would not demonstrate that the entire company 'operate[s] under a general policy of discrimination,' which is what respondents must show to certify a companywide class." *Id*. at 358 (*Falcon*, 457 U.S., at 159 n.15).

Plaintiffs proposed class lacks commonality for four main reasons. First, Plaintiffs proposed class sweeps in a wide range of conduct and circumstances that cannot be resolved in common. Second, in the absence of an unlawful policy, this Court will be forced to make fact-intensive inquiries to determine whether each proposed class member falls within the class definition. Third, even if Plaintiffs could succeed in establishing the existence of an unlawful policy, the proposed class definition would still

8

lack commonality because the vague and overbroad definition would present multiple fact inquiries to establish the boundaries of the class. Fourth, even a narrowed class definition cannot cure these deficiencies.

> **a.      *Plaintiffs' Class Claims Cannot Generate Common Answers Apt to Drive the Resolution of the Litigation***

Plaintiffs fall far short of meeting commonality's demanding standard. To start, the Eighth Circuit recently stayed a preliminary injunction that provided relief to an almost identical putative class—composed of "all persons who do or will in the future record, observe, and/or protest against" Operation Metro Surge, an immigration-enforcement effort in the Twin Cities—because that putative class "ha[d] no chance of getting certified." *Tincher*, 164 F.4th at 1098-99 (citation modified). The evidence showed "observers and protestors engaging in a wide range of conduct, some of it peaceful but much of it not" and "federal agents responding in various ways." *Id*. at 1099. "Even the named plaintiffs' claims involve different conduct, by different officers, at different times, in different places, in response to different behavior." *Id*. Such differences would preclude certification under Rule 23, because there were no "'questions of law or fact common to the class' that would allow the court to decide all their claims in 'one stroke,'" *Id*. (quoting Fed. R. Civ. P. 23(a)(2); *Wal-Mart*, 564 U.S. at 350). Plaintiffs make essentially the same arguments here, asserting that the proposed class representatives may sue on behalf of those who "record DHS immigration enforcement and removal operations or protests of those operations in this District since June 6, 2025." Motion at 1. And the Court should deny them for the same reason—Plaintiffs' claims cannot be decided in "one stroke" without evaluating the facts of each of their experiences as well as each proposed class member's experiences. *See Black Lives Matter*, 113 F.4th at 1259-61, 1265.

Plaintiffs fail to demonstrate that the factual differences among putative members—involving different days with different crowd activity accompanied by different responses based on the facts at the time—are immaterial. *See Black Lives*

*Matter*, 113 F.4th at 1259-60. In these circumstances, class certification must be denied because Plaintiffs have not demonstrated a "common offending policy" and proving liability for each class member would require separate mini-trials. *See C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1104 (9th Cir. 2017) (upholding denial of class certification where, the district court found a lack of commonality where defendant did not have a "'common offending policy,' and 'proving that each of the 142 hotels violated the ADA would require 142 trials within a trial'"). As described above, the putative class is based on allegations about different days, different situations, and different conduct both by those protesting immigration enforcement and removal operations and those charged with its security. In this context, commonality does not exist, and the class certification should be denied.

And even though the Motion makes clear Plaintiffs did not experience the same harm, as each Plaintiff describes different harm that occurred on different occasions in different ways, *see* ECF 100-1 at 12, even making allegations that all proposed class members experienced the same harm does not suffice. *C.R. Educ.*, 867 F.3d at 1104 ("While commonality may be established based on a pattern of officially sanctioned illegal behavior, merely pointing to a pattern of harm, untethered to the defendant's conduct, is insufficient." (citation modified)). Indeed, Plaintiffs' Motion relies extensively on alleged events in Minnesota and Illinois. ECF 100-1 at 7-11. But allegations involving different people in different states under different circumstances have no bearing on a class in California seeking District-wide injunctive relief. Plaintiffs' reliance on out-of-District conduct only underscores the lack of commonality and why a class should not be certified here. *See Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 568 (N.D. Cal. 2009) (denying class certification where Plaintiffs' commonality theory required "proving that each of the 92 stores were (and are) in violation of the disability laws in the first place," which would require "92 trials within a trial" about each specific location).

10

b.    *Plaintiffs Have Failed to Demonstrate That Defendants Maintain an Unlawful Policy*

Defendants have also demonstrated they there is no official policy authorizing retaliation in response to purely protected First Amendment activity. *See* ECF Nos. 47-1 (Decl. of Eddy Wang, Ex. 1 "Update to the Department Policy on the Use of Force",) and 47-4 (Decl. of Paul (Bart) Green, Ex. A "Information Regarding First Amendment Protected Activities ("DHS does not profile, target, or discriminate against any individual for exercising his or her First Amendment rights.")). There is no evidence demonstrating that a contrary policy exists. Plaintiffs and this Court have, in the past, relied on selectively edited quotations from DHS officials that elide or downplay their straightforward and legitimate concerns about doxing federal immigration officers, putting them and their families at risk. ECF Nos. 89 at 17-8 and 100-1 at 23. Indeed, DHS policies expressly forbid retaliation for protected First Amendment activity, and the evidence shows obvious nonretaliatory explanations for Plaintiffs' alleged injuries: namely, that the injuries were the results of officers' efforts to control trespassing on federal property and disruptive protests. *See* ECF 47 § II.D. Furthermore, Defendants' "behavior," whether within or outside this District, does not confirm that an unlawful policy exists. ECF 100-1 at 24-27. Nor have Defendants "ratified" an unlawful policy by praising or condoning unlawful conduct. *Id.* at 27. DHS's policy is lawful, *see* ECF 47 § II.C, and Plaintiffs claims to the contrary are unsupported. *See* ECF 81 at 16-17, 23.

That pushes Plaintiffs' proposed class action outside the authorities they cite, such as *Gonzalez v. ICE*, because Plaintiffs do not challenge the adequacy of a clear "government polic[y], practice[] or procedure[]" that is suitable for classwide resolution, *see* 975 F.3d 788, 809 (9th Cir. 2020); *see also Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (stating there was commonality because "all members of the putative class and subclass are allegedly exposed to a substantial risk of serious harm by a specified set of centralized [governmental] policies and practices of uniform and statewide application"). "Even if every single one of [Plaintiffs'] accounts is true," those do not

demonstrate that there is a "general policy of [retaliation or excessive force], which is what [Plaintiffs] must show to certify a [District]wide class." *Wal-Mart*, 564 U.S. at 358.

Plaintiffs notably fail to cite *Black Lives Matter*, the most recent Ninth Circuit case addressing class certification in the context of protesters raising First and Fourth Amendment claims. There, the plaintiffs alleged that the Los Angeles Police Department used excessive force against protesters and restricted their First Amendment rights in the wake of George Floyd's death in 2020. The Ninth Circuit vacated the district court's class certification for failure to adhere to the rigorous commonality analysis under Rule 23, emphasizing the plaintiffs' "fact-specific constitutional claims." 113 F.4th at 1254. The fact that the LAPD "made a command[] decision to employ less-lethal munitions" in response to protests was not sufficient basis to certify a class. *Id*. at 1258 (citation omitted). The court emphasized that the merits of plaintiffs' claims "depends on what force was used, what a particular class member was doing, what other protestors may have been doing, what the officers objectively observed, and a host of other factors." *Id*. at 1260. The court concluded the plaintiffs had not "shown the existence of common evidence that can resolve in 'one stroke' the class members' claims that hinge on a wide array of facts and circumstances." *Id*. (quoting *Wal-Mart*, 564 U.S. at 350). The same problems permeate this case and warrant denial of Plaintiffs' motion on commonality grounds. *See id.* at 1264 ("Simply put, the plaintiffs have not explained what common evidence can prove the claims of the hundreds, if not thousands, of the members in all the classes who had diverging experiences.").

> c.   *Even if Defendants Had an Unlawful Policy, Plaintiffs Proposed Class Still Lacks Commonality*

Even if there were a common policy, whether and to what extent that policy was followed during the numerous days covered by the allegations would necessarily involve a fact specific inquiry, which also defeats commonality. Further, Plaintiffs' proposed class fails to demonstrate commonality because it does not use objective criteria to establish membership with definite boundaries. The proposed definition is too vague and

indefinite because it would, at a minimum, require individual inquiries regarding the conduct of class members and the conduct of others in their vicinity. While Plaintiffs contend their putative class members only report on, document, observe, or protest immigration enforcement operations, the evidence shows that people in the same area engaged in trespass, attacked law enforcement officers, and disrupted undisputedly lawful law enforcement activities. *See*, *e.g.*, ECF 47-3, Scharmen Decl. To determine the members of the proposed class, a fact-finding hearing would be necessary for every single proposed class member to establish whether they were in fact merely observing and recording activity, as opposed to engaging in conduct that threatens federal officers and property. *Id.* Defendants would need to know facts surrounding the class members' act of "recording." Did the class member trespass or block access to a federal facility or other immigration enforcement operation? Or was the class member in the vicinity of a person who engaged or planned to engage in unlawful conduct? A class definition which depends on these kinds of circumstances is inconsistent with Rule 23, and Plaintiffs' plainly does involve such disparate circumstances. *See* ECF 101-1 (defining class as "[a]ll people who do or will, without using force or threat of force, record DHS immigration enforcement and removal operations or protests of those operations in this District since June 6, 2025"). Such individualized fact-finding analysis is inappropriate in the class context, especially in the case of a Rule 23(b) class, which requires common answers that can apply to the class as a whole.

         d.      *Even a Narrower Definition Than Plaintiffs' Proposed Class Would be Unworkable Due to Lack of Commonality*

Narrowing Plaintiffs' proposed classes to those who have allegedly suffered a constitutional violation (versus none at all), or to those who have allegedly suffered the same type of violation (*e.g.*, First Amendment retaliation) would similarly not fix Plaintiffs' commonality problem. *See Wal-Mart*, 564 U.S. at 350 (explaining that commonality requires more than class members "hav[ing] all suffered a violation of the same provision of law"); *Kamar v. RadioShack Corp.*, 375 F. App'x. 734, 736 (9th Cir.

2010) (certification unwarranted where "class itself is defined in a way that precludes membership unless the liability of the defendant is established" and referring to such class definitions as a "fail-safe class"). "Under a fail-safe class definition 'either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment.'" *Lith v. Iheartmedia + Ent., Inc.*, 2016 WL 4000356, at \*4 (E.D. Cal. July 25, 2016) (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)). The Ninth Circuit has described fail-safe classes as "palpably unfair" to defendants and "unmanageable." *Kamar*, 375 F. App'x. at 736.

Determining, for instance, whether a particular plaintiff was retaliated against for First Amendment protected activities, as opposed to unlawful behavior or being in the proximity of other persons who are engaged in unlawful behavior, is inextricably fact-intensive and requires consideration of a defendant's intentions and a plaintiff's conduct. Here, Plaintiffs allege that Defendants have employed various crowd-control measures in retaliation for Plaintiffs having engaged in certain First Amendment activity. *See* ECF 100-1 at 26. Yet, the Court has acknowledged that the use of crowd control measures is not categorically unlawful. *See* ECF 55 at 3 ("To be clear, the Court expresses no sympathy for those private individuals who engaged in violence during this period. Indeed, this Order does not prevent any appropriate enforcement of the law against these individuals."). The Court further acknowledged that "Defendants produce[d] ample evidence that the protests were blighted by violent actors." *Id* at 29. Thus, whether a particular use of tear gas was retaliatory (and therefore possibly violative of the First Amendment) or was instead prompted by justifiable safety concerns (and therefore lawful) necessarily depends on the unique circumstances of a given incident. So too for allegations of unlawful trespass or refusal to obey a dispersal order. *See Barney v. City of Eugene*, 20 F. App'x 683, 685 (9th Cir. 2001) (unpublished opinion) (upholding district court's grant of summary judgment where evidence showed that police used tear gas in circumstances where "protesters were allowed to conduct their activities peacefully for several hours before the crowd refused to move back when ordered to do so for their

14

safety. . . [and] protesters were warned repeatedly to clear the street or tear gas would be deployed, and there is no dispute that a small group of the crowd became violent.”).

Plaintiffs’ alleged First Amendment claims involve specific and individualized questions of fact and law unique to each incident at issue—all of which undermines commonality. *Cf. Puente v. City of Phoenix*, 123 F.4th 1035, 1063-64 (9th Cir. 2024) (declining to conclude that “later-occurring conduct by individual officers, even if distasteful or immature,” when evaluated “in the context of all of the circumstances of this case,” were actions “undertaken because of hostility to the protesters’ views.) (emphasis added) (citation omitted). The same is true of Plaintiffs’ Fourth Amendment claims, which “demand a fact-specific inquiry.” *See Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014); *see Missouri v. McNeely*, 569 U.S.141, 158 (2013) (“[P]olice actions are judged based on fact-intensive, totality of the circumstances analyses rather than according to categorical rules . . . .”).

> 3.    Plaintiffs Cannot Satisfy Rule 23(a)’s Typicality Requirement

Plaintiffs’ proposed classes similarly do not satisfy Rule 23(a)’s typicality requirement. *See Black Lives Matter D.C. v. United States*, 775 F. Supp. 3d 241, 268 (D.D.C. 2025) (noting that “[c]ommonality and typicality often overlap because both serve as guideposts to determine whether a class action is practical and whether the representative plaintiffs’ claims are sufficiently interrelated with the class claims to protect absent class members” (citation omitted)). Rule 23(a)(3) requires that “the claims . . . of the representative parties [be] typical of the claims . . . of the class.” Fed. R. Civ. P. 23(a)(3). “Typicality focuses on the class representative’s claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative aligns with the interests of the class.” *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (citation modified).

Here, Plaintiffs cannot demonstrate that their claims are “typical” of proposed class members. Each named Plaintiff alleges they were subjected to different uses of force under different circumstances. *See, e.g.*, ECF 100-1 at 30 (describing an array of

putative class members: "whether a class member is a journalist like Mr. Ray or Mr. Beckner-Carmitchel, a legal observer like Mr. Xu, or a concerned citizen recording a violent arrest on their phone."). Plaintiffs discount these differences by saying broadly that they and other members of the class "seek the same relief: a declaration that Defendants' policy violates the First Amendment and an injunction barring its enforcement." *Id.*. But that puts the cart before the horse—the different factual scenarios demonstrate that the Court will first have to determine whether any of Defendants' responses violated the First or Fourth Amendments and then determine whether those factual scenarios are typical of what every member of the class experienced.

Plaintiffs' reliance on *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles* ("*MIWON*") is misplaced. ECF 100-1 at 31. Plaintiffs claim the status of various class members "'as participant, observer or bystander, does not defeat typicality as to their First Amendment claim,' because all class members shared the same underlying First Amendment right." *Id.* (citing *MIWON*, 246 F.R.D. 621, 632 (C.D. Cal. 2007)). Contrary to Plaintiffs' claims, *MIWON* only highlights how extraordinary the class is that Plaintiffs seek to certify. First, where *MIWON* certified a class of "participants, observers or bystanders," *id.*, Plaintiffs seek class certification for a far more expansively defined class that includes "[a]ll people who do or will … record DHS immigration enforcement and removal operations or protests of those operations in this District since June 6, 2025." ECF 100-1 at 9. That putative class includes not only "participants, observers and bystanders," *MIWON*, 246 F.R.D. at 632, but professional journalists and amateurs, legal observers and casual observers, passersby who took out their cell phones took a picture, and *anyone* else who snapped a photo or video including, presumably, professional news helicopter crews. But the breadth of Plaintiffs' class does not stop there: adding dimensions to its capaciousness, the putative class includes individuals with *all* those statuses and extends them to both "immigration enforcement and removal operations *or* protests of those operations in this District." ECF 100-1 at 9 (emphasis added). Even if the putative class was limited to enforcement

16

operations alone, the class would be unworkable. But Plaintiffs add to that already unworkable definition "protests of those operations" thereby requiring this Court to determine, as the factual predicate to deciding who is in the class and who is out, the subject matter of every protest in this District since June 6, 2025. Was the protest about immigration enforcement, a protest of the current administration, or perhaps some other generalized grievance about the structure of the United States' Government?[4] Plaintiffs' assumption that experiences across this broad array of circumstances will meet the typicality standard is without any support in fact.

Second, *MIWON* is factually inapposite because that case dealt with a localized protest occurring on one day at one location (McArthur Park, coincidentally) and at a location where "everyone had a First Amendment right to be." *MIWON*, 246 F.R.D. at 632. But here, the allegedly unlawful conduct sprawls across the entire District over half a year and allegedly occurred in completely different contexts. *See* ECF 47 § II.D (describing large protests at the Metropolitan Detention Center and Paramount ICE facilities, immigration enforcement operations at a carwash and Home Depot with unplanned protests emerging, and large criminal warrant operations at Glass House Farms facilities in Camarillo and Carpinteria). In *Black Lives Matter*, the Ninth Circuit expressly distinguished *MIWON* on this basis, noting the proposed class "encompasses thousands of people who attended the Los Angeles George Floyd protests" at various times and locations "across the City." 113 F.4th at 1253, 1265-66. Furthermore, protestors do not have a right to block the entrance to federal facilities. *Adderley v. State of Fla.*, 385 U.S. 39, 48 (1966); *see also* ECF 47-3 ¶¶ 11-15 (rioters breached the Metropolitan Detention Center and the ingress and egress of MDC was repeatedly blocked). Plaintiffs putative class would not exclude those who record DHS while trespassing or obstructing federal buildings or operations.

Third, the class actually certified in *MIWON* was notable for how *narrowly* the

---

[4] *See, e.g.*, A. Gottlieb, *What you need to know about the call to abolish ICE*, American Friends Service Committee (Jan. 29, 2026) ("Defend Our Communities. Abolish ICE"), https://afsc.org/news/what-you-need-know-about-call-abolish-ice.

class was defined. *MIWON*, 246 F.R.D. at 625. The court there limited the class to specific plaintiff-organizations, their "[o]fficers, representatives, or members;" and "[p]ersons who attend or participate in Plaintiff Associations' events." By contrast, Plaintiffs here provide no such limiting principle and instead seek a class as to anyone in the district who meets their sweeping class definition rather than limiting the class to protests sponsored or organized by Plaintiff-organizations.

And Plaintiffs cannot avoid the fact that many people have been able to protest, observe, and record immigration enforcement activities without issue. The class representatives here—all of whom claim that their rights have been violated by Defendants' conduct in some manner, *see* ECF 100-1 at 11-13—are thus seeking to bring claims on behalf of many putative class members who have not been subjected to any allegedly unlawful conduct at all and likely never will be. *See Leifer v. Safeco Ins. Co. of Illinois*, 2010 WL 11579014, at *6 (E.D. Wash. Aug. 10, 2010) (no typicality where "Plaintiffs' reliance and resulting injury are not typical with the proposed class members' reliance and injury"). Respectfully, Plaintiffs cannot establish a policy, or even a pattern or practice of misconduct, so the fact that some putative class members may have suffered no injury or different injuries defeats their claim for typicality. *See Elite Logistics Corp. v. MOL Am., Inc.*, 2016 WL 409650, at *4 (C.D. Cal. Feb. 2, 2016) ("particularities of [class representative's] interactions with defendant and [others]" render class representative's "claims, and the defenses to them, atypical of those of the class. Class certification should not be granted if there is a danger that defenses unique to the putative class representative will become a focus of the litigation."); *Mattson v. Rocket Mortg., LLC*, , 2024 WL 4794710, at *3 (D. Or. Sept. 16, 2024) (no typicality or commonality where "individual questions concerning whether [the plaintiff] is a residential subscriber subject to the TCPA's protections still risk becoming a focus of this litigation and thus class certification is inappropriate"), report and recommendation adopted by 2024 WL 4794639 (D. Or. Nov. 14, 2024).

### 4.    Plaintiffs Cannot Establish Adequacy

Plaintiffs also cannot demonstrate that they are adequate representatives for the class. First, it is not clear that putative class representative Mr. Xu is aware that he is serving as a putative class representative. ECF 6-8 (Plaintiffs continue to rely on Mr. Xu's declaration from June 18, 2025, long before the motion for class certification was filed.). The declarations of Mr. Beckner-Carmitchel and Mr. Ray make no mention of the class action or any assurance that they will not take any actions as class representatives that are in their own, rather than in the class's interest. *See* ECF Nos. 100-19 and 100-21. None of the individual plaintiffs who purport to serve as putative class representatives explains what a class representative's responsibilities actually entail. The absence in these submissions of affirmative reference to such responsibilities calls into question whether the declarants themselves comprehend their obligations. Courts have rejected adequacy where representatives do not comprehend their role. *Amchem Prods.*, 521 U.S. at 626-27.

### C.    Plaintiffs' Proposed Classes Are Not Maintainable Under Rule 23(b)(2)

Even if Plaintiffs could demonstrate they met all of Rule 23(a)'s requirements, the Motion can be independently denied because Plaintiffs' proposed class is not maintainable under Rule 23(b)(2). *See Lacy v. Cook County*, 897 F.3d 847, 864 (7th Cir. 2018) ("[T]he plaintiffs must demonstrate that one of the conditions of Rule 23(b) is met."). Rule 23(b)(2) permits a court to certify a case for class-action treatment if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S at 360 (citation omitted). Rule 23(b)(2) thus "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id*. "It does not authorize class certification

19

when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id*.

Where, as here, the proposed class includes individuals who have not been subjected to the challenged conduct and face no imminent risk of it, the structural requirement of indivisible relief is not met. *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020); *Greater Chautauqua Fed. Credit Union v. Quattrone*, No. 22-cv-2753, 2025 WL 869729, at*12 (S.D.N.Y. Mar. 20, 2025); *Brown v. Kelly*, 609 F.3d 467, 482 (2d Cir. 2010). Because uses of force by federal officers are not inherently unlawful, the class will likely include individuals subject to lawful uses of force and arrests for whom this Court can grant no relief. Plaintiffs half-hearted attempt to limit the class only to those individuals who record immigration enforcement operations or protests "without using force or threat of force," ECF 101-1 at 9, does not solve the problem because lawful federal use of force policies do not hinge on the use of force or the threat of force, but rather on passive, active, and assaultive resistance. *See, e.g.*, ECF 47-5, Ex. 2 at 32-37. A subject could demonstrate active resistance "without using force or the threat of force," ECF 101-1 at 9, and still be lawfully subject to less lethal munitions. *See, e.g.*, ECF 47-5, Ex. 2 at 36. Plus, whether an individual does not use force or threaten to use force is a fact-intensive question that is not suitable for class certification.

That presents an impenetrable obstacle for Plaintiffs here because their proposed class would encompass (1) putative class members who assert a variety of First and Fourth Amendment injuries caused by a wide array of allegedly unlawful conduct; (2) members who assert only some of those injuries, or who were exposed to only a subset of that allegedly unlawful conduct; and (3) members who recorded on immigration enforcement operations without any basis to allege injury. In other words, Plaintiffs "attempt to aggregate a plethora of discrete claims" of constitutional injury "into one super-claim" against Defendants "without demonstrating that the class members have been harmed in essentially the same way." *Ahmad v. City of St. Louis*, 995 F.3d 635, 644 (8th Cir. 2021) (cleaned up) (explaining that such an assorted class is "deficient" under

20

Rule 23(b)(2)). Consequently, because the individual class members within each group were harmed differently (or not at all), each class member "would be entitled to a different injunction or declaratory judgment against" Defendants (or no relief whatsoever). *Wal-Mart*, 564 U.S. at 360; *see Ahmad*, 995 F.3d at 644 ("When liability does not apply uniformly to the entire class, the relief sought becomes highly individualized, and the cohesiveness necessary to proceed as a class under Rule 23(b)(2) is lacking."). And the fact that no single, indivisible injunction could properly provide relief to Plaintiffs' proposed classes "as a whole" is enough to preclude certification under Rule 23(b)(2).

The Ninth Circuit's decision in *Black Lives Matter* further supports denial of the Rule 23(b)(2) class here. The court vacated a similarly broad protester class seeking injunctive relief because it was "unclear" whether plaintiffs could "identify what questions are common to the class and how the plaintiffs will present evidence about those questions on a class-wide basis." 113 F. 4th at 1265. The Ninth Circuit distinguished other situations where district courts have certified protest classes, explaining that those cases "involved single protests where all class members brought identical claims." *Id*. at 1263, 1265 (emphasizing that those protests occurred "at a single location on a single night"). By contrast, the court warned against certifying classes involving "sprawling classes" who allege "a broad range of injuries" based on "different protests, at different times." *Id*. at 1263. That describes this case to a tee. Indeed, the Ninth Circuit favorably cited several district court opinions that denied certification of Rule 23(b)(2) First Amendment protest classes for these same reasons. *See id.* at 1266 (citing *Don't Shoot Portland v. City of Portland*, 2022 WL 2700307 (D. Or. July 12, 2022) and *Anti Police-Terror Project v. City of Oakland*, 2021 WL 4846958 (N.D. Cal. Oct. 18, 2021)).).

21

**D.** **The Court Should Deny Plaintiffs' Motion to Certify a Class Because the Proposed Class Representatives Neither Have Standing Nor Have They Demonstrated that Each Class Member Has Article III Standing**

Defendants acknowledge the Court's prior rulings on standing but reiterate their standing arguments here to preserve them, especially given the pending appeal of the Preliminary Injunction before the Ninth Circuit Court of Appeals. *See* ECF 57, Notice of Appeal. Furthermore, this Court is not bound by its prior rulings on Plaintiffs' standing as the Order granting preliminary injunction, ECF 55, and Order denying Defendants' application to stay the preliminary injunction, ECF 74, rest on a likelihood standard, *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), while the Order denying Defendants' motion to dismiss, ECF 89, rests on a standard that "presumes the allegations in the complaint are true." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Neither standard applies here. Therefore, none of the Court's prior holdings is controlling for purposes of this motion. Plus, because federal courts are courts of limited jurisdiction, the court must assure itself of jurisdiction at every stage of the litigation. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, (1992) ("Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation.").

The putative class representatives have not demonstrated standing for injunctive relief. They are three individuals and two organizations who were present at violent protests that erupted in response to lawful DHS immigration enforcement operations during the summer of 2025 in Los Angeles, California and the region. Although they assert injuries based on sporadic past incidents dating back to June 2025, standing for prospective relief "does not exist merely because plaintiffs experienced past harm and fear its recurrence." *Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 2 (2025) (mem.) (Kavanaugh, J., concurring in the grant of the application for stay); *see also Hussen v.*

22

*Noem*, --- F.Supp.3d ----, 2026 WL 657936, at *41 (D. Minn. Mar. 9, 2026) (holding that while "the chain of events is not so long [as in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013)], but it includes one speculative link," namely, that there is "no good basis to believe that law enforcement will unlawfully stop or arrest *them* in the future." *Id.* (citing *Vasquez Perdomo*, 146 S. Ct. at 3) (cleaned up) (emphasis in original). The Supreme Court has consistently held that individual plaintiffs lack standing to seek forward-looking and programmatic relief based on isolated incidents of alleged unlawful behavior by law enforcement. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). The Seventh Circuit expressed skepticism towards the district court's conclusion in an analogous First and Fourth Amendment case against DHS "that all the lead plaintiffs had Article III standing at a high level of generality" a conclusion that "appears to be in substantial tension" with *Lyons*. *Chicago Headline Club v. Noem*, 2026 WL 622677, at *5 (7th Cir. Mar. 5, 2026). And "Defendants' policy of *authorizing* unlawful stops and arrests, as opposed to requiring or *mandating* them, somewhat supports this same conclusion." *Hussen*, 2026 WL 657936, at *41 (emphasis added).

Furthermore, this Court held that "[i]nsofar as Plaintiffs have in fact limited their activities because of their past injuries," that they had established standing based on that allegedly chilling effect on their conduct. ECF 55 at 26, *see also* ECF 89 at 6. Regardless of the steps Plaintiffs may have taken based on an alleged chilling effect, Plaintiffs must still "meet the requirement of a 'certainly impending' or significantly probable future injury." *Hussen*, 2026 WL 657936, at *31 (citing, *inter alia*, *Bost v. Ill. State Board of Elections*, ⸺ U.S. ⸺, 146 S. Ct. 513, 522 (2026) and *Clapper*, 568 U.S. at 416). Here, Plaintiffs cannot meet that burden and therefore lack standing. Additionally, for the reasons explained in Defendants' prior briefs, Plaintiffs have failed to demonstrate standing for the injunctive relief that they seek. *See generally* ECF 11, 47, 58, 65, 81, 83.

Plaintiffs have also failed to demonstrate standing in a second way: Plaintiffs have not demonstrated that "[e]very class member [has] Article III standing" as they must because "Article III does not give federal courts the power to order relief to any

23

uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts C.J., concurring)). "[B]oth named and unnamed members of [proposed] class[es]" must demonstrate standing with the requisite level of proof required at the stage of the litigation. *Healy v. Milliman, Inc.*, 164 F.4th 701, 709 (9th Cir. 2026). The proposed class indiscriminately sweeps in individuals who lack standing. A class action cannot proceed when many putative members face no actual or imminent injury traceable to Defendants and redressable by judicial relief. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Plaintiffs' attempt to define a class encompassing people that are not readily discernable—a class of "[a]ll people who do or will, without using force or threat of force, record DHS immigration enforcement and removal operations or protests of those operations in this District since June 6, 2025," where "record" means any videorecording or still photography. Motion at 1; ECF 100-25 at 7. Plaintiffs do not explain how all these proposed class members have standing, especially because there are many people who have attended these protests who cannot argue they were injured because either no crowd control munitions were used or the individual exposed to crowd-control measures impeded lawful law enforcement operations or posed threats to safety. *See* ECF 47 § II, ECF 58 at 14-15. Isolated anecdotes and speculative fears do not suffice. *See Lyons*, 461 U.S. at 111; *Clapper*, 568 U.S. at 409. The named Plaintiffs still cannot establish standing for themselves, *see supra* at 22-23, let alone for a limitlessly defined population. *Hussen*, 2026 WL 657936, at *41.

These cases foreclose Plaintiffs' standing. In granting the preliminary injunction, the Court held Plaintiffs had established standing because "[h]ere, 'no string of contingencies [is] necessary to produce an injury.'" ECF 55 at 25. Defendants respectfully disagree, as there is at least one contingency: there is nothing other than speculation to support the assertion that class representative plaintiffs "will again be wronged *in a similar way*," *Lyons*, 461 U.S. at 111 (emphasis added). Plaintiffs' failure

24

to demonstrate standing as to themselves or their proposed class members precludes certifying a class in this case. Moreover, the relief sought will not necessarily provide relief to each class member because Plaintiffs have not proved that the proposed class members are even injured. The prerequisites of Rule 23 cannot be satisfied by a class containing members who lack Article III injuries.

### E. Certification Should Be Denied Pending Resolution of the Appeal

Even if the Court were otherwise inclined to consider granting class certification, prudence counsels denial or deferral until the Ninth Circuit resolves Defendants' pending appeal and other similar appeals as in *Dickinson*. *See supra* fn. 3. The Ninth Circuit is currently considering questions that bear directly on the viability of Plaintiffs' claims and the scope of relief that may be available in this action. The appeal is fully briefed and oral argument was held on January 5, 2026. Its ruling will clarify whether Plaintiffs have a cognizable cause of action, whether the relief they seek is legally permissible, and whether the constitutional and statutory theories they advance are sustainable.

Proceeding with certification in the interim would risk expending significant judicial and party resources to define, notice, and manage a class that may ultimately prove improper or unnecessary once appellate guidance issues. Prudence and sound case management counsel in favor of deferring any ruling on class certification until the pending appellate proceedings conclude. *See* Fed. R. Civ. P. 1, 16. Proceeding now risks unnecessary duplication and wasted resources if the Circuit Court decision ultimately narrows or eliminates key issues. Waiting until the Ninth Circuit has spoken will ensure that this Court addresses certification against a settled backdrop, consistent with the Rules' directive to secure the just, speedy, and inexpensive resolution of cases.

Deferring class certification until after resolution of the pending appeal will therefore conserve resources, avoid inconsistent rulings, and ensure that any certification decision rests on a stable and authoritative legal framework.

### V. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion.

Dated:  March 26, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
ANDREW I. WARDEN
KATHLEEN C. JACOBS
Civil Division, Federal Programs Branch

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
PAUL (BART) GREEN
Assistant United States Attorney

_____/s/ Paul (Bart) Green*_____
PAUL (BART) GREEN
Assistant United States Attorney

Attorneys for Defendants

*Counsel of record certifies that this brief contains 25 pages, which complies with the Court's Civil Standing Order (Dkt. 30), § IX (C) (Length and Format of Motion Papers).

26