**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LOS ANGELES PRESS CLUB; NEWSGUILD - COMMUNICATIONS WORKERS OF AMERICA; SEAN BECKNER-CARMITCHEL; RYANNE MENA; LEXIS-OLIVIER RAY; CHARLES XU; BENJAMIN ADAM CLIMER; ABIGAIL OLMEDA, | No. 25-5975 <br><br> D.C. No. 2:25-cv-05563-HDV-E |
| *Plaintiffs - Appellees*, | |
| v. | OPINION |
| KRISTI NOEM, in her official capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | |
| *Defendants - Appellants*. | |

Appeal from the United States District Court
for the Central District of California
Hernan Diego Vera, District Judge, Presiding

Argued and Submitted January 5, 2026
San Francisco, California

Filed April 1, 2026

Before: Ronald M. Gould, Jacqueline H. Nguyen, and Mark
J. Bennett, Circuit Judges.

Opinion by Judge Gould

## SUMMARY[*]

### First Amendment

The panel affirmed the district court's issuance of a preliminary injunction in an action brought by individual journalists, legal observers, protesters, and two press organizations (Los Angeles Press Club and NewsGuild-Communications Workers of America ("Organizational Plaintiffs")) against the Department of Homeland Security and its Secretary, but held that the preliminary injunction is overbroad, and vacated and remanded to the district court to fashion a narrower injunction.

Plaintiffs, who were injured by Defendants during protests against immigration raids, brought claims alleging violations of two First Amendment rights: (1) a right to be free from retaliation by federal officers for engaging in protected activities; and (2) a right of public access to protests. The district court issued a preliminary injunction to safeguard the First Amendment rights of the protesters, the press, and the legal observers to engage in and to report on those protests.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Applying the test set out in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008), the panel first held that Plaintiffs are likely to succeed on the merits of their First Amendment retaliation claims. Addressing standing, the panel concluded that both the individual and Organizational Plaintiffs have standing at the preliminary injunction phase. Turning to the substance of Plaintiffs' claims, the panel held that the district court did not abuse its discretion in holding that they are likely to prevail on their First Amendment retaliation claims because the record contained extensive evidence that Defendants acted with retaliatory intent. Because Plaintiffs are likely to succeed on the merits of their First Amendment retaliation claims, the panel did not consider the district court's alternative finding that they are likely to succeed on the merits of their right-of-access claims.

Addressing the remaining *Winter* factors, the panel held that the district court did not abuse its discretion by determining that Plaintiffs demonstrated that they will suffer irreparable harm absent a preliminary injunction, and that the balance of equities and the public interest favored Plaintiffs.

Although the panel held that the district court did not abuse its discretion in its analysis of any of the *Winter* factors, the panel held that the injunction is overbroad in some respects, where several provisions expressly apply to non-parties, are broader than necessary to afford complete relief to the Plaintiffs before the court, and are not narrowly tailored to remedy the specific harm alleged. Rather than attempt to re-write the preliminary injunction, the panel vacated and remanded to the district court to fashion a narrower preliminary injunction consistent with the opinion.

## COUNSEL

Matthew B. Borden (argued), Gregory D. Washington, J. Noah Hagey, and Kory J. DeClark, BraunHagey & Borden LLP, San Francisco, California; Adrienna Wong (argued), Jonathan P. Markovitz, Meredith Gallen, Mohammad Tajsar, Peter J. Eliasberg, Jacob Reisberg, and Summer Lacey, American Civil Liberties Union of Southern California, Los Angeles, California; Carol A. Sobel, Law Office of Carol A. Sobel, Santa Monica, California; John C. Washington, Paul L. Hoffman, and Michael Seplow, Schonbrun Seplow Harris Hoffman & Zeldes LLP, Los Angeles, California; Peter Bibring, Law Office of Peter Bibring, Los Angeles, California; for Plaintiffs-Appellees.

Michael Shih (argued), Courtney L. Dixon, and Mark R. Freeman, Attorneys, Appellate Staff; Sean Skedzielewski, Counsel; Eric D. McArthur, Deputy Assistant Attorney General; Brett Shumate, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; Paul B. Green, Attorney; Daniel Beck, Assistant United States Attorney; Bilal A. Essayli, First Assistant United States Attorney; Office of the United States Attorney, United States Department of Justice, Los Angeles, California; for Defendants-Appellants.

Jesse P. Basbaum and Brendan Hamme, Deputy Attorneys General; James E. Stanley and Marissa Malouff, Supervising Deputy Attorneys General; Michael Newman, Senior Assistant Attorney General; Rob Bonta, California Attorney General; Office of the California Attorney General, Oakland, California; Phil Weiser, Colorado Attorney General, Office of the Colorado Attorney General, Denver, Colorado; Brian Schwalb, District of Columbia Attorney General, Office of the District of Columbia Attorney

General, Washington, D.C.; Kathleen Jennings, Delaware Attorney General, Office of the Delaware Attorney General, Wilmington, Delaware; Anne E. Lopez, Hawai'i Attorney General, Office of the Hawai'i Attorney General, Honolulu, Hawai'i; Kwame Raoul, Illinois Attorney General, Office of the Illinois Attorney General, Chicago, Illinois; Aaron M. Frey, Maine Attorney General, Office of the Maine Attorney General, Augusta, Maine; Anthony G. Brown, Maryland Attorney General, Office of the Maryland Attorney General, Baltimore, Maryland; Andrea J. Campbell, Commonwealth of Massachusetts Attorney General, Office of the Massachusetts Attorney General, Boston, Massachusetts; Keith Ellison, Minnesota Attorney General, Office of the Minnesota Attorney General, St. Paul, Minnesota; Aaron D. Ford, Nevada Attorney General, Office of the Nevada Attorney General, Carson City, Nevada; Matthew J. Platkin, New Jersey Attorney General, Office of the New Jersey Attorney General, Trenton, New Jersey; Raul Torrez, New Mexico Attorney General, Office of the New Mexico Attorney General, Santa Fe, New Mexico; Letitia James, New York Attorney General, Office of the New York Attorney General, New York, New York; Dan Rayfield, Oregon Attorney General, Office of the Oregon Attorney General, Salem, Oregon; Peter F. Neronha, Rhode Island Attorney General, Office of the Rhode Island Attorney General, Providence, Rhode Island; Charity R. Clark, Vermont Attorney General, Office of the Vermont Attorney General, Montpelier, Vermont; for Amici Curiae California, Colorado, Delaware, Hawai'i, Illinois, Maine, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, and the District of Columbia.

Raymond P. Boucher, Boucher LLP, Woodland Hills, California; Gerson H. Smoger, Smoger and Associates, Dallas, Texas; Payal Shah and Kimberly Saltz, Physicians for Human Rights, New York, New York; for Amicus Curiae Physicians for Human Rights.

Ronald G. London, Foundation for Individual Rights and Expression, Washington, D.C., for Amicus Curiae Foundation for Individual Rights and Expression.

Tobin Raju and David A. Schulz, Media Freedom and Information Access Clinic, Abrams Institute, Yale Law School, New Haven, Connecticut, for Amici Curiae First Amendment Scholars.

Grayson Clary, Lisa Zycherman, Gabriel Rottman, Mara Gassmann, and Allyson Veile, Reporters Committee for Freedom of the Press, Washington, D.C., for Amici Curiae Reporters Committee for Freedom of the Press and 44 News and Media Organizations.

Jean-Paul Jassy, Kevin L. Vick, Jeffrey A. Payne, Jordyn Ostroff, and Amanda A. Harris, Jassy Vick Carolan LLP, Los Angeles, California; Mickey H. Osterreicher, East Amherst, New York; for Amicus Curiae National Press Photographers Association.

**OPINION**

GOULD, Circuit Judge:

Peaceful protests and a free press sit at the core of our democracy.   In light of the First Amendment to our Constitution, the government cannot properly silence the People or the Press simply because the government disagrees with public protests, demonstrations, press reporting, or other speech criticizing the government.  That constitutional protection, however, does not provide a license to commit illegal or violent acts.

Protest and the exercise of free speech—even before such rights existed for the American colonists—were driving forces that helped to propel the American Revolution and to establish the United States' independence from colonial control.  Indeed, protests throughout the Thirteen Colonies, including the famed Boston Tea Party, set the stage for the American Revolution. *See* The Declaration of Independence para. 30 (U.S. 1776) ("We have Petitioned for Redress in the most humble terms: Our repeated Petitions have been answered only by repeated injury."); Letter from Thomas Jefferson to Abigail Adams (Feb. 22, 1787) ("The spirit of resistance to government is so valuable on certain occasions, that I wish it to be always kept alive.  It will often be exercised when wrong, but better so than not to be exercised at all.").

Our Nation's founding ideals are rooted in protests and free speech.  These enduring ideals continue to shape and sustain our country to this day.  Over the past 250 years, Americans have used their free speech rights to advance a wide range of causes, including suffrage, labor rights, the Civil Rights Movement, opposition to the Vietnam War,

disability rights, the right to life and abortion rights, LGBTQ+ rights, and racial justice. One of the latest causes in this American tradition is opposition to the tactics and practices attributed to Immigration and Customs Enforcement ("ICE") agents when conducting immigration raids.

During the summer of 2025, protests erupted across the country in response to immigration raids carried out by ICE. In Southern California, citizens took to the streets to express concern about the raids and their effects on their communities. Department of Homeland Security ("DHS") officers from the Federal Protective Services ("FPS"), ICE, and U.S. Customs and Border Protection ("CBP" or "Border Patrol") responded to these increasing protests by deploying crowd control weapons, at times indiscriminately, against protesters, legal observers, and members of the press. These crowd control tactics left peaceful protesters, members of the press, and legal observers with injuries including pain, swelling, bruising, lacerations requiring stitches, and concussions. As examples, one protester, while complying with the agency's orders, was nonetheless shot in the head, legs, and feet with pepper balls at close range, a member of the press was hit in the head with a rubber bullet resulting in a concussion, another member of the press was hit in the arm with a tear gas canister while retreating and was diagnosed with a hematoma and treated for a burn; and another protester was hit in the hand by a tear gas canister fired from only 50–75 feet away from him, causing a wound requiring stitches. In some instances, officers issued no warnings and shot individuals who posed no threat to the officers or to any other person.

In June 2025, individual journalists, legal observers, protesters, and two press organizations (Los Angeles Press

Club and NewsGuild-Communications Workers of America ("Organizational Plaintiffs")) filed this action against DHS and its Secretary.  As relevant here, Plaintiffs bring claims alleging violations of two First Amendment rights: [1] a right to be free from retaliation by federal officers for engaging in protected activities; and [2] a right of public access to protests.  In September 2025, the district court issued a preliminary injunction to safeguard the First Amendment rights of the protesters, the press, and the legal observers to engage in peaceful protests and to cover and report on those protests, as well as the government's response to them.  The district court, in granting the preliminary injunction now under review, reasoned that the court found it necessary to curtail the "federal agents' indiscriminate use of force targeting journalists standing far from any protest activity, launching scorching-hot tear gas canisters directly at people, and shooting projectiles at protesters attempting to comply with dispersal orders" because the officers' actions "undoubtedly chill the media's efforts to cover these public events and protestors seeking to express peacefully their views on national policies."

The government appeals the district court's grant of a preliminary injunction, arguing that it is "legally unsound and practically unworkable."  We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).  We conclude that the district court did not abuse its discretion in its analysis of the well-established and guiding *Winter* factors.  The terms of the preliminary injunction, however, are overbroad in several respects, and so we vacate and remand to the district court on an open record with instructions to fashion a narrower injunction consistent with this opinion.

We review the district court's grant of a preliminary injunction for abuse of discretion. *Doe v. Horne*, 115 F.4th

1083, 1099 (9th Cir. 2024).  "A district court 'necessarily abuses its discretion when it bases its decision on an erroneous legal standard or on clearly erroneous findings of fact.'" *Johnson v. Couturier*, 572 F.3d 1067, 1078–79 (9th Cir. 2009) (quoting *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009)); *see also City of Anaheim v. Kleppe*, 590 F.2d 285, 288 n.4 (9th Cir. 1978). "[W]e review legal conclusions de novo," and reject only clearly erroneous factual findings—those which are "illogical, implausible, or without support . . . in the record." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1123 (9th Cir. 2014) (quoting *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012)).

When evaluating whether to grant a preliminary injunction, a district court considers whether Plaintiffs have established [1] that they are likely to succeed on the merits, [2] that they are likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in Plaintiffs favor, and [4] that the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The district court determined that each of these factors weighed in favor of a preliminary injunction. We agree.

## I. ISSUANCE OF THE PRELIMINARY INJUNCTION

### A.  Likelihood of Success on the Merits

The first factor under *Winter* is the most important: likelihood of success on the merits. *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020).  The government contends that Plaintiffs are unlikely to prevail on their First Amendment claims because they lack Article III standing to seek prospective injunctive relief; and also contends that

even if Plaintiffs had standing, they are unlikely to prevail on the merits of their First Amendment claims. Reaching only Plaintiffs' First Amendment retaliation claims, we conclude that the district court did not abuse its discretion by determining that Plaintiffs were likely to succeed on the merits.

The Plaintiffs' first hurdle on likelihood of success on the merits is standing. At the preliminary injunction stage, plaintiffs are required to show only that they are "likely to establish each element of standing." *Am. Encore v. Fontes*, 152 F.4th 1097, 1110 (9th Cir. 2025) (internal quotations and citation omitted). "The 'irreducible constitutional minimum' of standing," the Supreme Court has explained, "consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "In a suit with multiple plaintiffs, generally only one plaintiff need have standing for the suit to proceed." *Mecinas v. Hobbs*, 30 F.4th 890, 897 (9th Cir. 2022). For the reasons set forth below, the district court correctly determined that Plaintiffs met their burden to show a likelihood of establishing each element of standing.

There are two ways for plaintiffs seeking prospective injunctive relief to establish standing. First, they can show that defendants' past conduct is having "continuing, present adverse effects," that is to say, plaintiffs continue to suffer ongoing, concrete harm. *Villa v. Maricopa County*, 865 F.3d 1224, 1229 (9th Cir. 2017) (internal quotations and citations omitted). Second, plaintiffs can show there is "a sufficient

likelihood that [they] will again be wronged in a similar way." *Id.* (internal quotations and citations omitted).

We need only address the "continuing, present adverse effects" suffered by the Plaintiffs here to conclude that they are likely to establish standing. "[A]s the Supreme Court has recognized, a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Libertarian Party of L.A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013). Government conduct that induces reporters to modify their coverage or protesters to alter or limit their methods of protest chills First Amendment expression when based on a reasonable fear that government reprisals are likely to occur. *See Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 826 (9th Cir. 2020) (quoting *Munns v. Kerry*, 782 F.3d 402, 410 (9th Cir. 2015)) (finding Article III standing when plaintiffs alleged that "crowd-control measures ha[d] 'chilled' the exercise of their First Amendment rights"). Stated another way, adverse changes to First Amendment activities, when adopted because of fear of government punishment, demonstrate chilled and diminished First Amendment speech. That reduction of speech to the public establishes continuing, present adverse effects sufficient to confer standing. *See id.* at 825.

Here, some Plaintiffs have been injured more than once and have sworn under oath that the physical injuries inflicted upon them by Defendants will cause them to stand further away from future protests or to wear restrictive protective equipment—to the detriment of their news coverage and other First Amendment activities. Others have attested that the injuries they sustained have made them hesitant to participate in or cover future protests. Against this backdrop, Plaintiffs' fear of reprisal and physical injury is reasonable because Defendants have inflicted such injuries

on Plaintiffs as they engaged in First Amendment activities at varied locations on different days.

The district court also correctly held that Organizational Plaintiffs had made their requisite showing on standing. An organization has standing to sue on behalf of its members when (1) at least one member would have standing to sue individually, (2) the interests it seeks to protect are germane to its purpose, and (3) neither the claim nor relief "requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Here, each of the two Organizational Plaintiffs has at least one member with standing to sue individually. Defendants do not assert that the claim for relief "requires the participation of individual members." *Id.* Because NewsGuild is a journalist labor union, preventing the physical injury and chilled speech of its member journalists is germane to its purpose. While L.A. Press Club's core activities have previously revolved around networking and career advancement, it has recently become involved in lobbying and lawmaking on some of the very issues raised by this lawsuit, making the interests the suit seeks to protect germane to its purpose too. Accordingly, both the individual and Organizational Plaintiffs have standing at the preliminary injunction phase.

Turning to the substance of Plaintiffs' claims, the district court did not abuse its discretion in holding that Plaintiffs are likely to prevail on their First Amendment retaliation claims. "A plaintiff claiming First Amendment retaliation must show that (1) [it] was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected

activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *AFGE v. Trump*, 148 F.4th 648, 654 (9th Cir. 2025) (per curiam) (alteration in original) (internal citations and quotations omitted).

The government contests only the third element of Plaintiffs' retaliation claims: whether Plaintiffs have shown their First Amendment activity was a "substantial or motivating factor" in federal agents' decision to use force against them. Defendants assert that the "district court failed to identify any direct evidence supporting [P]laintiffs' claim that DHS intentionally targeted plaintiffs for their First Amendment activity." But the "substantial or motivating factor" element can be "met with either direct or circumstantial evidence." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 979 (9th Cir. 2002); *see also Index Newspapers*, 977 F.3d at 827. Because direct evidence of officers' subjective motives is rarely available, Plaintiffs may rely on circumstantial evidence to establish retaliatory intent. And here, the district court cited an "avalanche" of circumstantial evidence to conclude that Plaintiffs' First Amendment activity was a "substantial motivating factor" for Defendant's actions. *See Ulrich*, 308 F.3d at 979. The record contains extensive evidence that federal officers repeatedly targeted journalists and peaceful legal observers who stood far from any protesters or bad actors. *See Index Newspapers*, 977 F.3d at 829 (explaining that injuries to journalists "standing nowhere near protesters . . . provide[d] exceptionally strong evidentiary support" for a finding of retaliation). There is also evidence that Defendants deployed crowd control weapons even when crowds were already dispersing or attempting to comply with orders to disperse. On this record, we see no clear error in the district

court's finding that Defendants acted with retaliatory intent. *See Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it . . . .").

Defendants contend that there is an "obvious alternative explanation for plaintiffs' alleged injuries: that those injuries incidentally resulted from officers' legitimate efforts to protect federal personnel, federal property, and the public from the chaos of violent protests." But the district court rejected Defendants' alternative explanations for their use of force after "carefully review[ing] each incident and Defendants' response." The district court made well-supported factual findings that Defendants targeted protesters, journalists, and legal observers with indiscriminate force. The presence of some violent actors did not give Defendants *carte blanche* to fire crowd control weapons indiscriminately into crowds of peaceful protesters, legal observers, and members of the press. And Defendants cannot avoid potential liability by pointing to DHS policies that correctly set out the bounds for the use of less lethal munitions, when their actions were inconsistent with those policies. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1075 n.10 (9th Cir. 2016) ("[A] plaintiff can show a custom or practice of violating a written policy; otherwise an entity . . . always could avoid liability by pointing to a pristine set of policies.").

Having determined that Plaintiffs are likely to succeed on the merits of their First Amendment retaliation claims, we need not consider the district court's alternative finding that they are likely to succeed on the merits of their right-of-access claims.

## B.  Irreparable Harm

The district court also did not abuse its discretion in determining that Plaintiffs demonstrated that they will suffer irreparable harm absent a preliminary injunction.

The government's actions have already caused severe and lasting physical injuries and trauma to some Plaintiffs—some on more than one occasion at different locations, during different protests.  As noted, this has had a chilling effect on some Plaintiffs' ability to exercise freedoms protected by the First Amendment.  And "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Klein v. City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir. 2009) (alteration in original) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Having "demonstrat[ed] the existence of a colorable First Amendment claim," Plaintiffs "can establish irreparable injury sufficient to merit the grant of [injunctive] relief."  *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005) (quoting *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 973 (9th Cir. 2002), *abrogated on other grounds by Winter*, 555 U.S. 7).

## C.  The Remaining *Winter* Factors

The district court did not abuse its discretion in determining that the remaining *Winter* factors, the balance of equities and public interest, favor Plaintiffs.  Plaintiffs raise "serious First Amendment questions, . . . [so] the balance of hardships tips sharply in [their] favor."  *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007) (quoting *Sammartano*, 303 F.3d at 973).  We have made clear that "it is always in the public interest to prevent the violation of a party's constitutional rights."  *See, e.g.*, *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (quoting

*Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022)).  We have also "consistently recognized the significant public interest in upholding First Amendment principles."  *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (quoting *Sammartano*, 303 F.3d at 974).  And as the district court emphasized, this is particularly true "where Plaintiffs include journalists, whose exclusion 'from public fora can have particularly deleterious effects on the public interest.'"

In sum, we conclude that the district court did not abuse its discretion in its analysis of any of the *Winter* factors.  We therefore affirm the district court's grant of the preliminary injunction.   But because we hold that the preliminary injunction is overbroad, as discussed below, we vacate and remand to the district court to fashion a narrower injunction.

## II. THE SCOPE OF THE PRELIMINARY INJUNCTION

### A.  Proper Scope of Preliminary Injunctions

We review the scope of a preliminary injunction for abuse of discretion.  *Washington v. Trump*, 145 F.4th 1013, 1037 (9th Cir. 2025).  "It is an abuse of discretion to issue an overly broad injunction."  *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1188 (9th Cir. 2024).  Although district courts have "considerable discretion in fashioning suitable relief and defining the terms of an injunction," such relief "must be tailored to remedy the specific harm alleged."  *Washington*, 145 F.4th at 1037–38 (quoting *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991)).

The scope of a preliminary injunction must be "no broader than necessary to provide complete relief to the

named plaintiffs" and members of organizational plaintiffs. *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1496 (9th Cir. 1996) (citing *Meinhold v. U.S. Dep't of Def.*, 34 F.3d 1469, 1480 (9th Cir. 1994)); *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) (granting stay of preliminary injunctions "to the extent that the injunctions [we]re broader than necessary to provide complete relief to each plaintiff with standing to sue"). "There is no rule, however, that nonparties must remain unaffected by the court's order." *Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1028 (9th Cir. 2025). Under *CASA*, "party-specific injunctions sometimes [may] 'advantag[e] nonparties,'" but "only incidentally." *CASA*, 606 U.S. at 851 (alteration in original) (quoting *Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring)). For the reasons described below, we conclude that the district court abused its discretion here by fashioning an overbroad injunction. *See Lamb-Weston*, 941 F.2d at 974. Rather than attempt to re-write the preliminary injunction, we vacate and remand to the district court to fashion a narrower preliminary injunction consistent with our analysis that follows.

## B. Overbroad Provisions

The preliminary injunction here is overbroad in some respects. We highlight examples to guide the district court's analysis on remand. First, several provisions expressly apply to non-parties and are broader than necessary to afford "complete relief *to the plaintiffs before the court*." *CASA*, 606 U.S. at 852 (emphasis in original). For example, the injunction prohibits Defendants from firing tear gas canisters or flash-bang grenades aimed at striking "any person." Similarly, some provisions of the injunction restrict the use of crowd control weapons against "members of the press, legal observers, and protesters." By their explicit terms,

these provisions are not limited to providing relief only to the individual Plaintiffs, members of the Organizational Plaintiffs, or non-parties whose protection Plaintiffs have shown necessary to give relief to Plaintiffs.

The preliminary injunction also restricts DHS from "[d]ispersing, threatening, or assaulting any person whom they know or reasonably should know is a Journalist or Legal Observer (as defined [by the district court])." And the district court's definitions extend the scope of this prohibition beyond the specific Plaintiffs who brought suit or any non-parties necessary to give relief to Plaintiffs.

Plaintiffs have not demonstrated that they are entitled to the sweeping relief ordered by the district court. Because the Supreme Court has cautioned that "[c]omplete relief is not a guarantee—it is the maximum a court can provide," *id.* at 854, equitable remedies must be responsive "to the necessities of the particular case." *See id.* (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)).

Second, the preliminary injunction bars DHS from dispersing journalists and legal observers "unless Defendants have probable cause to believe that the individual has committed a crime unrelated to failing to obey a dispersal order." An injunction that exempts Plaintiffs, non-party journalists, and non-party legal observers from lawful, *non-retaliatory* dispersal orders is broader than necessary to "remedy the specific harm alleged" in Plaintiffs' First Amendment claims. *See Washington*, 145 F.4th at 1038 (internal quotations and citation omitted).

Third, the district court's injunction prohibits the use of crowd control weapons without first giving two separate audible warnings. That prohibition applies broadly for the purported protection of the general public and is attenuated

from the First Amendment injury Plaintiffs have shown here. The preliminary injunction's necessarily subjective requirement for audibility of warnings invites strategic or near-frivolous contempt proceedings against the government's responsible law enforcement agents. That possibility further burdens the government, while it does little to give Plaintiffs their desired relief. This audible warnings provision is "more burdensome to the defendant than necessary," *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979), and is not narrowly "tailored to remedy the specific harm alleged," *Lamb-Weston*, 941 F.2d at 974.

Conversely, however, the injunction's prohibition against "firing [kinetic impact projectiles] or other crowd control weapons at the head, neck, groin, back, or other sensitive areas" is directly tethered to the specific harms alleged by Plaintiffs and recognized by the district court—namely, Defendants' aiming of crowd control weapons at sensitive areas of the body, including heads, in retaliation for First Amendment protected conduct. Although federal policies already prohibit the intentional targeting of sensitive areas unless the use of deadly force is reasonable, the district court found that DHS officers failed to follow those policies in response to Plaintiffs' protected conduct, resulting in chilling of Plaintiffs' exercise of First Amendment rights.

### III. CONCLUSION

We AFFIRM the district court's issuance of the preliminary injunction, but VACATE the preliminary injunction and REMAND to the district court for further proceedings consistent with this opinion.

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

### Information Regarding Judgment and Post-Judgment Proceedings

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate electronic filing system or, if you are a pro se litigant or an attorney with an exemption from the electronic filing requirement, file one original motion on paper.

**Petition for Panel Rehearing and Petition for Rehearing En Banc (Fed. R. App. P. 40; 9th Cir. R. 40-1 to 40-4)**

**(1) Purpose**
  **A. Panel Rehearing:**
   - A party should seek panel rehearing only if one or more of the following grounds exist:
     - ➢ A material point of fact or law was overlooked in the decision;
     - ➢ A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
     - ➢ An apparent conflict with another decision of the Court was not addressed in the opinion.
   - Do not file a petition for panel rehearing merely to reargue the case.

  **B. Rehearing En Banc**
   - A party should seek en banc rehearing only if one or more of the following grounds exist:
     - ➢ Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
     - ➢ The proceeding involves a question of exceptional importance; or

Post Judgment Form - Rev. 8/2025

> ➢ The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

## (2) Deadlines for Filing:

- A petition for rehearing or rehearing en banc must be filed within 14 days after entry of judgment. Fed. R. App. P. 40(d).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment. Fed. R. App. P. 40(d). The deadlines for seeking reconsideration of a non-dispositive order are set forth in 9th Cir. R. 27-10(a)(2).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- See Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication. 9th Cir. R. 40-4.

## (3) Statement of Counsel

- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist. The points to be raised must be stated clearly.

## (4) Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))

- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

2

Post Judgment Form - Rev. 8/2025

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms*.
- Attorneys must file the petition electronically via the appellate electronic filing system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

### Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms*.

### Attorneys Fees
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-8000.

### Petition for a Writ of Certiorari
- The petition must be filed with the Supreme Court, not this Court. Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov.

### Counsel Listing in Published Opinions
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
  - ➢ Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Maria Evangelista, maria.b.evangelista@tr.com);
  - ➢ **and** electronically file a copy of the letter via the appellate electronic filing system by using the Correspondence filing category, or if you are an attorney exempted from electronic filing, mail the Court one copy of the letter.

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 10. Bill of Costs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form10instructions.pdf*

**9th Cir. Case Number(s)**

**Case Name**

Name of party/parties requesting costs to be taxed:

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**                          **Date**

*(use "s/[typed name]" to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd , and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee / Appeal from Bankruptcy Appellate Panel Docket Fee/Appeal from District Court filing portion of fee ($5) | | | | $ |
| | | | TOTAL: | $ |

***Example:*** *Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:*
*No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);*
*TOTAL: 4 x 500 x $.10 = $200.*