Matthew Borden, Esq. (SBN: 214323)
  borden@braunhagey.com
J. Noah Hagey, Esq. (SBN: 262331)
  hagey@braunhagey.com
Kory J. DeClark, Esq. (SBN: 310571)
  declark@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
  gwashington@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Peter Bibring, Esq. (SBN: 223981)
  peter@bibringlaw.com
Law Office of Peter Bibring
2210 W Sunset Blvd # 203
Los Angeles, CA 90026
Telephone: (213) 471-2022

Peter J. Eliasberg, Esq. (SBN: 189110)
  peliasberg@aclusocal.org
Jonathan Markovitz, Esq. (SBN: 301767)
  jmarkovitz@aclusocal.org
Adrienna Wong, Esq. (SBN: 282026)
  awong@aclusocal.org
Meredith Gallen, Esq. (SBN: 291606)
  mgallen@aclusocal.org
Summer Lacey, Esq. (SBN: 308614)
  slacey@aclusocal.org
Mohammad Tajsar, Esq. (SBN: 280152)
  mtajsar@aclusocal.org
ACLU FOUNDATION OF SOUTHERN CALIFORNIA
1313 W 8th Street, Ste 200
Los Angeles, CA 90017
Telephone: (213) 977-9500

[Additional counsel on next page]

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES PRESS CLUB, NEWSGUILD - COMMUNICATIONS WORKERS OF AMERICA, ABIGAIL OLMEDA, individually; and SEAN BECKNER-CARMITCHEL, RYANNE MENA, LEXIS-OLIVIER RAY, CHARLES XU, BENJAMIN ADAM CLIMER, and MARIA-ALEJANDRA PAZ, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary, Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; GREGORY BOVINO, in his official capacity as Chief Patrol Agent for the El Centro Sector of the U.S. Border Patrol; ANDRE QUINONES, in his official capacity as Acting Field Office Director for the Los Angeles Field Office, U.S. Immigration and Customs | Case No. 2:25-CV-05563-HDV-E<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:        April 30, 2026<br>Time:        10:00 a.m.<br>Judge:       Hon. Hernán D. Vera<br>Location:    Courtroom 5B, 5th Floor |

PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION

Enforcement; EDDY WANG, in his official capacity as Special Agent in Charge for the Los Angeles Field Office of Homeland Security Investigations; MARIO CANTON, in his official capacity as Regional Director for Region 9 of the Federal Protective Service; KEVIN GREEN, in his official capacity as Commander of the U.S. Customs and Border Protection, Office of Field Operations, Special Response Team; and U.S. DEPARTMENT OF HOMELAND SECURITY,

Defendants.

PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION

Additional Counsel of Record for Plaintiffs:

Carol A. Sobel, Esq. (SBN: 84483)
  carolsobellaw@gmail.com
Weston Rowland, Esq. (SBN: 327599)
  rowland.weston@gmail.com
Law Office of Carol A. Sobel
2632 Wilshire Boulevard, #552
Santa Monica, CA 90403
Telephone: (310) 393-3055

Paul Hoffman, Esq. (SBN: 71244)
  hoffpaul@aol.com
Michael Seplow, Esq. (SBN: 150183)
  mseplow@sshhzlaw.com
John Washington, Esq. (SBN 315991)
  jwashington@sshhzlaw.com
Schonbrun, Seplow, Harris, Hoffman & Zeldes LLP
200 Pier Avenue #226
Hermosa Beach, CA 90254
Telephone: (310) 396-0731

PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ..................................................................................................ii-iv

INTRODUCTION ..................................................................................................................... 1

ARGUMENT.............................................................................................................................. 1

I.   THE PROPOSED CLASS SATISFIES RULE 23(a) ........................................................ 1

    A.   The Proposed Class Satisfies the Numerosity Requirement................................... 1

    B.   The Proposed Class Satisfies the Commonality Requirement ............................... 2

        1.   Commonality is satisfied because the class is defined as those engaged in the specific conduct targeted by DHS's retaliatory policy ..................... 3

        2.   There is significant proof of a *de facto* policy raising common questions . 4

        3.   Defendants' ascertainability argument is meritless and contrary to law .... 5

    C.   Typicality ............................................................................................................. 6

    D.   Adequacy ............................................................................................................. 7

II.   THE PROPOSED CLASS SATISFIES RULE 23(b)(2)...................................................... 8

III.   DEFENDANTS' STANDING ARGUMENTS LACK MERIT ........................................ 9

IV.   *CASA* DOES NOT UNDERMINE CLASS CERTIFICATION HERE ............................ 9

V.   PROMPT CERTIFICATION OF THIS CLASS IS IN THE PUBLIC INTEREST ....................................................................................................................... 10

CONCLUSION.......................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmad v. City of St. Louis*,
  995 F.3d 635 (8th Cir. 2021) ......................................................................................... 8

*Aichele v. City of Los Angeles*,
  314 F.R.D. 478 (C.D. Cal. 2013) .................................................................................. 5

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................................... 7

*Armstrong v. Davis,*
  275 F.3d 849 (9th Cir. 2001) ........................................................................................ 3

*Baby Neal for & by Kanter v. Casey*,
  43 F.3d 48 (3d Cir. 1994) ............................................................................................. 6

*Berni v. Barilla,*
  964 F.3d 141 (2d Cir. 2020) ......................................................................................... 8

*Black Lives Matter Los Angeles v. City of Los Angeles ("BLM")*,
  113 F.4th 1249 (9th Cir. 2024) ................................................................................. 3, 7

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ................................................................................. 5, 10

*Califano v. Yamasaki*,
  442 U.S.  (1979) .......................................................................................................... 10

*Deorle v. Rutherford*,
  272 F.3d 1272 (9th Cir. 2001) ...................................................................................... 8

*Doe v. Wolf,*
  424 F. Supp. 3d 1028 (S.D. Cal. 2020) ........................................................................ 2

*Don't Shoot Portland v. City of Portland*,
  2022 WL 2700307 (D. Or. July 12, 2022) .................................................................... 3

*Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
  867 F.3d 1093 (9th Cir. 2017) ...................................................................................... 4

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ........................................................................................ 6

PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION

*Franco-Gonzalez v. Napolitano*,
  2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) ......................................................... 10

*Gonzalez v. U.S. Immigr. & Custom Enf't,*
  975 F.3d 788 (9th Cir. 2020) ........................................................................... 3, 4, 10

*Healy v. Milliman, Inc.*,
  164 F.4th 701 (9th Cir. 2026) ................................................................................. 9

*In re Banc of Cal. Sec. Litig.*,
  326 F.R.D. 640 (C.D. Cal. 2018) ............................................................................. 2

*In re Live Concert Antitrust Litig.*,
  247 F.R.D. 98 (C.D. Cal. 2007) .............................................................................. 7

*Just Film, Inc. v. Buono,*
  847 F.3d 1108 (9th Cir. 2017) ................................................................................ 6

*Los Angeles Press Club v. Noem ("LAPC")*,
  2026 WL 889142 (9th Cir. Apr. 1, 2026) ............................................................. 4, 9, 10

*Multi-Ethnic Imm. Workers Org. Network v. City of Los Angeles ("MIWON")*,
  246 F.R.D. 621 (C.D. Cal. 2007) ........................................................................ 2, 5, 6, 7

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) .................................................................................. 5, 9

*Owino v. CoreCivic, Inc.*,
  60 F.4th 437 (9th Cir. 2022) .................................................................................. 3

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ............................................................................ 3, 4, 6, 8

*Puente v. City of Phoenix*,
  2019 WL 4849613 (D. Ariz. Sept. 30, 2019) ........................................................... 3

*Tait v. BSH Home Appliances Corp.*,
  289 F.R.D. 466 (C.D. Cal. 2012) ............................................................................ 2

*Tincher v. Noem*,
  164 F.4th 1097 (8th Cir. 2026) ............................................................................... 3

*Trump v. CASA, Inc.,*
  606 U.S. 831 (2025) ........................................................................................... 9, 10

*U.S. v. Harrison*,
  585 F.3d 1155 (9th Cir. 2009) ................................................................................ 8

PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 ................................................................................................................... 4


**Statutes**

18 U.S.C. § 111 .................................................................................................................. 8

**Rules**

Fed. R. Civ. P. 23 .............................................................................................................. 8

**Other Authorities**

*1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions* § 3.13 (3d ed. 1992) .................... 6

*Newberg & Rubenstein on Class Actions* § 3:11 (6th ed.) ................................................. 1

PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION

**INTRODUCTION**

In their opposition, Defendants misstate the nature of the proposed class and stitch together an incorrect view of the law from *CASA* (a non-class case) and an out-of-circuit stay motion order. Their arguments are contrary to the longstanding Ninth Circuit law cited in Plaintiffs' motion, fall apart under scrutiny and, if adopted, would foreclose the ability to obtain class relief in civil rights cases—even where, as here, the Court has ruled Plaintiffs are challenging a retaliatory DHS policy that applies to all class members, based on findings affirmed by the Ninth Circuit.

The proposed class is defined as people in this District commonly subject to a specific government policy: those who "do or will, without using force or threat of force, record DHS immigration enforcement and removal operations or protests of those operations in this District since June 6, 2025." Though Defendants argue this class is both too broad and, at the same time, does not satisfy numerosity, the class easily exceeds 40 people and constitutes the same type of defined injunctive relief class that the Ninth Circuit has repeatedly upheld. Defendants do not dispute that one central common issue will satisfy commonality, but they ignore the key common issue in this case—their policy about recording DHS agents—and spend pages on issues they claim are not common. Defendants argue that "no single, indivisible injunction could properly provide relief to Plaintiffs' proposed classes[sic] 'as a whole'" (Opp. at 21)—yet an injunction against DHS's policy of treating recording as an unlawful threat would do just that. The class that Plaintiffs seek to certify will enable the Court to pass on the legality of DHS's policy in one stroke and easily meets all the requirements of Rule 23(a) and (b)(2).

**ARGUMENT**

I.    **THE PROPOSED CLASS SATISFIES RULE 23(a)**

A.    **The Proposed Class Satisfies the Numerosity Requirement**

The core of Rule 23(a)(1)'s "numerosity" requirement is "that joinder be impracticable." *Newberg & Rubenstein on Class Actions* § 3:11 (6th ed.) The proposed class satisfies Rule 23(a)(1) because it is sufficiently numerous, and inclusion of future members makes joinder impracticable.

Defendants argue that Plaintiffs have not provided sufficient evidence showing the actual number of class members. (Opp. at 7.) But Plaintiffs have submitted sworn statements that

PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION

establish that there are at least 90 journalist members of the proposed class. (Schleuss Decl. ¶ 4, Dkt. 100-24; Second Suppl. Decl. of Adam Rose ¶ 19, Dkt. 100-22.) That number is sufficient by itself to satisfy Rule 23(a)(1). *See, e.g., In re Banc of Cal. Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018) ("generally accepted" that "when a proposed class has at least forty members," joinder is impracticable). The Schleuss and Rose declarations comprise reasoned understandings of their organization's membership and how common it is for their members to record the activities that make them members of the class.

Moreover, "Rule 23 does not require a numeric estimate of the number of class members, if certification under Rule 23(b)(2) is sought." *Multi-Ethnic Imm. Workers Org. Network v. City of Los Angeles* ("*MIWON*"), 246 F.R.D. 621, 631 (C.D. Cal. 2007). Defendants wrongly suggest that Plaintiffs were required to provide evidence to determine the number of injured class members. (Opp. at 7.) That argument ignores that Plaintiffs are seeking to certify a 23(b)(2) injunctive relief class of people who face future injury from DHS's policy and practice. Thus, unlike in a 23(b)(3) damages class action, there is no need to show how many people have been "actually injured."*(Id.*)

Rule 23(a)(1) is also satisfied because Plaintiffs are seeking injunctive relief on behalf of a class that includes future members. (Mot. at 13, citing *Doe v. Wolf*, 424 F. Supp. 3d 1028, 1040 (S.D. Cal. 2020).) Defendants' brief does not address, much less distinguish *Doe*, nor explain how joinder of future class members is practicable.

### B.    The Proposed Class Satisfies the Commonality Requirement

Defendants do not dispute that commonality is satisfied if there is even a single common question central to the validity of all class members' claims. (Mot. at 14.) Defendants attempt to evade this well-established rule and the fact that Plaintiffs have identified—and adduced significant proof—of such common questions (Mot. at 15-21), by pointing to a scattershot of *other* questions they argue are not appropriate for class-wide resolution.[1] (Opp. at 8-10.) Based on this faulty premise and on mischaracterization of the proposed class, Defendants assert four arguments about commonality, all of which lack merit for reasons addressed in turn below.

---

[1] Defendants also erroneously assert commonality is a "demanding standard," (Opp. at 9), when it is "construed permissively." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 474 (C.D. Cal. 2012).

PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION

**1.     Commonality is satisfied because the class is defined as those engaged in the specific conduct targeted by DHS's retaliatory policy**

Defendants first argue that the proposed class lacks commonality because it "sweeps in a wide range of conduct and circumstances that cannot be resolved in common" (Opp. at 8), contradicting directly on-point Ninth Circuit precedent and relying instead on cases addressing very different classes. The class proposed here is those who engage in the specific conduct targeted by the challenged DHS policy. Commonality is thus satisfied because there is a class-wide policy or practice to which all class members are subjected. *Owino v. CoreCivic, Inc.*, 60 F.4th 437, 444 (9th Cir. 2022); *Gonzalez v. U.S. Immigr. & Custom Enf't*, 975 F.3d 788, 807-09 (9th Cir. 2020). When such a policy exists, individual factual differences among class members do not preclude a finding of commonality. *See, e.g., Armstrong v. Davis,* 275 F.3d 849, 868 (9th Cir. 2001).

Defendants primarily rely on an Eighth Circuit motions panel decision, *Tincher v. Noem*, 164 F.4th 1097 (8th Cir. 2026), addressing a class including not only persons who record, but also observers and protesters. That decision does not bind this Court, in contrast to the Ninth Circuit precedents Plaintiffs cite (Mot. at 14-15); does not discuss the existence of a class-wide policy; and addresses a class including multiple, different categories of conduct—so it is inapplicable to this class limited to those who record and are thus subject to the same policy.

Defendants also rely on the mixed discussion of commonality and predominance in the context of a Rule 23(b)(3) damages class in *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1259-61 (9th Cir. 2024) ("*BLM*")*.* That discussion of whether common questions predominated over individual ones and fact-finding to determine Fourth Amendment damages liability is not relevant to this proposed Rule 23(b)(2) class.[2] For a class such as this, shared exposure to the same policy or practice is sufficient for commonality, even if differing factual circumstances are involved. *Parsons v. Ryan*, 754 F.3d 657, 682 (9th Cir. 2014) ("where the

---

[2] Predominance is not a requirement for Rule 23(b)(2) classes. *BLM* did not rule on whether commonality was satisfied as to the Rule 23(b)(2) class, instead remanding the matter for determination by the district court, which had not analyzed the question at all. 113 F.4th at 1265. Though it remarked in dicta that it was "hard to imagine" what the class had in common, *id.,* it cited cases where district courts found plaintiffs did not challenge a "common command" or "blanket policy." *See Don't Shoot Portland v. City of Portland*, at *15 (D. Or. July 12, 2022). Here, Plaintiffs *do* challenge a blanket policy that applies to the conduct of all class members, and rulings on it will resolve issues central to all class members' claims "in one stroke." *Cf. Puente v. City of Phoenix*, 2019 WL 4849613, *7 (D. Ariz. Sept. 30, 2019) (common questions predominated where teargas was deployed against class members under common command structure).

PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION

lawsuit challenges a system-wide practice or policy that affects all of the putative class members … individual factual differences among class members pose no obstacle to commonality") (citation omitted); *Gonzalez,* 975 F.3d at 809-810. As in *Parsons* and *Gonzalez,* the "same injury" that class members share, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, is being subject to the same unlawful government policy, which here chills their common exercise of First Amendment rights.

Defendants' reliance on *C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093 (9th Cir. 2017) is similarly misplaced. There, the Ninth Circuit held commonality was not satisfied— not because there were factual differences in how class members were harmed by a common policy, but because the district court found there was *no de facto policy at all,* and Plaintiffs failed to even allege facts supporting its existence. *Id.* at 1104-05. Here, in contrast, this Court has already held that Plaintiffs sufficiently alleged the existence of such a policy (Dkt. 89 at 17-18), and Plaintiffs have produced significant evidence proving those allegations, plus more. This common evidence will provide proof that is central to the claims of all members of the proposed class.

**2.      There is significant proof of a *de facto* policy raising common questions**

Defendants argue that Plaintiffs have produced "no evidence" demonstrating the existence of a policy that presents a common question for the class (Opp. at 11-12), suggesting the Court's prior rulings (including those recently affirmed by the Ninth Circuit) relied on cherry-picking. Defendants offer no new arguments explaining why the Court should set aside its previous rulings.

Instead, Defendants continue to suggest there is no reason to look beyond their written policies, though this Court has found there is an "avalanche of evidence" indicating DHS is not following them. (Dkt. 55 at 33.) Recently, however, the Ninth Circuit squarely rejected Defendants' argument, crediting this Court's "well-supported factual findings that Defendants targeted protesters, journalists, and legal observers with indiscriminate force" and affirming that they "cannot avoid potential liability by pointing to DHS policies that correctly set out the bounds for the use of less lethal munitions, when their actions were inconsistent with those policies." *Los Angeles Press Club v. Noem*, 2026 WL 889142, at *5 (9th Cir. Apr. 1, 2026).

Though Defendants assert that Plaintiffs' reliance on *Gonzalez,* 975 F.3d 788 and *Parsons*, 754 F.3d 657 is misplaced because Plaintiffs do not challenge a "clear" government policy, they

offer no new reasons for second-guessing the Court's previous determination that Plaintiffs plausibly alleged the existence of DHS's unconstitutional policy. (Dkt. 89 at 17-18.) And they fail to refute Plaintiffs' evidence demonstrating the existence of this de facto policy of treating videorecording of DHS agents as an unlawful threat. (*See* Mot. at 5-12, 15-21.) That evidence is sufficient to establish the existence of the policy by a preponderance of the evidence, which is all that is required at this stage of the proceedings.[3] *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663-64 (9th Cir. 2022) (en banc).

**3.     Defendants' ascertainability argument is meritless and contrary to law**

Citing no legal authority at all, Defendants argue that the proposed class lacks commonality even if there *is* an unlawful policy that applies to the class, because determining class membership would require fact-finding. (Opp. at 12-13.) This argument lacks merit for multiple reasons.

First, it is an ascertainability argument in disguise. But the Ninth Circuit has "not" "adopted an 'ascertainability' requirement" as a prerequisite to certification. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 n.4 (9th Cir. 2017). "The contours of the class need not be so clear that every potential member may be identified at the time of class certification." *MIWON*, 246 F.R.D. at 629.

Second, Defendants mischaracterize the proposed class, which is defined by what its members "do or will do," not by what they did in the past. An injunction against DHS's policy of treating filming as an unlawful threat would provide relief for the whole of the class, without needing any individualized fact-finding about what may have happened to class members in the past. The scattershot of factual questions Defendants raise are not germane to the common questions of whether they have such a policy or whether it is illegal and should be enjoined.

Finally, the proposed class is objectively defined by descriptors of class members' conduct. Courts regularly certify classes thus defined, particularly in Rule 23(b)(2) cases. *See, e.g., MIWON*, 246 F.R.D. at 630 ("peaceful" and "demonstration" were "objectively determinable descriptors of class members' behavior"); *Aichele v. City of Los Angeles*, 314 F.R.D. 478, 485 (C.D. Cal. 2013).[4]

---

[3] After inviting the Court to take notice of DHS operations in cities like Chicago (*see* Dkt. 89 at 8, n.4), Defendants now claim that violence meted out by DHS agents outside of this District has no bearing on this case. (Opp. at 10.) But evidence from Minnesota and Illinois confirms DHS's policy of retaliation against recording. (Mot. at 7-11).

[4] Defendants' fourth argument—that "fail-safe classes" are impermissible—is irrelevant, because they cannot and do not argue that the proposed class is one nor explain why a class definition modified by this Court would have to be one.

PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION

### C.   Typicality

Defendants' arguments about typicality (Opp. at 15-18), rest on the erroneous premise that Plaintiffs have not shown proof of DHS's unconstitutional policy. Because Plaintiffs *have* done so (*see supra* Section I.B.2; Mot. at 21), and because the policy "affects both the named plaintiffs and the putative class," typicality is satisfied and Defendants' arguments fail. *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (citing *1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions* § 3.13 (3d ed. 1992)).

Defendants incorrectly assert that the Court would have to examine each instance of DHS violence separately to determine whether and how agents employed unconstitutional force, and that typicality fails because some proposed class members have been able to record without being subjected to such force. But these assertions miss the point: Plaintiffs claim that DHS's policy affects both named Plaintiffs and all putative class members by exposing them to ongoing and future injury, including First Amendment chill. Because the claims in this case revolve around that policy, there is no "danger that defenses unique to the putative class representative[s] will become a focus of the litigation" as Defendants' assert. (Opp. at 18.)

Defendants' concession that "[t]ypicality focuses on the class representative's claim … *not the specific facts from which the claim arose*[.]" (Opp. at 15 (citing *Just Film, Inc. v. Buono,* 847 F.3d 1108, 1116 (9th Cir. 2017))) is fatal to their argument, as it demonstrates the factual distinctions they fixate on are immaterial. DHS's unlawful policy impacts *everyone* recording their actions, regardless of whether they are journalists, legal observers, or bystanders. Because plaintiffs challenge a common policy, typicality is satisfied regardless of factual variations in the policy's implementation. *Parsons*, 754 F.3d at 685.

Typicality turns on whether the class representatives seek the same relief, arising from the same type of claims as other class members. Because the class representatives seek declaratory and injunctive relief that would alleviate the chilling effect faced by plaintiffs and class members, they raise legal claims that satisfy typicality regardless of minor factual variations in how the policy has affected them. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 n.9. (9th Cir. 2011).

Defendants' attempts to distinguish *MIWON* all fail. *First*, *MIWON* explicitly rejected their

argument that different roles (protester, legal observer, bystander) could defeat typicality so long as all of the class members are engaged in the same protected activity. *MIWON*, 246 F.R.D. at 632. *Second*, Defendants incorrectly suggest that *MIWON* turned on the fact that it involved a single protest. But the court certified an injunctive class composed of people who "have engaged in or who in the future may engage in" peaceful protests anywhere in the City of Los Angeles. 246 F.R.D. at 625. Only the damages class was limited to the events of a single day at one location. *Id.*[5] Here, the challenged policy spans this District, and the class mirrors that scope. Defendants cannot defeat typicality by pointing to the breadth of a class that reflects the breadth of their own policy.

Defendants discuss the limits imposed on the *MIWON* class and incorrectly assert that Plaintiffs propose a "sweeping class definition" with no similar limitations. But contrary to Defendants' suggestion that the proposed class here is so broad as to include even a "generalized grievance about the structure of the United States' Government" (Opp. at 17), the proposed class is temporally, geographically, and substantively limited to people "who do or will … record DHS immigration enforcement and removal operations or protests of those operations in this District since June 6, 2025." (Mot. at 1). Indeed, the proposed class here is actually narrower than the class in *MIWON* in that it does not include bystanders or people peacefully protesting, but only those who are actively recording without "force or threat of force." *Id*.

## D.    Adequacy

Defendants never dispute that qualified counsel represent Plaintiffs and that no intra-class conflict exists. Instead, they manufacture an issue by requiring that class representatives expressly describe their responsibilities in their declarations. (Opp. at 19.) But courts do not "impose a knowledge requirement on the part of the class representatives" because no "Ninth Circuit decision impos[es] such a requirement." *In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 118 (C.D. Cal. 2007).[6] Regardless, Plaintiffs' supplemental declarations confirm their familiarity with the case and their duties. (Fourth Supp. Beckner-Carmitchel Decl. ¶¶ 3-9; Second Supp. Ray Decl. ¶¶ 3-9; Supp.

---

[5] Defendants incorrectly say *BLM,* 113 F.4th 1249, distinguished *MIWON* on typicality when it was silent on that issue.

[6] In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), adequacy failed because of fundamental conflicts with the class settlement structure—not because representatives failed to articulate their duties. *Id.* at 626–27.

Xu Decl. ¶¶ 3-10; Second Supp. Schleuss Decl. ¶¶ 3-9; Third Supp. Rose Decl. ¶¶ 4-10.)

## II.  THE PROPOSED CLASS SATISFIES RULE 23(b)(2)

Rule 23(b)(2) is satisfied because a single injunction prohibiting Defendants' policy against recording DHS agents would provide relief to every class member. Plaintiffs challenge a uniform policy that chills First Amendment activity common to the class—precisely the type of claim suited for 23(b)(2) certification, which is "unquestionably" appropriate when defendants act "on grounds that apply generally to the class." *Parsons*, 754 F.3d at 688 (citing Fed. R. Civ. P. 23(b)(2)).

Defendants' claim that the class improperly includes individuals who *will* be harmed ignores that classes of people exposed to an ongoing policy can include future members under Rule 23(b)(2). Courts routinely certify such classes because the injury is in exposure to the challenged policy. *See, e.g.*, *Doe*, 424 F. Supp. at 1040 (certifying a class including "unnamed, unknown future members"). Here, all past and future class members are subject to Defendants' challenged policy.

Defendants' out-of-circuit cases are inapposite. In *Berni v. Barilla S.p.A.*, past purchasers faced no risk of future harm from deceptive advertising, unlike Plaintiffs here, who remain subject to the policy in the future. 964 F.3d 141, 147 (2d Cir. 2020). *Brown v. Kelly* involved a failed bilateral class structure not present here. 609 F.3d 467, 482 (2d Cir. 2010). In *Ahmad v. City of St. Louis,* plaintiffs aggregated "a plethora of discrete claims" involving different constitutional violations, without identifying a unifying policy or a single form of relief that would address all class members' claims, both of which Plaintiffs have done here. 995 F.3d 635, 644 (8th Cir. 2021).

Individualized use-of-force questions do not defeat certification because the class is defined by Defendant's policy towards recording DHS agents, not specific incidents.[7] The common question—whether Defendants unlawfully treat recording as a threat—can be resolved "in one stroke." *Parsons*, 754 F.3d at 678. *Black Lives Matter* does not suggest otherwise. The Ninth Circuit vacated certification there because the district court failed to address the commonality

---

[7] Defendants' argument that their use-of-force policies turn only on the subject's level of "resistance" and do not consider the use or threat of force is neither right (*see* Harvey Decl., Dkt. 47-5, ¶ 10 (using "level of force by a subject" to define level of "resistance"); *id.* at 244 (policy authorizing use of chemical weapons when a group is using or threatening force)), nor relevant. Whether an individual threatens or engages in force is relevant to whether DHS's conduct towards them is constitutional. *See, e.g.*, *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). That Defendants treat recording as unlawful interference or assault under 18 U.S.C. § 111, which requires force or threat of force, itself raises a common legal question. *See U.S. v. Harrison*, 585 F.3d 1155, 1160 (9th Cir. 2009).

requirement, not because Rule 23(b)(2) was not satisfied. 113 F.4th at 1266. Here, Plaintiffs have identified a centralized policy targeting a defined activity that applies uniformly to the class and a "single, indivisible injunction" against that policy would resolve the claims for the whole class.

### III.    DEFENDANTS' STANDING ARGUMENTS LACK MERIT

This Court has ruled several times that Plaintiffs have standing (Dkt. 55 at 22-27; Dkt. 74 at 5-9; Dkt. 89 at 5-8), and the Ninth Circuit has agreed. *LAPC v. Noem,* 2026 WL 889142, at *4. The Court should again reject DHS's rehashed standing arguments for the same reasons stated by both courts.

Defendants' new argument that Plaintiffs must demonstrate every class member has standing contradicts binding precedent. The *TransUnion* rule they cite applies only to damages classes, and even then, not at certification. At this stage, and always for equitable relief classes, "the Supreme Court's prior direction that only one named plaintiff needs to demonstrate standing" applies. *Healy v. Milliman, Inc.*, 164 F.4th 701, 706 (9th Cir. 2026); *Olean*, 31 F.4th at 682 n.32.

### IV.    *CASA* DOES NOT UNDERMINE CLASS CERTIFICATION HERE

Defendants' interpretation of *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), as both a sword to prevent class actions and a shield against injunctive relief beyond the named plaintiffs, has no foundation in the case itself. In *CASA*, the Supreme Court addressed the permissibility of universal injunctions, which it characterized as injunctions that provided relief to people who were not named plaintiffs, *when no class had been certified*. *Id.* at 837. The Court also made clear that injunctions that protected parties who were not named plaintiffs *were permissible* if a class had been properly certified because the class action is analogous to the "bill of peace," group litigation developed in the British Court of Chancery. *Id.* at 849.

Defendants' assertion that *CASA* prohibits injunctions that protect people who are not named plaintiffs even when a class has been certified complexly misunderstands *CASA*. The *CASA* Court stated that the problem with universal injunctions is that they protect people who are not named plaintiffs when no class has been certified. *Id.* at 849 ("Yet by forging a shortcut to relief that benefits parties and non-parties alike, universal injunctions circumvent Rule 23's procedural protections and allow courts to create *de facto* class actions at will.") (internal quotation omitted).

Nothing in *CASA* indicates that it narrowed the scope of protection for unnamed members of a certified class or that it changed Rule 23's requirements for class certification.

Defendants are wrong that the Ninth Circuit's recent opinion on the appeal of this Court's preliminary injunction shows that a class cannot be certified. The Ninth Circuit instead held that the injunction was overbroad under *CASA* because it provided relief to people who were not named plaintiffs when no class had been certified. *LAPC v. Noem*, 2026 WL 889142, at *7 ([S]everal provisions expressly apply to non-parties and are broader than necessary to afford 'complete relief to the plaintiffs before the court.'") (quoting *CASA*, 606 U.S. at 852).[8]

Defendants' assertion that *CASA* undermines the validity of a proposed class that covers a broad geographic area is nonsensical because the *CASA* majority opinion cited approvingly to *Califano v. Yamasaki*, 442 U.S. 702 (1979), where the Court affirmed certification of a nationwide class. *See CASA*, 606 U.S. at 852. And this Court and the Ninth Circuit have frequently certified classes with a geographic scope far broader than the one proposed here. *See, e.g., Briseno,* 844 F.3d at 1124, 1132 (approving class of people who reside in 11 states); *Franco-Gonzalez v. Napolitano*, 2011 WL 11705815 at *1 (C.D. Cal. Nov. 21, 2011) (class in three states).

## V. PROMPT CERTIFICATION OF THIS CLASS IS IN THE PUBLIC INTEREST

The Ninth Circuit has now affirmed this Court's issuance of the preliminary injunction and remanded for further proceedings consistent with its opinion. Class certification will affect how this Court applies the Ninth Circuit's opinion. In the meantime, DHS continues to attack class members[9]. On March 28, 2026, DHS shot the eye out of a peaceful 18-year-old student photographing a protest.[10] This violence continues to chill class members' exercise of First Amendment rights each day it is unchecked. Prompt resolution of this motion is thus in the public interest.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification should be granted.

---

[8] Class allegations were not included in the operative pleading at the time the preliminary injunction issued. (Dkt. 1.).

[9] (Mot. at 11-12).

[10] Tucker Collins Decl. ¶¶ 2-19; Summer Lin, *Teen who went to photograph L.A. 'No Kings' rally shot, blinded by Homeland Security agent, attorney says*, L.A. Times (Apr. 7, 2026), https://perma.cc/5TKX-4TLS.

Dated: April 9, 2026                    Respectfully submitted,


                                        BRAUNHAGEY & BORDEN LLP

                                        By:    */s/ Matthew Borden*
                                               Matthew Borden

                                        *Attorneys for Plaintiffs*

PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION