Matthew Borden, Esq. (SBN: 214323)
borden@braunhagey.com
J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Kory J. DeClark, Esq. (SBN: 310571)
declark@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
gwashington@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

[Additional counsel on next page]

*Attorneys for Plaintiffs*

Peter J. Eliasberg, Esq. (SBN: 189110)
peliasberg@aclusocal.org
Jonathan Markovitz, Esq. (SBN: 301767)
jmarkovitz@aclusocal.org
Adrienna Wong, Esq. (SBN: 282026)
awong@aclusocal.org
Summer Lacey, Esq. (SBN: 308614)
slacey@aclusocal.org
Mohammad Tajsar, Esq. (SBN: 280152)
mtajsar@aclusocal.org
ACLU FOUNDATION OF SOUTHERN
CALIFORNIA
1313 W 8th Street, Ste 200
Los Angeles, CA 90017
Telephone: (213) 977-9500

Peter Bibring, Esq. (SBN: 223981)
peter@bibringlaw.com
Law Office of Peter Bibring
2140 W Sunset Blvd # 203
Los Angeles, CA 90026
Telephone: (213) 471-2022

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Los Angeles Press Club, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Markwayne Mullin, *et al.*, <br><br> Defendants. | Case No. 2:25-CV-05563-HDV-E <br><br> **[PROPOSED] ORDER MODIFYING PRELIMINARY INJUNCTION ORDER FOLLOWING REMAND** |

Case No. 2:25-cv-05563-HDV-E

Additional Counsel of Record for Plaintiffs:

Carol A. Sobel, Esq. (SBN: 84483)
 carolsobellaw@gmail.com
Weston Rowland, Esq. (SBN: 327599)
 rowland.weston@gmail.com
Law Office of Carol A. Sobel
2632 Wilshire Boulevard, #552
Santa Monica, CA 90403
Telephone: (310) 393-3055

Paul Hoffman, Esq. (SBN: 71244)
 hoffpaul@aol.com
Michael Seplow, Esq. (SBN: 150183)
 mseplow@sshhzlaw.com
John Washington, Esq. (SBN 315991)
 jwashington@sshhzlaw.com
Schonbrun, Seplow, Harris, Hoffman & Zeldes LLP
200 Pier Avenue #226
Hermosa Beach, CA 90254
Telephone: (310) 717-7373

On September 10, 2025, the Court granted Plaintiffs' motion for a preliminary injunction, *Los Angeles Press Club et al., v. Noem et al.,* 799 F.Supp.3d 1036 (C.D. Cal. 2025). On April 1, 2026, the United States Court of Appeals for the Ninth Circuit issued an opinion affirming this Court's issuance of a preliminary injunction but vacating the preliminary injunction as overbroad and remanding to this Court for further proceedings consistent with its opinion. *Los Angeles Press Club v. Noem,* 171 F.4th 1179 (9th Cir. 2026). Having thoroughly considered that opinion, this Court's prior factual findings, the record evidence, and arguments of counsel, the Court hereby modifies and enters the preliminary injunction order as follows.

## I.    DISCUSSION

The Court of Appeals affirmed the issuance of the preliminary injunction order but held that it was overbroad in three respects. First, it held that "several provisions expressly appl[ied] to non-parties and [were] broader than necessary to afford 'complete relief *to the plaintiffs before the court*.'" 171 F.4th at 1191 (citing *Trump v. CASA*, 606 U.S. 831, 852 (2025)) (emphasis in original). Second, it held that the injunction was broader than necessary to remedy the specific harm Plaintiffs alleged in their First Amendment retaliation claims in that it "exempt[ed] Plaintiffs, non-party journalists, and non-party legal observers from lawful, *non-retaliatory* dispersal orders." *Id.* (emphasis in original). Third, it held that the injunction's prohibition against using crowd control weapons without first giving two separate audible warnings was more burdensome to the defendant than necessary and not narrowly tailored to remedy the specific harm alleged, because it applied broadly for the purported protection of the general public and was attenuated from the First Amendment injury Plaintiffs had shown, while inviting litigation due to its use of the subjective term "audible." *Id.* at 1191-92. The Court modifies the preliminary injunction in accordance with each of these holdings on the scope of the injunction.

//

//

[PROPOSED] ORDER MODIFYING PRELIMINARY INJUNCTION ORDER FOLLOWING REMAND

## A.  Narrowing the Injunction to the Plaintiffs Before the Court

The Court hereby modifies the preliminary injunction previously entered so that each paragraph applies only to parties before the Court. The Court of Appeals provided several examples of how the injunction expressly applied to non-parties and were broader than necessary to afford complete relief to Plaintiffs:

- Paragraph 5 of the injunction prohibited Defendants from firing tear gas canisters or flash-bang grenades aimed at striking "any person."
- Paragraph 2 of the injunction restricted the use of crowd control weapons against "members of the press, legal observers, and protesters."
- Paragraph 1 of the injunction restricted DHS from "[d]ispersing, threatening, or assaulting any person whom they know or reasonably should know is a Journalist or Legal Observer" and defined the terms "Journalist" and "Legal Observer" to include individuals who are not plaintiffs before the Court.

In accordance with this guidance, the Court hereby modifies the preliminary injunction it previously entered so that each paragraph applies specifically to the named Plaintiffs and members of the organizational Plaintiffs. The Court specifically narrows Paragraph 1 to apply to the named journalist and legal observer Plaintiffs, which includes members of the two journalist organization Plaintiffs.

## B.  Narrowing the Injunction to Remedy the Specific Harms Plaintiffs Alleged in Their First Amendment Retaliation Claims

The Court of Appeals held that the provision of the preliminary injunction that barred DHS from dispersing journalists and legal observers unless Defendants had probable cause to believe that the individual had committed a crime unrelated to failing to obey a dispersal order was broader than necessary to remedy the specific harm alleged in Plaintiffs' First Amendment retaliation claims, insofar as it exempted Plaintiffs, non-party journalists, and non-party legal observers from "lawful, *non-retaliatory* dispersal orders." 171 F.4th at 1191.

[PROPOSED] ORDER MODIFYING PRELIMINARY INJUNCTION ORDER FOLLOWING REMAND

In contrast, the Court of Appeals held that the injunction's prohibition against firing projectile weapons at Plaintiffs' sensitive areas was "directly tethered to the specific harms alleged by Plaintiffs and recognized by the district court[.]" 171 F.4th at 1192. It noted that "federal policies already prohibit" such conduct and that this Court found "DHS officers failed to follow those policies in response to Plaintiffs' protected conduct, resulting in chilling of Plaintiffs' exercise of First Amendment rights." *Id.*

In accordance with this guidance, the Court modifies paragraph 1 of the previously entered preliminary injunction order so that it applies only to the journalist and legal observer Plaintiffs and does not exempt them from lawful, non-retaliatory dispersal orders. Specifically, the Court modifies that paragraph to limit the prohibition against dispersing Plaintiffs to when such dispersal would violate both federal regulations and the First Amendment. *See* 6 CFR 139.65 ("Any person, including persons affiliated with the media and commercial entities, may photograph or record video, images, and audio of publicly accessible exterior areas of Federal facilities and grounds from public areas, including public streets, sidewalks, parks, and plazas, when not impeding or disrupting access to or operations on the Federal property."); *Collins v. Jordan,* 110 F.3d 1363, 1371 (9th Cir. 1996) ("[P]rotests or assemblies cannot be dispersed on the ground that they are unlawful unless they are 'violent … or pose a clear and present danger of imminent violence' or they are violating some other law in the process."); *accord Puente v. City of Phoenix*, 123 F.4th 1035, 1062 (9th Cir. 2024) (First Amendment requires "clear and present danger" of an "immediate threat to public safety, peace, or order" to lawfully disperse an assembly).

Further, the Court limits paragraph 1 so that it is directly tethered to the specific harms alleged by Plaintiffs and previously recognized by this Court—namely, Defendants' forceful dispersal of journalists and legal observers from "public streets and sidewalks" in retaliation for their First Amendment protected

[PROPOSED] ORDER MODIFYING PRELIMINARY INJUNCTION ORDER FOLLOWING REMAND

conduct at "ongoing protests" of DHS immigration operations in the Central District of California "at which Defendants target or fire indiscriminately upon the press." 799 F. Supp. 3d at 1060 n.14. Although federal policies prohibit dispersing persons photographing or recording exterior areas of Federal grounds from public areas without impeding federal operations, 6 CFR 139.65, this Court found—and the Ninth Circuit affirmed—that DHS officers "repeatedly targeted journalists and peaceful legal observers who stood far from any protestors or bad actors" resulting in chilling of those Plaintiffs' exercise of First Amendment rights. 171 F.4th at 1189; *see also* 799 F.Supp.3d at 1069 (finding Defendants dispersed "journalist and legal observer Plaintiffs [who] were peacefully observing protestors' interactions with law enforcement," though federal law does not authorize them "to disperse members of the public who are neither on nor threatening federal property," (quoting *Index Newspapers*, 977 F.3d at 832).

Based on the same guidance from the Court of Appeals, this Court also modifies paragraph 2 of the previously entered preliminary injunction so that it is directly tethered to the specific harms alleged by Plaintiffs and recognized by this Court and does not apply to lawful, non-retaliatory conduct. The Court limits paragraph 2 to specifically prohibit threatening and assaulting Plaintiffs and members of the organizational Plaintiffs by brandishing or firing kinetic impact projectile (KIP) launchers at them or spraying chemical irritant spray at them—which are specific forms of retaliation that Plaintiffs have alleged and that this Court previously recognized. *Id.* at 1045-1054, 1064-65; *see also, e.g.,* Second Supp. Decl. of Sean Beckner-Carmitchel, ECF 64-1. As the Court previously held, 799 F. Supp. 3d at 1066, and the Ninth Circuit affirmed, 171 F.4th at 1189, the extensive evidence of Defendants' excessive and indiscriminate use of these crowd control weapons against peaceful protestors, legal observers, and members of the press, including Plaintiffs, supports a finding of retaliation.

[PROPOSED] ORDER MODIFYING PRELIMINARY INJUNCTION ORDER FOLLOWING REMAND

The Court further limits the prohibition in paragraph 2 so that it applies only to threats and assaults against Plaintiffs and their members that are retaliatory and unlawful, *i.e.* when Plaintiffs are not posing a threat of immediate harm to a law enforcement officer or another person, physically impeding federal operations, or actively resisting arrest. *See Sanderlin v. Dwyer,* 116 F.4th 905, 911, 915-17 (9th Cir. 2024) (citing *Nelson v. City of Davis*, 685 F.3d 867, 884-86 (9th Cir. 2012); *Deorle v. Rutherford,* 272 F.3d 1272, 1285 (9th Cir. 2001)); *Berg v. Cnty. of Los Angeles*, No. CV 20-7870 DMG (PDX), 2021 WL 4691154, at *11-12 (C.D. Cal. May 28, 2021); *Headwaters Forest Def. v. Cnty. of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002), *as amended* (Jan. 30, 2002)); *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1166-67 (9th Cir. 2011); *see also* 8 C.F.R. § 287.8(a)(1)(ii)-(iii) (requiring DHS agents to limit force to "minimum non-deadly force necessary to accomplish the officer's mission" and allowing "escalat[ion] to a higher level of non-deadly force only when such higher level of force is warranted by the actions, apparent intentions, and apparent capabilities" of the person targeted).

Federal policies prohibit using projectile munitions launchers and chemical spray on people who are not posing a threat of immediate harm to a law enforcement officer or another person, physically impeding federal operations, or actively resisting arrest, as this Court previously found. 799 F.Supp.3d at 1071-72 (citing CBP Use of Force Policy provisions limiting use of chemical spray to those engaged in, at a minimum, active resistance and restricting compressed air launchers and munitions launchers to those engaged in assault resistance, "a level of aggression or violence that causes or has the potential to cause physical injury"); *see also* Decl. of Matthew Harvey, ECF 47-5, Ex. 2 ("CBP Use of Force Policy") at 249-250 (limiting use of less-lethal munition launchers to those demonstrating active or assaultive resistance); Decl. of Gregory Bovino, ECF 11-1, ¶ 11 (averring that "under CBP policy," "chemical irritants may be utilized as a compliance tool" only on someone who "at a minimum" "physically opposes an officer or agent's control efforts"; and

[PROPOSED] ORDER MODIFYING PRELIMINARY INJUNCTION ORDER FOLLOWING REMAND

kinetic impact weapons may only be used in response to a threat of "imminent bodily harm"); Decl. of Gil Kerlikowske, ECF 6-3, ¶ 17. Yet DHS officers failed to follow these policies in response to Plaintiffs' protected conduct, resulting in chilling of their exercise of First Amendment rights. 799 F. Supp. 3d at 1045-1055, 1063-66, 1072.

Because the Court of Appeals specifically approved the prohibition against shooting kinetic impact projectiles at sensitive areas contained in paragraph 5 of the previously entered injunction, the Court reinstates that provision, modified to apply only to the Plaintiffs before the Court.

The Court also reinstates the provision of that paragraph that addresses firing tear gas canisters or flash-bang grenades so as to strike a person, modified to apply only to Plaintiffs and members of the Plaintiff organizations. This provision is equally tethered to the specific harms of retaliation alleged by Plaintiffs and found by this Court. 799 F. Supp. 3d at 1065 (finding Defendants repeatedly fired tear gas canisters directly *at* people and recognizing such "misuse of crowd-control munitions" is circumstantial evidence of retaliation, citing *Index Newspapers*, 977 F.3d at 828); *see also id.* n.24 (finding DHS agents shot tear gas canisters to strike Plaintiffs Beckner-Carmitchel, Climer, and others); *id.* at 1048 (DHS agents "showered" Plaintiff Paz with projectiles and flash-bang grenades); *id.* at 1073 ("As discussed at length, Plaintiffs have adduced evidence of Defendants aiming tear gas canisters at people and aiming crowd control weapons at sensitive areas of the body"). As this Court previously found, federal policies already prohibit firing tear gas canisters and flash-bang grenades so as to strike anyone, and DHS officers failed to follow those policies in response to Plaintiffs' protected conduct, resulting in chilling of Plaintiffs' exercise of First Amendment rights. *Id.* at 1065 (citing Decl. of Roger Scharmen, ECF 47-3, ¶ 9; Decl. of Gil Kerlikowske, ECF 6-3, ¶ 17).

//

//

[PROPOSED] ORDER MODIFYING PRELIMINARY INJUNCTION ORDER FOLLOWING REMAND

## C. Narrowing the Injunction's Prohibition Against Using Crowd Control Weapons Without First Giving Two Audible Warnings

The Court of Appeals held that the injunction's prohibition against using crowd control weapons without first giving two separate audible warnings was not narrowly "tailored to remedy the specific harm alleged," because it "applies broadly for the purported protection of the general public and is attenuated from the First Amendment injury Plaintiffs have shown." 171 F.4th at 1191. The Court therefore modifies paragraph 4 of the previously entered injunction so that it expressly applies only for the protection of Plaintiffs before the Court.

The Court further modifies this paragraph so that it is tailored to the specific harms alleged by Plaintiffs, recognized by this Court, and affirmed by the Court of Appeals. *See id.* at 1189 ("evidence that Defendants deployed crowd control weapons even when crowds were already dispersing or attempting to comply with orders to disperse" supported district court's finding that Defendants acted with retaliatory intent); *id.* at 1186 (acknowledging this Court's reasoning that injunction was necessary to curtail federal agents' "shooting projectiles at protesters attempting to comply with dispersal orders" and noting agents "issued no warnings" before opening fire); 799 F.Supp.3d at 1048 (finding Defendants "showered" Plaintiff Maria Alejandra Paz with tear gas, pepper bullets, and flash-bang grenades "all of a sudden" and without warning while she and other protestors were already dispersing); *id.* at 1050 (Plaintiff Benjamin Climer shot in the hand with tear gas canister without any warning or dispersal order); *id.* at 1051 (Plaintiff Abigail Olmeda shot repeatedly with projectiles without warning); *id.* at 1053-54 (Defendants unleashed tear gas into crowd including member of Plaintiff NewsGuild without warning); Decl. of Gil Kerlikowske, ECF 6-3, ¶¶ 31, 34, 37-40 (discussing attacks without warning on Plaintiffs Olmeda and Lexis Olivier-Ray, a member of Plaintiff Los Angeles Press Club, including shooting Mr. Ray in the back as he was retreating). This paragraph, as modified, is necessary to protect Plaintiffs from being

7                    Case No. 2:25-cv-05563-HDV-E

subject to retaliatory force when they are attempting to comply with orders or have had no opportunity do so and to address the chilling effects of having been targeted in such a way in the past.

The Court of Appeals also opined that the injunction's "necessarily subjective requirement for audibility of warnings" invited strategic contempt proceedings against federal agents, which would "further burden[ ] the government," while [doing] little to give Plaintiffs their desired relief." 171 F.4th at 1192. The Court therefore modifies this provision of the injunction so that it uses the objective term "amplified" rather than the subjective term "audible."

The Court further modifies this provision to minimize the burden on the government by revising it to more closely track the language of Defendants' policies, thus enjoining conduct already prohibited by federal policies. CBP Use of Force Policy at 235-6 ("When feasible, prior to the application of force, an Authorized Officer/Agent must attempt to identify him- or herself and issue a verbal warning to comply with the officer/agent's instructions. . . . In the event that an officer/agent issues such a warning, where feasible, the officer/agent should afford the subject a reasonable opportunity to voluntarily comply before applying force."); *id.* at 260, Appendix 1: DHS Policy on the Use of Force ("Warnings. When feasible, prior to the application of force, a DHS LEO must attempt to identify him- or herself and issue a verbal warning to comply with the LEO's instructions. . . . In the event that a LEO issues such a warning, where feasible, the LEO should afford the subject a reasonable opportunity to voluntarily comply before applying force."); *see also* Decl. of Matthew Harvey, ECF 47-5, ¶ 12 ("CBP officers and agents are trained to provide warnings when operationally feasible"); Decl. of Gregory Bovino, ECF 11-1, ¶ 11 ("Under CBP policy," "[c]rowd control devices and less lethal munitions are only utilized after events have become unlawful, and the appropriate warnings and time have been satisfied"); *id.* ¶ 15 ("CBP officers and agents are already required to, when feasible, and prior to the application of force, identify themselves and issue a

[PROPOSED] ORDER MODIFYING PRELIMINARY INJUNCTION ORDER FOLLOWING REMAND

verbal warning to comply with officers' or agents' instructions. . . .  When an officer or agent does issue a verbal warning, the officer or agent should afford the subject a reasonable opportunity to voluntarily comply before applying force."); Supp. Decl. of Roger Scharmen, ECF 58-3, ¶ 7 ("FPS policy already requires officers to provide a verbal warning, when feasible, before deploying crowd control weapons. . . . FPS's practice in crowd control situations is to issue at least three separate warnings using a Long Range Acoustical Device (LRAD) before deploying crowd control devices.").

The Court preserves the portion of the injunction that excepts situations where a warning is infeasible, modified to more closely track Defendants' policies and thus minimize the burden on them. Although federal policies already prohibit deploying crowd control weapons without warning when such a warning is feasible, DHS officers "failed to follow those policies in response to Plaintiffs' protected conduct, resulting in chilling of Plaintiffs' exercise of First Amendment rights." 171 F.4th at 1192.

## II.    CONCLUSION

The Court hereby ORDERS that Defendants, their officers, agents, assigns, and all persons acting in concert with them, are ENJOINED, pending final resolution of this matter, from:

1.    Dispersing Plaintiffs Beckner-Carmitchel, Mena, Ray, Xu, or any member of the organizational Plaintiffs Los Angeles Press Club and NewsGuild-Communications Workers of America from public streets, sidewalks, parks, or plazas so as to prevent them from observing, recording, or reporting on DHS immigration enforcement and removal operations or protests of those operations when they are not physically impeding or disrupting access to federal property or operations or within a crowd posing an immediate threat to public safety, peace, or order. For the purposes of this injunction, "recording" means videorecording and still photography;

2.    Threatening or assaulting any Plaintiff or member of the organizational Plaintiffs by brandishing or firing kinetic impact projectile (KIP) launchers or

9                    Case No. 2:25-cv-05563-HDV-E

spraying chemical irritant spray at them when they are not posing a threat of immediate harm to a law enforcement officer or another person, physically impeding federal operations, or actively resisting arrest;

3.     Using any crowd control weapons (including KIPs, chemical irritants, and flash-bang grenades) on any Plaintiff or member of the organizational Plaintiffs without providing them with an amplified verbal warning to comply with instructions, unless such a warning is not feasible. Such warnings, if feasible, shall give Plaintiffs and members of the organizational Plaintiffs reasonable opportunity to voluntarily comply before crowd control weapons are applied against them.

4.     Firing tear gas canisters or flash-bang grenades so as to strike any Plaintiff or member of the organizational Plaintiffs, or firing KIPS or other crowd control weapons at their head, neck, groin, spine, or other sensitive areas, unless that person poses an immediate threat of death or serious bodily injury.

5.     Defendants shall not be liable for violating this injunction if any person protected by the injunction is incidentally exposed to crowd control devices after such a device was deployed in a manner that complies with this injunction.

This Order shall be in place only in those counties in the coverage area of the individual journalist Plaintiffs and the organizational Plaintiffs Los Angeles Press Club and NewsGuild - Communications Workers of America, which are in the Central District of California. More specifically, these counties include the Counties of Los Angeles, Orange, Riverside, San Bernardino, San Luis Obispo, Santa Barbara, and Ventura.

Within the next 72 hours, DHS is also hereby ORDERED to provide a copy of this Order and a summary of this Order to the Court and to all DHS officers responding to a protest in the Counties referred to above. The parties shall meet and confer and provide a joint status report within 30 days setting forth proposals for ensuring that DHS officers present in the Central District of California while this action is pending remain aware of the limitations imposed by this Order.

[PROPOSED] ORDER MODIFYING PRELIMINARY INJUNCTION ORDER FOLLOWING REMAND

**IT IS SO ORDERED.**

DATED: _____        _____
                                       Honorable Hernán D. Vera
                                       United States District Court Judge

[PROPOSED] ORDER MODIFYING PRELIMINARY INJUNCTION ORDER FOLLOWING REMAND