BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
ANDREW I. WARDEN
KATHLEEN C. JACOBS (TX Bar No. 24091154)
Civil Division, Federal Programs Branch
    1100 L St. NW
    Washington, D.C. 20005
    Telephone: (202) 598-7615
    E-mail: kathleen.c.jacobs@usdoj.gov

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE MEDRANO
Assistant United States Attorney
Acting Chief, Complex and Defensive Litigation Section
PAUL (BART) GREEN
Assistant United States Attorney

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES PRESS CLUB; *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; *et al.*,<br><br>    Defendants. | No. 2:25-cv-05563-HDV-E<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS PROPOSED PRELIMINARY INJUNCTION**<br><br>Honorable Hernán D. Vera<br>United States District Judge |

**TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................1

II.     BACKGROUND ................................................................................................2

III.    LEGAL STANDARD .......................................................................................3

IV.     ARGUMENT......................................................................................................3

A.      In Light of Changed Circumstances in Los Angeles, Plaintiffs Cannot
        Satisfy the Requirements for a Preliminary Injunction. ...........................3

        1.      Operation at Large-Los Angeles is Over. ......................................3

        2.      Operation Skipjack has largely returned to regular operations....5

        3.      Plaintiffs' Request for an Amended Preliminary Injunction Should Be
                Denied.......................................................................................6

B.      If Any Injunction Issues, It Should Be Narrowly Tailored To Protect Only
        Identified Plaintiffs and Prohibit Only Conduct Expressly Referenced by the
        Ninth Circuit. ..............................................................................................8

        1.      To comply with Rule 65(d) and to ensure Defendant can comply with
                the injunction, the Court should clarify that the preliminary injunction
                is limited to individuals with Article III standing that are members of
                the organizational Plaintiffs. .......................................................9

        2.      To conform with Article III and principles of equity, the injunction
                should be limited to members of the organizational plaintiffs when
                the amended complaint was filed. ..............................................13

        3.      Any Injunction Should be Limited to the Sensitive Areas Provision
                Approved by the Ninth Circuit....................................................15

C.      Plaintiffs' proposed injunction is overbroad, unworkable, and inconsistent
        with governing law. ...................................................................................17

        1.      Dispersal Orders. ........................................................................17

        2.      Use of Less-Lethal Munitions....................................................18

i

3.    Audible Warnings...................................................................................19

4.    Sensitive Body Areas. ..........................................................................20

5.    Safe Harbor Provision. .........................................................................20

6.    Geographic Limitation. .........................................................................20

7.    Identification of Persons Protected by the Injunction. ..............................21

V.    CONCLUSION..............................................................................................21

# TABLE OF AUTHORITIES

## Cases

*All. For The Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ................................................................6

*Am. Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974).............................................................................14

*Am. Red Cross v. Palm Beach Blood Bank, Inc.*,
   143 F.3d 1407 (11th Cir. 1998) ...........................................................10

*Ass'n of Am. Physicians & Surgeons v. FDA*,
   13 F.4th 531 (6th Cir. 2021).................................................................12

*Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*,
   713 F.3d 1187 (9th Cir. 2013) .............................................................13

*Boardman v. Pac. Seafood Grp.*,
   822 F.3d 1011 (9th Cir. 2016) ...............................................................6

*Broadrick v. Oklahoma*,
   413 U.S. 601 (1973).............................................................................13

*C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*,
   867 F.3d 1093 (9th Cir. 2017) .............................................................13

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)......................................................................1, 6, 7

*City of New York v. Mickalis Pawn Shop, LLC*,
   645 F.3d 114 (2d Cir. 2011).................................................................17

*Cuviello v. City of Oakland*,
   2009 WL 734676 (N.D. Cal. Mar. 19, 2009) ......................................16

*Dickinson v. Trump*,
   2026 WL 1133353 (9th Cir. Apr. 27, 2026) .................................17, 18

*E.W. Bliss Co. v. Struthers-Dunn, Inc.*,
   408 F.2d 1108 (8th Cir. 1969) .............................................................10

*Elend v. Basham*,
   471 F.3d 1199 (11th Cir. 2006) ...........................................................17

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024)............................................................................................14

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ...............................................................................3

*Gilday v. Dubois*,
  124 F.3d 277 (1st Cir. 1997)...............................................................................17

*Graham v. Connor*,
  490 U.S. 386 (1989)............................................................................................20

*Granny Goose Foods, Inc. v. Brotherhood. of Teamsters & Auto Truck Drivers Loc. No. 70*,
  415 U.S. 423 (1974)............................................................................................10

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) .............................................................................7

*Int'l Longshoremen's Ass'n, Loc. 1291 v. Phila. Marine Trade Ass'n*,
  389 U.S. 64 (1967)..............................................................................................11

*Karnoski v. Trump*,
  926 F.3d 1180 (9th Cir. 2019) .............................................................................8

*Los Angeles Press Club v. Noem*,
  171 F.4th 1179 (9th Cir. 2026) ....................................................................*passim*

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)............................................................................................13

*McCoy v. ATF*,
  140 F.4th 568 (4th Cir. 2025), *petition for cert. docketed*, No. 25-24 (U.S. July 8, 2026) ..................................................................................................................14

*Murthy v. Missouri*,
  603 U.S. 43 (2024)..............................................................................................14

*NAACP v. Alabama ex rel. Patterson*,
  357 U.S. 449 (1958)..........................................................................................9, 12

*NLRB v. Teamsters Loc. Union 327*,
  419 F.2d 1282 (6th Cir. 1970) ...........................................................................10

iv

*NLRB v. USPS*,
  486 F.3d 683 (10th Cir. 2007) .......................................................................17

*North Carolina v. Covington*,
  581 U.S. 486 (2017).......................................................................................11

*Olagues v. Russoniello*,
  770 F.2d 791 (9th Cir. 1985) ...........................................................................1

*O'Shea v. Littleton*,
  414 U.S. 488 (1974).........................................................................................1

*Payne v. Travenol Lab'ys, Inc.*,
  565 F.2d 895 (5th Cir. 1978) .........................................................................17

*Puente v. City of Phoenix*,
  123 F.4th 1035 (9th Cir. 2024) ..........................................................17, 18, 19

*Rendish v. City of Tacoma*,
  123 F.3d 1216 (9th Cir. 1997) ..........................................................................6

*Ryburn v. Huff*,
  565 U.S. 469 (2012).......................................................................................20

*Schmidt v. Lessard*,
  414 U.S. 473 (1974).......................................................................................10

*SEC v. Goble*,
  682 F.3d 934 (11th Cir. 2012) .......................................................................17

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009).......................................................................................12

*Tincher v. Noem*,
  164 F.4th 1097 (8th Cir. 2026) ......................................................................17

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025)............................................................................12, 13, 15

*Union Pac. R.R. Co. v. Mower*,
  219 F.3d 1069 (9th Cir. 2000) .......................................................................10

*Updike v. Multnomah County*,
  870 F.3d 939 (9th Cir. 2017) .......................................................................1, 7

*Vasquez Perdomo v. Noem*,
    146 S. Ct. 1 (2025) ................................................................................................. 6

*Washington v. Trump*,
    145 F.4th 1013 (9th Cir. 2025), *petition for cert. docketed*, No. 25-364 (U.S. Sep. 29, 2025) ............................................................................................................... 13, 18

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................................... 3

## Rules

Fed. R. Civ. P. 65(d) ................................................................................................... 9

## Other Authorities

L.A. Press Club, *Mission & History*,
    https://lapressclub.org/about/mission (last visited May 15, 2026) ............................... 11

## I.    INTRODUCTION

Operation at Large-Los Angeles is over.  While the Ninth Circuit recently issued an opinion affirming in part this Court's issuance of preliminary injunctive relief, that decision was based on alleged injuries that occurred almost one year ago.  To obtain a prospective preliminary injunction today, Plaintiffs must demonstrate that they would be irreparably harmed absent an injunction and that they face a "real and immediate threat of repeated injury."  *See Updike v. Multnomah County*, 870 F.3d 939, 947 (9th Cir. 2017) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).  Plaintiffs cannot meet those requirements.  The Department of Homeland Security (DHS) has ended Operation at Large-Los Angeles, which was the entire basis for this lawsuit.  Further, DHS has made significant reductions in the number of federal officers in the Central District of California and changed the focus of the mission for many of officers that remain.  These material changes to the situation on the ground in Los Angeles make it unlikely that Plaintiffs "will again be wronged in a similar way," thus, Plaintiffs cannot show that they face irreparable injury supporting prospective injunctive relief.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *accord Olagues v. Russoniello*, 770 F.2d 791, 797 (9th Cir. 1985).  Accordingly, the Court should deny Plaintiffs' request for an amended preliminary injunction.

If the Court nevertheless *concludes* that injunctive relief is warranted notwithstanding the fundamental changes to DHS's operational posture in Los Angeles, any such relief must be no broader than that contemplated by the Ninth Circuit, which vacated the Court's prior injunction as overbroad and unworkable in nearly all respects.  Under no circumstances should the Court enter Plaintiffs' proposed injunction, which suffers from the very same defects as the injunction that the Ninth Circuit vacated on appeal.  Plaintiffs' proposal even contains an "amplified verbal warning" provision, Doc.112-1, at 10, that cannot meaningfully be distinguished from the audible-warning provision rejected by the Ninth Circuit as a "necessarily subjective requirement" that "invites strategic or near-frivolous contempt proceedings against the government's

1

responsible law enforcement agents." *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1191-92 (9th Cir. 2026). The Court should decline Plaintiffs' invitation to replicate its prior errors.

## II.    BACKGROUND

On April 1, 2026, the Ninth Circuit issued an opinion holding that Plaintiffs were entitled to some form of injunctive relief on their First Amendment retaliation claims but that the prior injunction issued by this Court was overbroad in many significant respects, including (a) providing relief to nonparties, (b) exempting Plaintiffs from obeying "lawful non-retaliatory dispersal orders," and (c) prohibiting the use of crowd control devices without two warnings; and remanded to this Court to fashion a narrower injunction. *Id.* at 1191-92. In fact, the only provision of the Court's original injunction that the Ninth Circuit seemed willing to accept was the prohibition on intentionally targeting sensitive areas of a person's body in retaliation for protected conduct. *Id.*

On April 8, 2026, the Court issued an order stating that the hearing on Plaintiffs' motion for class certification will also "serve as an opportunity for the parties to address both the pending motion for class certification [Dkt. 100] and the Ninth Circuit's opinion remanding the preliminary injunction" and that the parties "should come prepared to address how the Court should amend its preliminary injunction to address the concerns identified in the Ninth Circuit's opinion." Minute Order, ECF No. 106. On May 4, 2026, for the first time, Plaintiffs provided their proposed terms to Defendants for an amended preliminary injunction. On May 6, 2026, Plaintiffs submitted those terms and draft opinion to the Court. Pls.' Resp. to Order Re Prelim. Inj. Remand; Proposed Order, ECF No. 112. At the hearing on May 7, 2026, the Court declined to order a briefing schedule requiring Plaintiffs to move (or provide any substantive support) for prospective relief as requested by Defendants (Defs.' Resp. to Prelim. Inj. Remand Order, ECF No. 113) and instead ordered Defendants to respond to Plaintiffs' proposed modified preliminary injunction by May 15, 2026.

## III.    LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  To obtain a preliminary injunction, the moving party must demonstrate (1) that it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest.  *See id.* at 20.  The first factor "is the most important," and courts "need not" reach the other factors when a plaintiff has failed to show a likelihood of success on the merits.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citation omitted).

## IV.    ARGUMENT

### A. In Light of Changed Circumstances in Los Angeles, Plaintiffs Cannot Satisfy the Requirements for a Preliminary Injunction.

The unique circumstances in Los Angeles during the summer of 2025 that gave rise to this case and to this Court's first preliminary injunction have changed significantly, rendering further preliminary injunctive relief unnecessary.  As set forth below, substantial numbers of federal law enforcement officers have demobilized from the surge of personnel augmentation such that circumstances are materially different from last summer when the Court considered Plaintiffs' initial request for a preliminary injunction.  Because of these changed circumstances, Plaintiffs cannot carry their burden of demonstrating that they are entitled to the drastic remedy of another preliminary injunction.

### 1.    Operation at Large-Los Angeles is Over.

In early June 2025, U.S. Border Patrol ("USBP") began deploying agents to Los Angeles California as part of Operation at Large-Los Angeles.  Decl. of Daniel Parra ("Parra Decl.") ¶ 4; *see also* Decl. of Javier Larios ("Larios Decl.") ¶ 7.  At its height, USBP deployed more than 300 Border Patrol agents and support staff.  Parra Decl. ¶ 4. U.S. Customs and Border Protection ("CBP") Office of Field Operations ("OFO")

surged a group of forty OFO Special Response Team ("SRT") officers to support USBP as well. Larios Decl. ¶ 8. Aside from assisting U.S. Immigration and Customs Enforcement ("ICE") with the enforcement of immigration laws, USBP and CBP-OFO also assisted the Federal Protective Service ("FPS") with protection of federal buildings and property in the Los Angeles Area. *Id.* By early September 2025, the surge of OFO SRT officers from outside of the Los Angeles area concluded. Parra Decl. ¶ 4; Larios ¶ 9. By no later than November 1, 2025, the number of USBP personnel deployed to Los Angeles for Operation at Large-Los Angeles decreased to 99 Border Patrol agents and processing coordinators. Parra Decl. ¶ 5. Since November 1, 2025, USBP and ICE no longer integrated as teams but instead the components returned to conducting their own targeted immigration enforcement operations. *Id.* ¶¶ 5-6

Operation at Large-Los Angeles ended in February 2026. Parra Decl. ¶¶ 6-7; *see also* Decl. of Brian Szemes ("Szemes Decl.") ¶ 6. As of February 10, 2026, the final few (approximately 10) USBP agents operating in the Central District of California as part of Operation at Large-Los Angeles closed the USBP's Incident Command Post and Operation at Large-Los Angeles concluded. Parra Decl. ¶¶ 6-7.

Similarly, the reassignment of additional personnel to Los Angeles as part of the separate national Operation at Large operation is nearing conclusion. The participation of the Los Angeles Field Office's CBP officers in a task force with officers from ICE-Enforcement and Removal Operations ("ERO") is scheduled to conclude on May 16, 2026. Larios Decl. ¶ 6.

Since Operation at Large-Los Angeles ended, ICE ERO has returned "to the type of targeted enforcement action that ERO has continuously conducted." Szemes Decl. ¶ 8. Homeland Security Investigations (HSI) no longer provides support for civil immigration enforcement actions in the Central District of California and "has returned its focus to conducting criminal investigations and criminal enforcement actions targeting transnational criminal organizations." *Id*. ¶ 9. USBP has similarly returned to its pre-June 2025 routine operations. Parra Decl. ¶ 7.

**2.      Operation Skipjack has largely returned to regular operations.**

Operation Skipjack is a nationwide operation by FPS to protect federal facilities and its staff.  Third Supp. Decl. of Roger Scharmen ("Scharmen Decl.") ¶ 3.  For Operation Skipjack Los Angeles, the number of deployed FPS and cross-designated officers has reduced significantly since September 2025. *Id.*

This reduction in personnel has coincided with a change in the conditions on the ground in Los Angeles.  *Id.*  The size and frequency of protests at the Federal Buildings in Los Angeles has decreased with only Friday and Saturday evenings continuing to experience protests and elevated activity "including disruptions, vandalism, and occasional interference with federal operations" such as "blocking government and personal vehicles, pounding on vehicles, damaging the temporary security fence[,] and throwing items onto federal property."  Scharmen Decl. ¶ 2.  "Special event days, such as No Kings Day, May Day, and holidays, typically attract larger crowds and are associated with increased incidents of illegal activity, including property damage and assaults on federal officers." *Id.* at ¶ 2.  While the federal protection operation of federal facilities and staff continue in Operation Skipjack, since protest activity has reduced over the past months, staffing has similarly reduced.  *Id.* ¶ 3.  Cross designations of officers, such as those from USBP have significantly reduced as well.  *Id.*; Parra Decl. ¶ 6.  CBP-OFO SRT and Mobile Field Force-certified officers from the Los Angeles Field Office continue to provide assistance to FPS with federal building protection when requested.  Larios Decl. ¶ 9.  These requests generally occur in advance of anticipated demonstrations.  *Id.*  CBP-OFO has assisted eleven times in 2026, with seven of them occurring in February.  *Id.*; *see also* Scharmen Decl. ¶ 3.  Since November 1, 2025, USBP only provided assistance to FPS for the protection federal buildings when requested.  Parra Decl. ¶ 6.  The last time that FPS requested assistance from USBP was February 6, 2026; however, the agents only remained on standby and were not deployed that day.

### 3.   Plaintiffs' Request for an Amended Preliminary Injunction Should Be Denied.

In light of the changed circumstances discussed above, Plaintiffs have not demonstrated that they will suffer irreparably injury absent a preliminary injunction. "[P]laintiffs may not obtain a preliminary injunction unless they can show that irreparable harm is likely to result in the absence of the injunction." *All. For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). To establish a likelihood of irreparable harm, Plaintiff "must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (emphasis in original) (citation omitted); *see also Rendish v. City of Tacoma*, 123 F.3d 1216, 1226 (9th Cir. 1997) ("In this Circuit, no presumption of irreparable harm arises in a First Amendment retaliation claim[.]").

Plaintiffs have made no effort to make this showing; nor could they, given the material changes on the ground in Los Angeles since the Court first considered Plaintiffs' initial motion last year. Indeed, reviewing this Court's earlier decision on irreparable harm reveals just how different the facts are today. *See* Order, ECF No. 55. Substantial numbers of federal law enforcement officers have demobilized from the surge of personnel augmentation, and Operation At Large-Los Angeles has ended. Based on the current record, there is no basis to conclude that "the events of this summer are likely to recur." *Id.* at 37.

To the extent Plaintiffs assert injuries based on past incidents in June and July 2025, standing for prospective relief "does not exist merely because plaintiffs experienced past harm and fear its recurrence." *Vasquez Perdomo v. Noem*, 146 S. Ct. 1, 2 (2025) (Kavanaugh, J., concurring in grant of stay application) (citing *Lyons*, 461 U.S. at 111). Plaintiffs have not put forth any evidence or information that the Court could rely on to substantiate prospective relief today. Rather than submitting a motion for preliminary injunction with evidence supporting a sufficient likelihood that Plaintiffs will be wronged in the future, Plaintiffs have simply submitted a proposed order to

6

"facilitate their discussion of how the Court should amend its preliminary injunction." ECF No. 112 at 1. Plaintiffs ignore the threshold issue of whether they have standing to obtain prospective relief almost one year after their alleged injuries, and months after Operation at Large-Los Angeles ended. In their conclusory draft opinion and order, Plaintiffs fail to address whether there is any sufficient likelihood of future injury at the present time and simply focus on the scope of the injunction. Pls.' Proposed Order, ECF No. 112-1. Accordingly, there is no basis for this Court to conclude that Plaintiffs have established a "'real and immediate threat' that [they] would be 'wronged again.'" *Updike*, 870 F.3d at 947 (quoting *Lyons*, 461 U.S. at 111); *see also Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999) (en banc) (plaintiffs alleging past discriminatory stops by the U.S. Border Patrol had not shown likelihood of future discriminatory stops even though the plaintiffs alleged they were constantly in the presence of Border Patrol agents).[1]

In light of the end of Operation at Large-Los Angeles, it is entirely unlikely that Plaintiffs will, in the future, have the same types of encounters with federal law enforcement officers as they did during Operation at Large-Los Angeles last summer. The majority of Plaintiffs' prior allegations arose from spontaneous, ad hoc encounters with law enforcement engaged in law enforcement operations in the field.[2] The most recent of these encounters occurred on July 10, 2025, at the Glass House Criminal

---

[1] Given that Plaintiffs' one-page "response" (ECF No. 112) is essentially being treated as an opening brief, Defendants anticipate that Plaintiffs' reply will include evidentiary support typically included in an opening brief on a motion for preliminary injunction. Should Plaintiffs attach evidence to their reply, Defendants intend to seek leave to file a sur-reply to respond to Plaintiffs' evidence and argument such as they would ordinarily be afforded the opportunity to respond to a Motion for Preliminary Injunction.

[2] ECF Nos. 6-6, 6-7, 6-8 (Decls. of Sean Beckner Carmitchel, Benjamin Adam Climer and Charles Xu from Paramount, CA); ECF No. 34-11, 34-18, 34-22, 34-25 (Decls. of Jeanette Marantos, R.R., Tina-Desiree Berg, Supp. Decl. Adam Rose) discussing incidents at Glass House Farms, McArthur Park, and Paramount.

7

Warrant Operation—over two months prior to the issuance of the preliminary injunction. The named Plaintiffs have provided no evidence of any subsequent in-the-field encounter with DHS law enforcement officers that caused them injury. Further, as indicated above, CBP has largely returned to its pre-surge status, the frequency and volume of violent protests have decreased significantly, and the protest activity that remains ongoing is focused on federal buildings during weekends and special events. *See* Scharman ¶ 2; Parra Decl. ¶¶ 6-7. Plaintiffs sought a preliminary injunction by arguing that a surge of federal officials to Los Angeles during Operation At Large acted with retaliatory intent during regular enforcement operations in the field that descended into violent conflicts with protesters on a near-daily basis. The situation in Los Angeles today bears no resemblance to that description.

Just as these changed circumstances would warrant relief from the Court's prior injunction had it not been vacated, they underscore why the Court should not enter a new injunction on remand. *See Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (stating that a "significant change in facts or law warrants revision or dissolution of the injunction").

**B. If Any Injunction Issues, It Should Be Narrowly Tailored To Protect Only Identified Plaintiffs and Prohibit Only Conduct Expressly Referenced by the Ninth Circuit.**

Should the Court nevertheless conclude that entry of an amended preliminary injunction remains appropriate notwithstanding the stale evidentiary record on which Plaintiffs' motion is predicated, any such injunction must be narrowly tailored to apply only to a limited group of identifiable Plaintiffs and prohibit no more than the intentional targeting of sensitive areas when using less-lethal munitions. Specifically, the injunction should apply only to the individual Plaintiffs and to individuals who (A) the organizational Plaintiffs have chosen to identify by name, (B) have Article III standing, and (C) were members of the organizational Plaintiffs when the amended complaint was

filed.[3]  An injunction with these limitations would be consistent with the specificity requirements of Rule 65(d), with the standing requirements of Article III, and with principles of equity.  Further, as to the substance of any injunction, it must faithfully implement the Ninth Circuit's guidance and extend no further than prohibiting officers from intentionally targeting sensitive areas.  Absent these limitations, the injunction would be overbroad, untenably vague, and unworkable.

**1. To comply with Rule 65(d) and to ensure Defendant can comply with the injunction, the Court should clarify that the preliminary injunction is limited to individuals with Article III standing that are members of the organizational Plaintiffs.**

The preliminary injunction should be limited in scope to members of the two organizational Plaintiffs with Article III standing who have been identified during this case.  The reason for this requirement is twofold.  First, an injunction that does not include this limitation is too vague to be understood and therefore fails to comply with Rule 65.  Second, without this clarification, the injunction is unworkable and Defendants might be unable to comply with its terms.  The organizational Plaintiffs have the right to decline to identify their members, *see, e.g.*, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 466 (1958), but if they choose to do so, Defendants cannot determine and verify who is a member protected by the Court's injunction and who is not.  The organizational Plaintiffs cannot have it both ways.  They cannot simultaneously decline to identify their members and at the same time insist that the Court award injunctive relief to unidentified people whose membership has not been verified.

**Rule 65.** "Every order granting an injunction" must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d).  "The Supreme Court has explained that 'one basic principle built into Rule 65 is that those against

---

[3] Defendants also oppose extending the injunction to Plaintiffs' proposed class and refer the Court to Defendants' opposition to Plaintiffs' motion for class certification. *See* ECF No. 103.

whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits.'" *Union Pac. R.R. Co. v. Mower*, 219 F.3d 1069, 1077 (9th Cir. 2000) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Loc. No. 70,* 415 U.S. 423, 444 (1974)). "[T]he specificity provisions of Rule 65(d) are no mere technical requirements," since "basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). "The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Id.*

Courts have found injunctions too vague when they failed to provide sufficient notice of the individuals or entities against whom conduct was enjoined. *See, e.g., Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1411 (11th Cir. 1998) (injunction prohibiting entity from contacting "any donor whose name is contained on Plaintiff's [trade secret donor] lists" was impermissibly vague because enjoined party had "no way to determine whether a given member of the public might happen to appear on" a list not in its possession (citation omitted)); *NLRB v. Teamsters Loc. Union 327*, 419 F.2d 1282, 1283 (6th Cir. 1970) (injunction directing employers to cease from restraining or coercing the employees of a specified company "or the employees of any other employer within its jurisdictional territory" was too vague where, *inter alia*, the injunction failed to define the specified jurisdiction "and thus it provides no means of defining the people for whom protection is sought" (citation omitted)); *E.W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108, 1116 (8th Cir. 1969) (injunction prohibiting defendants from contacting current or proposed customers of plaintiff company was "excessively vague" where, *inter alia*, neither the court's fact findings nor the injunction itself "determin[ed] the identity of the customers or proposed customers" so that it was "unclear whom the defendants may or may not contact").

To comply with an injunction, the enjoined party must know to whom the injunction applies. But here, Defendants do not know the identities of the thousands of

10

members of the organizational Plaintiffs.  *See* Decl. of Jonathan Schleuss ("Schleuss Decl.") ¶ 2, ECF No. 6-16 (stating that The NewsGuild – Communication Workers of America "is a labor union representing more than 25,000 employees"); L.A. Press Club, Mission & History, at https://lapressclub.org/about/mission (last visited May 15, 2026) (stating that Los Angeles Press Club has "almost 1,000-member[s]").  Plaintiffs have identified only a small number of individual members who they assert have been injured by crowd control devices.  *See* Schleuss Decl. ¶¶ 6-9; Decl. of Adam Rose ("Rose Decl.") ¶¶ 19, 23-24, ECF No. 6-5.  Plaintiff have not explained why unidentified members who have not been injured and do not face any imminent threat of future injury require protection with a preliminary injunction.  Further, Plaintiffs appear to include both individuals and corporate entities within the membership ranks.  *See* Rose Decl. ¶¶ 21, 28 (alleging that a KTLA photographer and Los Angeles Times reporter were injured and that KTLA and the Los Angeles Times are "newsroom member[s] of the Los Angeles Press Club").  But every current and future unnamed employee of these media companies should not be protected by the injunction simply because their corporate employer is a member.  And for individuals who are members of the organizations, Defendants lack the means to verify the identities of these members because such information is wholly within the possession and control of the organizational Plaintiffs.

Accordingly, to ensure that Defendants know to whom the injunction applies, Rule 65(d) requires that any injunction should be limited to individual members that the organizational Plaintiffs have specifically identified in this litigation who have Article III standing.

**Workability.**  In a similar vein, the Court must consider "what is workable," when considering the appropriate scope of injunctive relief.  *North Carolina w. Covington,* 581 U.S. 486, 488 (2017) (per curiam) (citation omitted).  Here, the result of any injunction that would apply to potentially thousands of individuals unknown to Defendants would impose significant, if not impossible, compliance burdens.  *See Int'l Longshoremen's Ass'n, Loc. 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)

11

(stating that the "contempt power is a potent weapon" and that "Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid").  Thus, to avoid the constant risk of contempt, the federal government may have to prohibit the application of the challenged conduct to every person in the Central District of California.  But this result would conflict with the Ninth Circuit's decision vacating the Court's first injunction as overbroad because it extended relief to non-parties.  *See L.A. Press Club*, 171 F.4th at 1191.

Further, such relief would create a "backdoor way" to universal injunctive relief, which undercuts the Supreme Court's recent holding that universal injunctions are impermissible where they grant relief "broader than necessary to provide complete relief to each plaintiff with standing to sue."  *Trump v. CASA, Inc.* 606 U.S. 831, 861 (2025); *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 541 (6th Cir. 2021).  Organizations with large memberships could easily evade *CASA*'s holding by suing and then withholding their members' names, forcing the government to choose between halting enforcement everywhere or being at constant risk of contempt against unknown members.

That organizations have confidentiality interests in their membership information, *see, e.g.*, *Patterson*, 357 U.S. at 466, does not alter the conclusion.  The necessary consequence of maintaining such confidentiality is that the organizational Plaintiffs cannot secure broad injunctive relief for all their unknown members, particularly those members who lack Article III standing in their own right.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 497-500 (2009) ("[T]he Court has required plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm.").  Indeed, it cannot be the case that every member of the nearly 1000-member Los Angeles Press Club (*e.g.*, writers covering LA sports teams or the entertainment industry) would have standing to challenge DHS's immigration enforcement activities in this case, such that they should receive the protection of the injunction.  Accordingly, to comply with

12

*CASA*, any injunction should protect only those members with standing that Plaintiffs voluntarily choose to disclose and identify in this case. *See CASA,* 606 U.S. at 867 (Alito, J., concurring) ("Left unchecked, the practice of reflexive . . . third-party standing will undermine today's decision as a practical matter"); *Washington v. Trump*, 145 F.4th 1013, 1040 (9th Cir. 2025) (Bumatay, J., concurring and dissenting in part) (stating that courts should not award relief that would result in Plaintiffs obtaining a "backdoor to [a] universal injunction[]"), *petition for cert. docketed*, No. 25-364 (U.S. Sep. 29, 2025). Limiting the injunction in this way appropriately leaves the breadth of the remedy the organizations can receive in their own hands. Nothing prevents the organizations from naming as many of its members who have standing as they wish so that each member can benefit from any relief the Court orders.

## 2. To conform with Article III and principles of equity, the injunction should be limited to members of the organizational plaintiffs when the amended complaint was filed.

Both Article III and equitable principles require that any preliminary injunction must be limited to individuals who were members of one of the organizational Plaintiffs *at the time the amended complaint was filed*.

Starting with Article III, an organization has associational standing to bring suit on behalf of its members only if, *inter alia*, "its members would otherwise have standing to sue in their own right." *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013). And standing is determined when the operative complaint is filed. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 570 n.5 (1992); *C.R. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017).

Further, the Court's equitable authority is limited to granting relief only to plaintiffs who have standing to sue. *CASA*, 606 U.S. at 861; *see also Broadrick v. Oklahoma*, 413 U.S. 601, 611 (1973) (confining courts to "adjudicating rights in particular cases between the litigants brought before the Court"). And because "standing is not dispensed in gross," a preliminary injunction must be tailored only to those

13

specific plaintiffs who have established standing "for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted).

Applying these principles here, the Court should grant relief only to individuals who were members of Los Angeles Press Club or NewsGuild – Communication Workers of America at the time the amended complaint was filed on October 16, 2025. *See* Am Compl. (ECF No. 67). Plaintiffs' associational standing is temporally anchored to that date. And because the Court can only grant relief to Plaintiffs with standing to sue as of the filing of the operative complaint, the organizational Plaintiffs cannot represent and obtain relief for individuals who were not part of the organizations when the amended complaint was filed. Otherwise, the scope of the Court's injunction would constantly fluctuate with changes in membership, thereby exacerbating the specificity and workability problems discussed above.

Equity has long limited mechanisms whereby potentially affected individuals may "await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974). To do otherwise would be to "create[] the possibility of asymmetrical preclusion," enabling the members of the organizational plaintiffs to enjoy the benefits of a favorable judgment while escaping the burdens of an adverse one. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 402 (2024) (Thomas, J., concurring); *see also McCoy v. ATF*, 140 F.4th 568, 573 n.1 (4th Cir. 2025) (determining that plaintiffs could not "receive the benefit of class-wide relief when they strategically withheld their class certification motion to avoid being bound by an unfavorable ruling"), *petition for cert. docketed*, No. 25-24 (U.S. July 8, 2026).

Extending the injunction in this case to future members of the organizational Plaintiffs is inequitable, because it creates a "heads I win, tails you lose" result. On the one hand, if an organization fails in its legal challenge, nothing prevents non-members from filing individual suits to challenge the same action in other jurisdictions. On the other hand, when an organization prevails in its suit, latecomers joining the organization

14

as free-riders after the decision would reap the full benefits of the favorable judgment. Equity should not impose such an asymmetrical, lose-lose result on the government. *See CASA*, 606 U.S. at 854 ("[T]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." (citation omitted)); *id.* at 855 (identifying one of the criticisms of universal injunctions as "operat[ing] asymmetrically:  A plaintiff must win just one suit to secure sweeping relief.  But to fend off such an injunction, the Government must win everywhere").

Therefore, in accordance with Article III and with principles of equity, this Court should limit the scope of any injunction to individual persons who were members of the organizational Plaintiffs at the time the amended complaint was filed.

### 3. Any Injunction Should be Limited to the Sensitive Areas Provision Approved by the Ninth Circuit.

Although Operation at Large-Los Angeles has concluded *and* Plaintiffs have submitted zero evidence to support their entitlement to equitable relief, should the Court conclude that Plaintiffs have successfully demonstrated a likelihood of future harm and that they face irreparable harm, the substance of any injunction should be limited to the sensitive areas restriction approved by the Ninth Circuit.  The Ninth Circuit indicated that an injunctive provision prohibiting DHS officers from intentionally targeting sensitive areas would be directly tethered to Plaintiffs' First Amendment retaliation claims.  *L.A. Press Club*, 171 F.4th at 1192.  The Court recognized that "federal policies already prohibit the intentional targeting of sensitive areas unless the use of deadly force is reasonable."  *Id.*; *accord* Scharmen Decl. ¶ 9, Larios Decl. ¶ 18; Szemes Decl. ¶ 16.  But the Ninth Circuit concluded that an injunction prohibiting such targeting would be appropriate given this Court's finding that "DHS officers failed to follow those policies in response to Plaintiffs' protected conduct."  *L.A. Press Club*, 171 F.4th at 1192.

However, it is important to distinguish that in its discussion of this provision the Ninth Circuit reasoned that the "district court found that DHS officers *failed to follow*

15

those policies in response to Plaintiffs' protected conduct." *L.A. Press Club*, 171 F.4th at 1192.   This observation suggests that the prohibition should extend only to willful or intentional conduct, rather than inadvertent or unintentional conduct that happens to result in a strike to a sensitive area.  To enact the provision as Plaintiffs suggest could subject officers to contempt proceedings for all strikes to sensitive areas rather than intentional strikes.  To this point, kinetic projectiles "travel at moderate speeds, and sudden movements by individuals or bystanders can result in inadvertent impacts." Scharmen Decl. ¶ 9; *see also* Szemes Decl. ¶16 (discussing these kinetic impact projectiles relatively slow dynamic movements that can result in an inadvertent strike to a sensitive area and instance of violent opportunists kicking or throwing the chemical munition cannisters causing injuries to others).  In fast-moving and dynamic situations (like a large protest numbering in the hundreds or the thousands) that present an imminent safety threat, these types of unintentional impacts should not subject officers to contempt proceedings and create a chilling effect on officers' ability to respond.  *See* Scharmen Decl. ¶ 9; Larios Decl. ¶ 18; Szemes Decl. ¶ 16.  As this discussion illustrates, Plaintiffs cannot establish First Amendment retaliation simply by arguing that they were struck in sensitive locations by crowd-control devices, especially where, as here, the record establishes that violent individuals often move or throw crowd-control devices at others.  Szemes Decl. ¶ 16; Scharmen Decl. ¶ 9.  Accordingly, any injunction implementing the Ninth Circuit's intentional-targeting discussion must contain a willfulness requirement to exclude inadvertent or otherwise unintentional strikes.

Further, although an injunction of this sort would address the overbreadth and narrow-tailoring issues identified by the Ninth Circuit, the Court should consider, the implications that this provision only serves to command that Defendants "obey the law." *See, e.g., Cuviello v. City of Oakland*, 2009 WL 734676, at *3 (N.D. Cal. Mar. 19, 2009) (holding that injunctions requiring lawful arrests and barring interference with free speech rights "are 'obey the law' injunctions and thus not enforceable.").  While the Ninth Circuit has never had the occasion to reach this issue, numerous courts have

recognized "[i]njunctions that broadly order the enjoined party simply to obey the law and not violate the statute are generally impermissible." *NLRB v. USPS*, 486 F.3d 683, 691 (10th Cir. 2007) (Tymkovich, J., concurring). Most recently, the Eighth Circuit concluded that "[d]irections not to retaliate against persons who are engaging in peaceful and unobstructive protest activity or stop or detain drivers . . . where there is no reasonable articulable suspicion are simply commands to obey the law, which are not specific enough." *Tincher v. Noem*, 164 F.4th 1097, 1099 (8th Cir. 2026) (internal quotations and citations omitted); s*ee also, Elend v. Basham*, 471 F.3d 1199, 1210 (11th Cir. 2006) (affirming that merely "demanding a party do nothing more specific than 'obey the law' is impermissible" and would fail to satisfy the specificity requirements of Federal Rule of Civil Procedure 65)). Obey the law injunctions are frequently rejected as illusory and inadequate in terms of providing fair notice as to the conduct that is enjoined. *See Payne v. Travenol Lab'ys, Inc.*, 565 F.2d 895, 897-98 (5th Cir. 1978); *see also SEC v. Goble*, 682 F.3d 934, 949 (11th Cir. 2012); *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011); *Gilday v. Dubois*, 124 F.3d 277, 287 (1st Cir. 1997). Any injunction entered in this case should adhere to these principles to avoid the vagueness problems inherent in such injunctions.

### C. Plaintiffs' proposed injunction is overbroad, unworkable, and inconsistent with governing law.

The Court should reject Plaintiffs' proposed injunction in full. Plaintiffs' proposal suffers from the same problems as the injunction that the Ninth Circuit vacated on appeal. It includes vague terms, sweeps far too broadly, and is inconsistent with the Ninth Circuit's decisions in *Puente* and *Dickinson*. *See generally*, *Puente v. City of Phoenix*, 123 F.4th 1035 (9th Cir. 2024); *Dickinson v. Trump*, 2026 WL 1133353 (9th Cir. Apr. 27, 2026).

**1.** ***Dispersal Orders***. Plaintiffs' first proposed term continues to seek overbroad relief from dispersal of Plaintiffs from public locations. In vacating the prior injunction as overbroad, the Ninth Circuit specifically held that "[a]n injunction that

exempts Plaintiffs, non-party journalists, and non-party legal observers from lawful, *non-retaliatory* dispersal orders is broader than necessary to 'remedy the specific harm alleged' in Plaintiffs' First Amendment claims." *L.A. Press Club*, 171 F.4th at 1191(quoting *Washington*, 145 F.4th at 1035).  The Ninth Circuit made this point clear in *Puente* and reaffirmed it again recently in *Dickinson*, expressly stating that DHS may utilize less-lethal munitions in a variety of circumstances that do not offend the First Amendment.  *See Puente*, 123 F.4th at 1062 (holding that law enforcement can use less-lethal munitions in the face of "disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order."); *see also Dickinson*, 2026 WL 1133353, at *10 (recently affirming *Puente* stating: "under the First Amendment, officers may disperse a crowd not only in response to an imminent threat of physical harm but also in response to imminent lawlessness, including a threat of riot, disorder, [or] interference with traffic.'  For example, the First Amendment allows officers to use crowd-control munitions if protesters block the street, criminally trespass on government property, or thwart law enforcement efforts." (alteration in original) (quoting *Puente*, 123 F.4th at 1062)).

Here, Plaintiffs seek to enjoin Defendants from dispersing Plaintiffs "when they are not physically impeding or disrupting access to federal property or operations or within a crowd posing an immediate threat to public safety, peace, or order."  ECF No. 112-1 at 9.  This provision fails to account for the full scope of the Ninth Circuit's holding related to lawful, non-retaliatory dispersal orders. *See Puente*, 123 F.4th at 1062; *see also L.A. Press Club*, 171 F.4th at 1191.  Use of crowd-control devices in response to a threat of riot, disorder, interference with traffic upon the public streets, criminal trespass on government property, vandalism, imminent lawlessness or unlawful acts, or any other immediate threat to officers, public safety, peace or order would all be considered lawful and non-retaliatory. *Dickinson*, 2026 WL 1133353, *6.

    ***2.    Use of Less-Lethal Munitions***.  In the second proposed term, Plaintiffs propose vague and overbroad language related to firing kinetic impact projectile

launchers wherein they seek to enjoin defendants from "threatening or assaulting" by "brandishing" KIP launchers or spraying chemical irritant spray.  "Threatening" and "brandishing" are vague and ambiguous terms that improperly expose Defendants to strategic or near frivolous contempt proceedings based on Plaintiffs' subjective judgments.  *Cf. L.A. Press Club*, 171 F.4th at 1191-92; *see also* Scharmen Decl. ¶ 7; Larios Decl. ¶ 15; Szemes Decl. ¶¶ 13-14.  For instance, KIPs are large pieces of equipment that are not holstered by officers, therefore, when officers are carrying them, turning while holding them or placing them in a ready position, one or more of plaintiffs might subjectively and wrongfully conclude that an officer is "brandishing" the KIP.  Larios Decl. ¶ 15.  Moreover, Plaintiffs' proposal fails to account for the "realities of crowd control and the need to protect officers and the public from violent individuals who exploit crowds for anonymity."  Scharmen Decl. ¶ 7; Larios Decl. ¶ 15; Szemes Decl. ¶¶ 13-14.  Plaintiffs' proposal also suffers from the same overly-restrictive limitations discussed above and fails to account for the permissible use of less-lethal munitions in a variety of lawful circumstances.

3.    *Audible Warnings*.  For their third request, Plaintiffs reprise their request for an audible warning requirement, despite the Ninth Circuit specifically holding that "[t]he preliminary injunction's necessarily subjective requirement for audibility of warnings invites strategic or near-frivolous contempt proceedings against the government's responsible law enforcement agents."  *L.A. Press Club*, 171 F.4th at 1191-92. This request should be excluded in its entirety from any injunction issued by this Court.  As discussed by the Ninth Circuit, this type of prohibition is attenuated from the First Amendment injury shown by Plaintiffs and burdens the government by leading to strategic or near-frivolous contempt proceedings, "while it does little to give Plaintiffs their desired relief." *Id.* at 1192; *see also Puente*, 123 F.4th at 1053 (rejecting that First Amendment requires audible warnings of any sort).  Further, for the reasons identified by Defendants' declarants, this provision should be wholly excluded. *See* Scharmen Decl. ¶ 8; Larios Decl. ¶ 17; Szemes Decl. ¶ 15.

19

**4.    *Sensitive Body Areas.*** As discussed *supra* and incorporated here by reference, Defendants acknowledge that the Ninth Circuit approved a prohibition against striking sensitive body parts, but Plaintiffs' proposal could subject officers to contempt proceedings for unintentional or inadvertent strikes to sensitive areas rather than intentional strikes. Any such provision should include willfulness requirement to exclude inadvertent or otherwise unintentional strikes.

**5.    *Safe Harbor Provision.*** The "safe harbor" exception proposed by Plaintiffs in paragraph five is not sufficiently protective of officers confronted with "tense, uncertain, and rapidly evolving" circumstances where they are forced to "to make split-second judgments." *Ryburn v. Huff*, 565 U.S. 469, 477 (2012) (per curiam) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Although the exception states that Defendants are not liable if Plaintiffs are incidentally exposed to crowd control devices, what constitutes a "crowd control device" is vague and ambiguous. *See* Larios Decl. ¶ 16. Moreover, "what qualifies as incidental exposure and constitutes the use of a device deployed consistent with the injunction" is vague and ambiguous. *See* Szemes Decl. ¶ 17. Further, the risk of criminal contempt charges, fines, or incarceration and personal liability may cause officers to hesitate in using less-lethal munitions when necessary, and, therefore, restrict their ability to act swiftly when facing increasing danger. *See* Scharmen Decl. ¶ 10; Szemes Decl. ¶ 17. At a minimum, any safe harbor must include expanded language so that officers do not violate the injunction if a person protected by the injunction is incidentally or unintentionally exposed to crowd control device or if such a device was deployed by an officer with a good faith belief that such use complies with the injunction.

**6.    *Geographic Limitation.*** The geographic scope of Plaintiffs' proposed injunction is overbroad because it includes the entire Central District of California, rather than specific areas of concentrated protest activity. Any preliminary injunction should be limited only to the federal buildings identified by Plaintiffs where the protest activity occurred, namely the Metropolitan Detention Center ("MDC") in downtown Los

Angeles and the Santa Ana Federal Building. This geographic restriction is reasonable given the significant reduction of federal law enforcement presence, as well as the end of Operation at Large-Los Angeles.  All other encounters with federal law enforcement occurred as a result of ad hoc encounters almost one year ago.  It is wholly speculative that any Plaintiff would encounter federal law enforcement throughout the Central District other than when protesting outside of the MDC or the Santa Ana Federal Building.

        **7.**    ***Identification of Persons Protected by the Injunction.***  Finally, Plaintiffs' proposed order fails to provide any practical guidance or instructions for how officers can identify who is protected by the injunction.  Officers could be faced with potential harm or contempt when trying to identify protected individuals in the midst of large, chaotic gatherings, especially when officers may be facing hostile actions.  *See* Scharmen Decl. ¶ 6; Larios Decl. ¶¶ 13-14; Szemes Decl. ¶¶ 11.  This lack of practical guidance on identifying Plaintiffs will chill officers' ability to respond and endanger their safety while under attack by preventing dispersal of violent rioters to protect federal personnel, property, and the public.  *Id.*  At a minimum, Plaintiffs must be required to clearly identify persons protected by the injunction in a conspicuous manner so that officers can easily identify them and distinguish them from other individuals not covered by the injunction

## V.    CONCLUSION

      For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' request for entry of an amended preliminary injunction.

21

Dated:  May 15, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
ANDREW I. WARDEN
KATHLEEN C. JACOBS
Civil Division, Federal Programs Branch

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE MEDRANO
Assistant United States Attorney
Acting Chief, Complex and Defensive Litigation
Section
PAUL (BART) GREEN
Assistant United States Attorney


   */s/ Kathleen C. Jacobs*
KATHLEEN C. JACOBS
Trial Attorney

Attorneys for Defendants

22