UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| LOS ANGELES PRESS CLUB et al., | Case No. 2:25-cv-05563-HDV-E |
| --- | --- |
| Plaintiffs, | **ORDER GRANTING REVISED PRELIMINARY INJUNCTION [104, 117]** |
| v. | |
| KRISTI NOEM et al., | |
| Defendants. | |

## I.    INTRODUCTION

Last summer, the Department of Homeland Security ("DHS")[1] began a campaign of aggressive immigration enforcement in this District.  The community protested, and journalists and regular citizens alike began documenting what unfolded throughout Southern California.  This action, initiated in June 2025, arises out of federal agents' violent response to those demonstrations, and what happened when those matters of public importance were recorded.

In September, this Court found that Plaintiffs were likely to succeed on the merits of their First Amendment right of access and retaliation claims and issued a preliminary injunction.  Order Granting Plaintiffs' Motion for Preliminary Injunction ("PI Order") [Dkt. 55].  Defendants promptly appealed.  Notice of Appeal [Dkt. 57].[2]  The Ninth Circuit decided the appeal on April 1.  *L.A. Press*

---

[1] The Defendants named in the First Amended Complaint are DHS; Kristi Noem, Secretary of Homeland Security; Gregory Bovino, Border Patrol's "Commander-at-Large," Commander of DHS's Operation at Large in California and Los Angeles, and Chief Patrol Agent for the El Centro Sector of Customs and Border Patrol ("CBP"); Todd Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"); Ernesto Santacruz Jr., Acting Field Office Director for the Los Angeles ICE Enforcement and Removal Operations ("ERO") Field Office; Eddy Wang, Homeland Security Investigations ("HSI") Special Agent in Charge for Los Angeles; Mario Canton, Regional Director for Region 9 of the Federal Protective Service ("FPS"); and Kevin Green, Office of Field Operations Special Response Team ("SRT") Commander.  ("FAC") [Dkt. 67] ¶¶ 17–24.  ICE, CBP, HSI, ERO, SRT, and FPS are all within DHS.  *Id.* ¶ 17.

All of the individual Defendants are sued in their official capacity.  *Id.* ¶¶ 18–24.  Such a suit is treated as an action against the governmental entity of which the named official is an agent.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  As a result, when officials sued in this capacity leave office, "their successors automatically assume their roles in the litigation."  *Id.*; *see also* Fed. R. Civ. P. 25(d).  Markwayne Mullin is thus substituted for Kristi Noem as Secretary of Homeland Security, Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Class Cert. Opp.") [Dkt. 103] at 2 n.1; Daniel Parra for Gregory Bovino as Acting Chief Patrol Agent for the El Centro Sector of CBP, Declaration of Daniel Parra ("Second Parra Decl.") [Dkt. 114-2] ¶ 1; David Venturella for Todd Lyons as Acting Director of ICE, Heather Hollingsworth & Mike Catalini, *Former Private Prison Executive David Venturella Will Become ICE's Acting Leader*, Associated Press (May 13, 2026), https://apnews.com/article/trump-ice-leader-lyons-venturella-immigration-4996875a8d3296ccc1735798e2428d98; Andre Quinones for Ernesto Santacruz Jr. as Acting Field Office Director for the Los Angeles ICE ERO Field Office, *see* Class Cert. Opp. at 2 n.1; etc.

[2] Defendants also sought a stay pending appeal.  This Court denied Defendants' stay request.  Order Denying Defendants' Ex Parte Application to Stay Preliminary Injunction Pending Appeal ("Stay Order") [Dkt. 74].  The Ninth Circuit granted it as to certain "injunctive provisions that by their terms apply to protesters who are not parties to this litigation" and "only to the extent that they apply

2

*Club v. Noem*, 171 F.4th 1179 (9th Cir. 2026). The panel affirmed this Court's grant of the preliminary injunction, finding no abuse of discretion in the analysis of the *Winter* factors, including the likelihood of success on the merits of the retaliation claim. *Id.* at 1187–90. But the panel held that the specific injunction issued was overbroad, vacated it, and remanded the case to this Court to fashion a narrower injunction. *Id.* at 1190–92.

More specifically, the Ninth Circuit identified the following issues with the language of this Court's previous preliminary injunction. "First, several provisions expressly appl[ied] to non-parties and [we]re broader than necessary to afford 'complete relief *to the plaintiffs before the court*.'" *L.A. Press Club*, 171 F.4th at 1191 (citation omitted). The court pointed specifically to language referring to "any person," to "members of the press, legal observers, and protesters," and to "Journalist[s] or Legal Observer[s] (as defined [by the district court])." *Id.* The court observed that "[b]y their explicit terms, these provisions [we]re not limited to providing relief only to the individual Plaintiffs, members of the Organizational Plaintiffs, or non-parties whose protection Plaintiffs have shown necessary to give relief to Plaintiffs." *Id.*

Second, the Ninth Circuit found that the provision of the preliminary injunction "that exempt[ed] Plaintiffs, non-party journalists, and non-party legal observers from lawful, *non-retaliatory* dispersal orders [wa]s broader than necessary to 'remedy the specific harm alleged' in Plaintiffs' First Amendment claims." *Id.* (citation omitted).

Third and finally, the Ninth Circuit held that the prohibition against "the use of crowd control weapons without first giving two separate audible warnings" "applie[d] broadly for the purported protection of the general public," was "attenuated from the First Amendment injury Plaintiffs have shown," and incorporated a "necessarily subjective requirement for audibility of warnings [that] invite[d] strategic or near-frivolous contempt proceedings." *Id.* at 1191–92.[3]

---

to" such non-party protesters. *L.A. Press Club v. Noem*, No. 25-5975 (9th Cir. Dec. 18, 2025) [Dkt. 66.1] ("9th Cir. Stay Order") at 1.

[3] The Ninth Circuit explicitly approved of the "injunction's prohibition against 'firing [kinetic impact projectiles] or other crowd control weapons at the head, neck, groin, back, or other sensitive areas'" because it was "directly tethered to the specific harms alleged by Plaintiffs and recognized

Both parties have filed their positions on how to amend the previous preliminary injunction to address the Ninth Circuit's concerns, *see* [Dkts. 112, 113, 114, 116], and the Court heard oral argument on the matter.  Minutes [Dkt. 115]; Transcript [Dkt. 131].

Defendants make a number of arguments aimed at alleged issues with the preliminary injunction not identified by the Ninth Circuit.  For the reasons discussed below, this Court declines to revisit these issues on remand.

First, Defendants revisit their argument that this Court should not enter a preliminary injunction at all, largely on the theory that their immigration enforcement operations (and protests thereof) have purportedly wound down in Southern California.  Defendants' Opposition to Plaintiffs' Proposed Preliminary Injunction ("Opposition") [Dkt. 114] at 3–8.  The Court again rejects this view.  The Ninth Circuit's opinion was very clear that it was "*affirm*[ing] the district court's grant of the preliminary injunction" and remanding to "*fashion a narrower* injunction."  *L.A. Press Club*, 171 F.4th at 1190 (emphasis added).  It did not contemplate a wholesale revisiting of the need for a preliminary injunction—an analysis that this Court has conducted twice already.  But even if that possibility were within the proper scope of remand, Defendants have not shown that a preliminary injunction is no longer necessary.  Although the scale might be reduced, Defendants admit that they are still conducting immigration enforcement operations in the Los Angeles area,[4] that they continue to see protest actions both in front of federal buildings and out in the field,[5] and that various DHS components continue to police those protests.[6]  And Plaintiffs have submitted fairly extensive (and

---

by the district court—namely, Defendants' aiming . . . at sensitive areas . . . in retaliation for First Amendment protected conduct" and in violation of federal policies.  *Id.* at 1192.

[4] Declaration of Javier Larios ("Larios Decl.") [Dkt. 114-1] ¶ 5; Second Parra Decl. ¶ 7.

[5] Larios Decl. ¶ 12; Third Supplemental Declaration of Roger Scharmen ("Fourth Scharmen Decl.") [Dkt. 114-3] ¶¶ 2, 4.

[6] Larios Decl. ¶ 9; Fourth Scharmen Decl. ¶¶ 1, 3; Declaration of Brian Szemes ("Third Szemes Decl.") [Dkt. 114-4] ¶ 9.

4

persuasive) evidence that Defendants' attacks on them continue.[7]

Defendants also maintain that any new preliminary injunction should contain *only* the provision against firing crowd control weapons at sensitive areas that the Ninth Circuit blessed, and should be further limited to willful strikes. Opposition at 15–17. The Court again disagrees. The Ninth Circuit found that this prohibition was "directly tethered to the specific harms alleged by Plaintiffs and recognized by the district court" *as written*, without contemplating any further requirements. *L.A. Press Club*, 171 F.4th at 1192. And the Ninth Circuit did not suggest that this was the only provision substantive prohibition it considered permissible; rather, it was "highlight[ed] [as an] example[] to guide the district court's analysis on remand." *Id.* at 1191. The Ninth Circuit's order in this case thus does not provide a basis to limit this provision or to limit the injunction to this provision, and Defendants cite no other authority for that position.

Defendants also seek to expand the safe harbor provision of the preliminary injunction. They claim that, as written, it is vague and ambiguous, and propose that the safe harbor be rephrased such that the injunction is not violated if "a person protected by the injunction is incidentally or unintentionally exposed to crowd control device [sic] or if such a device was deployed by an officer with a good faith belief that such use complies with the injunction." Opposition at 20. The Court

---

[7] *See* Supplemental Declaration of Lexis-Olivier Ray ("Second Ray Decl.") [Dkt. 100-19] ¶¶ 2–8, 16–17, 19, 21–24, 27 (describing events across from the Metropolitan Detention Center ("MDC") in downtown Los Angeles on the evening of January 31, 2026, in which, after a firework was thrown over a line of DHS agents—without hitting or landing near them—agents began shooting pepper balls, throwing tear gas cannisters, and throwing or shooting flash bangs into the crowd, including at Plaintiff journalist Lexis Olivier-Ray). *See also* Declaration of Sean Garcia-Leys ("Garcia-Leys Decl.") [Dkt. 100-18] ¶¶ 5, 10, 20–28 (describing incident outside Santa Ana Federal Building on January 9, 2026 in which officers shot at least two anti-ICE protesters in the face with less lethal rounds and then fired projectile weapons at media and a legal observer who were using their phones and/or professional-looking cameras to record, photograph, and take notes); Declaration of Tomás Rebecchi ("Rebecchi Decl.") [Dkt. 100-20] ¶¶ 4, 6–16 (describing incident at the Ventura County Pre-Trial Detention Facility on the afternoon of February 2, 2026, where DHS officers pepper sprayed and threw down two community members who were following and filming them after they arrested a man); Declaration of Tucker Collins ("Collins Decl.") [Dkt. 107-1] ¶¶ 2, 6, 8, 11, 13, 18 (describing being shot with a less lethal projectile round in the eye, causing him to lose the eye, in front of MDC on March 28, 2026); Fourth Supplemental Declaration of Sean Beckner-Carmitchel ("Fifth Beckner-Carmitchel Decl.") [Dkt. 107-2] ¶¶ 2, 10–13 (describing dispersal of journalists with tear gas in front of MDC on March 28, 2026).

already rejected similar arguments when it issued the original preliminary injunction, the Ninth Circuit did not raise any such concerns, and in any case, Defendants' own proposal does not address them—it uses the same "incidental exposure" language to which they object.  The Court thus declines to revisit and expand the scope of this provision.

Finally, Defendants argue that the geographic scope of the injunction is overbroad, and that it should be "limited only to the federal buildings identified by Plaintiffs where the protest activity occurred, namely the Metropolitan Detention Center ("MDC") in downtown Los Angeles and the Santa Ana Federal Building."  Opposition at 20–21.  Again, the Ninth Circuit's opinion did not raise any concerns about the geographic scope of the injunction.  And Defendants dramatically mischaracterize the record when they say that protests are taking place only at MDC and the Santa Ana Federal Building—there are numerous examples of incidents in other locations throughout Southern California.[8]  The Court thus maintains the previous scope of the injunction.

Turning to issues identified by the Ninth Circuit, the parties first dispute how best to address the concern that the original injunction impermissibly protected non-parties.  Plaintiffs propose simply that the language of the injunction be modified to apply only to the named Plaintiffs, including members of the organizational Plaintiffs.  Proposed Order Modifying Preliminary Injunction Order Following Remand ("Proposed Order") [Dkt. 112-1] at 2.  Defendants argue that the injunction should not cover members of organizational Plaintiffs unless (a) they have been identified by name, (b) independently have Article III standing, and (c) were members of the

---

[8] *See, e.g.*, Declaration of N. Reyna ("Reyna Decl.") [Dkt. 6-21] ¶ 3 (Paramount); Declaration of Tanya Lopez ("T. Lopez Decl.") [Dkt. 100-10] ¶¶ 3, 7 (Downey); Declaration of F.C. ("F.C. Decl.") [Dkt. 100-9] ¶¶ 4, 6 (Pasadena); Declaration of Ernest Herrera ("Herrera Decl.") [Dkt. 100-17], Ex. A, at 2 (Hollywood); Declaration of Heber Marquez ("Marquez Decl.") [Dkt. 34-10] ¶¶ 6–7, 10 (Maywood); Declaration of Aleca Le Blanc ("Le Blanc Decl.") [Dkt. 34-3] ¶ 4 (Ladera Heights); Declaration of Tina-Desiree Berg ("Berg Decl.") [Dkt. 34-22] ¶¶ 5–6 (MacArthur Park); Declaration of Mónica Solórzano ("First Solórzano Decl.") [Dkt. 34-16] ¶¶ 7–9, 14 (Carpinteria); Declaration of Jeanette Marantos ("Marantos Decl.") [Dkt. 34-11] ¶¶ 5–6, 8 (Camarillo); Declaration of Cindy Lin ("Lin Decl.") [Dkt. 100-8] ¶¶ 6–7, 10 (Little Tokyo); Declaration of Philip Meyer ("Meyer Decl.") [Dkt. 100-23] ¶¶ 4–6 (Westlake); Declaration of Noah Frost ("Frost Decl.") [Dkt. 100-16] ¶¶ 23–24, 27 (Oxnard); Rebecchi Decl. ¶ 4 (Ventura).

6

organizations at the time the FAC was filed. Opposition at 8–15.[9] They contend that, without these limitations, any injunction would be vague, impermissibly provide relief to Plaintiffs without standing, and risk the possibility of asymmetrical preclusion. *Id.* Plaintiffs object to any such limitations, but propose adding an additional provision requiring anyone seeking to enforce the injunction to prove that they were an individual named Plaintiff or a member of an organizational Plaintiff at the time of the alleged violation.

The Court agrees with Plaintiffs' approach. The Ninth Circuit suggested that the injunction was overbroad because it was "not limited to providing relief only to the individual Plaintiffs, *members of the Organizational Plaintiffs*, or non-parties whose protection Plaintiffs have shown necessary to give relief to Plaintiffs." *L.A. Press Club*, 171 F.4th at 1191 (emphasis added). It did *not* suggest that an injunction that provided relief to all members of the Organizational Plaintiffs would still be overbroad—to the contrary, the quoted language seems to suggest that such an order would be appropriately tailored. Further, the Ninth Circuit affirmed this Court's finding that the organizational Plaintiffs had associational standing to sue on behalf of their members, and did not disturb this Court's finding that they had organizational standing in their own right. *L.A. Press Club*, 171 F.4th at 1188;[10] PI Order at 26–27 & n.16. And Plaintiffs correctly point to a number of cases in which the Ninth Circuit and the Supreme Court have affirmed injunctions granted to organizations without limitations like the ones Defendants propose.[11] The Court agrees, however, that anyone

---

[9] Defendants also oppose an injunction that covers all members of the class. Opposition at 9 n.3. Plaintiffs do not currently seek such an injunction. *See* Proposed Order.

[10] Defendants have waived any argument that Plaintiffs' "claim for relief 'requires the participation of individual members.'" *L.A. Press Club*, 171 F.4th at 1188.

[11] *See, e.g.*, *California First Amend. Coal. v. Woodford*, 299 F.3d 868, 871, 886 (9th Cir. 2002) (affirming injunction granted to organizations of print and broadcast journalists prohibiting defendants from preventing access to view executions); *see also Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 789–90, 805 (2011) (affirming injunction against law imposing restrictions on violent video games granted to video game companies' association); *Mi Familia Vota v. Fontes*, 129 F.4th 691, 706, 708–09 (9th Cir. 2025), *cert. granted* 2026 WL 1855101 (U.S. June 29, 2026) (No. 25-1017) (affirming injunction against voting laws granted to organization whose members included naturalized citizens); *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 962–63 978 (9th Cir. 2017) (affirming injunction granted to immigrant youth-led community organization that enjoined

attempting to enforce the injunction in this Court (for example, with a motion for contempt sanctions) must be prepared to prove that they were a member of an organizational plaintiff (or a named individual plaintiff) *at the time of the alleged violation.*

Defendants also argue that Plaintiffs' proposal is unworkable because it fails to provide practical guidance or instructions for officers to identify who is protected. Opposition at 21. At the hearing on this matter, the Court invited Plaintiffs to consider providing such guidance. They declined to do so, arguing that "[b]ecause the [proposed revised] injunction is targeted at behavior the Court and the Ninth Circuit have concluded is both illegal and inconsistent with Defendant's own policies, facilitating Defendants' ability to continue such conduct against nonparties is hardly a legitimate interest or equitable concern." ("Reply") [Dkt. 116] at 19. They also contend that an identification regime, under which members might have to wear a t-shirt or lanyard to be protected, would be unworkable (because events happen spontaneously) and inconsistent with First Amendment principles (under which organizations do not have to disclose their members and communication cannot be conditioned on identification). *Id.* at 19–20. The Court is persuaded by these arguments at this preliminary stage.

As to the Ninth Circuit's concern regarding the exemption from dispersal orders, Plaintiffs propose adding language limiting the prohibition against dispersal to cases when such dispersal would be retaliatory under the First Amendment in ways previously recognized by this Court. Proposed Order at 3. More specifically, Plaintiffs' revised proposed language would prohibit their dispersal "from public streets, sidewalks, parks, or plazas" to "prevent them from observing, recording, or reporting" "when they are not physically impeding or disrupting access to federal property or operations or within a crowd posing an immediate threat to public safety, peace, or order." *Id.* at 9. Defendants cavil that this language still provides overbroad relief, and that dispersal should be permitted in response to a number of other circumstances: a threat of riot,

specified policies and practices related to driver's license issuance); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018–19, 1029 (9th Cir. 2013) (affirming preliminary injunction granted to immigrant rights organizations against law that attempted to criminalize the harboring and transporting of unauthorized aliens).

8

disorder, interference with traffic upon the public streets, criminal trespass on government property, vandalism, imminent lawlessness or unlawful acts, or any other immediate threat to officers, public safety, peace or order.  Opposition at 17–18 (citing *Puente v. City of Phoenix*, 123 F.4th 1035, 1062 (9th Cir. 2024); *Dickinson v. Trump*, 174 F.4th 634, 2026 WL 1133353, at *10 (9th Cir. 2026)).  The Court adds "vandalizing property" to Plaintiffs' proposed language.  With that addition, the Court finds that all of the circumstances Defendants identify are fairly encompassed within the revised language, which includes a broad catch-all clause regarding threats to "public safety, peace or order."

Plaintiffs similarly propose revising the prohibition against threats, assaults, and use of crowd control weapons to tether it more closely to the specific harms they alleged and this Court recognized, and to apply only to circumstances where such use would be retaliatory and unlawful. Proposed Order at 4–6, 9–10.  More specifically, they propose a prohibition against: "Threatening or assaulting any Plaintiff . . . by brandishing or firing kinetic impact projectile (KIP) launchers or spraying chemical irritant spray at them when they are not posing a threat of immediate harm to a law enforcement officer or another person, physically impeding federal operations, or actively resisting arrest."  *Id.* at 9–10.  Defendants object that "threatening" and "brandishing" are vague, ambiguous, and subjective terms.  Opposition at 19.  The Court agrees that the term "brandishing" could be vague, but disagrees that the term "threatening" is somehow ambiguous or difficult to interpret.  Indeed, this term was included in the original preliminary injunction and the Ninth Circuit expressed no concern about it.  Defendants also raise an objection similar to the one raised against the dispersal provision: that Plaintiffs' proposal fails to account for the variety of lawful uses of less-lethal munitions.  Opposition at 19.  For similar reasons, the Court adds a "vandalizing property" circumstance and otherwise finds Plaintiffs' proposed language appropriate.

Finally, the Ninth Circuit raised concerns regarding the warning requirement.  Defendants argue that the Court should eliminate it entirely.  Opposition at 19.  But the Court finds that a warning requirement of some kind *is* directly related to the First Amendment injury Plaintiffs have shown.  This Court already found—and the Ninth Circuit affirmed—that Defendants had on several occasions deployed crowd control weapons *without warning* on crowds attempting to comply with

9

dispersal orders, and that this pattern supported a finding of retaliatory intent. *See* PI Order at 7–11, 14, 16–17, 31; *L.A. Press Club*, 171 F.4th at 1186, 1189.[12]

The Ninth Circuit also recognized that "a chilling of the exercise of First Amendment rights" is a constitutional injury that Plaintiffs here have suffered. *L.A. Press Club*, 171 F.4th at 1187–88 (citation omitted). The lack of warnings before crowd control measures are deployed magnifies this injury. If Defendants are required to give warnings where feasible, a Plaintiff who desires to protest, observe, record, or report on Defendants' conduct can do so knowing that, so long as she complies with all orders and warnings, she can likely avoid any physical injury. Without such a requirement, a Plaintiff has no such reassurance, and will be even more hesitant to attend these events or more likely to modify her behavior in response. *Cf. id.* at 1188.[13] The Court will thus keep a simple warning requirement.

The Court narrows the warning requirement in the following ways. It deletes the reference to the frequency of warnings. It further cabins the requirement by limiting the underlying prohibition (against warning-less deployment of crowd control weapons) to situations where such use would be retaliatory. To address the Ninth Circuit's concern that the original preliminary injunction's warning provision "applie[d] broadly for the purported protection of the general public," *L.A. Press Club*, 171 F.4th at 1191, and in line with Plaintiffs' proposal and the discussion above, the Court narrows the prohibition so that it applies only for the protection of Plaintiffs. Finally, Plaintiffs propose that the

---

[12] *See also, e.g.*, Declaration of Abigail Olmeda ("Olmeda Decl.") [Dkt. 6-4] ¶¶ 9, 12, 20; Declaration of Benjamin Climer ("Climer Decl.") [Dkt. 6-7] ¶ 6; Declaration of Charles Xu ("First Xu Decl.") [Dkt. 6-8] ¶ 9; Declaration of Maria-Alejandra Paz ("Paz Decl.") [Dkt. 6-18] ¶¶ 14–15; Declaration of Ryanne Mena ("First Mena Decl.") [Dkt. 6-22] ¶ 35; Marantos Decl. ¶¶ 16, 28; Declaration of R.R. ("R.R. Decl.") [Dkt. 34-18] ¶¶ 5–6; Second Supplemental Declaration of Sean Beckner-Carmitchel ("Third Beckner-Carmitchel Decl.") [Dkt. 64-1] ¶ 16; Declaration of Jill Connelly ("First Connelly Decl.") [Dkt. 64-2] ¶ 19; Declaration of Mel Buer ("Buer Decl.") [Dkt. 100-13] ¶¶ 16, 18, 37; Declaration of Kayjel Mairena ("Mairena Decl.") [Dkt. 100-15] ¶¶ 9, 13–14; Fifth Beckner-Carmitchel Decl. ¶ 16.

[13] Indeed, many of the same Plaintiffs that describe attacks without warning also recount being chilled by Defendants' use of force. *See, e.g.*, Olmeda Decl. ¶ 24; Declaration of Sean Beckner-Carmitchel ("First Beckner-Carmitchel Decl.") [Dkt. 6-6] ¶ 19; Climer Decl. ¶ 19; Paz Decl. ¶ 28; First Mena Decl. ¶ 38; Marantos Decl. ¶ 34; R.R. Decl. ¶ 11; Mairena Decl. ¶ 24.

10

Court address the Ninth Circuit's worry about a "necessarily subjective requirement for audibility of warnings [that] invite[d] strategic or near-frivolous contempt proceedings," *id.* at 1192, by replacing the audibility requirement with a requirement that the warnings be "amplified."  Proposed Order at 8.  But Defendants persuasively argue that such a requirement would be unworkable, as agents in the field might not have amplification devices readily at hand.  Larios Decl. ¶ 17; Third Szemes Decl. ¶ 15.  The Court thus eliminates any formal requirement regarding the volume of the warning, while putting Defendants on notice that a warning is required.

The Ninth Circuit's mandate issued on May 26.  [Dkt. 117].  For the reasons discussed above, the Court issues the following modified preliminary injunction.

## II.   PRELIMINARY INJUNCTION[14]

For purposes of this preliminary injunction, the term "Plaintiff" or "Plaintiffs" shall include any of the individual plaintiffs Sean Beckner-Carmitchel, Ryanne Mena, Lexis-Olivier Ray, Charles Xu, Benjamin Adam Climer, Abigail Olmeda, and Maria-Alejandra Paz, and any member of the organizational plaintiffs Los Angeles Press Club ("L.A. Press Club") and NewsGuild – Communications Workers of America ("NewsGuild").

It is hereby ORDERED that Defendants, their officers, agents, assigns, and all persons acting in concert with them, are ENJOINED, pending final resolution of this matter, from:

1. Dispersing Plaintiffs from public streets, sidewalks, parks, or plazas so as to prevent them from observing, recording,[15] or reporting on DHS immigration enforcement and removal

---

[14] Federal Rule of Civil Procedure 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (quotation modified).  As before, the Court waives the bond requirement here, as it is unlikely that Defendants will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).

[15] For the purposes of this injunction, "recording" means videorecording and still photography.

operations (or protests of those operations) when they are not physically impeding or disrupting access to federal property or operations, vandalizing property, or within a crowd posing an immediate threat to public safety, peace, or order;

2. Threatening or assaulting Plaintiffs with crowd control weapons (including kinetic impact projectiles ("KIP"s), chemical irritants, and flash-bang grenades) when Plaintiffs are not posing a threat of immediate harm to a law enforcement officer or another person, physically impeding federal operations, vandalizing property, or actively resisting arrest;

3. Retaliating against Plaintiffs by using any crowd control weapons (including KIPs, chemical irritants, and flash-bang grenades) without giving a warning to comply with instructions, unless the threat is so serious and imminent that a warning is infeasible.  Such warning, if feasible, shall give Plaintiffs reasonable opportunity to voluntarily comply before crowd control weapons are applied against them;

4. Firing tear gas canisters or flash-bang grenades so as to strike any Plaintiff, or firing KIPs or other crowd control weapons at the head, neck, groin, back, or other sensitive areas, unless that person poses an immediate threat of death or serious bodily injury;

5. Defendants shall not be liable for violating this injunction if a Plaintiff is incidentally exposed to crowd control devices after such a device was deployed in a manner that complies with this injunction.

This Order shall be operative only in those counties in the coverage area of the individual journalist Plaintiffs and the organizational Plaintiffs L.A. Press Club and NewsGuild—namely, those counties in the Central District of California, including the Counties of Los Angeles, Orange, Riverside, San Bernardino, San Luis Obispo, Santa Barbara, and Ventura.

Within the next 72 hours, DHS is also ORDERED to provide a copy and a summary of this Order to all DHS officers with in-the-field immigration enforcement (and security) responsibilities in the Counties referred to above. DHS shall file under seal a copy of the materials disseminated to its officers. The parties shall meet and confer and provide a joint status report within 30 days setting forth proposals for ensuring that DHS officers present in the Central District of California while this action is pending remain aware of the limitations imposed by this Order.

Dated: July 10, 2026

_____
Hernán D. Vera
United States District Judge

13