BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
ANDREW I. WARDEN
KATHLEEN C. JACOBS
Civil Division, Federal Programs Branch
      1100 L St. NW
      Washington, D.C. 20005
      Telephone: (202) 598-7615
      E-mail: kathleen.c.jacobs@usdoj.gov

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Acting Chief, Complex and Defensive Litigation Section
PAUL (BART) GREEN
Assistant United States Attorney

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES PRESS CLUB; *et al.*,<br><br>        Plaintiffs,<br><br>        v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security; *et al.*,<br><br>        Defendants. | No. 2:25-cv-05563-HDV-E<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR CLARIFICATION OR MODIFICATION OF REVISED PRELIMINARY INJUNCTION**<br><br>[Proposed order filed concurrently]<br><br>Hearing Date:   October 22, 2026<br>Hearing Time:   10:00 a.m.<br>Ctrm:           5B<br>Hon.            Hernán D. Vera |

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On July 10, 2026, the Court issued a new preliminary injunction in this case.  ECF No. 133. Paragraph 2 of the injunction, permits the use of chemical irritants in circumstances where someone is "posing a threat of immediate harm to a law enforcement officer or another person, physically impeding federal operations, vandalizing property, or actively resisting arrest." *Id.* at 12, ¶ 2. Thereafter, paragraph 4, of the preliminary injunction prohibits Defendants from "firing . . . crowd control weapons at the head, neck, groin, back, or other sensitive areas, unless that person poses an immediate threat of death or serious bodily injury."  ECF No. 144 at 12, ¶ 4.  The order defines the term "crowd control weapons" to include "kinetic impact projectiles ("KIP"s), *chemical irritants*, and flash-bang grenades." *Id.* ¶ 2 (emphasis added).  Despite the clear language of paragraph 2 permitting use of chemical irritants for a variety of unlawful conduct, the language of paragraph 4 could be construed to prohibit law enforcement officers from using Oleoresin Capsicum spray (OC spray), commonly known as pepper spray—a non-lethal chemical irritant specifically intended to be deployed toward the face and head area—unless an officer is confronted with "an immediate threat of death or serious bodily injury." *Id.* ¶ 4.

Out of an abundance of caution, Defendants respectfully request that the Court clarify the circumstances under which the injunction allows OC spray to be used.  An interpretation of the order that would prevent the use of OC spray except in exceptional circumstances where officers face "an immediate threat of death or serious bodily injury" would sweep far too broadly.  If the order is construed that way, it would prevent officers from utilizing a key deescalation tool for lawful purposes when confronted with individuals who are actively resisting arrest, engaged in violent unlawful conduct, or harming government property.  Officers may lawfully use OC spray in such circumstances. And such use would not violate Plaintiffs' First Amendment rights, impair their ability to peacefully protest, or prevent them from observing or reporting on immigration enforcement operations in the Central District of California.

Defendants therefore respectfully request that the Court clarify, or if necessary, modify the preliminary injunction to confirm that it does not prohibit the lawful use of OC spray in circumstances

1

where an individual poses a threat of immediate harm to a law enforcement officer or another person, physically impedes federal operations, vandalizes property, or is actively resisting arrest.

## II.      LEGAL STANDARD

A preliminary injunction order must "state its terms specifically," and "describe in detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). To ensure compliance with Rule 65, the Supreme Court has explained that districts courts have the "sound discretion" to "clarif[y]" the scope of their injunctions. *See Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945) ("[W]e think courts would not be apt to withhold a clarification in the light of a concrete situation that left parties . . . in the dark as to their duty toward the court."). "By clarifying the scope of a previously issued preliminary injunction, a court adds certainty to an implicated party's effort to comply with the order and provides fair warning as to what future conduct may be found contemptuous." *Robinson v. Delicious Vinyl Recs. Inc.*, No. CV134111CASPLAX, 2013 WL 12119735, at *1 (C.D. Cal. Sept. 24, 2013) (cleaned up). Under Federal Rule of Civil Procedure 54(b), "any order  . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P 54(b).

## III.      ARGUMENT

The preliminary injunction should be clarified to confirm that it does not prohibit law enforcement officers from deploying OC spray that hits the body of face, head, or body of an individual who poses a threat of immediate harm to a law enforcement officer or another person, physically impedes federal operations, vandalizes property, or is actively resisting arrest.

OC spray is an oil-based material derived from chili peppers, commonly known as pepper spray. *See* Fourth Declaration of Roger Scharmen ¶ 2; Fourth Declaration of Brian Szemes ¶ 5; Second Declaration of Javier Larios ¶ 9. Federal law enforcement officers with the Federal Protective Service, Customs and Border Protection, and Immigration and Customs Enforcement (collectively, "officers") deploy OC spray in two different ways. First, officers use an aerosol format with a handheld MK-9 fogger, which holds approximately 14 ounces of OC and has a minimum distance of 6 feet, and an effective range of 15-20 feet. Scharmen Decl, ¶¶ 3-4; Szemes Decl. ¶ 6; Larios Decl. ¶ 8. The MK-9 is normally directed at the upper torso or chest area of an individual, allowing the aerosol cloud to

2

envelop the person.  Scharmen Decl. ¶ 4; Szemes Decl. ¶ 6; Larios Decl. ¶ 14.   While the MK-9 is not deployed directly at a person's face, the OC will typically come into contact with the eyes, nose and mouth of the individuals being targeted.  *Id.*

Second, officers deploy OC in a liquid format from a smaller canister generally worn on the law enforcement officer's duty belt.  Scharmen Decl. ¶ 3; Szemes Decl. ¶ 6; Larios Decl. ¶ 8.  This cannister has a minimum distance of approximately 3 feet and an effective range of roughly 10–20 feet.  Scharmen Decl. ¶ 5; Szemes Decl. ¶ 6; Larios Decl. ¶ 8.  The smaller handheld device sprays a liquid stream of OC that is normally deployed directly at an individual's face.  *Id.*

Both OC systems are used to temporarily incapacitate a person by causing irritation to their eyes, respiratory system and skin.  Scharmen Decl. ¶ 6; Szemes Decl. ¶ 6; Larios Decl. ¶ 9.  When an individual is exposed to OC, they almost immediately experience a sharp burning sensation that causes the eyes to close and produce significant tearing.  *Id.*  Most people also experience a burning sensation in the nose and throat, resulting in heavy nasal discharge, coughing and sneezing.  *Id.*  Contact with bare skin produces a hot, stinging sensation and skin irritation. *Id.* The effects typically last for 15-20 minutes.  *Id.*  Water and mild soap are used for decontamination.  *Id.*

Federal law enforcement officers utilize OC spray because it can deescalate a situation quickly and from a distance, thereby avoiding the use of techniques such as hands-on contact, batons, tasers or other weapons.  Scharmen Decl. ¶ 7; Szemes Decl. ¶¶ 7-8; Larios Decl. ¶ 15. The use of chemical dispersal agents results in fewer injuries to suspects and officers.  Scharmen Decl. ¶ 7; Szemes Decl. ¶¶ 4, 13; Larios Decl. ¶ 15.  It also enables officers to control large crowds with a small number of officers.  Scharmen Decl. ¶ 7; Szemes Decl. ¶¶ 4, 13. Officers frequently rely upon OC spray to disperse individuals who are actively resisting dispersal orders or presenting a threat to federal property.  Scharmen Decl. ¶ 12; Szemes Decl. ¶ 13; Larios Decl. ¶ 15.  Although such actions are unlawful and often present a risk of harm to officers, the public, or federal property, they normally do not pose an immediate threat of death or serious bodily injury.  *Id.*  Consequently, the inability to use OC spray in these situations would expose officers and the public to an increased risk of harm and require officers to utilize more aggressive and confrontational techniques.  *Id.*

The First Amendment is not offended when law enforcement officers use OC spray against an

3

individual who poses a threat of immediate harm to a law enforcement officer or another person, physically impedes federal operations, vandalizes property, or is actively resisting arrest.  The Ninth Circuit made this point clear in *Puente* and reaffirmed it again recently in *Dickinson*, expressly stating that DHS may utilize non-lethal devices in a variety of circumstances that do not offend the First Amendment.  *See Dickinson v. Trump*, 174 F.4th 634, 647 (9th Cir. 2026)*; Puente v. City of Phoenix,* 123 F.4th 1035, 1062 (9th Cir. 2024).  "[W]e have held that law enforcement can use such non-lethal munitions in the face of 'disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order.'" *Dickinson*, 174 F.4th at 644 (quoting *Puente*, 123 F.3d at 1062).  Indeed, "under the First Amendment, officers may disperse a crowd not only in response to an imminent threat of physical harm but also in response to 'imminent lawlessness,' including a threat of 'riot, disorder, or interference with traffic.'" *Id.* (quoting *Puente*, 123 F.3d at 1062).  In accordance with this precedent, the Court should clarify that the injunction does not prohibit the use of OC spray, even if directed at the head or face of an individual, in these circumstances.

This clarification will not harm Plaintiffs or interfere with their ability to peacefully protest or observe or record immigration enforcement activity.  The clarification sought here would allow for the use of OC spray in limited circumstances against an individual who poses a threat of immediate harm to a law enforcement officer or another person, physically impedes federal operations, vandalizes property, or is actively resisting arrest.  Such conduct is not protected by the First Amendment.  *See, e.g.*, *NAACP. v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982) ("The First Amendment does not protect violence."); *Cox v. Louisiana*, 379 U.S. 536, 554–55 (1965) ("A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations.").  As discussed above, the Ninth Circuit recently emphasized that "there is no First Amendment right to criminally trespass, impede law enforcement efforts, block traffic, or vandalize government buildings" and upheld use of non-lethal force, including crowd-control munitions, to combat essentially the exact unlawful activity this Court included within the scope of Paragraph 2. *See Dickinson*, 174 F.4th at 647 (citing *Puente*, 123 F.4th at 1062).  Thus, given that Defendants only seek to clarify the injunction allows for use of OC Spray as permitted by Paragraph 2 of the Court's Order, Plaintiffs cannot show that they will suffer harm as a

4

result of the requested clarification.

Accordingly, Defendants seek clarification that paragraph 4 of the of the Preliminary Injunction does not apply to OC Spray or other similarly deployed chemical irritant.

Alternatively, should the Court determine that modification of the preliminary injunction is warranted, Defendants seek the following modification to paragraph 4 of the Preliminary Injunction (ECF No. 133):

4.    Firing tear gas cannisters or flash-bang grenades so as to strike any Plaintiff, or firing KIPs or other crowd control weapons at the head, neck, groin, back, or other sensitive areas, unless that person poses an immediate threat of death or serious bodily injury. Nothing in this order prohibits the use of Oleoresin Capsicum spray or other similarly deployed chemical irritant that touches an individual who poses a threat of immediate harm to a law enforcement officer or other person, physically impedes federal operations, vandalizes property or is actively resisting arrest.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court clarify (or alternatively modify the order to reflect) that OC Spray or other similarly deployed chemical irritants are not included within the scope of paragraph 4 the July 10, 2026 Order.

Dated: August 3, 2026                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

SEAN SKEDZIELEWSKI
Counsel to the Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
ANDREW I. WARDEN
KATHLEEN C. JACOBS
Civil Division, Federal Programs Branch

TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
 DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Acting Chief, Complex and Defensive Litigation Section
PAUL (BART) GREEN
Assistant United States Attorney

_____/s/ Kathleen C. Jacobs_____
KATHLEEN C. JACOBS
Trial Attorney

Attorneys for Defendants


<u>L.R. 11-6.2 Certificate of Compliance</u>

The undersigned counsel of record certifies that this brief contains 1891 words, which complies with the word limit of L.R. 11-6.1, and fewer than 25 pages, which complies with the Court's Standing Order.


Dated: August 3, 2026                    _____/s/ Kathleen C. Jacobs_____
                                         Kathleen C. Jacobs

## L.R. 7-3 COMPLIANCE STATEMENT

I, Kathleen C. Jacobs, declare and state as follows:

1.  I am a Trial Attorney and am counsel for the defendants in this action. I submit this declaration in compliance with Local Rule 7-3. I make the following statements based on my personal knowledge. If called as a witness, I could and would competently testify thereto.

2.  On Friday, July 17, 2026, co-counsel AUSA Paul (Bart) Green met and conferred telephonically with Plaintiff's counsel, Steve Art, and discussed Defendants' planned motion to clarify the Court's Revised Preliminary Injunction in this action related to the use of OC Spray as it relates to paragraphs 2 and 4 of the Revised Preliminary Injunction. ECF 133. Plaintiffs provided no position at that time.

3.  On July 20, 2026, I emailed Plaintiffs counsel Defendants' proposed language to clarify Paragraph 4 of the Revised Preliminary Injunction. I did not receive a response to Defendants' proposal.

4.  Additionally, on July 21, 2026, the parties met and conferred related to the Rule 26(f) report via Teams. During that call, Defendants again inquired about Plaintiffs' position on the proposed language and motion to clarify. Plaintiffs provided no position at that time.

5.  On July 24, 2026, the parties met and conferred related to this motion as well as Defendants' *Ex Parte* Application to Shorten Time for Hearing. The parties agreed to try to resolve the issues presented in the conference over the course of the next week. As of the date of this filing, the parties have been unable to resolve the issues in dispute.

6.  Accordingly, the parties have been unable to reach a resolution that eliminates the necessity of Defendants' motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 3, 2026, at Washington, DC.

　　　　　　　　　　　　　　　　　　 /s/ *Kathleen C. Jacobs*
　　　　　　　　　　　　　　　　　　KATHLEEN C. JACOBS
　　　　　　　　　　　　　　　　　　Trial Attorney