**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOS ANGELES PRESS CLUB, et al., | Case No. 2:25-cv-05563 |
| Plaintiffs, | **FOURTH SUPPLEMENTAL DECLARATION OF ROGER SCHARMEN** |
| v. | |
| KRISTI NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY OF HOMELAND SECURITY; U.S. DEPARTMENT OF HOMELAND SECURITY, | |
| Defendants. | |

**FOURTH SUPPLEMENTAL DECLARATION OF ROGER SCHARMEN**

I, Roger Scharmen, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

This declaration is based on my personal knowledge and information made available to me in the course of my official duties and will serve as a supplement to my previously filed Declarations; ECF No. 47-3 (Scharmen Declaration), ECF No. 58-3 (Scharmen Supplemental Declaration), ECF 65-1 (Scharmen Second Supplemental Declaration), and ECF No. 114-3 (Scharmen Third Declaration).  This declaration is in support of the United States Motion for Clarification of the Revised Preliminary Injunction (PI), issued in this case on July 10, 2026.

1.  I continue to serve as the Deputy Regional Director for Region 9 of the Federal Protective Service (FPS). My primary place of duty remains San Francisco, CA, but I continue to work in Los Angeles periodically and most recently have been in Los

1

Angeles July 3-5, 2026.    The FPS remains the lead law enforcement agency protecting federal facilities, property, and people therein in Los Angeles in accordance with its statutory authority provided in 40 U.S.C. § 1315.

2.    Where deadly force is not justified, but de-escalation techniques and empty-hand techniques are unsuccessful or ineffective, FPS law enforcement officers may use intermediate force devices to control individual subjects or crowds who are noncompliant or who pose a threat to officer or public safety.  These intermediate tools include chemical irritants such as Oleoresin Capsicum (OC), an oil-based material derived from chili peppers, commonly known as pepper spray.

3.    FPS law enforcement officers deploy OC in an aerosol format with a handheld MK-9 fogger (which holds approximately 14 ounces), or in a liquid format from a smaller 1.5 cannister generally worn on the law enforcement officer's duty belt.

4.    The MK-9 has a minimum distance of 6 feet, and an effective range of 15-20 feet.  The MK-9 is a crowd control device that is designed to disperse a fog pattern over an area, and it is used when intermediate force directed at a group/crowd is justified.  The MK-9 is normally directed at the upper torso or chest area, allowing the aerosol cloud to envelop the person.  As such, while the MK-9 is not deployed directly at a person's face, the OC will typically come into contact with the eyes, nose and mouth of the individuals being targeted.

5.    The 1.5 ounce handheld OC, has a minimum distance of approximately 3 feet and an effective range of roughly 10–20 feet.  The 1.5 ounce handheld sprays a liquid stream of OC which is normally deployed across an individual's forehead or brow line, allowing it to migrate into their eyes, nose and mouth.

6.    Both systems are used to temporarily incapacitate a person by causing irritation to their eyes, respiratory system and skin. When an individual is exposed to OC, they almost immediately experience a sharp burning sensation that causes the eyes to close and produce significant tearing.  Most people also experience a burning sensation in the nose and throat, resulting in heavy nasal discharge, coughing and sneezing.  Contact with bare skin produces a hot, stinging sensation.   The effects typically last for 15-20 minutes.   Water and mild soap are used for decontamination.

7.    FPS utilizes OC spray so that it can deescalate a situation quickly, thereby avoiding the use of hard techniques such as hands-on, batons, tasers or other weapons. The use of chemical dispersal agents in violent or unlawful crowd control situations results in fewer injuries to suspects and officers.  It also enables FPS to control large violent crowds with a small number of officers.

8.    In paragraph 2 of the Revised PI, the Court defines "crowd control weapons" as kinetic impact projectiles (KIPs), chemical irritants, and flash bangs. Additionally, paragraph 2 of the Revised PI specifies that it prohibits use of crowd control weapons "when Plaintiffs are not posing a threat of immediate harm to a law enforcement officer or another person, physically impeding federal operations, vandalizing property, or actively resisting arrest."

9.    Paragraph 4, however, prohibits *firing* tear gas canisters or flash-bang grenades "so as to strike any Plaintiff," or "firing KIPs or other crowd control weapons at the head, neck, groin, back, or other sensitive areas, unless that person poses an immediate threat of death or serious bodily injury."

3

10.  It is unclear whether OC spray was intended to be included in the paragraph 4 prohibition even though it does not pose the same risk of serious injury if directed at the head as the other items listed in paragraph 4.

11.  While paragraph 2 appears to permit the use of OC spray absent an immediate threat of death or serious bodily injury, paragraph 4 appears to restrict of the use of OC spray, which necessarily involves targeting the face, to only those situations where there is an immediate threat of death or serious bodily injury.

12.  FPS officers frequently rely upon OC spray to disperse violent individuals who are actively resisting dispersal orders and presenting a threat to federal property. While their actions are considered unlawful, they normally do not pose an immediate threat of death or serious bodily injury.  As such, the inability to use OC spray in these situations would expose officers and the public to an increased risk of harm and require officers to utilize more aggressive hands-on techniques.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on July 23, 2026, at San Francisco, California.

Roger Scharmen

4