UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES PRESS CLUB, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF HOMELAND SECURITY; U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | Case No. 2:25-cv-05563<br><br><br>**DECLARATION OF BRIAN SZEMES** |

## **DECLARATION OF BRIAN SZEMES**

I, Brian Szemes, hereby declare:

1. I am employed by the Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) as the Assistant Field Office Director (AFOD) of the Los Angeles Field Office (ERO Los Angeles). I have held this position since January 2016.

2. The purpose of this declaration is to support the Defendants' Motion for Clarification of the Revised Preliminary Injunction (Revised PI)(ECF No. 133). The Los Angeles AOR is the same area as the Central District of California. This declaration supplements the information in my August 15, 2025 (ECF No. 47-2), September 19, 2025 (ECF No. 58-2), and May 15, 2026 (ECF No. 114-4) declarations filed in this case.

3. This declaration is based on my personal knowledge and information made available

1

to me in the course of my official duties.

4.      ICE ERO officers are authorized to use intermediate force devices, such as chemical irritants like Oleoresin Capsicum (OC) or pepper spray, when deadly force is not justified and de-escalation or empty-hand techniques have proven unsuccessful or ineffective. These tools are intended to control individuals or crowds who are noncompliant or pose a threat to officer or public safety. The use of such intermediate force options provides officers with an additional means to manage potentially dangerous situations while minimizing the risk of serious injury.

5.      OC spray, commonly known as pepper spray, is a chemical agent derived from hot peppers and is widely used by law enforcement for temporary incapacitation. The active ingredient, capsaicin, triggers pain and burning sensations in the eyes, skin, and respiratory system by activating heat and pain receptors, though it does not cause lasting tissue damage at standard exposure levels.

6.      ICE ERO officers deploy OC spray in two main formats: the larger MK-9 fogger is normally directed at the upper torso or chest area, allowing an aerosol cloud to envelop individuals or crowds from a distance of 15–20 feet, and a smaller 1.5-ounce handheld canister, which delivers a liquid stream for individual targets at a range of 10–20 feet which is normally directed at their eyes, nose, and mouth. Symptoms normally appear within 20 seconds and include involuntary eye closure, severe eye and skin irritation, respiratory discomfort, and, in some cases, nausea. Most effects subside within 15 minutes after exposure to fresh air although soap and water can expedite the decontamination process.

2

7.      OC spray remains a critical tool for law enforcement crowd control and individual compliance, balancing operational effectiveness with safety considerations.

8.      These chemical irritants assist officers in avoiding hard techniques, such as batons, Tasers, or specialty impact weapons, which have a greater possibility of injury.

9.      Paragraph 2 of the Revised PI defines the term "crowd control weapons" as kinetic impact projectiles (KIPs), chemical irritants, and flash bang grenades. That paragraph specifies that it prohibits use of crowd control weapons "when Plaintiffs are not posing a threat of immediate harm to a law enforcement officer or another person, physically impeding federal operations, vandalizing property, or actively resisting arrest." ECF No. 133, p. 12.

10.      Paragraph 4 of the Revised PI, however, prohibits "[f]iring tear gas canisters or flash-bang grenades so as to strike any Plaintiff or firing KIPs or other crowd control weapons at the head, neck, groin, back, or other sensitive areas, unless that person poses an immediate threat of death or serious bodily injury." ECF No. 133, p. 12.

11.      As written, it is unclear whether chemical irritants were intended to be included as "crowd control weapons" in the paragraph 4 prohibition even though paragraph 2 appears to provide permissive use of chemical irritants where persons are "posing a threat of immediate harm to a law enforcement officer or another person, physically impeding federal operations, vandalizing property, or actively resisting arrest." ECF No. 133, p.12.

12.      Consistent with the DHS Use of Force Policy, ICE officers only use force that is necessary and reasonable based on the totality of the circumstances. ERO officers are

3

trained to engage those individuals who pose the greatest threat based on this standard. The ERO officers' responsibility is to ensure the scene is safe for law enforcement personnel and the community. This responsibility is jeopardized by an injunction which effectively bans chemical irritants, such as OC Spray, that disperse widely and make contact to a person's head, neck, groin, back, or other sensitive areas.

13.    Chemical irritants have been used where individuals pose a threat of harm to law enforcement officers or other individuals, for impeding federal operations, vandalizing property, or actively resisting arrest. Some chemical irritants, such as OC spray, can disperse widely depending on wind, and persons who fail to disperse pursuant to lawful orders, but are not posing an immediate threat to law enforcement officers may be impacted due to their proximity to persons who are engaged in violent and/or criminal behavior. These crowd control devices are designed and used not to cause physical injury but to protect law enforcement officers and the public from violent attacks. Restricting officers' ability to use these chemical irritants as stated in paragraph 4, would expose officers and the public to an increased risk of harm. Furthermore, the inability to use chemical irritants will require officers to engage in hands-on techniques which pose additional risk to the officers and the public.

4

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed this 22nd day of July 2026, at Columbus, Georgia.

Brian Szemes
Assistant Field Office Director
DHS ICE ERO Los Angeles

5