Matthew Borden, Esq. (SBN: 214323)
borden@braunhagey.com
J. Noah Hagey, Esq. (SBN: 262331)
hagey@braunhagey.com
Kory J. DeClark, Esq. (SBN: 310571)
declark@braunhagey.com
Greg Washington, Esq. (SBN: 318796)
gwashington@braunhagey.com
BRAUNHAGEY & BORDEN LLP
747 Front Street, 4th Floor
San Francisco, CA 94111
Telephone: (415) 599-0210

Lily (Haeun) Kim, Esq.
(*pro hac vice* forthcoming)
kim@braunhagey.com
BRAUNHAGEY & BORDEN LLP
200 Madison Avenue, 23rd Floor
New York, NY 10016
Telephone: (646) 829-9403

Peter Bibring, Esq. (SBN: 223981)
peter@bibringlaw.com

Law Office of Peter Bibring
2210 W Sunset Blvd # 203
Los Angeles, CA 90026
Telephone: (213) 471-2022

[Additional counsel on next page]

*Attorneys for Plaintiffs*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division
ERIC J. HAMILTON
Deputy Assistant Attorney General
ALEXANDER K. HAAS
ANDREW I. WARDEN
KATHLEEN C. JACOBS
Civil Division, Federal Programs Branch
TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Acting Chief, Complex and Defensive Litigation
   Section
PAUL (BART) GREEN
Assistant United States Attorney

Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-0805

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES PRESS CLUB, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of Homeland Security, *et al.*,<br><br>Defendants. | Case No. 2:25-CV-05563-HDV-E<br><br>**JOINT STIPULATION CONCERNING PROTECTIVE ORDER**<br><br>Hon. Charles F. Eick<br>United States Magistrate Judge |

JOINT STIPULATION RE: PROTECTIVE ORDER

Additional Counsel of Record for Plaintiffs:

Carol A. Sobel, Esq. (SBN: 84483)
  carolsobellaw@gmail.com
Weston Rowland, Esq. (SBN: 327599)
  rowland.weston@gmail.com
Law Office of Carol A. Sobel
2632 Wilshire Boulevard, #552
Santa Monica, CA 90403
Telephone: (310) 393-3055

Paul Hoffman, Esq. (SBN: 71244)
  hoffpaul@aol.com
Michael Seplow, Esq. (SBN: 150183)
  mseplow@sshhzlaw.com
John Washington, Esq. (SBN 315991)
  jwashington@sshhzlaw.com
Schonbrun, Seplow, Harris, Hoffman & Zeldes
LLP
200 Pier Avenue #226
Hermosa Beach, CA 90254
Telephone: (310) 396-0731

Peter J. Eliasberg, Esq. (SBN: 189110)
  peliasberg@aclusocal.org
Jonathan Markovitz, Esq. (SBN: 301767)
  jmarkovitz@aclusocal.org
Adrienna Wong, Esq. (SBN: 282026)
  awong@aclusocal.org
Summer Lacey, Esq. (SBN: 308614)
  slacey@aclusocal.org
Mohammad Tajsar, Esq. (SBN: 280152)
  mtajsar@aclusocal.org
Allison Rubinfeld, Esq. (SBN: 358321)
  arubinfeld@aclusocal.org
ACLU FOUNDATION OF SOUTHERN
CALIFORNIA
P.O. Box 811370
Los Angeles, CA 90081
Telephone: (213) 977-9500

Steve Art, Esq. *
  steve@loevy.com
David B. Owens, Esq. (SBN: 275030)
  david@loevy.com
Tess Kleinhaus, Esq. *
  tess@loevy.com
Alyssa Martinez, Esq. (SBN: 342466)
  alyssa@loevy.com
Dominique Gilbert, Esq. *
  gilbert@loevy.com
Aaron Tucek, Esq. *
  aaron@loevy.com
Loevy & Loevy
333 S Grand Ave, Suite 3310
Los Angeles, CA 90071
Telephone: (312) 243-5900

* *pro hac vice*

Case No. 2:25-cv-05563-HDV-E

JOINT STIPULATION RE: PROTECTIVE ORDER

## JOINT STIPULATION RE: PROTECTIVE ORDER

The parties jointly submit this report about outstanding disputes concerning the entry of a protective order. The parties agree that a protective order is appropriate in this action and they ask that the Court enter one. The parties have exchanged multiple drafts of a proposed protective order and they have met and conferred regarding outstanding disputes on multiple occasions, most recently on July 9, 2026. Notwithstanding the parties' efforts to reach agreement on a stipulated protective order, there remain six disputes that the parties ask the Court to resolve. Those disputes are briefly described below in the order in which the relevant provisions appear in the proposed protective order attached hereto as Exhibit A. The parties' proposed protective order reflects the areas where the parties have reached agreement. Where the parties continue to disagree, the proposed protective order contains highlighted inserts reflecting the language proposed by each party: green for Plaintiffs, yellow for Defendants.

* * *

**DISPUTE 1:** Whether the Protective Order should include language dictating that information designated as confidential must qualify for protection under Federal Rule of Civil Procedure 26(c) or another applicable law. (Paragraph 2.3.)

### PLAINTIFFS' POSITION

Plaintiffs' position is that language dictating that information cannot be designated as "CONFIDENTIAL" unless it qualifies for production under Rule 26(c) or another applicable law is standard in all confidentiality orders and should be part of the protective order in this case. Defendants object to language referencing Rule 26, governing law, and appropriate standards as imposing "additional substantive requirements beyond the information falling within one of the designated categories." But that is precisely the purpose of the proposed language, which is drawn from the standard protective order template available on the Chief Magistrate's website. A protective order cannot expand the scope of Rule 26(c) or authorize blanket confidentiality for categories of documents untethered to the governing legal standard. Rather, the proposed language simply recognizes what Rule 26 already requires: only information that qualifies for protection under Rule 26(c) or other applicable law may properly be designated confidential. *See, e.g., Daniel*

*Lorenzetti v. Sysco Guest Supply, LLC,* No. 2:25-CV-02114-MEMF-KS, 2026 WL 712875, at *5 (C.D. Cal. Feb. 26, 2026) (approving "proposed protective order, which largely mirrors the standard protective order forms available on this Court's website" because it "limit[ed] confidentiality designations to information or tangible items that qualify for protection under the standards developed under Rule 26(c)").

Defendants' proposed approach would instead permit entire categories of documents to be designated confidential without regard to whether the information actually satisfies Rule 26(c)'s good-cause requirement. That approach is contrary to governing law. A district court may not enter a blanket order shielding information from public disclosure without requiring the designating party to demonstrate that the material is entitled to protection under Rule 26(c). Rather, Rule 26(c) requires a "particularized showing" of good cause for confidential treatment. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003). The proposed language simply preserves that requirement; it does not create a new one.

Nor does Plaintiffs' proposal prejudice Defendants in practice. Once a party designates material as "CONFIDENTIAL," all parties remain obligated to treat it as protected material under the agreed-upon provisions of the draft protective order unless and until the designation is challenged and the Court determines that the material is not entitled to confidential treatment. Thus, including the Rule 26(c) language does not diminish the immediate protections afforded by the Protective Order. It merely confirms that those protections are ultimately governed by the standards established by federal law rather than by unilateral designation. Defendants should thus not have concerns about the inclusion of language that simply recognizes the Court's role to ensure that the standards of Rule 26(c) are met as to "particular" materials, *id*., given that the Protective Order would still protect from public disclosure all information that a designating party determines falls into the specified categories.

Finally, the Central District's model protective orders consistently incorporate this principle by expressly providing that confidential information must qualify for protection under Rule 26(c). *See, e.g.,* Ex. B (Hon. Chief Judge Stevenson Model Protective Order) at 3 (sections 2.3-2.4); Ex. C (Hon. Judge Richlin Model Protective Order) at 3 (section 2.3); Ex. D (Hon. Judge Kaufman

Model Protective Order) at 3 (section 2.3); Ex. E (Hon. Judge Pym Model Protective Order) at 3 (section 2.3). Defendants identify no authority supporting departure from the Court's model language or from the substantive requirements imposed by Rule 26(c).

**DEFENDANTS' POSITION**

Defendants agree that the definition of confidential information in Section 2.3 should protect, "Information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c) or other governing law, . . . ."  The dispute between the parties centers on whether the definition should use "and" or "or" between Rule 26 and "other governing law."  Defendants propose using "or" to ensure that the definition of confidential information includes information that would be protected by either Rule 26(c) or another applicable law.  Plaintiffs' use of the term "and" as a conjunctive creates ambiguity that confidential information must satisfy both the standards set forth in Rule 26(c) — "annoyance, embarrassment, oppression, or undue burden or expense"—as well as an additional "governing law."   Rule 26 is, of course, a "governing law" that applies in this context, so the protective order should clarify that a confidential information designation is appropriate if it satisfies Rule 26 or another governing law, such as a judicial order, common law, or federal statute or regulation.

**DISPUTE 2:** Whether the Protective Order should identify specific categories of documents as presumptively eligible for a confidentiality designation. (Paragraph 2.3.)

**PLAINTIFFS' POSITION**

Defendants propose identifying broad categories of documents as presumptively eligible for confidential treatment. Plaintiffs explained to Defendants that they would not object to the inclusion of such categories, so long as there is language in the protective order dictating that materials in those categories cannot be designated as "CONFIDENTIAL" unless they satisfy Rule 26(c) or another applicable law, as discussed in relation to Dispute 1, above. However, without such language, Plaintiffs object to listing categories of documents as presumptively confidential because confidentiality under Rule 26(c) does not depend on the category into which a document

JOINT STIPULATION RE: PROTECTIVE ORDER

falls, but on whether the particular information at issue satisfies the applicable legal standard. Enumerating categories of documents invites over-designation by suggesting that any document falling within a listed category may automatically be designated "CONFIDENTIAL," regardless of whether disclosure would actually cause a cognizable harm.The Good Cause Statement already identifies the types of information that may warrant confidential treatment and provides the appropriate framework for designating materials. There is no need to create additional categorical presumptions that exceed or dilute Rule 26(c)'s individualized good-cause requirement. Indeed, the Central District of California's Model Protective Orders do not identify categories of documents entitled to confidential treatment. Instead, they define confidential material as information that qualifies for protection under Federal Rule of Civil Procedure 26(c), and as specified in the Good Cause Statement. *See* Ex. B (Hon. Chief Judge Stevenson Model Protective Order) at 3 (section 2.3) ("'CONFIDENTIAL' Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c), and as specified above in the Good Cause Statement."). Plaintiffs' proposal mirrors this model language.

Additionally, attempting to define categories based on whether information is or is not publicly available adds nothing of substance to the Protective Order. Whether information has entered the public domain is a fact-specific inquiry that turns on the particular information at issue, not on a document label or document type. Categorical definitions therefore risk sweeping non-confidential information within the Protective Order and unnecessarily restricting the public's right of access to discovery materials. For example, having the names, job titles, and identifying numbers of government personnel be presumptively confidential is unnecessary and overly expansive. The default presumption is that, as public servants, law enforcement officers may be identified by name. *See, e.g.*, Order, *Rodriguez v. Swartz*, 4:14-cv-02251-RCC, ECF No. 40, at 1-2 (D. Ariz. Nov. 13, 2014) (Border Patrol agent was "paid with public funds to . . . enforce the nation's immigration laws and [therefore] . . . ha[d] a reduced expectation of privacy—especially in courtroom proceedings which are traditionally open to the public"). There should not be a blanket rule—or near blanket rule—that all agents' information be confidential.

Plaintiffs' proposed language avoids these problems by adhering to the model order language and Rule 26(c), permitting confidentiality designations where warranted while preventing blanket or automatic designations untethered to the governing legal standard.

**DEFENDANTS' POSITION**

Plaintiffs significantly overstate Defendants' position related to the proposed categories to be enumerated in paragraph 2.3. Defendants agree the information or tangible things (collectively referred to as "information") designated as confidential should qualify for protection under Rule 26(c) or other governing law. In the original draft proposed to Plaintiffs, Defendants provided that information to be designated may qualify for protection under Rule 26(c), other governing law, *and* fall within one or more of the listed categories. Defendants do not seek to expand designations beyond what is provided for by law. Furthermore, contrary to Plaintiffs' claim, the Good Cause Statement does not identify the types of information that may warrant confidential treatment.

After conferring with Plaintiffs' counsel, Defendants understood that Plaintiffs objected to the list of categories to the extent it would serve as some type of carte blanche prohibition on Plaintiffs' ability to challenge such designations—this is not the case. The categories serve to illuminate the types of sensitive discovery documents expected to be produced in discovery in this case and support the necessary good cause finding under Rule 26(c) for entry of this order. *See* Section B ("confidential materials and information consist of items identified in Section 2.3 below"). The categories are also useful for the process of production to streamline the parties' ability to designate and thereafter produce, rather than unnecessary multi-layer review and conference every time a document is designated. In the event any party disputes the validity of the designation of a document, Defendants agree that it may be challenged pursuant to paragraph 6 of the protective order.

Defendants' approach is consistent with protective orders entered in this District that routinely list the categories of information that may be presumptively designated as confidential information, subject to challenge. *See, e.g.*, *Pedro Vasquez-Perdomo, et al. v. Mullin.*, 2:25-cv-05605 (C.D. Cal.) (ECF No. 247 at 3-5); *TML Recovery LLC v. Cigna Corp.*, No. 8:20-CV-0269-

DOC-JDE, 2023 WL 12011238, at *3 (C.D. Cal. Aug. 7, 2023); *Kasbarian v. Equinox Holdings, Inc.*, No. 216CV01795MWFJCX, 2016 WL 4974945, at *1 (C.D. Cal. Sept. 16, 2016).[1]

If Plaintiffs stand by the following statement above:

"Plaintiffs explained to Defendants that they would not object to the inclusion of such categories, so long as there is language in the protective order dictating that materials in those categories cannot be designated as "CONFIDENTIAL" unless they satisfy Rule 26(c) or another applicable law, as discussed in relation to Dispute 1, above."

Defendants agree and have accordingly proposed language on this basis.

As explained in more detail in the response to Dispute #3 below, Defendants are not attempting to define categories of confidential information based on whether the information is or is not publicly available. The designation must qualify for protection under Federal Rule of Civil Procedure 26(c) or other governing law, and be information falling within the listed categories that is either not in the public domain or, if in the public domain, improperly in the public domain. Again, if any party would like to challenge any designation, they may do so under paragraph 6.

Finally, Plaintiffs suggest that the names and identifying information of law enforcement officers cannot be designated as confidential information. That is wrong. Plaintiffs rely on a district court order from Arizona for the proposition that "[t]he default presumption is that, as public servants, law enforcement officers may be identified by name." *See supra* p. 4. Plaintiffs fail to provide full context of that order and that court's reasoning. *See* Order, *Rodriguez v. Swartz*, 4:14-cv-02251-RCC, ECF No. 40, at 1-2 (D. Ariz. Nov. 13, 2014). The unidentified officer in that case *was the named defendant*. *Id.* From the outset of the case, the defendant remained unnamed until an intervening news publication sought disclosure of his identity. *Id.* The court ultimately found that the defendants' concerns of ridicule, injury, harassment, embarrassment and threats to defendant and his family were valid, but failed to overcome the strong presumption in favor of public access. *Id.* at 3. The court further concluded that any addition information beyond the Defendants' name would be maintained as confidential by the parties. *Id.*

---

[1] Plaintiffs' approach would potentially create an inconsistency in the treatment of identical documents relating to Operation-At-Large Los Angeles in *Perdomo*, where the protective order uses these categories for confidentiality designations.

Here, Defendants have no intention of redacting or marking as confidential the names of the Defendants; instead, identifying information about non-public facing federal employees may qualify for confidential protection to protect "a person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). As the parties are aware, there has been a significant increase in violence against federal law enforcement personnel, including a significant increase in assaults and threats not only to the officers, but their families as well. For example:

1. "DHS Condemns Dangerous Doxxing and Escalating Threats Against Federal Law Enforcement Officers" (October 9, 2025) https://www.dhs.gov/news/2025/10/09/dhs-condemns-dangerous-doxxing-and-escalating-threats-against-federal-law (last visited July 27, 2026);

2. "Riverside and Colorado Women Found Guilty of Stalking ICE Officer Home from Work and Livestreaming the Pursuit on Social Media" (March 2, 2026) Central District of California | Riverside and Colorado Women Found Guilty of Stalking ICE Officer Home from Work and Livestreaming the Pursuit on Social Media | United States Department of Justice (last visited August 4, 2026);

3. "8000% Increase in Death Threats Against ICE Law Enforcement as They Risk Their Lives to Remove the Worst of the Worst." (October 20, 2025) https://www.dhs.gov/news/2025/10/30/8000-increase-death-threats-against-ice-law-enforcement-they-risk-their-lives (last visited July 27, 2026).

"[R]isks to officer safety constitute particularized harm." *Astorga v. Cnty. of Los Angeles,* No. CV20-09805, 2022 WL 16943897, at *4 (C.D.Cal. Mar. 15, 2022). Especially where, as here, the personally identifying information is not of named defendants but instead concerns "lower level officials who generally have a stronger interest in personal privacy than do senior officials," thus, the "public interest in obtaining the PII is outweighed by the private interest in avoiding harassment." Order, *Oregon v. Trump*, No. 3:25-cv-01756-IM ECF No. 177 at 4-6 (quoting *Lahr v. Nat'l Transp. Safety Bd.*, 569 F. 3d 964, 977 (9th Cir. 2009) (internal quotations omitted)); *Trujillo v. Jacquez*, No. C-10-05183-YGR (DMR), 2014 WL 4072062, at *4 (N.D. Cal. Aug. 15, 2014)

JOINT STIPULATION RE: PROTECTIVE ORDER

(implementing a protective order with an attorney's eyes only provision to address security and privacy concerns implicated by disclosing confidential materials to a plaintiff because "disclosure of information regarding Defendants' employment could jeopardize the officer' safety"); *cf. Biscoe v. Garcia*, No. CV-11-943-PHX-ROS, 2012 WL 3228820, at *1 (D. Ariz. Aug. 6, 2012) (noting that courts can order otherwise discoverable information not to be disclosed if it would pose a threat to the safety and security of a prison).

The Ninth Circuit has long recognized that nondisclosure is appropriate where revealing an identity would expose a person to "harassment, injury, ridicule, or personal embarrassment." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). Although *Advanced Textile* involved party plaintiffs, its reasoning applies with equal force to non-party law-enforcement officers whose identification could subject them and their families to danger. Congress has similarly recognized the sensitivity of this information. Under FOIA Exemption 7(C), agencies routinely redact the names and identifying details of law-enforcement officers, support staff, and contractors to prevent harassment or retaliation. *See Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003); *Concepcion v. FBI*, 606 F. Supp. 2d 14, 39 (D.D.C. 2009) (collecting cases). The same principle applies here: disclosure of officers' identifying information could subject them to harassment or physical harm in both their professional and personal lives.

Accordingly, there is no basis for the Court to make a sweeping categorical judgment at this preliminary stage that officer names and identifying information cannot be designated as confidential given the well-documented safety and privacy risks posed by such public disclosure. Plaintiffs will be able to see and use the officers' identifying information for purpose of the litigation and share it with the various categories of people authorized to receive it under the protective order. In the event Plaintiffs believe there is a need to share specific information more broadly, the parties can confer and any disputes can be brough to the Court for resolution pursuant to Section 6.

**DISPUTE 3:** Whether the Protective Order should include language making any information not already in the public domain confidential. (Paragraph 2.3.)

JOINT STIPULATION RE: PROTECTIVE ORDER

**PLAINTIFFS' POSITION**

Defendants seek to define "CONFIDENTIAL information" to include virtually any information that is not already in the public domain, as well as information that is "improperly in the public domain." Plaintiffs object because this definition bears no relationship to the governing standard under Federal Rule of Civil Procedure 26(c) and would sweep within the Protective Order vast amounts of information for which there is no good cause to restrict public disclosure.

The fact that information is not readily publicly available does not, standing alone, make it confidential. Rule 26(c) requires a particularized showing that disclosure of specific information would result in a recognized harm warranting protection. Defendants' proposal would instead create a presumption that every non-public document or piece of information is confidential regardless of its contents, effectively eliminating Rule 26(c)'s good-cause requirement. Such a definition would invite blanket confidentiality designations untethered to the substantive standards governing protective orders.

Defendants contend that this language is necessary because "protections are not waived by inadvertent or unauthorized disclosures." But that concern is already fully addressed elsewhere in the proposed Protective Order. Sections 10 and 11—upon which the parties have agreed— expressly provide that protected material does not lose its confidential status because of inadvertent production or unauthorized disclosure. Those provisions accomplish precisely the objective Defendants identify without dramatically expanding the definition of "CONFIDENTIAL material."

Ultimately, Defendants' proposal would transform confidentiality from a determination based on Rule 26(c)'s good-cause standard into one based solely on whether information has previously become public. That is not the law, is inconsistent with the Central District's model protective orders, and would unnecessarily expand the universe of protected material.

**DEFENDANTS' POSITION**

Plaintiffs overread and misunderstand the language Defendants have proposed in Section 2.3(B), which is modeled on the protective order entered in *Pedro Vasquez-Perdomo, et al. v. Mullin.*, 2:25-cv-05605 (C.D. Cal.) (ECF No. 247 at 3), a case that involves discovery of some of the same documents relating to Operation-At-Large and similar DHS law enforcement materials.

JOINT STIPULATION RE: PROTECTIVE ORDER

Defendants agree that authorized public information cannot be designated as confidential. Defendants also agree that the mere fact that a piece of information has not been disclosed publicly is not a sufficient basis to designate it as confidential.  Accordingly, Defendants' proposed language states that confidential information must be (1) "information not in the public domain," and (2) within one of the enumerated categories of sensitive discovery information likely to arise in discovery in this case (e.g., information protected by the Privacy Act, sensitive information about law enforcement activities).  *See* PO § 2.3(B).  This framework appropriately satisfies Rule 26(c)'s good cause standard.

Properly understood, Defendants' proposed language seeks to clarify that the parties may designate information as confidential even if the same information is "improperly in the public domain."  *See* PO § 2.3(B).  The additional language accounts for the unique status of the federal government's confidential information.  The fact that federal government information may be available to the public through an unauthorized disclosure or leak should not prevent the government from maintaining confidentiality over that same information in the context of this litigation.  *See, e.g., United States v. Zubaydah*, 595 U.S. 195, 210 (2022) (recognizing that a federal agency may withhold information in response to a Freedom of Information Act request where the information has not been "officially acknowledged" by the agency "despite the fact that the information has become public"); *United States v. Smith*, 123 F.3d 140, 144 (3d Cir. 1997) ("[W]e conclude that the potential grand jury material contained in the sentencing memorandum is entitled to the [seal] protection afforded to it by the district court despite the fact that it has already been publicly disclosed."); *In re Est. of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F. Supp. 2d 1353, 1364 (N.D. Ga. 2002) (citing cases for the proposition that "sealed or confidential documents do not become matters of public record simply because they are leaked to members of the public").  Indeed, even if "confidential information has been disclosed in national newspapers, the subjects of such leaked confidential data retain[] their interests in preventing further disclosure."  *In re Roman Catholic Archbishop of Portland in-Oregon,* 661 F.3d 417, 428 (9th Cir. 2011); *see Smith*, 123 F.3d at 143.  The federal government should be permitted to take appropriate steps to mitigate the harm from such unauthorized disclosures by maintaining its confidentiality designations over the

JOINT STIPULATION RE: PROTECTIVE ORDER

same information produced in this case.  If the rule were otherwise, the government would be bound by unauthorized leaks and prevented from designating the same information as confidential, thereby exacerbating the harm from the initial improper disclosure.  The protective order should not incentivize that harmful outcome.

Contrary to Plaintiffs' suggestion, the language in sections 10 and 11 providing that confidentiality designations are not waived by certain inadvertent or unauthorized party disclosures is not sufficient to address Defendants' concerns.  Sections 10 and 11 apply only to inadvertent disclosures by the parties, not unauthorized leaks or disclosures by non-parties separate from this litigation.  Further, sections 10 and 11 address what happens to information that a party has previously designated as confidential if there is a subsequent inadvertent disclosure of that same information by a party.  Section 2(B), by contrast, addresses whether a part can assign a confidentiality designation to information improperly in the public domain in the first instance. The fact that certain information has been improperly released to the public should not prevent Defendants from designating that same information as confidential for purposes of this litigation. To the extent there are any disputes over such designations, Section 6 of the protective order provides an appropriate mechanism for the Court to address specific issues on a case-by-case basis.

**DISPUTE 4:** Whether the Protective Order should include language designed to prevent overbroad confidentiality designations. (Paragraphs 5.1, 5.2(a), 5.2(f).)

**PLAINTIFFS' POSITION**

Defendants object to several provisions requiring parties to exercise restraint in making confidentiality designations and to avoid overbroad or indiscriminate designations. Those provisions are not unique to Plaintiffs' proposal. Rather, they are standard provisions contained in the Central District's model protective orders and have been incorporated into protective orders entered throughout this District. They exist for a straightforward reason: to ensure that confidentiality designations remain consistent with Rule 26(c) and do not become blanket restrictions on discovery.

Plaintiffs propose the following bolded additions to be included in the Protective Order:

JOINT STIPULATION RE: PROTECTIVE ORDER

- "Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. The Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify, **so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.**" (Paragraph 5.1).

- "**If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).**" (Paragraph 5.2(a)).

- "**For testimony given in depositions, the Designating Party shall identify testimony that involves information subject to CONFIDENTIAL or CONFIDENTIAL-ATTORNEYS' EYES ONLY designation on the record before the close of the deposition**. Unless all parties agree on the record at the time the deposition testimony is taken **or the Court rules otherwise in response to an appropriate motion,** all testimony **so identified** shall be treated as "CONFIDENTIAL" Information or "CONFIDENTIAL–ATTORNEYS' EYES ONLY" Information until the expiration of the following" (Paragraph 5.2(f)).

Defendants contend that these provisions create administrability problems and impose unnecessary burdens on the producing party. Experience demonstrates otherwise. These provisions have been routinely employed for years in complex litigation throughout this Circuit—including litigation involving these Defendant agencies—without creating the practical difficulties Defendants predict. *See, e.g. Ramirez v. Noem*, No. 2:25-CV-02136, 2025 WL 3251459, at *4 (D. Nev. Nov. 21, 2025); *City of Manhattan Beach v. Gen. Reinsurance Corp.*, No. 2:21-cv-2210-MCS-MAA, 2021 WL 5140933, at *3 (C.D. Cal. Nov. 3, 2021); *Vang v. City of Fresno*, No. 1:21-cv-1370-ADA-SKO, 2023 WL 2374217, at *5 (E.D. Cal. Mar. 6, 2023); *U.S. Equal Emp. Opportunity Comm'n v. Prestige Care, Inc.*, No. 1:17-cv-1299-AWI-SAB, 2018 WL 6804802, at *3 (E.D. Cal. Dec. 27, 2018); *McGuire v. City of Los Angeles*, No. 2:24-cv-09909-DSF-KES, 2025

JOINT STIPULATION RE: PROTECTIVE ORDER

WL 2631599, at *2 (C.D. Cal. June 5, 2025). Rather than creating additional burdens, they simply require designating parties to make confidentiality determinations thoughtfully and in good faith, consistent with their existing obligations under Rule 26(c).

Indeed, courts have specifically approved this language because it prevents the very abuse Plaintiffs seek to avoid here. *See, e.g., Lorenzetti,* No. 2:25-CV-02114-MEMF-KS, 2026 WL 712875, at *5 (specifically approving the same language because it "ensures that the parties are not improperly given 'carte blanche' to designate information which is not entitled to protection under Rule 26(c)").

The parties' dispute about deposition testimony illustrates why these safeguards matter. Plaintiffs agree that the parties should have thirty days after receipt of the transcript to review testimony and designate portions that warrant confidential treatment. That process promotes accurate designations and minimizes unnecessary disputes. Plaintiffs therefore agreed to Defendants' proposed thirty-day review period.

Plaintiffs cannot agree, however, to Defendants' proposal that every word of every deposition transcript automatically be deemed confidential during that review period. Such a blanket designation is fundamentally inconsistent with Rule 26(c), the forthcoming Protective Order's requirement that parties exercise restraint and care in making confidentiality designations (Paragraph 5.1), and the principle that confidentiality must be justified on a particularized basis. Automatically cloaking an entire transcript in confidentiality—regardless of its content—creates precisely the type of over-designation that the disputed provisions are designed to prevent.

The Central District's model protective orders provide a more balanced approach. They permit counsel to identify confidential testimony on the record before the deposition concludes while allowing the parties a reasonable period after receiving the transcript to review and supplement, narrow, or withdraw those designations. Ex. B (Hon. Chief Judge Stevenson Model Protective Order) at 7 (section 5.2(b)). That approach protects legitimately confidential testimony without imposing a blanket confidentiality designation over material that may never qualify for protection under Rule 26(c).

JOINT STIPULATION RE: PROTECTIVE ORDER

## DEFENDANTS' POSITION

Defendants do not object to general language requiring the parties to exercise restraint in making confidentiality designations and to avoid overbroad or indiscriminate designations. At the same time, the protective order should promote the prompt exchange of discovery information between the parties and not impose undue burdens that will delay this litigation unnecessarily.

With respect to document productions, Defendants propose a process where the parties make confidentiality designations on a document-by-document basis. This approach is sensible and efficient. If, after a good faith review, a party determines that a responsive document contains confidential information, it will be marked with an appropriate designation indicating that the document as a whole contains confidential information. This approach promotes faster review of documents and will enable Defendants to produce responsive documents to Plaintiffs on a more efficient schedule. Designating entire documents as confidential significantly reduces the time and resources required for internal review, especially for large productions. Further, given the likelihood that only a fraction of the discovery documents produced in this case will not be used in Court filings, document-level review aligns with proportionality principles consistent with Rule 26.

Plaintiffs propose a regime where the parties would be required to make word-by-word confidentiality designations on every page of every document prior to production (e.g., draw a red box around every specific word or phrase deemed confidential). Given the voluminous discovery Plaintiffs appear to envision in this case, a word-by-word approach is not practical and would impose burdensome and time-consuming requirements on the parties that would delay production of documents and the overall resolution of this case.

Further, Plaintiffs have not articulated a compelling reason why such a resource-intensive word-by-word requirement is necessary to litigate this case. The protective order authorizes disclosure of confidential information to a range of attorneys, experts, and support personnel. *See* Section 7.2, 7.3. Accordingly, Plaintiffs' trial preparation will not be hindered if confidentiality designations are made on a document-by-document basis. To the extent Plaintiffs seek disclosure of a particular confidential document to someone not already covered by the order, the parties may consent to such release. *See* Section 7.2(j). Moreover, the Supreme Court has made clear that there

is no First Amendment right to public disclosure of discovery materials, which are provided "for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." *Seattle Times v. Rhinehart*, 467 U.S. 20, 31-32 (1984).

The parties would be far better served by focusing their time and resources on producing documents and saving disputes over specific confidentiality designations to a limited number of key documents. This approach would avoid the burdens and delay associated with exhaustive word-by-word designation of every discovery document, most of which will play no role in the outcome of this case. Instead of spending a significant amount of time and expense during discovery making granular confidentiality determinations on every page of every document produced in this case, Defendants' approach would allow the parties to focus on the documents that actually matter, such as documents that support a summary judgment motion or which may be used in trial. Indeed, "heightened attention to confidentiality designations is more appropriate at the time the document is filed with the Court or used in a Court proceeding (if ever), as opposed to the time such a document is produced as part of what may often be a massive discovery response." *Containment Techs. Group, Inc. v. Am. Soc. of Health System Pharmacists,* No. 1:07-cv-997-DFH-TAB, 2008 WL 4545310, at *4 (S.D. Ind. Oct. 10, 2008).

Because of the undue and disproportionate burdens associated with line-by-line designations, the Court should follow the approach that many other courts have taken to allow the parties to make confidentiality designations on a document-by-document basis. *See, e.g., Stiles v. Equifax Info. Servs.*, No. 9:16-CV-81488-DMM, 2017 WL 65884, at *1 (S.D. Fla. Jan. 4, 2017) ("The Court finds that line-byline [sic] designation involves inordinate time and expense and is not necessary in light of the requirement that the Designating Party exercise restraint and justify its confidentiality designations."); *S.A. v. Patheon Inc.*, No. 12-24536-CIV, 2013 WL 4773433, at *6 (S.D. Fla. Sept. 4, 2013) ("[T]he practical burdens (i.e., inordinate time and expense) associated with a page-by-page or section-by-section designation protocol militate against such a default rule."); *S-2 Automation LLC v. Micron Tech., Inc.,* 283 F.R.D. 671, 686 (D.N.M. 2012) (denying in part motion to enter protective order where the proposed protective order prohibited document-by-document designation, and acknowledging that "[s]uch a procedure could increase the cost of

JOINT STIPULATION RE: PROTECTIVE ORDER

production dramatically and make production more time consuming."); *Containment Techs. Grp.*, 2008 WL 4545310, at *4 ("[R]equiring counsel to scour each document in a massive electronic discovery production to parcel out which portions of which documents should properly be designated as confidential undoubtedly adds additional burdens and expense to the litigation.").

Section 5.1 of the Protective Order should therefore include Defendants' proposed language that would allow for the designation of "Documents or portions of Documents" as well as "categories of information" that meet the standard for confidential information under the protective order. The Court should reject Plaintiffs' proposed line-by-line designation requirements in Sections 5.1 and 5.2, and adopt Defendants' proposed language for Section 5.1.

For similar reasons, the Court should adopt Defendants' proposed language in Section 5.2(f) addressing the treatment of confidential information during depositions. Defendants' proposal is straightforward, efficient, and will not unduly prejudice Plaintiffs. Unless the parties agree otherwise, all depositions will be presumptively confidential for a period of 30 days to allow the parties to review the transcripts and make pinpoint confidentiality designations to only those specific sections of testimony that warrant such treatment. This approach appropriately balances the need to protect confidential information from public disclosure while providing for prompt review to ensure information is not overly designated as confidential. Plaintiffs have not explained why their ability to litigate this case would be adversely impacted by this standard procedure common to protective orders in this district and other similar cases around the country challenging DHS's law enforcement actions. *See, e.g., Vasquez Perdomo v. Mullin*, 25-cv-05605-MEMF-SP (C.D. Cal.) (ECF No. 247 at 9-10); *Dickinson v. Trump*, 3:25-cv-02170-SI (D. Or) (ECF No. 172 at 10-11); *Illinois v. DHS*, 26-cv-321 (N.D. Ill.) (ECF No. 66 at 4-5); *Do No Harm v. Regents of Univ. of California*, No. 2:25-CV-4131-JWH-JDE, 2026 WL 948664, at *4 (C.D. Cal. Apr. 8, 2026);*Commworks Sols., LLC v. Trendnet, Inc.*, No. 2:23-CV-8048-CBM(AJRX), 2023 WL 7522105, at *6 (C.D. Cal. Nov. 13, 2023).

Plaintiffs inaccurately claim that there is a model protective order for the Central District addressing this issue. Looking closer at the cases cited by Plaintiffs *supra* at 12, they all include Plaintiffs' preferred "not swept unjustifiable" provision, however, they otherwise differ

significantly. For example, *Ramirez* does not have any process for deposition designations. *See generally Ramirez*, 2025 WL 3251459, at *4. *Vang* requires designations for deposition testimony at the end of the deposition, however, a party may invoke on the record a right to have up to twenty days to identify the specific portions of testimony to be designated. *Vang*, 2023 WL 2374217, at *5 The *Prestige Care* case cited by Plaintiffs is silent on deposition designations. *Prestige Care*, 2018 WL 6804802, at *2-3.

Plaintiffs' proposed approach would lead to unnecessary burdens and delays by requiring the parties to make specific confidentiality designations on the fly during depositions.  Such a process would derail the depositions into a lengthy series of on-the-record confidentiality designations after each answer and associated breaks necessary for appropriate conferrals about such designations.  To avoid missing sensitive material while monitoring the substance of a witness's answer, thinking of objections, and maintaining question follow, the more likely outcome from Plaintiffs' proposal is that attorneys will over-designate information as confidential to avoid waiver, thereby leading to more disputes that will require judicial resolution.  By contrast, allowing the parties a reasonable time to review the transcript carefully after the conclusion of the deposition will lead to more accurate designations with fewer disputes.  Further, the quality of the depositions will suffer under Plaintiffs' proposal.  Attorneys and witnesses should be permitted to freely raise and discuss sensitive or confidential issues without fear of potentially harmful disclosure.  Any confidential information discussed can be appropriately protected after the deposition has concluded within a reasonable period of time.  Plaintiffs' ability to prepare for trial will not be hindered by a post-deposition review and designation process.

If adopted, the end result of Plaintiffs' proposal will be a disjointed deposition process that that will not serve anyone's interest in moving the discovery process forward quickly and efficiently.  Accordingly, the Court should adopt Defendants' proposed language to paragraph 5(f).

**DISPUTE 5:** Whether the Protective Order should permit Defendants to use Plaintiffs' protected information for criminal law enforcement purposes. (Paragraphs 7.1.)

**PLAINTIFFS' POSITION**

JOIN STIPULATION RE: PROTECTIVE ORDER

Defendants ask this Court to adopt an extraordinary exception to the ordinary operation of a civil protective order. They seek language authorizing the potential use of protected discovery for criminal law enforcement purposes and permitting additional federal personnel to access both CONFIDENTIAL and ATTORNEYS' EYES ONLY material. Specifically, Defendants seek to include the below italicized language in the Protective Order:

- *"Notwithstanding any provision in this Order to the contrary, Defendants may seek* ex parte *approval from the Court for permission to use Confidential or Attorneys' Eyes Only information they may receive for law enforcement purposes if it indicates the commission of a serious crime.* Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order." (Paragraph 7.1).

Plaintiffs strenuously object. The purpose of a protective order is to facilitate the free exchange of information in civil discovery by assuring parties and third parties that sensitive information disclosed in litigation will be used only for purposes that relate to the litigation. Defendants' proposal would fundamentally alter that bargain by expressly contemplating the future use of protected discovery for criminal law enforcement purposes. Such an exception would chill discovery, discourage candid participation by parties and witnesses, facilitate retribution by Defendants, burden the right to petition the government for redress of grievances which includes the right to sue, and undermine the very protections a protective order is intended to provide. *See, e.g., California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) ("The right of access to the courts is indeed but one aspect of the right of petition.").

Notably, Defendants cite no authority from the Central District of California approving such language. Although they rely on *Dickinson v. Trump*, No. 3:25-cv-02170-SI (D. Or.), that decision arose in another district and does not reflect practice in this District. By contrast, the Protective Order entered by Magistrate Judge Pym in *Vasquez-Perdomo v. Noem*, No. 2:25-cv-05605-MEMF-SP (C.D. Cal.)—which Defendants themselves previously proposed as the model for this case—contains no comparable provision authorizing the use of protected discovery for

JOINT STIPULATION RE: PROTECTIVE ORDER

criminal law enforcement purposes. The absence of such language from the Central District's model orders is also telling.

The requested carveout by Defendants is particularly inappropriate given the allegations in this case. Plaintiffs allege that Defendants have adopted a policy of improperly treating the recording and publication of DHS agents' activities as criminal conduct, based in part on Defendants' own public statements that they intend to prosecute such conduct. (First Amended Complaint, ECF No. 67, ¶¶ 93-99.) Plaintiffs further allege that Defendants have targeted journalists and other individuals who record immigration enforcement activity through retaliatory enforcement actions. (*Id.*) Consistent with those allegations, Defendants have already made what this Court described as "baseless accusations" that Plaintiffs engaged in criminal conduct. (ECF No. 55 at 28.)

Against that backdrop, Defendants' proposal is not a routine administrative provision. It would expressly preserve the possibility that information produced under a civil protective order could later be used in connection with criminal law enforcement directed at the very individuals who allege retaliatory conduct by these Defendants. At minimum, that prospect creates a substantial chilling effect on discovery and carries an implicit threat of retaliatory enforcement that is incompatible with the purpose of a protective order.

Indeed, this Court and others have already recognized that concerns about retaliation by the Department of Homeland Security are real and substantial. *See Los Angeles Press Club v. Noem*, No. 2:25-cv-05563-HDV-E, 2025 WL 2658327, at *2 (C.D. Cal. Sept. 10, 2025) (permitting declarants to proceed anonymously "[i]n light of the severity of the potential harm and the vulnerability of journalists and protestors to retaliation"); *cf. Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000) (recognizing that preserving privacy is appropriate where parties face threats of retaliation, harassment, or physical or economic injury). Those concerns are not hypothetical—they lie at the heart of Plaintiffs' claims. *Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1189 (9th Cir. 2026) ("On this record, we see no clear error in the district court's finding that Defendants acted with retaliatory intent.").

JOINT STIPULATION RE: PROTECTIVE ORDER

Moreover, Plaintiffs' concerns about retaliatory prosecution are particularly pronounced, given the current practice of the U.S. Department of Justice to engage in what appear to be retaliatory prosecutions against individuals protesting DHS activities in jurisdictions across the United States.[2] Recent examples include the prosecutions of the "Broadview 6" in Chicago, Illinois[3]; the "Spokane 3" in Spokane, Washington[4]; labor leader David Huerta in Los Angeles, California[5]; Representative LaMonica McIver in Newark, New Jersey[6], and 15 protestors in Minnesota[7]. These prosecutions, together with the Department of Justice's stated intention to increase the number of criminal cases arising from protests targeting immigration enforcement activities, underscore the reasonableness of Plaintiffs' concerns that information produced in this civil action could be used for retaliatory purposes beyond this litigation.[8]

Finally, Defendants have identified no legitimate need for the proposed language because the Protective Order already provides an appropriate mechanism for seeking relief should extraordinary circumstances arise. Under agreed Paragraph 12.2, any party may seek modification of the Protective Order—including, where appropriate, on an *ex parte* basis—to permit disclosure of protected material or other relief. Defendants therefore retain the ability to request Court authorization based on a concrete factual record if circumstances ever warrant it. There is no justification for prospectively embedding a broad criminal law enforcement exception into the Protective Order at the outset of litigation.

### DEFENDANTS' POSITION

---

[2] As of July 18, 2026, one news report found that, of more than 550 federal prosecutions arising from protests, only four had resulted in convictions. *See* Hamed Aleaziz, Zolan Kanno-Youngs, & Devlin Barrett, *They Were Charged With Assaulting ICE Agents. The Cases Are Crumbling.,* N.Y. TIMES (July 18, 2026), https://www.nytimes.com/2026/07/18/us/ice-assaults-protesters.html.

[3] *United States v. Rabbit, et al.,* Case No. 1:25-cr-00693 (N.D. Ill. 2025).

[4] *United States v. Stuckart, et al.,* Case No. 2:25-cr-00113-RLP (E.D. Wash. 2025).

[5] *United States v. Huerta*, Case No. 2:25-cr-00841 (C.D. Cal. 2025).

[6] *United States v. McIver*, Case No. 3:24-cr-259 (D.N.J. 2024).

[7] *United States v. Sant, et al.*, Case No. 1:26-cr-00115-KMM-DTS (D. Minn. 2026).

[8] CBS News reported that it obtained an internal memorandum from the Justice Department that instructs U.S. Attorneys' Offices to "diligently monitor these enforcement efforts by maintaining regular comms with their DHS and DOJ agency counterparts" and that leadership "should prepare their offices to provide legal support for operations in their districts. One or two duty [assistant U.S. attorneys] is insufficient. All [U.S. Attorney Office] leadership and the entire Criminal Division should be on standby. There should be no bottleneck of referrals for complaints and legal process." Scott MacFarlane, *Justice Department Tells Prosecutors to Prioritize Cases Stemming from Immigration Unrest*, CBS NEWS (June 12, 2025), https://www.cbsnews.com/news/justice-department-prosecutors-immigration/.

The proposed exception to allow Defendants to apply for *ex parte* approval for permission to use Confidential or Attorneys' Eyes Only information for law enforcement purposes if the material indicates the commission of serious crime preserves the government's well-established ability to coordinate civil and criminal enforcement without undermining the confidentiality interests protected by Rule 26(c).  This same provision was adopted by another district court in a similar case challenging DHS's response to violent protest activity in Portland, Oregon, and it should also be included in the protective order here.  *See Dickinson v. Trump*, 3:25-cv-02170-SI (ECF No. 172 at 9).

Rule 26(c) authorizes protective orders to guard against annoyance, embarrassment, oppression or undue burden; it does not authorize orders that impede legitimate law enforcement functions. The Government's proposed provision is narrowly tailored to require application to the Court for disclosure. It does not permit public dissemination of confidential information but rather only permits disclosure within the government when confidential material reveals evidence of *serious* criminal conduct. For example, in the event discovery information were to reveal evidence of a violent assault on a federal officer (*e.g.*, cell phone camera video), Defendants should not be prohibited from taking steps to pursue an appropriate investigation with the Court's permission. Further, the Court's *ex parte* review of the proposed evidence of serious criminal activity will prevent the alleged abuses that Plaintiffs exaggerate.

Defendants do not seek an order allowing disclosure for *any* crime or perceived criminal conduct but instead would require Defendants apply to the Court for relief such that Plaintiffs' concerns of overuse and retaliation are misplaced. The Court would oversee Defendants' ability to use any information of a serious crime, thus invalidating Plaintiffs scattershot claims of retaliatory use. Moreover, this approach is consistent with Ninth Circuit precedent recognizing the legitimacy of coordination between civil and criminal enforcement authorities. In *United States v. Stringer*, 535 F.3d 929, 937-41 (9th Cir. 2008), the Ninth Circuit rejected the contention that cooperation between civil regulators and criminal prosecutors rendered parallel proceedings improper. The court explained that parallel civil and criminal investigations—and sharing of information between government components—are a longstanding and lawful feature of federal enforcement. *Id.*

Nothing in the Constitution or federal law requires government attorneys to operate in isolated silos merely because information first arises in a civil case.

The Supreme Court has likewise recognized that the government may pursue civil and criminal remedies simultaneously and may rely on information developed in civil proceedings in subsequent criminal enforcement. *United States v. Kordel*, 397 U.S. 1, 11-12 (1970). These decisions reflect the longstanding principle that effective enforcement depends upon communication among government attorneys and investigators when evidence of criminal wrongdoing comes to light.

Given that Defendants propose the additional step of pursuing an *ex parte* application for the disclosure, Plaintiffs cannot show prejudice or harm. The proposed exception does not authorize public disclosure or permit the Defendants to use confidential information for purposes unrelated to law enforcement. It merely ensures that a confidentiality order entered under Rule 26(c) is not transformed into a barrier to intragovernmental communication concerning evidence of serious criminal conduct. Because the public's interest in the investigation and prosecution of crime is among the highest interest recognized in our legal system, the narrow carve-out proposed by the Government appropriately accommodates both the confidentiality interests protected by Rule 26(c) and the government's fundamental responsibility to enforce criminal law.

**DISPUTE 6:** Whether the Protective Order should include language permitting the use of confidential information by counsel of record in this case in other cases concerning similar alleged misconduct by Defendants. (Paragraph 7.1.)

**<u>PLAINTIFFS' POSITION</u>**

The parties agree that confidential material produced in this action may be used in certain related litigation but disagree as to the appropriate scope of that use. Plaintiffs propose language permitting counsel of record to use confidential material in other actions involving substantially similar allegations against Defendants, provided the material remains subject to an appropriate protective order or further order of the receiving court. Defendants, by contrast, would limit such use to a finite list of specifically identified cases set forth in the Protective Order. Plaintiffs submit

that Defendants' proposed limitation is unnecessary, inflexible, and would require repeated modifications to the Protective Order as additional related actions arise, despite the material remaining subject to equivalent confidentiality protections in each case.

Specifically, Plaintiffs propose the below bold language be added and the stricken language be removed (Plaintiffs consolidated these revisions in Exhibit A to facilitate the Court's review):

- Nothing in this order prohibits counsel for Plaintiffs **who have appeared as attorneys of record in other related cases regarding the conduct of employees and agents of the Department of Homeland Security, including but not limited to *Dickinson v. Trump*, 3:25-cv-2170-SI (D. Or.), *Tincher, et al. v. Noem*, Case No. 0:25-cv-04669 (D. Minn.), *Vasquez-Perdomo v. Noem*, No. 2:25-cv-05605-MEMF-SP (C.D. Cal.), and *Chicago Headline Club v. Noem*, 1:25-cv-12173 (N.D. Ill.),** from sharing **documents and** information ~~about the existence (but not the substance) of any Documents~~ designated "CONFIDENTIAL" or "CONFIDENTIAL-ATTORNEYS' EYES ONLY" ~~(e.g., date, title, Bates number).~~ **under** this Protective Order~~, however,~~ **with counsel in other matters, provided that they agree to be bound by this Protective Order and execute Exhibit A.**

**Moreover,** this Protective Order does not restrict the disclosure or use of any information or documents lawfully obtained by the receiving party through means or sources outside of this litigation. ~~Should a dispute arise as to any specific information or document, the burden shall be on the party claiming that such information or document was lawfully obtained through means and sources outside of this litigation.~~

Importantly, the proposed provision does not diminish Defendants' confidentiality interests. Protected material would remain subject to a protective order in the receiving litigation, and Defendants would retain the ability to object to any particular use or seek further relief from the court presiding over that action. The proposal merely allows counsel to use information already produced under appropriate confidentiality protections without requiring duplicative discovery requests or repetitive motions addressing the same materials.

This approach is particularly appropriate here. Plaintiffs' claims challenge policies and practices of federal agencies that are alleged to affect numerous individuals. Discovery concerning

JOINT STIPULATION RE: PROTECTIVE ORDER

those policies, training, directives, and practices is likely to overlap substantially with discovery sought in other actions involving similar allegations. Allowing confidential discovery to be used by counsel in related litigation promotes judicial economy, reduces unnecessary expense, and avoids inconsistent discovery rulings, all while fully preserving Defendants' legitimate confidentiality interests.

By contrast, Defendants identify no concrete prejudice that would result from Plaintiffs' proposal. Because the materials would remain subject to protective orders and could not be publicly disclosed absent further court authorization, Defendants' confidentiality interests are fully protected. The only practical effect of Defendants' proposal is to require duplicative discovery and repetitive litigation over the same issues in multiple cases.

**<u>DEFENDANTS' POSITION</u>**

The standard rule in discovery protective orders is that confidential information is restricted solely to litigating the case at issue and disclosure is limited only to designated individuals with responsibility for litigating the case. At Plaintiffs' request, Defendants have agreed to relax those restrictions in this case to allow Plaintiffs to share the existence of confidential documents produced in discovery with plaintiffs' counsel in specific-enumerated cases raising similar First Amendment retaliation claims against DHS. Specifically, Defendants' proposal would allow Plaintiffs to provide the date, title, or Bates number of a confidential document (but not the document itself) to attorneys in specifically-listed cases to facilitate an appropriate discovery request by those other attorneys in their own cases. This procedure appropriately balances Defendants' significant interest in protection of confidential information and avoiding inadvertent disclosures with Plaintiffs' interest in alerting attorneys in other cases to the existence of potentially relevant documents.

Plaintiffs' proposal should be rejected because it is overbroad in several key respects. First, Plaintiffs seek sweeping authorization to share confidential information with unidentified attorneys in "other matters" without any limitations or qualifications. DHS is a defendant in hundreds of lawsuits around the country and Plaintiffs' vague language would enable them to share Defendants' confidential information across a broad range of cases without Defendants' knowledge or consent.

JOINT STIPULATION RE: PROTECTIVE ORDER

Unilaterally expanding disclosure to other cases involving unrelated causes of action is unreasonable and serves no legitimate purpose other than to burden Defendants. Given Plaintiffs' stringent objections to limited disclosure of their own confidential information through a court approved *ex parte* process, they have no basis to complain about a process that would impose reasonable restrictions on dissemination of the government's confidential information absent any judicial oversight.

A more reasonable and tailored approach is to list specific cases in the protective order where sharing is permissible and then allow the parties to consent to sharing in additional cases upon agreement. This procedure would fully address Plaintiffs' concerns about serial amendments to the protective order. If such consent is unreasonably withheld, Plaintiffs can seek appropriate relief from the Court.

Second, Plaintiffs' proposal is overbroad because it would permit them to share the actual confidential document or information with attorneys in other cases. Plaintiffs have not provided any compelling reason why they need share documents with lawyers in other cases to help or assist with the litigation of this case. The sole purpose of the sharing provision is to assist litigants in other cases who are not before this Court. This Court is not the MDL for all DHS law enforcement cases, and nothing about sharing Defendants' confidential information with lawyers in Minnesota or Chicago will help prepare this case for trial. Plaintiffs' advocacy on behalf of parties in other cases serves no legitimate purpose for this case.

Defendants have a compelling interest in protecting their confidential information and taking appropriate steps to ensure it is not disseminated more broadly than necessary to litigate this case. Instead of allowing Plaintiffs to give away Defendants' confidential documents to attorneys in an ill-defined set of other cases, Defendants' proposal would allow Plaintiff to disclose the fact of certain confidential documents by reference to the title or Bates number, thereby enabling the attorneys in those other cases to request the same documents from the government through the discovery and case management process applicable to those cases. Whether the identified confidential documents are relevant or appropriate for disclosure in the unique circumstances of those other cases is an issue that should be addressed by the judges handling those matters, not this

Court. The Court should accordingly adopt Defendants' proposed language in Section 7.1 to limit Plaintiffs' ability to disclose Defendants' confidential information to parties in other cases.

Finally, Plaintiffs seek to strike the following language in Section 7.1: "Should a dispute arise as to any specific information or document, the burden shall be on the party claiming that such information or document was lawfully obtained through means and sources outside of this litigation." This standard language is included in protective orders in this District and Plaintiffs have not provided a persuasive reason for its omission. *See, e.g., Klauber Bros., Inc. v. Amazon.com*, Inc., No. 2:22-CV-08053-FWS-E, 2023 WL 3763796, at *1 (C.D. Cal. June 1, 2023).

Dated: August 12, 2026

Respectfully submitted,
LOEVY & LOEVY

By:     */s/ Alyssa Martinez*
Alyssa Martinez

*Attorney for Plaintiffs*

JOINT STIPULATION RE: PROTECTIVE ORDER

Dated:  August 12, 2026

Respectfully submitted,
BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

ALEXANDER K. HAAS
ANDREW I. WARDEN
KATHLEEN C. JACOBS
Civil Division, Federal Programs Branch

TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
DANIEL A. BECK
Assistant United States Attorney
Acting Chief, Civil Division
ALARICE M. MEDRANO
Assistant United States Attorney
Acting Chief, Complex and Defensive Litigation
  Section
PAUL (BART) GREEN
Assistant United States Attorney


     /s/    *Kathleen C. Jacobs*
KATHLEEN C. JACOBS
Trial Attorney

*Attorneys for Defendants*

JOINT STIPULATION RE: PROTECTIVE ORDER

## **ATTESTATION**

Counsel for Plaintiffs hereby attests by her signature below that concurrence in the filing of this document was obtained from counsel for Defendants.


Dated: August 12, 2026                    Respectfully submitted,
                                          LOEVY & LOEVY


                                          By: ___*/s/ Alyssa Martinez*___
                                          Alyssa Martinez
                                          *Attorney for Plaintiffs*

JOINT STIPULATION RE: PROTECTIVE ORDER